IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| J.B.D.L. Corp. d/b/a<br>BECKETT APOTHECARY, et al. | )<br>)<br>) | Civil Action No. C-1-01-704 |
| | ) | Judge Sandra S. Beckwith |
| Plaintiffs, | ) | Magistrate Judge Timothy S. Hogan |
| v. | )<br>) | |
| WYETH-AYERST LABORATORIES, INC.,<br>et al. | )<br>)<br>) | |
| Defendants. | ) | |

**DIRECT PURCHASER CLASS PLAINTIFFS'**
**MOTION FOR PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26(c), Direct Purchaser Class Plaintiffs move this Court for a Protective Order directing that certain discovery sought by Defendant through subpoenas served upon eight absent class members not be had. Certain discovery sought in these subpoenas relates to issues which Judge Beckwith has previously ruled are irrelevant. Based upon those reasons, and the arguments and evidence more fully set forth in the accompanying Memorandum in Support and exhibits thereto, Plaintiffs respectfully request that the Court enter a Protective Order prohibiting such discovery.

Respectfully submitted,

/s/   Theresa L. Groh
Theresa L. Groh (29806)
**MURDOCK GOLDENBERG**
**SCHNEIDER & GROH, L.P.A.**
700 Walnut Street, Suite 400
Cincinnati, Ohio 45202-2011
Tel:   (513) 345-8291
Fax:   (513) 345-8294
Local Counsel for Direct Purchaser Class

{00009452; 1}

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| J.B.D.L. Corp. d/b/a<br>BECKETT APOTHECARY, et al., | )<br>)<br>)<br>) | Civil Action No. C-1-01-704<br><br>Judge Sandra S. Beckwith<br>Magistrate Judge Timothy S. Hogan |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | |
| WYETH-AYERST LABORATORIES,<br>INC., et al., | )<br>)<br>) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER CLASS
PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

I.   **INTRODUCTION**

Defendant, in this antitrust action brought by Direct Purchasers, has served subpoenas upon eight absent class members[1] seeking so-called "downstream" discovery regarding those

---

[1] The subpoenas were served December 1, 2003 on:
(1) Cardinal Health, Inc.; issued out of the United States District Court for the Southern District of Ohio;
(2) AmerisourceBergen Corporation; issued out of the United States District Court for the Eastern District of Pennsylvania;
(3) McKesson Corporation; issued out of the United States District Court for the Northern District of California;
(4) Wal-Mart Stores, Inc.; issued out of the United States District Court for the District of Delaware;
(5) Quality King Distributors, Inc.; issued out of the United States District Court for the Eastern District of New York;
(6) Eckerd Corporation; issued out of the United States District Court for the Middle

1

Class members' own profits, sales, and other "downstream" information that: (1) under well-established law, is both irrelevant and immaterial to any cognizable claim or defense asserted in this Direct Purchaser Action; and therefore (2) should be prohibited under Fed. R. Civ. P. 26 (b)(1) (discovery must be relevant to claims and defenses). Direct Purchaser Plaintiffs therefore request that this Court enter a Protective Order directing that such discovery not be had.[2]

In this litigation, a certified class of direct purchasers of the prescription pharmaceutical Premarin seeks overcharge damages from the drug's manufacturer, defendant Wyeth-Ayerst Laboratories, Inc., et al ("Wyeth"), based on Wyeth's alleged anticompetitive contracts with pharmacy benefit managers ("PBMs") and managed care organizations ("MCOs"). Plaintiffs allege that Wyeth's anticompetitive conduct permitted it to maintain its illegal monopoly in the market for conjugated estrogen drug products, resulting in plaintiffs incurring damages in the form of overcharges, in violation of §§ 1 and 2 of the Sherman Act. *See J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.*, No. C-1-01-704, Class Compl. at ¶¶ 51, 52 (S.D.Ohio. Oct. 12, 2001).

Where, as here, direct purchaser plaintiffs seek damages based on the theory that they incurred overcharges at the point of purchase, information relating to plaintiffs' post-purchase

---

District of Florida;
    (7) The Kroger Co.; issued out of the United States District Court for the Southern District of Ohio; and
    (8) Walgreen's Co., issued out of the United States District Court for the Northern District of Illinois (collectively, the "Subpoenas") (copies of the Subpoenas and Objections and Responses are attached as Exhs. 1 to 8). The Objections of Class Plaintiffs was separately served by Class counsel on December 23, 2003 (Exhibit 9).

