# EXHIBIT 13

HLM, Jr.     MGD
DxB     RG
PRK     PN
JMM     BDC
DFS     JA
ELC     KSZ
PxK     ETN
MDA     NWC
DCS  (HYTRIN)

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE FOLDING CARTON )
ANTITRUST LITIGATION )
 )
——————————————————— )   Master File No. MDL 250
 )
THIS DOCUMENT RELATES TO: )
ALL ACTIONS )

### PRETRIAL ORDER NO. 32

### MEMORANDUM AND ORDER

This cause is before the court on plaintiffs' motion to modify or vacate the portion of Pretrial Order No. 24 ordering plaintiffs to produce certain financial information sought in defendants' Revised Request No. 16.[1] For the reasons hereinafter stated, the motion is granted.

In Pretrial Order No. 30, we denied plaintiffs' 28 U.S.C. § 1292(b) motion for an order certifying for interlocutory appeal the provision of Pretrial Order No. 24 ordering plaintiffs to produce certain financial information sought in defendants' Revised Request No. 16. In Pretrial

---

[1] Revised Request No. 16 seeks:

A copy of plaintiff's annual reports, balance sheets, profit and loss statements and intra-company annual financial reports or plaintiff's operations utilizing folding cartons.

-2-

Order No. 30, we also deferred ruling on plaintiffs'
alternative motion to vacate or modify Pretrial Order
No. 24 with respect to Revised Request No. 16.  Although
we ruled that defendants are not entitled to plaintiffs'
financial information to support a pass-on defense, we
wanted to give defendants an opportunity to show how the
financial information they seek is relevant to the subject
matter of this litigation.  We stated that, absent such
a showing, plaintiffs' motion to vacate or modify would
be granted.

Defendants offer three reasons or arguments why
the financial data they seek in Revised Request No. 16 [2]
is relevant to the subject matter of the litigation.
Plaintiffs take issue with defendants' arguments. We will
consider each of the arguments separately.

_____

[2] Before arguing why the documents are relevant to plaintiffs'
overcharge claims, defendants enunciate what they consider
to be the legal standards applicable to their discovery
request.  Defendants submit that just because plaintiffs do
not intend to use their financial data as evidence does not mean
that the data is irrelevant for purposes of discovery.  Defen-
dants state that they are not bound by plaintiffs' theory of
the case and that they may use their own theories and concepts
of proof to support their defense.  They assert also that they
need not show that the financial data sought is directly ad-
missible into evidence.  Defendants point out that discovery is
to be considered relevant when there is any possibility that the
information sought may be relevant to the subject matter of the
litigation.
Defendants further assert that plaintiffs must prove separ-
ately three elements — (1) antitrust violation, (2) impact or
fact of damage, and (3) amount of damage.  Defendants contend
that Revised Request No. 16 relates to the issues of impact and
(Continued on page 3)

-3-

"Countervailing Power"

Defendants assert that the financial data sought
is relevant to determine whether large and prosperous
purchasers of folding cartons exercised "countervailing
power" to prevent prices of folding cartons from rising
to improperly high levels.  Plaintiffs concede that some
of the purchasers of folding cartons included large and
prosperous buyers.  They assert, however, that this is
completely inconsequential, just as it was in the Electrical
Equipment cases, including Commonwealth Edison Co. v. Allis-
Chalmers Mfg. Co., 225 F. Supp. 332 (N.D. Ill. 1963), aff'd,
335 F.2d 203 (7th Cir. 1964).

We do not find defendants' "countervailing power"
argument persuasive.  The defense that plaintiffs' economic
power could have kept the prices of folding cartons down is
irrelevant where, as here, the crucial issue is whether
there was a conspiracy to fix prices.  To suggest that a
conspiracy was not as successful as it might have otherwise
been because of the plaintiffs' countervailing economic power
is absurd.  Such an alleged "economic check" is of no
consequence in a price fixing case.

In addition, defendants' "countervailing power"

_____

(2 continued from page 2)

damages.  They maintain that plaintiffs may not "avoid the
necessity of proving impact or fact of damage by inducing
the Court 'to presume' damage from the proof of conspiracy."
(Defendants' Brief at 2).

