IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| J.B.D.L. Corp. d/b/a <br> BECKETT APOTHECARY, et al., | Civil Action No. C-1-01-704 |
| Plaintiffs, | Judge Sandra S. Beckwith <br> Magistrate Judge Timothy S. Hogan |
| v. | |
| WYETH-AYERST LABORATORIES, INC., et al., | |
| Defendants. | |

**WYETH'S OPPOSITION TO DIRECT PURCHASER CLASS
PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

Defendants Wyeth and Wyeth Pharmaceuticals (collectively, "Wyeth") respectfully submit this brief in opposition to class plaintiffs' motion for an order precluding Wyeth from obtaining relevant discovery in this case.

**INTRODUCTION**

Wyeth served subpoenas on a few of its largest customers (who are members of the class) seeking information that is directly relevant to a central liability issue in this case – i.e., whether price increases by Wyeth were caused by allegedly unlawful contracts, or whether these price increases were in fact the result of other (lawful) market factors. Class plaintiffs seek a protective order precluding Wyeth from obtaining this critical discovery, by raising an irrelevant legal point. They argue that under Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 494 (1968), an antitrust defendant-seller who charges an unlawful price cannot avoid paying damages to plaintiff-

purchasers simply by showing that plaintiff-purchasers "passed on" the unlawful price to their own customers.

This is a red herring. Wyeth is not seeking information from wholesalers to assert a "pass on" defense. To the contrary, as Wyeth demonstrates herein and in its motion to compel discovery from wholesalers Cardinal and Amerisource Bergen (filed on February 9),[1] Wyeth seeks documents from the subpoenaed wholesalers for the entirely different – and clearly relevant – purpose of demonstrating that its list price increases were the result of market factors (such as "speculative purchasing" by large wholesalers), and were not caused by the allegedly exclusionary contracts that plaintiffs are challenging in this case. It would be fundamentally unfair to deny Wyeth the right to obtain this discovery. Class plaintiffs' motion for a protective order should be denied, and Wyeth's previously filed motion to compel should be granted.

## ARGUMENT

I. **Wyeth's Discovery Requests Seek Information Directly Relevant to Key Issues in this Litigation**

Class members contend that they pay list prices for Premarin, and that these list prices were artificially inflated through Wyeth's contracts with managed care organizations and pharmacy benefit mangers (collectively, "MCOs"). Wyeth's discovery requests are focused on a central liability issue – whether Wyeth's "list prices" would

---

[1] Wyeth's motion to compel Cardinal and Amerisource Bergen addresses the very same issues raised by class plaintiffs in the current motion. Rather than repeating that discussion herein, Wyeth summarizes the key points and refers the Court to that filing in further support of its opposition to class plaintiffs' motion for protective order.

have been lower if Wyeth had not entered the contracts that plaintiffs allege are anticompetitive.

The documents sought by Wyeth relate to the issue of whether its largest customers, rather than pressing Wyeth to reduce list prices, have willingly accepted and relied upon regular price <u>increases</u> by manufacturers (including Wyeth) to sustain their profitability during the class period. This practice by wholesalers is known in the trade as "speculative purchasing."[2] Specifically, wholesalers stockpile products in anticipation of manufacturer price increases, and then make money by raising their resale prices on such products after the manufacturers actually implement their price increases. Simply put, they buy "low" and sell "extra high." Each time a manufacturer increases its price, it provides wholesalers with the opportunity to profit from their "speculative purchasing." In many industries, wholesalers oppose price increases by manufacturers and exercise their bargaining power to deter such increases. Wyeth intends to prove that speculative purchasing practices by wholesalers in this case made such wholesalers receptive to price increases, thus enabling Wyeth to raise its prices for wholly lawful reasons without encountering resistance from them.

Such information about wholesalers' speculative purchasing practices will allow Wyeth to rebut plaintiffs' allegation that Wyeth's price increases were caused by Wyeth's alleged "exclusive dealing" contracts with MCOs. If, as Wyeth intends to prove, list

---

[2] See, e.g., Cardinal's 2003 10-K (noting that Cardinal has "historically invested capital in pharmaceutical inventory to take advantage of relevant market dynamics, including anticipated manufacturer price increases"); Amerisource Bergen 2001 10-K (noting that its increased inventories reflected "inventory purchased to take advantage of buy-side gross profit opportunities including opportunities associated with manufacturer price increases and negotiated deals").

prices were unaffected by Wyeth's allegedly unlawful contracts, then class members suffered no antitrust injury and Wyeth can have no antitrust liability in this case. In short, the discovery sought by Wyeth will go to the heart of plaintiffs' claim.

