**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| J.B.D.L. Corp. d/b/a ) <br> BECKETT APOTHECARY, et al., ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WYETH-AYERST LABORATORIES, ) <br> INC., et al., ) <br> ) <br> Defendants. ) | Civil Action No. C-1-01-704 <br><br> Judge Sandra S. Beckwith <br> Magistrate Judge Timothy S. Hogan |

**DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO DEFENDANT WYETH'S MOTION TO COMPEL**

**I.   INTRODUCTION**

In seeking to compel two absent class members to produce legally irrelevant, burdensome, and improper "downstream" and "pass on" information, defendant Wyeth offers two meritless rationales.[1]  First, Wyeth contends that it needs discovery into whether class members benefited from price increases because Wyeth suggests – without a shred of factual support – that *it raised its own standard list prices* in part *because individual* class members allegedly benefited from price hikes.  Wyeth claims that it is trying to prove a "defense" that, even had it not thwarted competition from Cenestin, Wyeth would not have lowered its list Premarin prices anyway

---

[1] Wyeth subpoenaed eight entities, but its motion to compel relates to two: (1) AmeriSourceBergen Corporation ("ABC"); and (2) Cardinal Health, Inc. ("Cardinal").  We also refer the Court to the separate Motion to Quash filed by ABC (Doc. #86).  We understand that Cardinal also is filing a separate response.

{00009554; 1}

because high prices were good for class members.

Second, Wyeth argues that a completely anomalous decision from the Eleventh Circuit – whose reasoning was directly rejected by this Court – justifies downstream discovery. Wyeth is wrong on both counts.[2]

With regard to its first basis, Wyeth offers no factual support whatsoever for its *factual* argument that it set list prices for Premarin in the past by weighing whether direct purchasers *as a group* benefit from or are otherwise insensitive to price hikes, much less that Wyeth considered the *individual* price sensitivities of *individual* direct purchasers in establishing its own standard prices. Yet Wyeth seeks precisely such individualized downstream discovery. If there was any merit to this "defense" at all, Wyeth already would have in its own files all the contemporaneous documentation it needed, and would have submitted such evidence in support of its motion. In fact, this "defense" is meritless, and Wyeth should not be permitted to fabricate a defense by obtaining individual downstream evidence from class members, then work backwards by suggesting to the jury that such evidence somehow shows how *Wyeth* itself set its list prices. Nor should Wyeth be allowed to circumvent Supreme Court precedent through this stratagem. Denial of this discovery will not prejudice Wyeth as individualized downstream discovery from class members is not needed to enable Wyeth to show how it set its own list prices for Premarin.

As to the second, the Eleventh Circuit's reasoning in *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,* 350 F.3d 1181 (11th Cir. 2003), was explicitly *rejected* by this Court in its opinion certifying the class of direct purchasers. Order dated May 12, 2003 (Doc. #54 at 16-17).

---

[2] We refer the Court to (and hereby incorporate) the Memorandum in Support of Direct Purchaser Class Plaintiffs' Motion for Protective Order (Doc. #78). We will not repeat the discussion contained therein, but will focus here on Wyeth's proffered justifications for its improper discovery.

{00009554; 1}2

*See also In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 309-17 (E.D. Mich. 2001) (certifying class of direct purchasers of branded pharmaceutical and holding that whether antitrust plaintiff seeking overcharge damages may have benefitted in a net economic sense from defendant's anticompetitive conduct and inflated prices is irrelevant and immaterial), *23(f) pet. to appeal denied,* (6th Cir. June 18, 2001) (Exh. 2).

Wyeth failed to appeal this Court's Class Order under Fed.R.Civ.P. 23(f) when it had the chance. If Wyeth wishes to move to vacate the Class Order on the basis of *Valley Drug*, it can do so, but in that event, Wyeth would have to convince this Court, *inter alia*, that (1) its prior Class Order was wrong; and (2) *Valley Drug* is, or should be, the law of the Sixth Circuit. Understandably reluctant to shoulder either burden, Wyeth is instead trying to undo the Court's class certification decision through a backdoor discovery motion. That is improper. *Valley Drug* is not the law of the Sixth Circuit and, accordingly, does not justify the downstream discovery Wyeth seeks.

