**EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE POLYESTER STAPLE         )
ANTITRUST LITIGATION           )    MDL DOCKET NO: 3:03CV1516
_____)    ALL CASES

THIS MATTER comes before the Court on Defendants' Motion To Compel "Downstream" Information as well as responsive briefs of Class Plaintiffs and Non-Class Plaintiffs, and Defendants' reply. On January 8, 2004, the Court heard oral argument from designated representatives of the parties. At the conclusion of the hearing, the Court <u>denied</u> Defendant's motion in its entirety. The instant order does not alter the Court's earlier ruling in any way, but merely reduces the Court's reasoning to writing.

I. Summary Of The Parties' Arguments

In support of their motion, Defendants make the following arguments. First, Defendants claim that discovery of the information sought, referred to by the parties as 'downstream data,'[1] is required to defend the claims of both Direct and Indirect Purchaser plaintiffs. More specifically, Defendants claim that downstream data will enable them to dispel Plaintiffs' claim that an antitrust conspiracy existed by demonstrating alternative explanations justifying or offsetting any alleged illegal price increase during the relevant time period. In order to do as they propose, Defendants state that they need to be able to explore "demand variations" within the industry.

---

[1] The information Defendants seek to compel consists primarily of Plaintiffs' production costs and profit data for each end-use or product that was manufactured incorporating polyester staple. Defendants requested that this information be organized to reflect the data as it pertained to each individual customer of the Plaintiff corporations.

1



Defendants also contend that downstream discovery will demonstrate conflicts of interest among class members, rendering class certification inappropriate. According to Defendants, not all class members (as the class is presently defined) could be impacted by the alleged conspiracy in the same manner or to the same degree. Thus, Defendants question Class Plaintiffs' ability to satisfy Rule 23 requirements regarding adequacy of representation as well as the requirement that common questions of law and fact predominate over questions affecting individual members of the class.[2]

Class Plaintiffs and Non-Class Plaintiffs alike disagree with Defendants' position that downstream data is relevant for either of these stated purposes. According to Plaintiffs, the only prices that are relevant to proof of impact are the prices charged by Defendants to Direct Purchaser Plaintiffs.

In terms of class certification, Class Plaintiffs deny that any fundamental conflict exists among the class members such that the adequacy of its class representatives should be at issue. Class Plaintiffs also assert that the predominance requirement of FED. R. CIV. P. 23(b)(3) will be met in this case by showing that a price increase impacted all class members in a common way - via an overcharge.

---

[2] Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). In considering class certification, the Court must also consider:

> 1) whether the questions of law and fact common to the members of the class predominate over any questions affecting only individual members; and
> 2) whether a class action is superior to the other available methods for the fair and efficient administration of the controversy.
> FED. R. CIV. P. 23(b)(3).

2

Non-Class Plaintiffs also contend that, as Direct Purchasers, they are not required to provide the individualized downstream data requested notwithstanding the fact that some Non-Class Plaintiffs also have state law Indirect Purchaser claims.

## II. Fed. R. Civ. P. 26(b)

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. However, discovery may be limited by the Court if it finds that, " the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii).

### III. Framework For Analysis

Analysis of Defendant's motion to compel is twofold. The first issue is whether the downstream data sought has any relevance to Plaintiffs' claims or any defenses raised by Defendants, or any bearing on the question of class certification, namely, adequacy and / or predominance required under Fed. R. Civ. P. 23(a)(4) and (b)(6). Fed. R. Civ. P. 26(b); In Re Vitamins Antitrust Litigation, 198 F.R.D. 296, 299 (D.D.C.2000). If the downstream data is deemed relevant for either of these purposes, the Court must then consider whether the benefits of this information to Defendants outweighs the burden or expense that discovery of this information would impose upon Plaintiffs. Id. The Court will first briefly address Defendants' relevance arguments.

3

## A. Relevance

### 1. Defendants' Desire To Establish Lack Of Impact As Basis For Discovery Of 'Downstream' Data

The information sought by Defendants is not relevant to the merits of the underlying antitrust actions and is likewise unlikely to lead to the discovery of admissible evidence. Every private antitrust action requires proof of three elements:

1) an antitrust violation;
2) direct injury, or impact, to the plaintiff from such violation; and
3) damages sustained by the plaintiff.

