**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| J.B.D.L. Corp. d/b/a ) | Civil Action No. C-1-01-704 |
| BECKETT APOTHECARY, et al., ) | |
| ) | Judge Sandra S. Beckwith |
| ) | Magistrate Judge Timothy S. Hogan |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| WYETH-AYERST LABORATORIES, ) | |
| INC., et al., ) | |
| ) | |
| Defendants. ) | |

**DIRECT PURCHASER CLASS PLAINTIFFS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER**

**I.   INTRODUCTION**

Defendant Wyeth has moved to compel two absent class members to produce legally irrelevant, burdensome, and improper "downstream" and "pass on" information (Doc. # 77). The Class Plaintiffs, and the individual subpoenaed class members, each have filed a response in opposition, and the absent class members each filed a cross-motion to modify the subpoenas.[1]

---

[1] Direct Purchaser Class Plaintiffs' Memorandum in Opposition to Defendant Wyeth's Motion to Compel (Doc. # 87); Absent Class Member AmeriSourceBergen Corporation's Cross Motion to Modify Subpoena *Duces Tecum* and To Quash Subpoena *Ad Testificandum* Served by Defendant Wyeth-Ayerst Laboratories, Inc. (Doc. # 86); Absent Class Member Cardinal Health, Inc.'s Cross Motion to Modify Subpoena *Duces Tecum* and To Quash Subpoenas *Ad Testificandum* Served by Defendant Wyeth-Ayerst Laboratories, Inc. (Doc. # 88). Wyeth has also served subpoenas *ad testificandum* to obtain testimony from absent class members on the same improper downstream topics. Class Plaintiffs understand that Wyeth has agreed to hold these latter subpoenas in abeyance pending the adjudication of its document requests.

{00009590; 1}

**Class Plaintiffs also have filed a motion for protective order (Doc. # 78), to which Wyeth has responded (Doc # 82).**[2]  **Class Plaintiffs respectfully submit this reply in further support of their motion for protective order.**[3]

## II.   BACKGROUND

Plaintiffs, direct purchasers of the prescription drug Premarin from Wyeth, allege that Wyeth illegally squelched competition from a competing product, Cenestin, and as a result, direct purchasers were overcharged on their purchases of Premarin.  Plaintiffs seek to recover overcharge damages (trebled) under the federal antitrust laws.  As this Court has held:

> Antitrust injury is considered complete when the direct purchaser pays an illegal overcharge and *whether he was able to pass through the overcharge to indirect purchasers is irrelevant to the inquiry.*

Order dated May 12, 2003  (Doc. # 54 at 16-17) (citing *Hanover Shoe v. United Shoe Machinery Corp.*, 392 U.S. 481, 489 (1968);  *Hawaii v. Standard Oil Co. Of Cal.*, 405 U.S. 251, 262 n.14 (1972); and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-25 (1977)) (emphasis added).

In *Illinois Brick,* the Supreme Court underscored its holdings in *Hanover Shoe* that:

> [A] direct purchaser suing for treble damages under § 4 of the Clayton Act is injured within the meaning of § 4 by the full amount of the overcharge paid by it and that the **antitrust defendant is not permitted to introduce evidence that indirect purchasers were in fact injured by the illegal overcharge**.

431 U.S. at 724-25 (emphasis added).  The Court stated that under *Hanover Shoe*, "direct purchasers are . . . **spared the burden** of litigating the intricacies of pass-on."  431 U.S. at 745-

---

[2] Wyeth subpoenaed eight absent class members, but its motion to compel relates to two: (1) AmeriSourceBergen Corporation ("ABC"); and (2) Cardinal Health, Inc. ("Cardinal"). Plaintiffs' Motion for Protective Order relates to *all eight* subpoenaed class members.

[3] We respectfully refer the Court (and incorporate) Class Plaintiffs prior briefs in support of their motion for protective order (Doc. # 78) and in opposition to Wyeth's motion to compel (Doc. # 87).

46 (emphasis added).

