IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| J.B.D.L. Corp. d/b/a<br>BECKETT APOTHECARY, et al., | Civil Action No. C-1-01-704 |
| Plaintiffs, | Judge Sandra S. Beckwith<br>Magistrate Judge Timothy S. Hogan |
| v. | |
| WYETH-AYERST LABORATORIES, INC.,<br>  et al., | |
| Defendants. | |

## WYETH'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY AND BRIEF IN OPPOSITION TO CROSS MOTIONS TO MODIFY OR QUASH SUBPOENAS

Defendant Wyeth respectfully submits this combined (1) reply brief in support of its motion to compel discovery from AmerisourceBergen Corporation ("ABC") and Cardinal Health, Inc. ("Cardinal") and (2) brief in opposition to the cross motions filed by ABC and Cardinal, seeking to modify or quash the subpoenas *duces tecum* and *ad testificandum* served upon them by Wyeth.

The issue before this Court is simply whether information regarding the speculative purchasing practices of large wholesalers such as ABC and Cardinal is discoverable. It clearly is. ABC and Cardinal are two of Wyeth's largest Premarin customers, accounting for nearly half (48%) of all class purchases of Premarin. Wyeth served narrowly tailored document requests seeking critically important information (not in the possession of the class representatives) relating directly to a central issue in this litigation, whether Wyeth's allegedly unlawful contracts led to anticompetitive price

increases. Notably, McKesson and Quality King, the other two wholesalers subpoenaed by Wyeth, have agreed to comply with Wyeth's subpoenas, including producing the very "downstream discovery" objected to by ABC and Cardinal herein.

The issue of whether such information should be admissible at trial will presumably be resolved by Judge Beckwith in pretrial proceedings, if plaintiffs persist in contending that such evidence is not admissible. Wyeth does not seek speculative purchasing information to reduce the damages that plaintiffs might be able to recover *if* they prove that Wyeth engaged in illegal pricing practices. That is all that *Hanover Shoe* prohibits; under *Hanover Shoe,* if a price is illegal, it is not a defense to argue that a customer passed on the illegal price overcharge to its own customers. But that is not the basis for Wyeth's discovery requests here.

Rather, Wyeth seeks information on speculative purchasing to establish that Wyeth's prices *are not illegal at all*, but rather are the product of legitimate, competitive market forces – including the willingness of large wholesalers to accept such price increases as part of their own business model. In short, such speculative purchasing information is critical to resolving the threshold issue of liability (i.e., whether Wyeth's price is illegal), and not the secondary issue of whether plaintiffs can recover damages if they "passed on" an illegal price. This information is unquestionably relevant, unquestionably discoverable, and unquestionably outside the scope of any bar erected by *Hanover Shoe*.

Plaintiffs' refusal to provide the limited discovery requested by Wyeth is particularly egregious in light of the expansive discovery provided by Wyeth in this (and the related *Duramed*) litigation. To date, Wyeth has produced over 700,000 pages of

documents and 12 company witnesses for deposition. Despite reaping the benefits of Wyeth's generous discovery, plaintiffs are attempting to block Wyeth's eminently reasonable requests for important discovery from two of the largest members of the class. Nor can Wyeth obtain this discovery from the class representatives, as they clearly do not possess the requested information. Plaintiffs should not be permitted to use discovery, as they are attempting to do, as both a sword and a shield.

## ARGUMENT

I.  **WYETH'S DISCOVERY REQUESTS SEEK INFORMATION DIRECTLY RELEVANT TO KEY ISSUES IN THIS LITIGATION**

    As Wyeth demonstrated in its opening brief:

    - Because plaintiffs allege that Wyeth's so-called "exclusive" contracts with managed care organizations caused an artificial inflation of Premarin list prices, the factors behind Wyeth's pricing decisions are a central *liability* issue in this class action. Wyeth will prove that its prices were not artificially increased by such contracts.