[2] Direct Purchaser Plaintiffs seek a Protective Order pursuant to Fed. R. Civ. P. 26(c), under which a party may seek an order in the court in which an action is pending to protect a party or person from discovery that is annoying, embarrassing, oppressive, or unduly burdensome.

activities – *i.e.* "downstream" transactions – is irrelevant as a matter of law. As this Court held in granting direct purchaser plaintiffs' Motion for Class Certification:

> Antitrust injury is considered complete when the direct purchaser pays an illegal overcharge and <u>whether he was able to pass through the overcharge to indirect purchasers is irrelevant to the inquiry</u>. (Emphasis added).

*See J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.*, C-1-01-704, Opinion and Order, at 16-17 (Docket Entry 54) (S.D. Ohio May 12, 2003), citing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 489 (1968); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 n.14 (1972); *Illinois Brick v. Illinois*, 431 U.S. 720, 724-25 (1977). It is well established that an antitrust defendant may not seek to defeat or diminish a direct purchaser's overcharge claim by inquiring into whether the direct purchaser was able to "pass on" the effects of the overcharge farther "downstream." Hence, courts have repeatedly rejected requests for "downstream" discovery.

Additionally, the broad discovery sought by Wyeth is strongly disfavored under the law governing discovery of absent class members, which holds that such discovery should be narrow both in scope and subject matter, and permitted only upon a showing of strong justification.[3] Here, Wyeth can make no such showing; it seeks downstream discovery that is completely irrelevant to the substantive claims of *any* direct purchaser.

Since 1) the requested discovery is irrelevant to the merits of plaintiffs' overcharge claims and, 2) this Court already has determined that there is no intra-class conflict and that named

---

[3] "If discovery from absent members of the class is permissible at all, it should be sharply limited and allowed only on a strong showing of justification." *Manual for Complex Litigation* § 30.232 (3d ed. 2000); *see also*, 8 Charles A. Wright et al., *Federal Practice and Procedure* § 2171 (2d ed. 1994).

3

plaintiffs are adequate class representatives (regardless of the downstream effect of Wyeth's illegal acts) plaintiffs respectfully request that the Court grant plaintiffs' Motion for a Protective Order and preclude the requested discovery as irrelevant and overly burdensome.[4]

## II.  ARGUMENT

### A.  Discovery must be relevant

Discovery must be relevant, meaning that in order for a fact sought to be an appropriate subject of discovery, it must be germane to a claim or defense alleged in the pleading. *See* Fed. R. Civ. P. 26 (b) (1); 6 *Moore's Federal Practice* § 26.41[2][b] (3d ed. 2003). Discovery in antitrust cases is subject to the same general relevancy standard. *See* 6 *Moore's Federal Practice* § 26.46 (3d ed. 2003).

The relevancy standards apply to all modes of discovery, including, and expressly, discovery sought by subpoena. Fed. R. Civ. P. 45 (c); s*ee also, American Electric Power Company, Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (party seeking discovery has burden of demonstrating relevance of document sought by subpoena).

### B.  Discovery regarding downstream transactions is irrelevant when direct purchaser plaintiffs seek damages based on overcharge.

As this Court already has recognized, longstanding Supreme Court precedent holds that evidence regarding downstream transactions is irrelevant in a case where plaintiffs seek damages based on overcharge. *See J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.*, C-1-01-704,

---

[4] Class counsel, together with counsel for Wyeth and counsel for the individual absent class members, has participated in a series of meet and confers in an effort to resolve the matter. Consequently, absent class members are now considering whether to produce a narrow set of documents responsive to several requests that do not relate to downstream discovery. See Declaration of Jay S. Cohen in Support of Direct Purchaser Class Plaintiffs' Motion for Protective Order (Exhibit 10).

Opinion and Order, at 16-17 (S.D. Ohio May 12, 2003). *See also County of Oakland v. City of Detroit*, 866 F.2d 839, 847 (6th Cir. 1989) ("When a [direct] buyer shows that the price paid by him . . . is illegally high and also shows the amount of the overcharge, he has made out a prima facie case of injury and damage within the meaning of § 4") (citing *Hanover Shoe*; 392 U.S. at 489; *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 309-17 (E.D. Mich. 2001) (whether antitrust plaintiff seeking overcharge damages may have benefitted in a net economic sense from defendant's anticompetitive conduct is irrelevant and immaterial); *In re Buspirone Patent Litig.*, 210 F.R.D. 43, 58-60 (S.D.N.Y. 2002)(same).