P.05

DEC-11-2003 09:10

-4-

argument ignores the principle we recognized in Pretrial
Order No. 20, In Re Folding Carton Antitrust Litigation, 75
F.R.D. 727 (N.D. Ill. 1977), that where a conspiracy to fix
prices is established, all members of the class are
presumed to have been injured in fact.  That is, assuming
that it is demonstrated that the prices of folding cartons
were fixed, all buyers thereof will be presumed to have
paid higher prices for those cartons by reason of the price-
fixing conspiracy.  Whether certain buyers made profits is
irrelevant to the question whether those buyers actually
paid higher prices as a result of the alleged conspiracy
to fix prices.  Moreover, buyers' leverage is not determined
by profits, but by volume of purchases.  Plaintiffs state
that they have already made available to defendants information
regarding the quantity of their folding carton purchases.

"Backward Integration"

Defendants argue that the financial data sought
could be used to assess the size and prosperity of buyers
to measure the feasibility of "backward integration" by which
purchasers of folding cartons would develop their own folding
carton manufacturing facilities.  Defendants contend that
evidence that "backward integration" is relatively easy
and inexpensive, coupled with evidence of prosperous buyers
able to make the necessary capital investment, would tend to
demonstrate the lack of impact of any price-fixing conspiracy.

-5-

Defendants submit that if "price-fixers" caused folding carton prices to become excessive, buyers would make their own cartons.

Plaintiffs contend that the feasibility of "backward integration" is equally immaterial in a case such as this where overcharge is the sole basis for damage. They concede that some purchasers of cartons use relatively large numbers of cartons, and state that they have provided discovery, without objection, as to purchases they made. Nevertheless, plaintiffs submit that their profits or losses in other aspects of their business would not be pertinent and would involve the very inquiries prohibited by Illinois Brick Co. v. State of Illinois, 431 U.S. 720 (1977).

We find defendants' relevance arguments with respect to "backward integration" without merit. The feasibility of "backward integration" is immaterial where, as here, the sole basis for damages is overcharge. Even assuming that some of the plaintiffs had the power to enter the folding carton manufacturing business and manufacture their own folding cartons, this would not make the details of their financial situations relevant to an overcharge case in which they were suing as purchasers. A fortiorari, such financial information is irrelevant where it is unknown whether "backward integration" is feasible. Moreover, while

-6-

evidence regarding the feasibility of "backward integration"
might well be relevant in a monopoly case, it is irrelevant
to the alleged price-fixing conspiracy before us.

Profitability and Damage Evidence

        Defendants state that the financial data sought
could help them to rebut plaintiffs' damage evidence.
Defendants contend that "if the profitability of the buyers'
operations using folding cartons increased by more than
the standard price indices during the precise time at which
the plaintiffs claim the conspiracy became effective,"
(Defendants' Brief at 6) it would detract from the weight
of plaintiffs' damage evidence.  Defendants further state
that because plaintiffs traditionally use defendants' profit
data to prove overcharges and damages, defendants should
be entitled to discover plaintiffs' profitability in order
to attempt to develop evidence of lack of impact and damages.

        Plaintiffs contend that "[w]hether 'the profitability
of the buyers' operations using folding cartons increased
by more than the standard price indices' is not only
irrelevant, but clearly illustrates the vice of defendants'
entire position on Request No. 16."  (Plaintiffs' Brief at 4).
Plaintiffs submit that "the Court would be obliged to inquire
into the economics and finances of practically every major
industry using cartons, to ascertain whether each purchaser
absorbed, passed-on or made a profit on the overcharges, in
comparison with industry generally, and the amounts thereof."

-7-

Id. Plaintiffs assert that the magnitude and complexity
of such investigations would dwarf the genuine issues of
conspiracy and overcharge. Finally, plaintiffs state that
such investigations are clearly proscribed by the Supreme
Court's decision in Illinois Brick.

    As we have stated previously, the mere fact that
plaintiffs are entitled to financial data about defendants
does not mean that defendants are necessarily entitled to
plaintiffs' financial data. See Pretrial Order No. 24, In
Re Folding Carton Antitrust Litigation, 76 F.R.D. 420
(N.D. Ill. 1977). Whether plaintiffs should be required
to produce financial information is a separate question.
Id.