### A. Hanover Shoe Is Inapplicable to the Discovery Issue Before the Court

In objecting to Wyeth's discovery requests, class plaintiffs argue that discovery of documents relating to wholesalers' speculative purchasing is somehow barred by the Supreme Court's ruling in Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 494 (1968). In fact, Hanover Shoe does not set forth any such rule. Hanover Shoe dealt with an unrelated issue of damages; it simply held that when plaintiffs prove an antitrust violation resulting in an illegal price increase, the defendant cannot avoid paying damages to plaintiff-purchasers by showing that the illegal price increase was "passed on" by plaintiff-purchasers to their own customers. Wyeth, however, seeks documents from wholesalers for the entirely different purpose of demonstrating that its list price increases were not illegal – i.e., that the price increases were the result of market factors such as wholesaler speculative purchasing, and were not the result of Wyeth's allegedly "exclusionary" contracts. Hanover Shoe is simply inapplicable.

Rather than address the legitimate purpose underlying Wyeth's discovery, class plaintiffs ask this Court to summarily reject Wyeth's defense on the merits, because (according to plaintiffs) there "is no support for the notion that Wyeth sets its prices on a wholesaler's or other direct purchaser's purported price sensitivity." (Motion at 9.) That will be for the fact-finder to decide. A plaintiff cannot object to discovery that is clearly relevant to a defense in the action on the grounds that defendant has not yet "proved" that defense. As another court ruled in rejecting a similar effort by plaintiffs to rely on

4

Hanover Shoe to avoid legitimate discovery: "It is not necessary that a claim or defense be proven valid before discovery thereon will be allowed." In re Infant Formula Antitrust Litigation, MDL 878 at 7-8 (N.D. Fla. January 15, 1992) (Ex. H to Wyeth's motion to compel) (discovery of "downstream" pricing information is permissible when it might lead to admissible evidence relating to pricing). See e.g., Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181 (11th Cir. 2003) (ordering district court to "permit 'downstream discovery' to determine whether a fundamental conflict exists among the class members" in light of defendant's unproven assertion that large wholesalers benefited from the challenged conduct). "Merits" issues such as the relationship between wholesalers' speculative purchasing practices and Wyeth's list pricing decisions cannot be resolved in the context of this discovery motion.

### B. Plaintiffs' Citations Do Not Suggest that Hanover Shoe Is Applicable

Class plaintiffs cite several cases in an effort to support their broad contention that "discovery requests addressed to downstream issues are improper." (Motion at 6). However, most of the cases cited by class plaintiffs are irrelevant to the issue here, because they simply stand for the unremarkable (and undisputed) proposition that requests for "downstream" discovery may be denied when the purpose – unlike here – is to establish a pass-on defense. See, e.g., Go-Tane-Service Stations, Inc. v. Ashland Oil, Inc., 508 F. Supp. 200, 204-06 (N.D. Ill. 1981) (after court struck affirmative defense that defendant "passed through all charges" to its customers, court precluded discovery specifically relating to that affirmative defense); Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 335 F.2d 203 (7th Cir. 1964) (manufacturers could not assert "pass on" defense); In re Folding Cardon Antitrust Litigation, MDL 250, Pretrial Order No. 32

(N.D. Ill. May 5, 1978) (denying defense request for financial documents to support pass-on defense).

In fact, only one case relied upon by plaintiffs clearly addresses the issue before the Court here – whether "downstream" discovery is permissible for purposes <u>other than</u> establishing a "pass on" defense – and that case supports Wyeth's contention that the discovery it seeks here is appropriate. See In re Vitamins Antitrust Litigation, 198 F.R.D. 296, 299 (D.D.C. 2000).[3] In the Vitamins case, although the defendants' expansive requests for data relating to plaintiffs' "use, manufacture, sale, marketing, distribution, or supply" of vitamins were ultimately denied, the court acknowledged that:

> [d]efendants are correct that Hanover Shoe and its progeny do not render irrelevant plaintiffs' individualized downstream data because defendants are not seeking discovery of this data in order to assert a pass-on defense; rather defendants contend that this information is relevant to the determination of consumer demand which, according to [defendants' experts] is a relevant factor in the calculation of 'but for' prices that will be determinative of plaintiffs' damages. Id.