Wyeth seeks precisely the type of downstream, "pass on" discovery that the Supreme Court held decades ago to have no bearing on a direct purchaser's overcharge claim under the federal antitrust laws. *See Hanover Shoe v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968); *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977). The overwhelming weight of authority holds that "downstream" discovery of the type defendant seeks here is improper and should not be permitted.[3] Defendant's Motion to Compel should be denied.

---

[3] *See In re Polyester Staple Antitrust Litigation,* M.D.L. No. 3:03cv1516 (W.D.N.C. Feb. 5, 2004) (denying downstream discovery) (Exh. 1); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296 (D.C.D.C. 2000) (denying individualized downstream discovery); *In re Monosodium Glutamate Antitrust Litigation*, MDL 00-1328 (D. Minn. Sept. 14, 2000)(denying as irrelevant defendant's motion to compel documents regarding plaintiffs' re-sales); *In re Carbon Dioxide Antitrust Litigation*, MDL 92-940 at 4 (M.D. Fla. Nov. 18, 1993) (defendants not entitled to

## II. ARGUMENT

### A. Wyeth Cannot Conjure Up A "Defense" After-the-Fact

Plaintiffs – direct purchasers of the prescription drug Premarin from Wyeth – allege that Wyeth illegally squelched competition from a competing product (Cenestin) and, as a result, the price of Premarin was higher than it would have been in the absence of defendant's illegal conduct. Plaintiffs seek to recover overcharge damages. As this Court held:

> Antitrust injury is considered complete when the direct purchaser pays an illegal overcharge and whether he was able to pass through the overcharge to indirect purchasers *is irrelevant* to the inquiry.

Order (Doc. #54 at 16-17) (citing *Hanover Shoe*, 392 U.S. at 489; *Hawaii v. Standard Oil Co. Of Cal.*, 405 U.S. 251, 262 n.14 (1972); and *Illinois Brick*, 431 U.S. at 724-25) (emphasis added).

Wyeth recognizes that controlling Supreme Court precedent prevents it from arguing, directly, that it wishes to prove that class members were not damaged insofar as they were able to

---

information about plaintiffs' costs and profits since information was irrelevant to issue of price-fixing); *In re Wirebound Boxes Antitrust Litigation*, 131 F.R.D. 578 (D. Minn. 1990) (plaintiffs' financial information was irrelevant where damages would be calculated by extent of unlawful overcharge); *Go-Tane Service Stations, Inc. v. Ashland Oil, Inc.* 508 F. Supp. 200 (N.D. Ill. 1981) (plaintiff's motion to strike pass-on defense granted; related discovery ceased); *In re Folding Carton Antitrust Litig.*, MDL 250, Pretrial Order No. 32 (N.D. Ill. May 5, 1978) (denying downstream discovery). *See* Plaintiffs' Protective Order Memorandum (Doc #78 at 6-7) (collecting cases) (copies of unpublished decisions were submitted with Pls' P.O. Mem.).

"pass on" or otherwise offset the impact of Wyeth's allegedly illegally inflated prices.  *See, e.g.,* Defendant's Motion to Compel (Doc. #77 at 3) (acknowledging *Hanover Shoe's* prohibition of the "pass on" defense but alleging that Wyeth seeks downstream discovery here for an "entirely different" purpose).

Wyeth claims it needs "downstream" or "pass on" discovery to support a "defense" that its (inflated) Premarin prices "were not a result of Wyeth's 'exclusionary' contracts, but rather were the result of other market factors, including wholesalers who profited from such increases." (Doc. #77 at 11).