DeLoach v. Philip Morris Cos., Inc., 206 F.R.D. 551, 558 (M.D.N.C. 2002)(citing Windham v. American Brands, Inc., 565 F.2d 59, 65 (4th Cir. 1977)).

It is well settled law that in order for a direct purchaser to establish injury in an antitrust conspiracy case alleging price fixing and customer allocation, Plaintiffs need only demonstrate that they paid a higher price for polyester staple purchased from Defendants than they would have absent the existence of a conspiracy. Hanover Shoe v. United Shoe Machinery Corp., 392 U.S. 481, 489 (1968); Illinois Brick Co. v. Illinois, 431 U.S. 720, 724-25 (1977). Thus, the second element of direct injury or impact may be presumed in antitrust cases involving a conspiracy to fix prices or allocate customers. Id.

Similarly, antitrust damages in price-fixing cases are typically measured by "the difference between the price paid and the market or fair price . . . under natural conditions" in the absence of a conspiracy. Chattanooga Foundry & Iron Works v. City of Atlanta, 203 U.S. 390, 396 (1906). Therefore, if Plaintiffs' claims of illegally inflated prices of polyester staple are proven, the requisite injury, impact, liability and amount of damages are all established at the point of sale between Direct Purchaser Plaintiffs and Defendants.

4

Hanover Shoe, 392 U.S. at 489 ("We think it sound to hold that when a buyer shows that the price paid by him for materials purchased for use in his business is illegally high and also shows the amount of the overcharge, he has made out a prima facie case of injury and damage within the meaning of [Section 4 of the Clayton Act.]) Notwithstanding what occurs after this initial sale, under Hanover Shoe and its progeny, Direct Purchasers are entitled to recover the full extent of the overcharge.[3] Id.

In this case, Defendants contend that downstream data requested is discoverable because it is necessary in establishing that Plaintiffs have not suffered any injury from the alleged conspiracy.[4] However, a review of the pertinent case law reveals that this argument is one routinely made by defendants in antitrust actions - an argument routinely rejected by various federal courts. In Re Carbon Dioxide Antitrust Litigation, MDL 940 (M.D. Fla. Nov. 18 1993). Therefore, there is no need to engage in a complicated impact or injury analysis as Defendants suggest. As Plaintiffs emphasize in their filings, this can be proven by comparing Plaintiffs' volumes of sales with the extent of increased price. The information sought is simply <u>not</u> relevant to the injury or impact element of Plaintiffs' claims.

Likewise, downstream data is not relevant to any defense Defendants may assert at trial. Generally, a defendant in an antitrust action may not assert a "pass-on" defense (the defense that the plaintiff has no damages because he passed the overcharge to its

---

[3] Plaintiffs only seek to recover the actual amount of overcharge (as opposed to consequential damages).

[4] Because Defendants do not purport to seek the information in order to oppose Plaintiffs' calculation of damages, the Court will not discuss that element of the offense.

5

customer, or down the production line) against direct purchaser plaintiffs.[5] Hanover Shoe, 392 U.S. at 489-494. In addition, although Defendants contend that "downstream" market pressures, if explored, may reveal that certain class members were less sensitive to price fluctuations than others, this fact is legally insignificant because the purchaser's "profit picture" is irrelevant. Id.; In Re Folding Carton Antitrust Litigation, MDL 250, Pretrial Order No. 32 (N.D. Ill. May 5, 1978); In Re Carbon Dioxide Antitrust Litigation, MDL 940 (M.D.Fla. Nov. 18, 1993). Defendants' motion cannot be sustained on this basis.

2. **State Law Indirect Purchaser Claims As Basis For Discovering 'Downstream' Data**

Defendants also contend that downstream data is relevant to state law Indirect Purchaser claims brought by certain Non-Class Plaintiffs. Defendants' request in this regard is also without merit.[6] As an initial matter, Non-Class Plaintiffs represented during the hearing that to the extent these entities could also be considered Indirect Purchasers, those entities have already provided information about their indirect purchases of polyester staple fiber (or "PSF"). In addition, as Direct Purchasers, Non-Class Plaintiffs are not required to produce information regarding the amount of overcharges passed on to indirect purchasers who may also be plaintiffs in the case. In re Vitamins, 198 F.R.D. at 301. Even if marginally relevant to damages claims made by Indirect Purchasers, the Court still finds Defendants' request unduly burdensome. The District of Columbia recently stated:

---

[5] Although Defendants vehemently contend that they do not intend to assert such a pass-on defense, the Court cannot ignore the Supreme Court's rationale in Hanover Shoe.