All plaintiffs, including the absent class members who were subpoenaed, purchased Premarin for resale, and therefore bought Premarin at whatever price Wyeth charged. Wyeth seeks discovery into, *inter alia*, whether class members benefited from Wyeth's own illegally inflated Premarin prices by engaging in "speculative purchasing," i.e., buying extra quantities of Premarin in anticipation of an upcoming Wyeth price hike in order to benefit from the increase. The only way that class members could "benefit" from a price hike, of course, is if the price increase were passed on. The "pass on" defense, however, was eliminated by *Hanover Shoe*. Hence, Wyeth seeks precisely the type of downstream, "pass on" discovery that the Supreme Court held decades ago to have no bearing on a direct purchaser's overcharge claim under the federal antitrust laws.[4]

**Many antitrust defendants before Wyeth have tried to circumvent *Hanover Shoe* by arguing that improper downstream discovery relates to issues other than a "pass on" defense. Courts have overwhelmingly *rejected* such attempts.**[5]  **This Court, likewise, should**

---

[4] Wyeth mischaracterizes its discovery requests as "focused" on class members' purchases from Wyeth. Doc. # 82 at 8. That is incorrect. ABC, for example, is objecting to Request Nos. 2, 3, 4, 6, 8, 9, 12, 13, and 17 of the subpoena served on it. A number of these disputed requests relate to purported *profits* ABC earns from "speculative purchasing." Number 4, for example, requests, "All documents which relate to whether your business model has relied upon price increases for Premarin and other products in order for you to maintain or increase your profitability[.]" Number 6 requests, "All documents relating to your guidelines, policies, procedures or practices in *setting prices* for Premarin, Cenestin, or other products purchased using 'speculative purchasing' practices." (emphasis added). Request 13 asks for, "All documents relating to whether you receive an economic benefit from price increases of Premarin." The other disputed requests are similar. These requests plainly seek "downstream" information, i.e., information regarding class members' own prices and profits on the sale of Premarin (and other products).

[5] *See In re Polyester Staple Antitrust Litigation,* M.D.L. No. 3:03cv1516 (W.D.N.C. Feb. 5, 2004) (denying downstream discovery) (Exh. 1 to Doc. #87); *In re Vitamins Antitrust Litig.*,

3

**deny Defendant's Motion to Compel, and grant Plaintiffs' Motion for Protective Order.**

### III.   ARGUMENT

Wyeth offers two principle arguments for its baseless discovery.  First, Wyeth contends that it needs discovery into whether class members benefited from price increases because Wyeth suggests – without a shred of factual support – that *it raised its own standard list prices* in part *because individual* class members allegedly benefited from price hikes.  Wyeth claims that it is trying to prove a "defense" that, even had it not illegally thwarted competition from Cenestin, Wyeth would not have lowered its list prices because its Premarin prices "were the result of

---

198 F.R.D. 296 (D.C.D.C. 2000) (denying individualized downstream discovery);   *In re Monosodium Glutamate Antitrust Litigation*, MDL 00-1328 (D. Minn. Sept. 14, 2000)(denying as irrelevant defendant's motion to compel documents regarding plaintiffs' re-sales);  *In re Carbon Dioxide Antitrust Litigation*, MDL 92-940 at 4 (M.D. Fla. Nov. 18, 1993) (defendants not entitled to information about plaintiffs' costs and profits since information was irrelevant to issue of price-fixing); *In re Wirebound Boxes Antitrust Litigation*, 131 F.R.D. 578 (D. Minn. 1990) (plaintiffs' financial information was irrelevant where damages would be calculated by extent of unlawful overcharge); *Go-Tane Service Stations, Inc. v. Ashland Oil, Inc.* 508 F. Supp. 200 (N.D. Ill. 1981) (plaintiff's motion to strike pass-on defense granted; related discovery ceased); *In re Folding Carton Antitrust Litig.*, MDL 250, Pretrial Order No. 32 (N.D. Ill. May 5, 1978) (denying downstream discovery).  *See* Plaintiffs' Protective Order Memorandum (Doc. #78 at 6-7) (collecting cases) (copies of unpublished decisions other than *Polyester Staple* were submitted with the Memorandum).

market factors such as wholesaler speculative purchasing." Doc. # 82 at 4.

Second, Wyeth suggests its discovery is justified by a recent Eleventh Circuit opinion whose reasoning was explicitly rejected by this Court. Wyeth is wrong on both counts.