    - The requested discovery is directly relevant to this central liability issue, as Wyeth intends to prove that the "speculative purchasing" practices of Wyeth's largest customers (including ABC and Cardinal) and the benefit to such customers from Wyeth's price increases were understood by Wyeth. Wyeth knew that its largest customers such as ABC and Cardinal would not object to its price increases because they strategically rely upon manufacturer price increases to enhance their profits.

    - Furthermore, plaintiffs' claims in this case are subject to the antitrust "rule of reason," in which the fact-finder must weigh "all the circumstances" surrounding the allegedly anticompetitive conduct to determine whether defendant's conduct had a net adverse effect on competition in the relevant market. *Ezzo's Investments, Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980, 986 (6th Cir. 2001) (quoting *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 723 (1988)). As part of this rule of reason analysis, Wyeth is clearly entitled to discover evidence, including evidence of speculative purchasing practices that will show that Wyeth's price increases were not caused by the allegedly unlawful contracts.

    - Consistent with Fed. R. Civ. P. 23 (c), when Judge Beckwith certified a class in this case, she made clear that the class could be "amended" or "decertified."

>in the future.  Wyeth believes that, once the record in this case is complete, it will be clear that large wholesalers who engage in speculative purchasing have interests that conflict with the interests of the named plaintiffs, and that the class should be de-certified.  The evidence of speculative purchasing is thus critical to this key issue, as well.

The cases cited in Wyeth's opening brief confirm that the discovery sought by Wyeth is permissible.  *See* Wyeth's Mot. to Compel Br. at 14-16 (discussing *In re Infant Formula Antitrust Litigation*, MDL 878 at 7-8 (N.D. Fla. January 15, 1992); *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (3d Cir. 11th Cir. 2003); *Blue Cross of New Jersey, Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357 (E.D.N.Y. 2001)).  Wyeth is entitled to discover the information that will help it to establish its defense.  Indeed, it would be fundamentally unfair to deny Wyeth's discovery relating to the key issue of whether the allegedly unlawful contracts led to anticompetitive price increases, particularly given the focused nature of Wyeth's requests, the significant share of all class purchases accounted for by ABC and Cardinal, and the lack of any undue burden imposed on plaintiffs.

Instead of directly addressing the merits of the arguments in Wyeth's motion to compel, class plaintiffs (as well as ABC and Cardinal) continue to argue that *Hanover Shoe v. United Shoe Machinery Corp*, 392 U.S. 720 (1977) bars the requested discovery.  As discussed in detail in Wyeth's opening brief, *Hanover Shoe* is inapplicable; Wyeth is not seeking discovery for the purpose of establishing a "pass on" defense.  *See* Mot. to Compel Br. at 14-16.  Wyeth does not argue that *if a price increase is illegal*, Wyeth can reduce the damages recoverable by class members by showing that they passed on some or all of that price increase.  Rather, Wyeth seeks to prove that *there was no illegal price increase at all*, as its list price increases resulted from lawful market factors that are

- 4 -

unrelated to the contracts that plaintiffs are attacking. This is a key liability – not damages – issue to which *Hanover Shoe* simply does not apply.

Nor do any of the other cases cited by plaintiffs suggest that *Hanover Shoe* bars the requested discovery.[1] *In re Polyester Staple Antitrust Litigation*, MDL No. 3:03CV1516 (W.D.N.C. Feb. 5, 2004), involved allegations of price-fixing and customer-allocation subject to *per se* analysis under the antitrust laws. Defendants claimed that the requested downstream sales and profit data were "necessary in establishing that Plaintiffs have not *suffered any injury* from the alleged conspiracy." *Id*. at 5 (emphasis added). The court rejected this argument, noting that injury "may be presumed in antitrust cases involving a conspiracy to fix prices or allocate customers." *Id*. at 4-5.