In *Hanover Shoe*, the Supreme Court rejected the "passing on" defense in antitrust price-fixing cases, emphasizing that an overcharged direct purchaser is entitled to recover the full amount of the overcharge, regardless of whether the direct purchaser was able to "pass on" the effects of the overcharge to its own customers further downstream. The Supreme Court reasoned that:

> if the existence of the [pass on] defense is generally confirmed, antitrust defendants will frequently seek to establish its applicability. Treble-damage actions would often require additional long and complicated proceedings involving massive evidence and complicated theories.

*Hanover Shoe*, 392 U.S. at 493. The Supreme Court warned that opening the door to the "massive evidence and complicated theories" of a downstream inquiry – *precisely* the kind of downstream inquiry defendants want to launch here – would result in "[t]reble-damage actions, the importance of which the Court has many times emphasized, [being] substantially reduced in effectiveness." *Id.* at 494.

In *Illinois Brick*, the Supreme Court underscored its holdings in *Hanover Shoe* that:

5

> a direct purchaser suing for treble damages under § 4 of the Clayton Act is injured within the meaning of § 4 by the **full amount of the overcharge** paid by it and that the **antitrust defendant is not permitted to introduce evidence** that indirect purchasers were in fact injured by the illegal overcharge.

*Illinois Brick*, 431 U.S. at 724-25 (emphasis added). Moreover, under *Hanover Shoe*, "direct purchasers are . . . **spared the burden** of litigating the intricacies of pass-on." 431 U.S. at 745-46 (emphasis added).

Under this well-established law, since the downstream effects are completely irrelevant to a direct purchaser's overcharge claim, numerous courts have held that discovery requests addressed to downstream issues are improper. *See, e.g., Commonwealth Edison Company v. Allis-Chalmers Manufacturing Company*, 335 F.2d 203 (7th Cir. 1964) (plaintiff not required to answer interrogatories related to pass-on of overcharges); *In re Vitamins Antitrust Litigation*, 198 F.R.D. 296 (D.C.C. 2000) (denying motion to compel downstream data on sales, manufacturing, and finances, et al.); *In re Monosodium Glutamate Antitrust Litigation*, MDL 00-1328 (D. Minn. Sept. 14, 2000) (Exh. 11) (denying as irrelevant (item 3 in order of September 14, 2000) defendant's motion to compel documents regarding plaintiffs' re-sales); *In re Carbon Dioxide Antitrust Litigation*, MDL 92-940 at 4 (M.D. Fla. Nov. 18, 1993) (Exh. 12) (defendants not entitled to information about plaintiffs' costs and profits since information was irrelevant to issue of price-fixing); *In re Wirebound Boxes Antitrust Litigation*, 131 F.R.D. 578 (D. Minn. 1990) (plaintiffs' financial information was irrelevant where damages would be calculated by extent of unlawful overcharge); *Go-Tane Service Stations, Inc. v. Ashland Oil, Inc.* 508 F. Supp. 200 (N.D. Ill. 1981) (plaintiff's motion to strike pass-on defense granted; related discovery ceased); *In re Folding Carton Antitrust Litigation*, No. MDL 250, (N.D. Ill. May 5, 1978) (Exh. 13) (denying

6

defense request for financial documents to support pass-on defense).

To allow such "downstream" discovery would undermine the purpose and rationale of *Hanover Shoe* and its progeny (decisions permitting only direct purchasers to collect damages for illegal overcharges), which sought to promote the deterrent effect of the antitrust laws by avoiding the abundant complications that flow from the broad downstream discovery (and inevitable improper defenses) attempted by Wyeth here. *See Hanover Shoe*, 392 U.S. at 493.

As the law cited above makes abundantly clear, information regarding "pass-on" and other "downstream" transactions is irrelevant to plaintiffs' claims that Wyeth blocked Cenestin, a less expensive conjugated estrogen, from access to pharmaceutical drug formularies (thereby allowing defendant to utilize its illegally maintained monopoly power to raise Premarin to supracompetitive prices). Direct Purchaser Compl., *e.g.*, at 41, 43. Nonetheless, Wyeth seeks broad discovery designed to elicit this very information.

C.   <u>Wyeth seeks improper "downstream" discovery.</u>

While the requests vary somewhat in the individual subpoenas, they are substantively identical. Wyeth's subpoena to Cardinal Health Inc. (Attached as Exh. 1) is illustrative.