    We agree with plaintiffs that whether the profit-
ability of purchasers' operations using folding cartons
increased by more than the standard price indices is
irrelevant to the subject matter of this litigation. If
there was an overcharge, its amount can be determined by
looking at the price movement of folding cartons and not
the profit pictures of various folding carton purchasers.
If plaintiffs are entitled to recover for an overcharge,
they will do so regardless of whether their profits decreased
or increased during the period of the conspiracy. Hanover
Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481
(1968). Whether purchasers absorbed, passed-on, or made a

-8-

profit on the overcharges in comparison with the industry generally is irrelevant, and investigations into such matters are proscribed by Illinois Brick.

Other Matters

Defendants question our reliance on plaintiffs' statement that they seek to recover only overcharges and not lost profits or injury to business. When we issued Pretrial Order No. 30, we thought plaintiffs' position was clear. Whatever uncertainty defendants may have thought previously existed in the record has been formally clarified by plaintiffs. They have stated categorically that "[p]laintiffs do not and will not seek to recover lost profits." (Plaintiffs' Reply Brief at 1).

Defendants nevertheless assert that none of the statements concerning the intentions of the named plaintiffs indicate any commitment concerning potential claims for consequential damages by opt out plaintiffs or by class members. They submit that "[s]ince it is doubtful that the named plaintiffs as class representatives have authority to waive consequential damage claims of class members, a court order barring such claims (perhaps after notice to the class) would be necessary before defendants could be confident that these claims had been eliminated from this litigation." (Defendants' Brief at 8). Consequently, defendants suggest that if we conclude that the claims for consequential damages have been eliminated from this litigation, an order should

-9-

be entered barring any named plaintiffs, class members,
or opt outs who have filed suits which are before us from
asserting any claims for damages other than alleged over-
charges.  Absent such an order barring plaintiffs,
defendants assert that it is undisputed that Revised
Request No. 16 is relevant to the damage claims.

Finally, defendants submit that, if any claimants
intend to assert consequential damage claims, then defendants
are entitled to the requested financial data from all
plaintiffs; not just from  those members who may ultimately
seek consequential damages.  Defendants reason that proof
of causation between a claimed overcharge by defendants and
a "turndown" in the profits of a class member claiming
consequential damages is inherently conjectural.  Therefore,
they argue that they are entitled to discovery in an effort
to rebut the claimed impact by using as a comparison
profitability figures relating to the named plaintiffs who
were not claiming consequential damages.

We must first note that the motion before us was
filed by counsel representing the class.  Plaintiffs who have
opted out of the class and filed individual actions did not
join in the motion.  We do not know upon what damage theory
these nonclass plaintiffs are proceeding.  If they seek to
recover lost profits or for injury to business, defendants
would be entitled to discover their financial data.  We
do not agree with defendants that we should enter an order

-10-

barring nonclass plaintiffs from asserting any claims for
damages other than for alleged overcharges especially where,
as here, we do not know upon what damage theory they are
proceeding.

Defendants' suggestion that the named plaintiffs,
as class representatives, are waiving consequential damages
of class members and that the representatives lack authority
to do so misses the mark. At this time, we have simply
received a representation from counsel for the class repre-
sentatives that no class plaintiff seeks or will seek to
recover for lost profits. At this time, we see no reason
why we cannot rely upon this clear, unequivocal statement.
We assume that the attorneys for the class representatives
are fulfilling their obligations to the class members and
that these attorneys would be aware of, and advise us of,
any class member seeking to recover lost profits.

We do not believe that it is necessary to enter
an order barring any named plaintiff or class members from
asserting any claims for damages other than for alleged
overcharges. As for defendants' argument that, if claimants
intend to assert consequential damage claims, then defendants
are entitled to the requested financial data from all
plaintiffs, we need not reach it until such time as we are
advised that any plaintiff seeks consequential damages.

-11-

For the reasons stated, it is therefore ordered
that plaintiffs' motion to modify or vacate the portion
of Pretrial Order No. 24 ordering plaintiffs to produce
certain financial information sought in Revised Request
No. 16 is hereby granted.

UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT JUDGE

May 5, 1978.