The denial of defendants' requests for downstream discovery in the Vitamins case was based on the court's balancing of the relative benefits and burdens associated with the requests, not the over-broad reading of Hanover Shoe that plaintiffs urge here. The Vitamins court assumed that the requested data were relevant, but concluded that the

---

[3] Another case cited by plaintiffs, In re Carbon Dioxide Antitrust Litigation, MDL 92-940 (M.D. Fla. Nov. 18, 1993), simply held that in a price-fixing case, information about plaintiffs' costs and profits was not relevant to the issue of whether defendants actually fixed prices. In other cases cited by class plaintiffs, "downstream" discovery was denied without any discussion or analysis of the purpose of such discovery. In re Monosodium Glutamate Antitrust Litigation, MDL 00-1328 (D. Minn. Sept. 14, 2000); In re Wirebound Boxes Antitrust Litigation, 131 F.R.D. 578 (D. Minn. 1990). As a result, such cases do not support plaintiffs' contention that Hanover Shoe precludes Wyeth's discovery directed at issues other than a "pass on" defense.

data sought by defendants could also be obtained from generalized, public information. Accordingly, the court concluded that "compelling production of individualized downstream data in response to defendant's 29 requests would impose an undue burden on plaintiffs" that would "outweigh[] any potential benefit[s] defendants might yield from this data." Id. at 301.

The benefit/burden analysis is markedly different in the case at hand: the requested information is directly relevant to a central issue of liability in the case, the information is not available from named plaintiffs or public sources[4], the discovery requests are limited in scope, and there is no basis for concluding that it would be unduly burdensome for the wholesalers to respond to the requests. In short, far from supporting plaintiffs' request for a protective order, the Vitamins case actually confirms that Wyeth's discovery is proper.

### C. Applicable Case Law Confirms That Wyeth's Discovery is Proper

In contrast to the cases relied on by plaintiffs, the cases that actually have addressed the issue before this Court have concluded that discovery is not barred by Hanover Shoe if it relates to issues other than a "pass on" defense. See Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181, 1192 (11th Cir. 2003) (ruling that "downstream discovery" relating to a conflict between named plaintiffs and large wholesalers should have been permitted); In re Infant Formula Antitrust Litigation, MDL

---

[4] Wyeth has cited public sources (primarily SEC filings) which support its contention that its largest customers have relied upon regular price increases by manufacturers to sustain their profitability during the class period. However, the information available to Wyeth from these public sources in no way obviates Wyeth's need for the subpoenaed class members' internal documents (including business plans and other analyses) relating to their "speculative purchasing" polices and practices.

878 at 7-8 (N.D. Fla. January 15, 1992) (Ex. H to Wyeth's motion to compel) (allowing "downstream" discovery and noting that "[i]t is not necessary that [defendant's theory] be proven valid before discovery thereon will be allowed"); Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 138 F. Supp. 2d. 357, 371 (E.D.N.Y. 2001) (holding that "pass-on" evidence was relevant (and admissible at trial) as "permissible background information" to show how the insurance business operated).

Indeed, while the discovery Wyeth seeks is clearly relevant even if characterized as "downstream" discovery, it is worth emphasizing that this discovery is actually focused on wholesalers' purchases from Wyeth, and not on the details of wholesalers' sales to "downstream" customers. In short, the discovery is focused on the "direct" purchases from Wyeth that are at the core of this "direct purchaser" class action. The only challenged request that seeks any type of "downstream" sales information is a request seeking specific, limited information relating to claims that some wholesaler class members have assigned to retail pharmacy customers; that information is unquestionably relevant to standing and to plaintiffs' damages claims.

### D. **Wyeth's Discovery Is Also Relevant to the Issue of Class "Conflicts"**

Class plaintiffs also ask this Court to summarily reject Wyeth's contention that discovery focusing on speculative purchasing is relevant to the issue of whether there is an irreconcilable "conflict" between large class members who benefited from Wyeth's price increases through speculative purchasing and the smaller class representatives, who allegedly were harmed by those price increases. According to class plaintiffs, Judge Beckwith rejected this argument in her May 12 class certification decision, and therefore the issue is closed forever.