Wyeth is suggesting that, as a matter of historical fact, it set its Premarin list prices by reference to the price sensitivity of wholesalers and other class members (all of whom *resold* Premarin further down the chain of distribution and therefore purchased Premarin at whatever price Wyeth charged).  If this essentially historical claim had any basis, Wyeth would already have all the evidence it could need in the form of contemporaneously created documents in Wyeth's own files (and therefore Wyeth would have no need of discovery from absent class members).  Wyeth has failed to submit *any* such evidence, however.[4]

Other antitrust defendants have tried to skirt *Hanover Shoe* and *Illinois Brick* by similarly trying to dress up their "pass on" arguments as something else.  Courts have seen through, and rejected, such attempts.  *See Polyester Staple* (Exh. 1 at 5-6) ("downstream data is not relevant to any defense Defendants may assert at trial" and "although Defendants contend that 'downstream' market pressures, if explored, may reveal that certain class members were less

---

[4] Moreover, Wyeth has already had access to numerous public sources – which are cited extensively in Wyeth's brief – that discuss the broad downstream issues about which Wyeth seeks individualized discovery from class members.

sensitive to price fluctuations than others, *this fact is legally insignificant because the purchaser's 'profit picture' is irrelevant.*") (emphasis added) (citing *Folding Carton* and *Carbon Dioxide*); In Re *Folding Carton Antitrust Litig.* at 7-8 ("Whether purchasers absorbed, passed-on, or made a profit on the overcharges in comparison with the industry generally is irrelevant, and investigation into such matters are proscribed by *Illinois Brick*.") and (rejecting defendants' arguments that downstream discovery was relevant to class members' own alleged economic leverage over defendants' prices). (Exh. 13 to Doc. #78).

Defendants in the *Vitamins* case, like Wyeth here, argued that individualized downstream discovery was needed to establish the "but for" prices that defendants would have charged. 198 F.R.D. at 298, 301. The court rejected the argument, citing *Folding Carton* with approval. 198 F.R.D. at 301. The court in *Vitamins* stated that, if defendants' argument that the circumstances of *individual* purchasers had an effect on *defendants' own* pricing had any basis in fact, defendants "must already have in their possession the information" they claim they needed from plaintiffs in discovery. *Id.*[5]

Wyeth cites two cases in support of its motion. In *In re Infant Formula Antitrust Litig., MDL 878* (N.D. Fla. 1992), the court did not discuss *Hanover Shoe*, *Illinois Brick*, or the extensive body of case law denying "downstream" discovery in antitrust overcharge cases brought by direct purchasers. Morever, in that case, the court greatly narrowed defendants' requested

---

[5]The court stated that, even putting aside *Hanover Shoe*'s general bar on the "pass on" defense, the individualized downstream information sought was "only marginally, if at all" relevant. 198 F.R.D. at 301.

discovery to one product. Finally, the opinion appears to relate to discovery from the class representatives, rather than, as here, absent class members.

The second case, *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris, Inc.,* 138 F.Supp.2d 357 (E.D.N.Y.), did not involve a discovery dispute (but rather a motion *in limine*); did not involve absent class members; and was not an antitrust case. Judge Weinstein recognized that, in a RICO case, "pass on" evidence was legally irrelevant, 138 F.Supp.2d at 365, but he inexplicably (and idiosyncratically) ruled that the jury could hear such peripheral evidence anyway because he expressed concern that jurors might speculate about how the plaintiff in that case (an insurer) could recoup its alleged losses through higher premiums.[6]

Plaintiffs respectfully submit that the Court should follow the great weight of decisional authority denying downstream discovery, and reject Wyeth's argument that this Court should disregard Supreme Court precedent.[7]

**B.    This Court Previously Rejected the Reasoning of *Valley Drug***

In certifying the class here, this Court stated:

[A]s long as the price paid by the class members for Premarin was higher than it

---

[6] This RICO case is Wyeth's lone, weak support for its argument that the specific prohibition of *Hanover Shoe* on use of a "pass on" defense can be sidestepped because in a "rule of reason" case, the jury may be permitted to learn about the general background of the industry at issue. If *Hanover Shoe* could be so easily circumvented, it would be drained of all force. None of the rule of reason cases that Wyeth cites stands for such a proposition.