[6] For purposes of this Order, the undersigned need not reach the issue of whether Indirect Purchasers' claims for monetary damages, if any, are cognizable under North Carolina law.

6

> [T]he fact remains that no court has ever allowed production of individualized downstream data and certainly there are other antitrust cases in which direct and indirect purchasers were named together as parties to the litigation. Therefore, the proposition that there are indirect purchasers in this case who may assert claims for damages other than direct overcharges is not sufficient to carry defendants' burden of showing that this information ought to be produced by the direct purchasers.

Id. This Court adopts this reasoning in denying Defendants' motion.

### 3. Class Certification As A Basis For Discovery Of 'Downstream' Data

Defendants also maintain that the downstream data is discoverable to enable them to adequately oppose certification of Direct Purchaser Plaintiffs' claims as a single class. In support of this proposition, Defendants rely almost solely on the recent Eleventh Circuit opinion, Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181 (11th Cir. 2003). Defendants' reliance on Valley Drug is misplaced.

While Valley Drug stands for the proposition that 'downstream' data may be relevant to the issue of class certification in certain cases, the facts of Valley Drug are distinguishable. Id. at 1192. Defendants concede that Valley Drug involved a potential conflict of interest among class members that is not present here.[7] (Defendants' Motion, at 16.) More specifically, in Valley Drug, there was evidence presented that some of the class representatives actually benefitted from the alleged conspiracy and, therefore, may not adequately represent the other class members. There was also evidence that these class representatives entered into "cost-plus" contracts, a limited exception to the general rule that a 'pass-on' defense is not permitted. Hanover Shoe, 392 U.S. at 494; Illinois Brick

---

[7] However, during oral argument, counsel for Defendants asserted that Valley Drug was the case most analogous to the facts of the instant case.

7

Co., 431 U.S. at 724 n. 2. There is no evidence Plaintiffs engaged in "cost-plus" contracts here. More importantly, Valley Drug was legitimately described as a "conflicts case" during oral argument. For that reason, the principles announced by the Fourth Circuit in Gunnells are that much more persuasive. Gunnells v. Healthplan Services, Inc., 348 F.3d 417 (4th Cir.2003)(stating that in order to defeat class certification, a conflict must be "fundamental" and "go to the heart of the litigation").[8]

There is no fundamental conflict present, or any other identifiable (as opposed to speculative) conflict, among the potential class members that causes the undersigned to question the adequacy of the class representatives. In seeking to establish that there is a fundamental conflict present that will lead to admissible evidence on the issue of adequacy of representation under Rule 23, Defendants ask the Court to rely on events that have already occurred in the instant case. For example, Defendants point to the ultimate exclusion of fiberfill from the definition of polyester staple within the DAK Settlement. However, Lead Counsel for Class Plaintiffs clarified during the hearing that DuPont and the other DAK Defendants do not manufacture fiberfill. Thus, there was no mysterious or suspect reason for Class Plaintiffs' decision to exclude fiberfill products from the definition of polyester staple in that context.

The Court also agrees with Class Plaintiffs that the predominance requirement of Rule 26(b)(3) can be established if an illegal overcharge occurring as a result of an alleged

---

[8] Defendants' counsel went to great lengths hoping to establish that because Defendants do not seek the downstream data for the purposes proscribed by the Supreme Court in Hanover Shoe and Illinois Brick, these cases are not determinative of either issue raised by Defendants' motion. As alluded to earlier, Defendants cannot deny that the teachings of these Supreme Court opinions are not only instructive, but also favor Plaintiffs' contention that Valley Drug stands alone.

single conspiracy to fix prices or allocate customers is proven. DeLoach, 206 F.R.D. at 561. This is true even if the extent of the injury or damages varied among the Plaintiffs. Id.