### A. <u>Wyeth Cannot Conjure Up A "Defense" After-the-Fact</u>

As to the first basis, Wyeth offers no support at all for its *factual* argument that it set its list prices for Premarin in the past by weighing whether direct purchasers *as a group* benefit from or are otherwise insensitive to price hikes, much less that Wyeth considered the *individual* price sensitivities of *individual* direct purchasers in establishing its own standard prices. Yet Wyeth seeks *individualized* downstream discovery. If there was any substance to this "defense" at all, Wyeth already would have in its own files all the contemporaneous documentation it needed, and would have submitted such evidence in support of its motion. In fact, this "defense" is baseless, and Wyeth should not be permitted to fabricate a defense by obtaining individual downstream evidence from class members, then work backwards by suggesting to the jury that such evidence somehow shows how *Wyeth* itself set its list prices. Nor should Wyeth be allowed to circumvent Supreme Court precedent through this stratagem. Denial of this discovery will not prejudice Wyeth because Wyeth does not need individualized downstream discovery from class members in order to show how *Wyeth itself  set its own prices* for Premarin.[6]

**Wyeth acknowledges that Class Plaintiffs have pointed out that there is "no support for the notion that Wyeth sets its prices on a wholesaler's or other direct purchaser's purported price sensitivity." Doc. #82 at 4. Instead of submitting any such support,**

---

[6]Moreover, Wyeth has already had access to numerous public sources – which are cited extensively in Wyeth's briefs – that discuss the broad downstream issues about which Wyeth seeks individualized discovery from class members.

however, Wyeth protests that it ought not be denied discovery "on the grounds that defendant has not yet 'proved'" its defense.  Doc. # 82 at 4.  That misstates Class Plaintiffs' position.

Class Plaintiffs are *not* suggesting that Wyeth must first "prove" by a preponderance of the evidence that, in fact, it set its list prices for Premarin by reference to the resale practices of individual direct purchasers.   Rather, Class Plaintiffs are simply pointing out that *if Wyeth's "defense" had any basis in reality whatsoever – as opposed to a being a "defense" that Wyeth is fabricating from whole cloth as an excuse to obtain legally irrelevant and improper "pass on" discovery –* Wyeth should be able to produce *from its own files* numerous contemporaneous documents showing how it set its prices.  If Wyeth's own documents state that Wyeth set its list prices by reference to the price sensitivities of *individual* class members, then Wyeth does not need individual discovery from these very same class members.  Conversely, if Wyeth has no such documents, then this entire discovery exercise is a sham.  Either way, the individualized downstream discovery that Wyeth seeks is improper and should be denied.

Defendants in the *Vitamins* case, like Wyeth here, argued that individualized downstream discovery was needed to establish the "but for" prices that defendants would have charged.  *Vitamins*, 198 F.R.D. at 298, 301.  The court rejected the argument, stating that, if defendants' argument that the circumstances of *individual* purchasers had an effect on *defendants' own* pricing had any basis in fact, defendants "must already have in their possession the information" they claim they needed from plaintiffs in discovery. 198 F.R.D.

**at 301.**[7]

**Similarly, defendants in *In re Folding Carton Antitrust Litigation*, argued that they needed downstream discovery from direct purchasers to demonstrate that their own prices had not been inflated because direct purchasers allegedly possessed "countervailing" economic power that pushed defendants' prices down. The court rejected the argument.**

> *To suggest that a conspiracy was not as successful as it might have otherwise been because of the plaintiffs' countervailing economic power is absurd.* Such an alleged "economic check" is of no consequence in a price fixing case.

*In re Folding Carton Antitrust Litig.* **at 3 (Doc. # 78 at Exh. 13) (emphasis added).**[8]

---

[7] The court stated that, even putting aside *Hanover Shoe*'s general bar on the "pass on" defense, the individualized downstream information sought was "only marginally, if at all" relevant.   198 F.R.D. at 301.

[8] *See also Polyester Staple* (Exh. 1 to Doc. # 87 at 5-6) ("downstream data is not relevant to any defense Defendants may assert at trial" and "although Defendants contend that 'downstream' market pressures, if explored, may reveal that certain class members were less sensitive to price fluctuations than others, *this fact is legally insignificant because the purchaser's 'profit picture' is irrelevant.*") (emphasis added).