This case, however, does not involve *per se* price-fixing claims where injury is "presumed"; moreover, Wyeth does not seek speculative purchasing information for the purpose of proving that plaintiffs were not "injured" by an unlawful price increase. Rather, Wyeth seeks such information to prove that the contracts in question did not cause artificially high prices, i.e., the prices were not unlawful in the first place. *See* Wyeth's Mot. to Compel Br. at 12 & n.18.[2] Thus, the *Polyester* case does not support the argument that *Hanover Shoe* bars discovery of speculative purchasing information here. In fact, the *Polyester* case supports Wyeth's alternative grounds for seeking such

---

[1]   *See* Pls.' Opp. at 3 & n.3 (listing cases).

[2]   The *Polyester* court also found that defendants' requests would "impose an unimaginable and heavy burden in terms of both time and expense on Plaintiffs," and that such burden would "far outweigh" the benefits of the requested discovery. *See id.* at 9 & nn. 9&10. By contrast, plaintiffs here do not – and cannot – demonstrate that Wyeth's discovery is unduly burdensome, as Wyeth's subpoenas are limited to only a few class

[Footnote is continued on next page]

discovery – i.e., that "downstream" discovery is permissible where, as here, the discovery is directed at establishing a "fundamental" conflict between class members. *See id*. at 7-8 (noting that *Valley Drug* "stands for the proposition that 'downstream' data may be relevant to the issue of class certification in certain cases").[3]

Plaintiffs also argue, without case support, that Wyeth is precluded from obtaining such relevant discovery because (a) it can obtain similar information from its own files or public sources, and (b) it is required to come forward with evidence supporting its speculative purchasing claims before it is entitled to obtain discovery relating to such claims. Neither argument can withstand analysis.

There is no requirement in the Federal Rules of Civil Procedure that discovery be limited to information that is available only from the opposing party; when discovery requests are not unduly burdensome – as Wyeth's are not – it is perfectly appropriate (and routine) for parties to seek evidence through discovery to support their claims or defenses. *See, e.g.*, *St. Paul Reinsurance Co. v. Commercial Financial Group*, 198 F.R.D. 508, 514 (N.D. Iowa 2000) ("courts have unambiguously stated that this exact objection [based on the ground that the requests sought information and documents equally available to the defendant] is insufficient to resist a discovery request"); *City*

---

[Footnote continued from previous page]

members and are narrowly tailored to seek information that is directly relevant to a central issue in this case.

[3]   The remaining cases cited by plaintiffs in their opposition brief have already been distinguished in Wyeth's opposition to plaintiffs' motion for protective order. *See* Wyeth's Opp. Br. at 5-6. None of these cases suggests that *Hanover Shoe* bars discovery of "downstream" pricing where, as here, such pricing is relevant to issues other than a "pass on" defense.

*Consumer Services v. Horne*, 100 F.R.D. 740, 747 (D. Utah 1983) (stating that it is "not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record"); *Associated Wholesale Grocers, Inc. v. U.S.*, 1989 WL 110300, at *3 (D. Kan. 1989) (stating that argument of equal accessibility is not sufficient to resist discovery). Plaintiffs simply are in no position to determine how much discovery Wyeth is entitled to, and, in particular, whether information available from public sources or Wyeth's own files is sufficient to meet Wyeth's discovery needs. In any event, much of the information about wholesalers' speculative purchasing practices are available only from the files of these wholesalers.

Likewise, there is no requirement in the Federal Rules of Civil Procedure that a defendant must provide proof of its substantive defenses in order to obtain discovery supporting such defenses. *See*, *e.g.*, *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) ("the [federal] rules generally do not place any initial burden on parties to justify their deposition and discovery requests"); *Infant Formula*, MDL 878, at 7-8 ("[i]t is not necessary that [defendant's theory] be proven valid before discovery thereon will be allowed."); 8 Charles A. Wright et al., *Federal Practice and Procedure* § 2008 (2d ed. 1994) ("Discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient"). Indeed, any such requirement would be illogical. In any case, Wyeth certainly has demonstrated (and ABC and Cardinal have themselves acknowledged) that many of its largest customers including members of the class do in fact engage in speculative purchasing. *See* Wyeth's Mot. to Compel Br. at 9-10.