In the subpoena, defendant seeks, *inter alia*, documents regarding Cardinal's internal responses to Wyeth's Premarin price increases (Request Nos. 1-4, 6, 8, 9[5]); downstream sales

---

[5] The corresponding requests in the subpoenas to The Kroger Co., Wal-Mart Stores, Walgreen's Co. and Eckerd Corp. are Request Nos. 1-4 and 6. The corresponding requests in the subpoenas to McKesson Corp., AmerisourceBergen Corp., and Quality King Distributors, Inc. are Request Nos. 1-4, 6, 8, and 9.

(Request No. 11[6]); and profits (including whether or not Cardinal ultimately benefitted economically, despite Wyeth's price increases) (Request Nos. 9, 13, 14[7]). Wyeth also seeks information regarding whether and how Cardinal allegedly anticipated and blunted the net economic effect of the price increases on its own profits through practices such as "speculative purchasing" – stockpiling Premarin before a price increase became effective (Request Nos. 3, 6, 16[8]) – and "repackaging" – disassembling discounted bulk product into smaller, more expensive units for resale (Request Nos. 8, 9, 16[9]).

Wyeth offers two arguments in support of its request for this downstream discovery: 1) the discovery is relevant to prove what Wyeth would have done in the "but-for" world (a world absent Wyeth's anticompetitive acts); and 2) the discovery is relevant to show a purported intra-class conflict.

---

[6] The Requests in the Cardinal subpoena are misnumbered, resulting in two Requests that are marked No. 11. Request No. 11 referenced above follows Request No. 12 in the subpoena. The corresponding request in the subpoena to McKesson Corp. is Request No. 13 ; the corresponding request in the subpoena to AmerisourceBergen Corp. is Request No. 16.

[7] The corresponding requests in the subpoenas to The Kroger Co., Wal-Mart Stores, Walgreen's Co. and Eckerd Corp. are Request Nos. 10 and 11. The corresponding requests in the subpoena to McKesson Corp. are Request Nos. 14 and 15. The corresponding requests in the subpoena to AmerisourceBergen Corp. are Requests Nos. 12 and 13.

[8] The corresponding requests in the subpoena to The Kroger Co. are Request Nos. 3 and 6. The corresponding request in the subpoena to McKesson Corp. are Request Nos. 3 and 6. In the AmerisourceBergen Corp., and Quality King Distributors subpoenas, the corresponding requests are Requests Nos. 6 and 17; in the Wal-Mart Stores, Walgreen's Co. and Eckerd Corp. subpoenas, the corresponding request is Requests No. 6.

[9] The corresponding requests in the McKesson Corp. subpoena are Requests Nos. 8 and 9, and the corresponding requests in the AmerisourceBergen Corp. and Quality King Distributors, Inc. subpoenas are Requests Nos. 8, 9, 17.

8

As to its first argument, Wyeth argues that it would have lacked any incentive to lower its prices – even in the face of competition from Cenestin – because direct purchasers such as Cardinal were unaffected by, or allegedly actually benefitted from, higher prices (for example, by "passing on" higher costs to its customers). This is a non-sequitor. Cardinal and other Class members buy Premarin for <u>resale</u>. There is no support for the notion that Wyeth sets its prices on a wholesaler's or other direct purchaser's purported price sensitivity. But as Wyeth itself admits, a direct purchaser's decision to purchase a drug (and in what amount) is determined by the demand of its own customers – which, in turn, is influenced by the physician's ability to prescribe the drug. Plaintiffs here allege that Wyeth's improper conduct resulted in Cenestin's virtual exclusion from all major drug formularies, which control access to the drugs, and consequently its unavailability to patients and their physicians.

As Wyeth's own expert on class certification acknowledged:

> [D]irect purchasers face a derived demand for drugs, meaning their demand is based not upon the relative pricing of drugs but rather on their customers' demand for drugs.
>
> \*       \*       \*
>
> [T]he total amount of the drug sold by all wholesalers (for example) is driven by how many prescriptions for a given drug are written by physicians, and not by the wholesaler's marketing and promotional efforts. Consequently, a direct purchaser will only purchase a drug in greater volumes if it expects to be able to sell the larger quantity to its customers. And that expectation will only arise as a result of an increase in patient demand, as determined by physician prescribing behavior.