The Federal Rules of Civil Procedure, however, reveal the fallacy of plaintiffs' argument. Evidence of a conflict between large class members and the class representatives could lead the Court to de-certify the class at any time. Under Fed R. Civ. P. 23(c)(1), a court may alter or amend a decision on class certification "before the decision on the merits." The Court is obligated to monitor the decision on class certification and amend or alter the decision as needed in light of evidentiary developments. Daenzer v. Wayland Ford, Inc., 210 F.R.D. 202, 205 (W.D. Mich. 2002) (citing Richardson v. Byrd, 709 F.2d 1016, 1019 (5th Cir. 1983), and Reed v. Town of Babylon, 914 F. Supp. 843, 848-49 (E.D.N.Y. 1996)).

Indeed, a recent Eleventh Circuit opinion, issued after Judge Beckwith's class certification decision, is instructive as to why the discovery sought by Wyeth remains relevant despite Judge Beckwith's initial ruling on class certification. In Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181 (11th Cir. 2003), an antitrust case involving the pharmaceutical industry,[5] the Eleventh Circuit reversed the district court's order certifying a class of direct purchasers. The reversal was based on a finding that the district court failed to evaluate whether the "adequacy of representation" requirement of Rule 23 "could be satisfied by the named representatives despite the fact that the most significant members of the certified class [the three largest wholesalers] arguably experienced a net gain from the conduct alleged to be illegal by the named representatives." Id. at 1188. Rejecting an objection based on Hanover Shoe, the

---

[5] Valley Drug involved allegations that a branded drug manufacturer conspired with the manufacturer of a potentially competing generic drug product to prevent or delay the entry of a lower priced generic drug product into the market.

Eleventh Circuit ruled that it was necessary "to permit 'downstream discovery' to determine whether a fundamental conflict exists among the class members." Id. at 1195. For the same reasons, Wyeth should be entitled to the requested discovery to establish the existence of this type of conflict, which Wyeth believes will eventually lead Judge Beckwith to de-certify the class.

## II. The Subpoenaed Third Parties Are Not Immune from Discovery Simply Because They Are Class Members

Wyeth has been very judicious in its discovery. The limited, targeted subpoenas served by Wyeth on a handful of its largest customers seek evidence that will be crucial to Wyeth's ability to defend itself. Although the class consists of thousands of direct purchasers, most are small companies accounting for a tiny fraction of the Premarin sold during the class period. Wyeth has not directed its discovery at the thousands of small class members. Rather, the eight subpoenaed class members are Wyeth's largest direct purchasers of Premarin, representing approximately 88% of the entire volume of class purchases. As a practical matter, these eight class members are the real parties in interest in this case; their financial interest in this case dwarfs that of the named plaintiffs, who together account for less than 0.1% of the direct purchases from Wyeth. Moreover, the subpoenaed class members are the ones engaging in speculative purchasing, and thus they possess critically important information that is not in the possession of the named class representatives.

Numerous cases have upheld the propriety of discovery from class members. As noted in Transamerican Refining Corp. v. Dravo Corp., 139 F.R.D. 619, 621 (S.D. Tex. 1991), the majority of courts have permitted such discovery where the information is

10

(1) relevant to the common issues in the case, (2) the requests are tendered in good faith, and (3) the same information is not available from class representatives. See also Brennan v. Midwestern United Life Ins. Co., 450 F.2d 999, 1004 (7th Circuit, 1971) (holding that discovery from absent class members was appropriate); Robertson v. National Basketball Ass'n, 67 F.R.D. 691, 699 (S.D.N.Y. 1975) (permitting discovery from absent class members); Bogosian v. Gulf Oil Corp, 1983 WL 1938 (E.D. Pa. December 16, 1983) (permitting depositions of absent class members identified as witnesses). In Transamerican Refining, the court permitted discovery from 50 class members. See 139 F.R.D. at 622. Here, Wyeth has sought discovery from just eight class members.

Class plaintiffs rely on selected quotations from practice manuals to support their contention that Wyeth's discovery requests are improper because discovery imposes "undue burdens on absent class members." In particular, they assert that discovery of absent class members "should be sharply limited and allowed only on a strong showing of justification." Manual for Complex Litigation (Third) § 30.232 (1995) (citations omitted). Even assuming arguendo that this is the test for permitting discovery of absent class members, for the reasons set forth above Wyeth easily satisfies the test.