[7] "If discovery from absent members of the class is permissible at all, it should be sharply limited and allowed only on a strong showing of justification." Manual for Complex Litigation § 30.232 (3d ed. 2000); *see also*, 8 Charles A. Wright et al., *Federal Practice and Procedure* § 2171 (2d ed. 1994). Wyeth suggests that one subpoenaed class member, McKesson, has agreed to "fully comply" with Wyeth's subpoena. That mischaracterizes McKesson's position. In response to Wyeth's narrowing of the scope of the subpoena, McKesson has agreed to determine what types of documents it may have, and evaluate the burden associated with their production. McKesson has not, however, produced downstream documents.

> would have been absent the alleged anticompetitive conduct, *there is no conflict created if indeed some of the direct purchasers were able to recoup the overcharge through price increases passed on to other purchasers.*
>
> In summary, the Court finds *no conflict of interest issues* which would make the named Plaintiffs inadequate representatives for the class.

Order (Doc. #54 at 17) (emphasis added).

This holding squarely and soundly rejects the reasoning of *Valley Drug*, in which the Eleventh Circuit held – for the first time anywhere – that in a class of direct purchasers all seeking to recover overcharge damages under the federal antitrust laws, there *may* be a conflict under Rule 23(a)(4) between a class representative who incurred a "net" loss from defendant's allegedly illegal conduct, and absent class members who may have obtained a "net" economic benefit from the same conduct. The Eleventh Circuit recognized that the "net" economic effect of an allegedly illegal overcharge is *irrelevant* to *any* direct purchaser's substantive antitrust claim. 350 F.3d at 1192. Nevertheless, and inexplicably, the court held that a conflict might exist because the court could "imagine" that class members who may have obtained a "net" economic gain might have different "interests and objectives" than the named representatives. 350 F.3d at 1196. The court therefore remanded and condoned some downstream discovery. That is not the law of the Sixth Circuit, however.

In Re *Cardizem CD Antitrust Litig.*, the district court rejected defendants' argument that no class could be certified because defendants' conduct may have created net economic "winners" and "losers." 200 F.R.D. at 317 ("This argument is immaterial when an antitrust plaintiff proceeds on an 'overcharge theory.'").[8] The court also stated that, to prevent certification, a

---

[8]*See also In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 85 (E.D.N.Y. 2000) ("'winners and losers'" argument was "immaterial"), *aff'd*, 280 F.3d 124 (2d Cir. 2001), *cert. denied,* 536 U.S. 917 (2002); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977)

{00009554; 1}8

conflict must be "more than merely speculative or hypothetical" but, rather, be "so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation." 200 F.R.D. at 306 (citations omitted).

Defendants in *Cardizem* sought to appeal the class certification decision to the Sixth Circuit pursuant to Fed. R. Civ. P. 23(f), but the Court of Appeals denied the petition. *See* Exh. 2. *Valley Drug* is simply not the law in the Sixth Circuit.

Here, all class members received notice and an opportunity to opt-out after the Class Order. *All the subpoenaed class members elected to remain in the class in the exercise of their independent business judgment.*

One of the subpoenaed class members, ABC, has submitted a declaration of a vice president, Steven Lefebure. He states that:

> By pursuing this litigation on behalf of the Class members, ABC believes that [representative class plaintiff] JBDL will advance the common interests of itself and of all members of the Class, and will adequately represent ABC's interests in this litigation.
>
> ABC believes that its interests and objectives are best served by prosecuting its claims as part of a certified class. Thus, after receiving notice of the certification of the class, ABC has elected to remain as a class member.

Declaration of Seven Lefebure, dated February 26, 2004, ¶¶ 5-6 (submitted by ABC in connection with, ABC Motion to Quash, Doc. # 86).

---

(requiring an overcharged direct purchaser to prove lost profits was potentially "enormously complicated" and "burden[some]" and "it is precisely for this reason that the Supreme Court eliminated the 'passing on defense' in *Hanover Shoe*."), *cert. denied*, 434 U.S. 1086 (1978); *In re Relafen Antitrust Litig.*, 2003 WL 22680883 at *5 (D. Mass. Nov. 10, 2003) (certifying class of direct purchasers of branded pharmaceutical; holding that *Hanover Shoe* makes defendants' arguments "regarding actual economic harm irrelevant"); *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43, 60 (S.D.N.Y. 2002) (same); *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 39 n.1 (S.D.N.Y. 1977) (*Hanover Shoe* "foreclosed" argument that class should not be certified because some plaintiffs "passed on" overcharges).