### B. Benefits To Defendants Versus Plaintiffs' Burden If Discovery Of Downstream Data Is Allowed

Applying the relevant factors, the Court finds that the burden to Plaintiffs far outweighs any potential benefit to Defendants. FED. R. CIV. P. 26(b)(2)(iii). For the reasons set forth herein, the information sought by Defendants is not relevant and, therefore, not helpful in resolving the issues before the Court.[9] Further, even if the Court deemed downstream data relevant for the purposes identified by Defendants, the burden that would be placed upon Plaintiffs by granting Defendants' motion far outweighs Defendants' purported need for the information sought. Indeed, Defendants recognized as much and proposed to withdraw certain portions of their discovery request in order to lessen Plaintiffs' burden. Despite this, the breadth of the information sought, given any conceivable compromise, would continue to impose an unimaginable and heavy burden in terms of both time and expense on Plaintiffs.[10] Consistent with the findings of other federal district courts facing complex antitrust litigation, this Court finds no need for requiring production of this type of individualized downstream data.

---

[9] This factor, along with the Plaintiffs' argument regarding the estimated strain on their resources, is determinative notwithstanding the fact that the amount in controversy is obviously great given the trebling provision within the Clayton Act.

[10] The Court relies on the affidavits submitted by both Class and Non-Class Plaintiffs.

9

## IV. Order

In conclusion, the Court finds the downstream data sought by Defendant is not relevant to the underlying merits of the direct purchaser antitrust actions before the Court. In addition, Defendant has not met its burden of establishing the need for individualized downstream data (not already provided) as it may pertain to the indirect purchaser claims before the Court. Moreover, Defendants' sole authority in support of their contention that downstream data is crucial to class certification issues is not persuasive here. Finally, regardless of the purported purpose for Defendants' motion to compel downstream data, the Court finds it significant that Defendants failed to provide an economist's affidavit or declaration explaining why individualized downstream data is necessary.

IT IS, THEREFORE, ORDERED that Defendants' Motion To Compel Discovery Of Downstream Data is hereby DENIED.

IT IS FURTHER ORDERED that the instant Order governs all forms of discovery, including depositions.

THIS the 5th day of February, 2004.

*[signature]*
RICHARD L. VOORHEES
UNITED STATES DISTRICT COURT JUDGE

**EXHIBIT 2**

No. 01-0107

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

JUN 18 2001

LEONARD GREEN, Clerk

In re: CARDIZEM CD ANTITRUST )
LITIGATION, MDL No. 1278, )
_____ )
LOUISIANA WHOLESALE DRUG CO.; )
DUANE READE, INC.; SHERMAN ACT )
CLASS, )
)
Plaintiffs-Respondents, )
)
v. )
)
HOECHST MARION ROUSSEL, INC., now )
known as Aventis Pharmaceuticals, Inc., ANDRX )
PHARMACEUTICALS, INC., )
)
Defendants-Petitioners. )

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.
This action is to be permanently displayed if this decision is reproduced.

ORDER

Before: MARTIN, Chief Judge; JONES and DAUGHTREY, Circuit Judges.

The defendants in this multidistrict antitrust litigation petition for leave to appeal a district court order granting the plaintiffs' motion for class certification. The plaintiffs have filed a response, and the defendants have filed a reply.

The order at issue was entered on March 15, 2001, and granted a motion by plaintiffs with claims under the Sherman Act, 15 U.S.C. § 1, for class certification pursuant to Fed. R. Civ. P. 23(b)(3). The order states that the certification is conditional and "may be altered or amended prior to the decision on the merits in light of any changes in the circumstances that make such action advisable." See Fed. R. Civ. P. 23(c)(1).

A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under Rule 23. See Fed. R. Civ. P. 23(f). The Advisory Committee Notes state that "[p]ermission to appeal may be granted or denied on the basis of any

No. 01-0107
-2-

consideration that the court of appeals finds persuasive." The Eleventh, First and Seventh Circuits have weighed in on what considerations are relevant in determining whether permission to appeal should be granted. See *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000); *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000), and *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999). Applying these considerations to the present case, we conclude that an immediate appeal is not warranted.

The defendants' petition for permission to appeal is **DENIED**.

ENTERED BY ORDER OF THE COURT

_____
Clerk