**The court concluded: "Whether purchasers absorbed, passed-on, or made a profit on the overcharges in comparison with the industry generally is irrelevant, and investigation into such matters are proscribed by *Illinois Brick*." Doc. #78, Exh. 13 at 7-8.** [9]

Plaintiffs respectfully submit that the Court should follow the great weight of decisional authority denying downstream discovery, and reject Wyeth's argument that this Court should disregard Supreme Court precedent.[10]

### B. This Court Previously Rejected the Reasoning of *Valley Drug*

Wyeth seeks to justify its requested downstream discovery on the basis of *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,* 350 F.3d 1181 (11th Cir. 2003), in which the Eleventh Circuit held – for the first time anywhere – that the "pass on" effects of an overcharge may have a bearing on whether the class representatives satisfy the adequacy requirement of Rule 23(a)(4).

---

[9] Wyeth cites two purportedly contrary cases: *In re Infant Formula Antitrust Litig.,* MDL 878 (N.D. Fla. 1992), and *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris, Inc.,* 138 F.Supp.2d 357 (E.D.N.Y.). In the *Infant Formula* case, the court did not discuss *Hanover Shoe*, *Illinois Brick*, or the extensive body of case law denying "downstream" discovery in antitrust overcharge cases brought by direct purchasers. Morever, in that case, the court greatly narrowed defendants' requested discovery to one product. Finally, the opinion appears to relate to discovery from the class representatives, rather than, as here, absent class members. *Blue Cross,* meanwhile, did not involve a discovery dispute (but rather a motion *in limine*); did not involve absent class members; and was not an antitrust case. Judge Weinstein recognized that, in a RICO case, "pass on" evidence was legally irrelevant, 138 F.Supp.2d at 365, but he inexplicably (and idiosyncratically) ruled that the jury could hear such peripheral evidence anyway because he expressed concern that jurors might speculate about how the plaintiff in that case (an insurer) could recoup its alleged losses through higher premiums.

[10] "If discovery from absent members of the class is permissible at all, it should be sharply limited and allowed only on a strong showing of justification." Manual for Complex Litigation § 30.232 (3d ed. 2000); *see also*, 8 Charles A. Wright et al., *Federal Practice and Procedure* § 2171 (2d ed. 1994). Wyeth suggests that one subpoenaed class member, McKesson, has agreed to "comply fully" with Wyeth's subpoena. That mischaracterizes McKesson's position. In response to Wyeth's narrowing of the scope of the subpoena, McKesson has agreed to determine what types of documents it may have, and evaluate the burden associated with their production. McKesson has not, however, produced downstream documents.

{00009590; 1}

The court stated that, if some absent class members may have obtained a "net" economic benefit from defendants' conduct, while the named representative incurred a "net" harm, there may be a conflict under Rule 23(a)(4). The Eleventh Circuit recognized that the "net" economic effect of an allegedly illegal overcharge is *irrelevant* to *any* direct purchaser's substantive antitrust claim. 350 F.3d at 1192. Nevertheless, and inexplicably, the court held that a conflict might exist because the court could "imagine" that class members who may have obtained a "net" economic gain might have different "interests and objectives" than the named representatives. 350 F.3d at 1196. The court remanded and condoned some downstream discovery.

That is not the law of the Sixth Circuit, however. In certifying the class here, this Court stated:

> [A]s long as the price paid by the class members for Premarin was higher than it would have been absent the alleged anticompetitive conduct, *there is no conflict created if indeed some of the direct purchasers were able to recoup the overcharge through price increases passed on to other purchasers.*
>
> In summary, the Court finds *no conflict of interest issues* which would make the named Plaintiffs inadequate representatives for the class.

Order (Doc. #54 at 17) (emphasis added). *See also In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 309-17 (E.D. Mich. 2001) (certifying class of direct purchasers of branded pharmaceutical and holding that whether antitrust plaintiff seeking overcharge damages may have benefitted in a net economic sense from defendant's anticompetitive conduct and inflated prices is irrelevant and immaterial), *23(f) pet. to appeal denied,* (6th Cir. June 18, 2001).

Wyeth failed to appeal this Court's Class Order under Fed.R.Civ.P. 23(f) when it had the chance. If Wyeth wishes to move to vacate the Class Order on the basis of *Valley Drug*, it can do so. To permit downstream discovery on the basis of *Valley Drug*, however, this Court would

*first* have to find that *Valley Drug* is now the law of the Sixth Circuit, because otherwise the downstream discovery is improper. This Court has already held, however, that the reasoning of *Valley Drug* is *inconsistent* with the law of the Sixth Circuit. Hence, *Valley Drug* does not justify the downstream discovery that Wyeth seeks.