At trial, Wyeth intends to present evidence that the speculative purchasing practices of its largest customers (including ABC and Cardinal), and these customers' willingness to accept list price increases, influence its pricing decisions. As Wyeth's Vice President for Global Pricing, Forecasting and Contracting recently testified, "wholesalers [who purchased Premarin directly from Wyeth] were very happy with the price increases [implemented by Wyeth] because their inventory automatically appreciated by the amount that we took our price increase and that was profit for the wholesalers." *See* Exhibit 1 (Raymond Tiedemann Deposition at 242). To develop this defense, Wyeth has diligently searched public records and cited evidence that wholesalers do in fact engage in speculative purchasing practices and do rely in part upon such practices to maintain profitability. Wyeth believes that the discovery sought from ABC and Cardinal herein will buttress its arguments, corroborate evidence from other sources, and substantiate a key defense in this case.[4] Wyeth should not be foreclosed from discovering first-hand information needed to develop this important, and clearly relevant, defense.

## II.     ABC AND CARDINAL ARE NOT IMMUNE FROM DISCOVERY SIMPLY BECAUSE THEY ARE CLASS MEMBERS

Wyeth served limited, focused document and deposition subpoenas on a handful of class members, who account for almost half of the entire class' purchases of Premarin.

---

[4] For example, in a 2003 meeting with Wyeth, Cardinal "stressed the importance of speculative purchasing with respect to its Wyeth business", and "noted that it realized a 2.5% profit margin on Wyeth's human pharmaceuticals, which was attributable to buy-ins and investment purchasing." Exhibit 2 (Declaration of John Trzaskalski at ¶ 6). Similarly, ABC noted, in a November 2002 meeting with Wyeth, that "Wyeth's product line, including Premarin, was very profitable for ABC because of the frequency and size of Wyeth's list price increases." *Id*. at ¶ 5.

The subpoenas sought information that is not in the named plaintiffs' possession. As discussed in Wyeth's opening brief and its opposition to plaintiffs' motion for protective order, numerous courts have upheld the propriety of such discovery from class members. *See* Mot. to Compel Br. at 4; Wyeth's Opp. Br. at 10-11.

ABC and Cardinal have failed to make any showing that Wyeth's discovery would be "unduly burdensome." Despite plaintiffs' efforts to mischaracterize Wyeth's document requests as seeking broad "individualized downstream discovery" (Pls.' Br. at 2), Wyeth's requests are actually focused on plaintiffs' purchases *from Wyeth*, and not on the details of their sales to "downstream" customers.

ABC and Cardinal have also refused to produce any witnesses in response to any of Wyeth's deposition subpoenas. Given the numerous cases upholding the propriety of discovery from class members, this extreme position is simply untenable. Nor is this position justified in any way by *Hanover Shoe*, as both ABC and Cardinal refuse to produce witnesses to testify about any topics, even those unrelated to the so-called "downstream discovery" issues.[5]

Finally, ABC argues that its Chief Executive Officer, David Yost, should not be subject to deposition at all. Yet it is clear that Mr. Yost possesses information that is relevant to the issue of speculative purchasing. At a November 2002 meeting with Wyeth, "Mr. Yost stated that Wyeth had been a good partner to ABC and that Wyeth's product line, including Premarin, was very profitable for ABC because of the frequency

---

[5] For example, Wyeth's subpoenas to ABC and Cardinal include topics such as the prices paid for Premarin during the class period, and the extent of injuries allegedly caused by Wyeth's conduct.