Declaration of Janusz Ordover, *J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.* at 10,

In short, direct purchasers must respond to the (downstream) demand of their consumers. Plaintiffs maintain that, but for Wyeth's improper conduct, the demand for Cenestin would have restrained Wyeth's ability to raise Premarin's price. Cardinal and other Class members buy

9

Premarin at whatever price Wyeth charges to satisfy their own customers. Whether or not direct purchasers pass on some or all of their costs "downstream" is completely irrelevant, since all that matters is what plaintiffs paid for Premarin in the absence of lawful competition from Cenestin, and what they would have paid had Wyeth not improperly prevented that competition.

As this Court has pointed out, a direct purchaser's antitrust injury is complete when that purchaser pays an illegal overcharge, and the fact that an overcharge may be passed on to subsequent purchasers is "irrelevant". *See J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.*, C-1-01-704, Opinion and Order, at 17 (S.D. Ohio May 12, 2003) (citations omitted). Wyeth simply cannot defend against its conduct by showing that a direct purchaser suffered no economic harm because some or even all of that illegal overcharge was passed on to others. Discovery aimed at eliciting such information should be prohibited.[10] Nor should Wyeth be permitted to circumvent the bar on the "pass on" defense by its fanciful argument that Wyeth's prices were affected by a wholesaler's ability to allegedly "pass on" price increases.

Wyeth also argues that certain downstream information might be relevant in determining whether there exists a conflict between a) named plaintiffs, and b) class members who purportedly might derive some "net economic benefit" from delayed competition. But this Court, in certifying the direct purchaser class, <u>expressly rejected</u> that very argument, finding that

> [A]s long as the price paid by the class members for Premarin was higher than it

---

[10] Even the lone authority that defendant cites as supporting an argument to permit this discovery - the 11th Circuit decision in *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1192-1193 (11th Cir. 2003) Plaintiffs' Petition for Rehearing en banc filed December 3, 2003 (based on plaintiffs' position that the 11th Circuit's requirement of a net benefit analysis contradicts decades of Supreme Court precedent) - recognized that information regarding resales and other downstream transactions was irrelevant to a direct purchaser plaintiff's claim of overcharge.

would have been absent the alleged anticompetitive conduct, there is no conflict created if indeed some of the direct purchasers were able to recoup the overcharge through price increases passed on to other purchasers.

In summary, the Court finds no conflict of interest issues which would make the named Plaintiffs inadequate representatives for the class.

See *J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.*, C-1-01-704, Opinion and Order, at 17 (S.D. Ohio May 12, 2003).[11]

D.  Discovery from absent class members should be sharply limited and controlled.

The Court also should deny Wyeth's expansive requests as imposing undue burdens on absent class members, in violation of Fed. R. Civ. 45 (c) (1).

As one leading class action treatise states: "A Rule 23 class action is intended to be prosecuted by a class representative without the necessity of absent class members taking an active role in the litigation. The class action rule was designed to protect the class member from this burden." *Newberg on Class Actions* § 16:4 (4th ed. 2002). Furthermore, if discovery of absent class members is permitted at all, "it should be sharply limited and allowed only on a strong showing of justification." See *Manual for Complex Litigation* § 30.232 (3d ed. 2000); *see also*, 8 Charles A. Wright et al., *Federal Practice and Procedure* § 2171 (2d ed. 1994).[12]

By way of the meet and confer process, the eight Class members subpoenaed, through

---

[11] Under the law of the case doctrine, "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *Birgel v. Board of Commissioners of Butler County, Ohio*, 125 F.3d 948, 952 (6th Cir. 1997) (Contie, J., concurring) (quoting *United States v. Todd*, 920 F.2d 399, 403-04 (6th Cir. 1990)).

[12] "One of the principal advantages of class actions over massive joinder or consolidation would be lost if class members were routinely subjected to discovery." *Manual for Complex Litigation* § 30.232 (3d ed. 2000).

11

their own counsel as well as Class counsel, have been extremely cooperative while attempting to get Wyeth to narrow the scope of its non-downstream information requests. Nevertheless, the requests remain burdensome. For instance, these requests included requests for information that Wyeth itself already had readily available. Undue burden can be established "when documents are more readily available from another source or may be obtained through a less intrusive means." *See Moore's Federal Practice* § 45.04 [3][b] (3d ed. 2003).