There is simply nothing in the record to support class plaintiffs' naked assertion that Wyeth's requests are unduly burdensome.[6] In fact, this contention is belied by the

---

[6] Class plaintiffs' only attempt to support their claim of undue burden is their assertion that the requests may, in part, seek information that is already in Wyeth's possession. (Motion at 12.) This assertion is unfounded. Wyeth made clear in its "meet and confer" discussions with the subpoenaed parties that it will not require the production of documents (such as Wyeth price change notifications) that are already in Wyeth's possession.

fact that McKesson, one of the eight subpoenaed class members whose interests class counsel is purporting to protect, has agreed to comply fully with the very requests challenged herein. Furthermore, even Cardinal and Amerisource, while declining to produce most of the relevant documents sought, have indicated a willingness to produce documents in response to some of Wyeth's subpoena requests (i.e., those not relating to the so-called "downstream" issues). Class plaintiffs are using vague, unsupported claims of burden as a crutch to support their unjustified refusal to produce relevant documents.

The information requested by Wyeth would clearly be discoverable if the eight class members were traditional third parties. There is no reason to insulate these companies from discovery simply because they are also part of the class that is suing Wyeth. See, e.g., 5 Alba Conte and Herbert B. Newberg, Newberg on Class Actions 16:3 (4th Ed. 2002) (noting that absent class members are subject to same discovery procedures available for nonparty witnesses). Under any standard, these class members should respond to Wyeth's discovery.

## CONCLUSION

Wyeth has a compelling need for the discovery requested from the eight subpoenaed class members. The information sought relates to a central issue in this litigation – whether Wyeth's list prices would have been lower if Wyeth had not used the allegedly exclusionary contracts plaintiffs are challenging. The authority cited by plaintiffs, including the Supreme Court's decision in Hanover Shoe, simply does not apply to the discovery requested by Wyeth. Moreover, plaintiffs have not demonstrated any undue burden associated with responding to Wyeth's document requests. For the

reasons set forth above and in Wyeth's Motion to Compel (filed February 9, 2004), class plaintiffs' motion for a protective order should be denied.

                                      Respectfully submitted,

                                      s/ *Grant S. Cowan*_____
                                      James R. Adams  (0008253)
                                      Grant S. Cowan   (0029667)
                                      **FROST BROWN TODD LLC**
                                      2200 PNC Center
                                      201 E. Fifth Street
                                      Cincinnati, Ohio  45202-4182
                                      (513) 651-6745
                                      Trial Attorney For Defendants

                                      William J. Baer
                                      David S. Eggert
                                      **ARNOLD & PORTER LLP**
                                      555 Twelfth Street, N.W.
                                      Washington, D.C.  20004-1206
                                      (202) 942-5000

                                      Dan K. Webb
                                      W. Gordon Dobie
                                      **WINSTON & STRAWN LLP**
                                      35 West Wacker Drive
                                      Chicago, Illinois  60601-9703
                                      (312) 558-5600


                                      Counsel for Defendants


Dated:  February 24, 2004

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing has been served electronically this 24th day of February, 2004 on all counsel of record with CM/ECF registration and by U.S. mail, postage prepaid and Facsimile upon the following:

Ruthanne Gordon
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA  19103
Facsimile: (215) 875-4606

Marc H. Edelson, Esq.
**HOFFMAN & EDELSON**
45 West Court Street
Doylestown, PA  18901

Steve D. Shadowen
Gordon A. Einhorn
**HANGLEY ARONCHICK SEGAL & PUDLIN**
30 North Third Street, Suite 700
Harrisburg, PA 17101-1810
Facsimile: (787)364-1020

Daniel E. Gustafson, Esq.
**GUSTAFSON GLUEK PLLC**
725 Northstar E.
608 2nd Ave. S.
Minneapolis, MN 55402

Thomas L. Long, Esq.
**BAKER & HOSTETLER LLP**
Capitol Square, Suite 2100
65 East State Street
Columbus, OH  43215

Eliot Long, Esq.
**BUCHANAN INGERSOL**
1835 Market Street, 14th Floor
Philadelphia, PA  19103

s/ *Grant S. Cowan*_____
Grant S. Cowan
Frost Brown Todd LLC

CinLibrary/1373369.2

14