In what sense could downstream discovery, even if permitted, trump the actual decisions of these class members that their interests and objectives are best served through a class action? It could not. Hence, the discovery would have no purpose and therefore should not be permitted.

As this Court has pointed out, a direct purchaser's antitrust injury is complete when that purchaser pays an illegal overcharge, and the fact that an overcharge may be passed on to subsequent purchasers is "irrelevant." Order (Doc. #54 at 17). Wyeth simply cannot defend against its conduct by trying to show that direct purchasers suffered no economic harm because they were able to "pass on" the overcharge, or were otherwise able to offset its effects. Discovery aimed at eliciting such information, therefore, should be prohibited.

### III. CONCLUSION

For the reasons stated above, and in the Memorandum in Support of Direct Purchaser Class Plaintiffs' Motion for Protective Order (Doc. #78), the direct purchaser class plaintiffs respectfully request that defendant Wyeth's Motion to Compel be denied.

Dated: March 1, 2004                    Respectfully Submitted,

/s/ Theresa L. Groh                    .
Theresa L. Groh
**MURDOCK GOLDENBERG
  SCHNEIDER & GROH, L.P.A.**
700 Walnut Street, Suite 400
Cincinnati, OH 45202-2011
Tel: (513) 345-8291
Fax: (513) 345-8294
*Local Counsel for Direct Purchaser Class*

Eugene A. Spector
Jay S. Cohen
**SPECTOR ROSEMAN & KODROFF, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
*Co-Lead Counsel for Direct Purchaser Class*

H. Laddie Montague, Jr.
Ruthanne Gordon
David F. Sorensen
Eric L. Cramer
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
*Co-Lead Counsel for Direct Purchaser Plaintiffs*

Barry S. Taus
Jan Bartelli
**GARWIN BRONZAFT GERSTEIN
   & FISHER, L.L.P.**
1501 Broadway, Suite 1416
New York, NY 10036
Tel.: (212) 398-0055
Fax: (212) 764-6620
*Co-Lead Counsel for Direct Purchaser Plaintiffs*

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Direct Purchaser Class Plaintiffs' Memorandum In Opposition To Defendant Wyeth's Motion To Compel has been served this 1st day of March, 2004, as follows:

*VIA OVERNIGHT DELIVERY*
William J. Baer, Esquire
David S. Eggert, Esquire
ARNOLD & PORTER
Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, D.C.  20004

Dan K. Webb, Esquire
W. Gordon Dobie Esquire
Peggy M. Balesteri, Esquire
WINSTON & STRAWN
35 West Wacker Drive
Chicago, IL  60601

Steven S. Shadowen, Esquire
Gordon A. Einhorn, Esquire
HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700
Harrisburg, PA  17101
*Counsel for CVS and Rite Aid*

Howard Sher
Eliot G. Long
BUCHANAN INGERSOLL
1835 Market Street, 14th Floor
Philadelphia, PA  19103-2985
*Counsel for AmerisourceBergen Corporation*

Mark A. Taylor
Dennie Mouser
Wal-Mart Legal Department
702 S.W. 8th Street
Bentonville, AK  72716-0215
*Counsel for Wal-Mart Stores, Inc.*

Ronald D. Lefton
GREENBERG TRAURIG
Met Life Building
200 Park Avenue
New York, N.Y. 10166
*Counsel for Wal-Mart Stores, Inc.*

Anthony J. Viola
EDWARDS & ANGELL, LLP
750 Lexington Avenue
New York, N.Y. 10022
*Counsel for Quality King Distributors, Inc.*

Peter K. Huston
LATHAM & WATKINS, LLP
515 Montgomery Street, Suite 1900
San Francisco, CA 94111-2562
*Counsel for McKesson Corporation*

Thomas L. Long
BAKER & HOSTETLER, LLP
Capitol Square, Suite 2100
65 East State Street
Columbus, OH 43215-4260
*Counsel for Cardinal Health, Inc.*

          /s/ Theresa L. Groh   .
          Theresa L. Groh