The district court in *Cardizem* rejected defendants' argument that no class could be certified because defendants' conduct may have created net economic "winners" and "losers," stating that, "This argument is immaterial when an antitrust plaintiff proceeds on an 'overcharge theory.'" 200 F.R.D. at 317. The court also stated that, to prevent certification, a conflict must be "'more than merely speculative or hypothetical'" but, rather, be "'so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation.'" 200 F.R.D. at 306 (citations omitted).

Defendants in *Cardizem* sought to appeal the class certification decision to the Sixth Circuit pursuant to Fed. R. Civ. P. 23(f), but the Court of Appeals denied the petition. *See* Exh. 2 to Doc. # 87. *Valley Drug* is simply not the law in the Sixth Circuit.[11]

**When contemplating Wyeth's reliance on *Valley Drug*, it is worthwhile to keep in mind that the purpose of Rule 23(a)(4) is to protect the due process rights of *absent class***

---

[11]*See also In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 85 (E.D.N.Y. 2000) ("'winners and losers'" argument was "immaterial"), *aff'd*, 280 F.3d 124 (2d Cir. 2001), *cert. denied,* 536 U.S. 917 (2002); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977) (requiring an overcharged direct purchaser to prove lost profits was potentially "enormously complicated" and "burden[some]" and "it is precisely for this reason that the Supreme Court eliminated the 'passing on defense' in *Hanover Shoe*."), *cert. denied*, 434 U.S. 1086 (1978); *In re Relafen Antitrust Litig.*, 2003 WL 22680883 at *5 (D. Mass. Nov. 10, 2003) (certifying class of direct purchasers of branded pharmaceutical; holding that *Hanover Shoe* makes defendants' arguments "regarding actual economic harm irrelevant"); *In re Buspirone Patent & Antitrust Litig.,* 210 F.R.D. 43, 60 (S.D.N.Y. 2002) (same); *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 39 n.1 (S.D.N.Y. 1977) (*Hanover Shoe* "foreclosed" argument that class should not be certified because some plaintiffs "passed on" overcharges).

*members*.  As one district court has stated:

> **The Seventh Circuit has noted that class action defendants' efforts to "help" the court by identifying supposed 'conflicts of interests' among the defendants' adversaries should be viewed with some skepticism.  "It is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified.  When it comes, for instance, to determining whether 'the representative parties will fairly and adequately protect the interests of the class,' . . . it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house**."

*In re General Instrument Corp. Securities Litig.*, 1999 U.S. Dist. LEXIS 18182, *11 (N.D. Ill. 1999) (*quoting Eggleston v. Chicago Journeymen Plumbers*, 657 F.2d 890, 895 (7th Cir. 1981)) (emphasis added).

Here, all class members received notice and an opportunity to opt-out after the Class Order.  *All the subpoenaed class members elected to remain in the class in the exercise of their independent business judgment.  See, e.g., In re Potash Antitrust Litigation,* 159 F.R.D. 682, 692 (D. Minn. 1995) (class members who may have benefited from defendants' anticompetitive conduct "are free to opt out").

Two subpoenaed class members (ABC and Cardinal, the entities that are the subject of Wyeth's own motion to compel), have, in addition, expressly stated that they believe their interests are aligned with the class plaintiffs.

ABC's vice president, Steven Lefebure, submitted a declaration stating:

By pursuing this litigation on behalf of the Class members, ABC believes that [representative class plaintiff] JBDL will advance the common interests of itself and of all members of the Class, and will adequately represent ABC's interests in this litigation.

ABC believes that its interests and objectives are best served by prosecuting its claims as part of a certified class.  Thus, after receiving notice of the certification of the class, ABC has elected to remain as a class member.

Declaration of Seven Lefebure, dated February 26, 2004, ¶¶ 5-6 (submitted by ABC in connection with ABC Motion to Quash, Doc. #86).

> Cardinal submitted a brief stating that:
>
> As for Wyeth's contention that this discovery is somehow relevant to the issue of whether Class Plaintiffs can adequately represent Cardinal Health's own interests, Cardinal Health is well aware of the case, having received notice of the filing of the case in September, 2003 and has never raised any issue with the Court that somehow its interests will not be adequately represented by Class Plaintiff. In fact, **Cardinal Health itself believes that the Class Plaintiffs can and will adequately represent its interests**.