and size of Wyeth's list price increases." *See* Exhibit 2 (Declaration of John Trzaskalski at ¶ 5). It was evident to Mr. Trzaskalski and others in attendance for Wyeth that Mr. Yost was referring to ABC's speculative purchasing practices, which allowed ABC to generate profits by purchasing substantial quantities of Wyeth's products in advance of Wyeth's list price increases. *Id.* Moreover, ABC's public filings with the Securities and Exchange Commission confirm that speculative purchasing is a core component of ABC's business model. For example, in its 2001 10-K, ABC noted that its increase in inventories reflected "inventory purchased to take advantage of buy-side gross profit margin opportunities associated with manufacturer price increases and negotiated deals." Thus, ABC cannot reasonably dispute that Mr. Yost is well positioned to testify about this topic.[6]

The fact that Mr. Yost is a high-level executive with a busy schedule does not render him immune to deposition when he is likely to have relevant, discoverable information. *See Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (granting motion to compel deposition of CEO and executives despite argument that deponents are high-level executives with busy schedules); *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 205 FRD 535 (S.D. Indiana 2002) (same); *Travelers Rental Co. v. Ford Motor Co.*, 116 FRD 140 (D. Mass. 1987); *Less v. Taber Instrument Corp.*, 53 F.R.D. 645 (W.D.N.Y. 1971)

---

[6] Cardinal's motion to quash Wyeth's deposition subpoenas is similarly baseless in light of the fact that senior Cardinal executives "stressed the importance of speculative purchasing with respect to its Wyeth business" in a 2003 meeting with Wyeth. Exhibit 2 (Declaration of John Trzaskalski at ¶ 6). At the same meeting, Cardinal noted that "it realized a 2.5% profit margin on Wyeth's human pharmaceuticals, which was attributable to buy-ins and investment purchasing." *Id*.

(same). Indeed, Wyeth has produced numerous senior executives for deposition in this (and the related *Duramed*) litigation, despite their extremely busy schedules, including Joseph Mahady (President, Wyeth Pharmaceuticals North America), Raymond Tiedemann (Vice President for Global Pricing, Forecasting and Contracting ), Robert Repella (Vice President and Global Business Manager), and Walter Dymarczyk (Vice President, Healthcare Systems Marketing and Development). There is no basis for ABC's refusal to make Mr. Yost available for deposition.

## CONCLUSION

Wyeth has a compelling need for the discovery requested from ABC and Cardinal, two of Wyeth's largest Premarin customers (accounting for nearly half of all class purchases of Premarin). Wyeth's targeted document requests seek critically important information (not in the possession of the class representatives) relating directly to a central issue in this litigation, whether Wyeth's allegedly unlawful contracts led to anticompetitive price increases. *Hanover Shoe* deals with admissibility of evidence, not discovery. Moreover, *Hanover Shoe* is clearly inapplicable in situations where, as here, a defendant seeks so-called "downstream" discovery for reasons *other than* to establish a "pass on" defense. For the reasons discussed herein and in Wyeth's motion to compel, Wyeth respectfully requests that its motion to compel be granted and that ABC's and Cardinal's cross motions and direct purchaser class plaintiffs' motion for protective order be denied.

Respectfully submitted,

s/*Grant S. Cowan*
James R. Adams  (0008253)
Grant S. Cowan   (0029667)
**FROST BROWN TODD LLC**
2200 PNC Center
201 E. Fifth Street
Cincinnati, Ohio  45202-4182

William J. Baer
David S. Eggert
**ARNOLD & PORTER LLP**
555 Twelfth Street, N.W.
Washington, D.C.  20004-1206
(202) 942-5000

Dan K. Webb
W. Gordon Dobie
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois  60601-9703
(312) 558-5600

Counsel for Defendants

Dated:  March 19, 2004

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a copy of the foregoing has been served electronically this 19th day of March, 2004 on all Counsel of Record with the CM/ECF Registration and by U.S. mail, postage prepaid and Facsimile upon the following:

    Eliot Long, Esq.
    **BUCHANAN INGERSOLL**
    1835 Market Street, 14th Floor
    Philadelphia, PA  19103-2985
    Facsimile: 215-665-8760

                                              s/*Grant S. Cowan*
                                              Grant S. Cowan
                                              Frost Brown Todd LLC