    E.    <u>A Protective Order may be granted for good cause.</u>

A court may grant a protective order limiting discovery for good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". See Fed. R. Civ. P. 26 (c). A showing of irrelevancy will satisfy the good cause requirement for a protective order. *See* 6 *Moore's Federal Procedure* § 26.105 [6] (3d ed. 2003); s*ee also Smith v. Dowson*, 158 F.R.D. 138, 140 (D. Minn. 1994); *McCurdy v. Wedgewood Capital Management Co.*, 1998 WL 964185, *4 (E.D.Pa. Nov. 16, 1998); *Fort James Corp. v. Sweetheart Cup Co., Inc.* No. 97-C-1221, 1998 WL 709813, *3 (S.D.N.Y. Oct. 8, 1998).

### III.    **CONCLUSION**

The downstream discovery Wyeth seeks has been determined to be irrelevant both under established Supreme Court precedent, and this Court's Order granting plaintiffs' Motion for Class Certification. This is a showing of "good cause" sufficient to grant plaintiffs' request for a protective order.

The Protective Order should bar all discovery into downstream data. As to non-downstream data, each of the eight Class members subpoenaed should be given an opportunity to determine whether or not producing such information is unduly burdensome.

Dated: February 10, 2004          Respectfully submitted,

         s/Theresa L. Groh
         Theresa L. Groh (29806)
         **MURDOCK GOLDENBERG**
           **SCHNEIDER & GROH, L.P.A.**
         700 Walnut Street, Suite 400
         Cincinnati, OH 45202-2011
         Tel: (513) 345-8291
         Fax: (513) 345-8294

         *Local Counsel for Direct Purchaser Class*

         Eugene A. Spector
         Jay S. Cohen
         **SPECTOR, ROSEMAN & KODROFF, P.C.**
         1818 Market Street, Suite 2500
         Philadelphia, PA 19103
         Tel: (215) 496-0300
         Fax: (215) 496-6611

         *Co-Lead Counsel for Direct Purchaser Class*

         Laddie Montague
         Ruthanne Gordon
         David F. Sorensen
         Eric L. Cramer
         **BERGER & MONTAGUE, P.C.**
         1622 Locust Street
         Philadelphia, PA 19103
         Tel: (215) 875-3000
         Fax: (215) 875-4604

         *Co-Lead Counsel for Direct*
         *Purchaser Plaintiffs*

         Barry Taus
         Jan Bartelli

**GARWIN, BRONZAFT, GERSTEIN &
FISHER, L.L.P.**
1501 Broadway, Suite 1416
New York, NY 10036
Tel: (212) 398-0055
Fax: (212) 764-6620

*On the Brief*

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing Direct Purchaser Class Plaintiffs' Motion for Protective Order has been served this 10th day of February, 2004, as follows:

*VIA OVERNIGHT DELIVERY*
William J. Baer, Esquire
David S. Eggert, Esquire
ARNOLD & PORTER
Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, D.C. 20004

Dan K. Webb, Esquire
W. Gordon Dobie, Esquire
Peggy M. Balesteri, Esquire
WINSTON & STRAWN
35 West Wacker Drive
Chicago, IL 60601

Steve D. Shadowen, Esquire
Gordon A. Einhorn, Esquire
HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700
Harrisburg, PA 17101
*Counsel for CVS and Rite Aid*

Howard Sher
Eliot G. Long
BUCHANAN INGERSOLL
1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985
*Counsel for AmerisourceBergen Corporation*

Mark A. Taylor
Dennie Mouser
Wal-Mart Legal Department
702 S.W. 8th Street
Bentonville, AK 72716-0215
*Counsel for Wal-Mart Stores, Inc.*

Ronald D. Lefton
GREENBERG TRAURIG
Met Life Building
200 Park Avenue
New York, NY 10166
*Counsel for Wal-Mart Stores, Inc.*

Anthony J. Viola
EDWARDS & ANGELL, LLP
750 Lexington Avenue
New York, NY 10022
*Counsel for Quality King Distributors, Inc.*

Peter K. Huston
LATHAM & WATKINS LLP
515 Montgomery Street, Suite 1900
San Francisco, CA 94111-2562
*Counsel for McKesson Corporation*

Thomas L. Long
BAKER & HOSTETLER LLP
Capitol Square, Suite 2100
65 East State Street
Columbus OH 43215-4260
*Counsel for Cardinal Health, Inc.*

                                          <u>s/Theresa L. Groh</u>
                                          Theresa L. Groh