Doc. # 88 at 4 (emphasis added).

In what sense could downstream discovery, even if permitted, trump the actual decisions of these class members that their interests and objectives are best served through a class action? It could not. Hence, the discovery would have no purpose and therefore should not be permitted.

As this Court has pointed out, a direct purchaser's antitrust injury is complete when that purchaser pays an illegal overcharge, and the fact that an overcharge may be passed on to subsequent purchasers is "irrelevant." Order (Doc. #54 at 17). Wyeth simply cannot defend against its conduct by trying to show that direct purchasers suffered no economic harm because they were able to "pass on" the overcharge, or were otherwise able to offset its effects. Discovery aimed at eliciting such information, therefore, should be prohibited.

## IV. CONCLUSION

For the reasons stated above, in the Memorandum in Support of Direct Purchaser Class Plaintiffs' Motion for Protective Order (Doc. #78), and in Direct Purchaser Class Plaintiffs' Memorandum in Opposition to Defendant Wyeth's Motion to Compel (Doc. # 87), the Direct Purchaser Class Plaintiffs respectfully request that their Motion for Protective Order be granted,

12

and that defendant Wyeth's Motion to Compel be denied.

Dated: March 8, 2004                    Respectfully Submitted,

/s/ Theresa L. Groh                    .
Theresa L. Groh
**MURDOCK GOLDENBERG**
  **SCHNEIDER & GROH, L.P.A.**
700 Walnut Street, Suite 400
Cincinnati, OH 45202-2011
Tel: (513) 345-8291
Fax: (513) 345-8294
*Local Counsel for Direct Purchaser Class*

Eugene A. Spector
Jay S. Cohen
**SPECTOR ROSEMAN & KODROFF, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
*Co-Lead Counsel for Direct Purchaser Class*

H. Laddie Montague, Jr.
Ruthanne Gordon
David F. Sorensen
Eric L. Cramer
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
*Co-Lead Counsel for Direct Purchaser Plaintiffs*

Barry S. Taus
Jan Bartelli
**GARWIN BRONZAFT GERSTEIN**
  **& FISHER, L.L.P.**
1501 Broadway, Suite 1416
New York, NY 10036
Tel.: (212) 398-0055
Fax: (212) 764-6620
*Co-Lead Counsel for Direct Purchaser Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Direct Purchaser Class Plaintiffs' Reply Memorandum In Support Of Their Motion For Protective Order has been served this 8th day of March, 2004, as follows:

*VIA OVERNIGHT DELIVERY*
William J. Baer, Esquire
David S. Eggert, Esquire
ARNOLD & PORTER
Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, D.C.  20004

Dan K. Webb, Esquire
W. Gordon Dobie Esquire
Peggy M. Balesteri, Esquire
WINSTON & STRAWN
35 West Wacker Drive
Chicago, IL  60601

Steven S. Shadowen, Esquire
Gordon A. Einhorn, Esquire
HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700
Harrisburg, PA  17101
*Counsel for CVS and Rite Aid*

Howard Sher
Eliot G. Long
BUCHANAN INGERSOLL
1835 Market Street, 14th Floor
Philadelphia, PA  19103-2985
*Counsel for AmerisourceBergen Corporation*

Mark A. Taylor
Dennie Mouser
Wal-Mart Legal Department
702 S.W. 8th Street
Bentonville, AK  72716-0215
*Counsel for Wal-Mart Stores, Inc.*

Ronald D. Lefton
GREENBERG TRAURIG
Met Life Building
200 Park Avenue
New York, N.Y.  10166
*Counsel for Wal-Mart Stores, Inc.*

Anthony J. Viola
EDWARDS & ANGELL, LLP
750 Lexington Avenue
New York, N.Y. 10022
*Counsel for Quality King Distributors, Inc.*

Peter K. Huston
LATHAM & WATKINS, LLP
515 Montgomery Street, Suite 1900
San Francisco, CA  94111-2562
*Counsel for McKesson Corporation*

Thomas L. Long
BAKER & HOSTETLER, LLP
Capitol Square, Suite 2100
65 East State Street
Columbus, OH  43215-4260
*Counsel for Cardinal Health, Inc.*

                                              /s/ Theresa L. Groh                          .
                                              Theresa L. Groh