UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| J.B.D.L. CORP., d/b/a/ BECKETT APOTHECARY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WYETH-AYERST LABORATORIES, INC., et al., <br><br> Defendants. | ) ) ) ) ) ) ) Civil Action No. C-1-01-704 ) ) ) ) ) ) ) |

### DECLARATION OF JOHN TRZASKALSKI

1. My name is John Trzaskalski and I currently serve as Executive Director of Customer Operations for Wyeth Pharmaceuticals ("Wyeth"). I have been in this position since 1996. My primary responsibilities in this position include maintaining sales with our all direct customers (including wholesalers and retail pharmacies), seeking efficiencies in our systems and our customers that benefit both parties, and acting as a liaison between our direct customers and Wyeth management.

2. Based on my experience at Wyeth, including several discussions that I have had with representatives of various wholesalers, I am aware that wholesalers have for many years engaged in a practice known in the pharmaceutical industry as "speculative purchasing" or "investment purchasing." Speculative purchasing (or investment purchasing) refers to a practice whereby wholesalers purchase large quantities of pharmaceutical products at existing prices in anticipation of future price increases. By purchasing products in advance of the price increases, wholesalers are able to generate

1

substantial profits by re-selling the products to their customers after a manufacturer list price increase at prices that reflect the new (and higher) manufacturer list prices.

3.  My understanding is that most of Wyeth's large wholesalers have come to rely upon profits earned through speculative purchasing, particularly because profits earned through the traditional wholesale business model – percentage mark-ups to the list prices paid to manufacturers – have largely disappeared over time. Many of Wyeth's large wholesaler customers actually sell our products to some of their customers at resale prices below Wyeth's list prices. For example, I am aware of wholesalers selling products to large retailers for as much as 3.5% below list price. Wholesalers simply could not earn profits on such sales in the absence of speculative purchasing (even if they receive the 2% discount to list price Wyeth offers for timely payment).

4.  In my experience at Wyeth, I have never heard of a wholesale customer complaining about a list price increase by Wyeth. This is not surprising to me because, as mentioned above, wholesalers actually rely upon our price increases to generate profits through their speculative purchasing practices.

5.  I attended a top-to-top meeting in November 2002 at Wyeth's offices in Radnor, Pennsylvania with AmerisourceBergen Corporation ("ABC"), one of Wyeth's largest wholesaler customers which purchased approximately $1.2 billion of products from Wyeth in 2003. David Yost (then and now CEO of ABC) and others attended this meeting on behalf of ABC. At this meeting, Mr. Yost stated that Wyeth had been a good partner to ABC and that Wyeth's product line, including Premarin, was very profitable for ABC because of the frequency and size of Wyeth's list price increases. It was evident to me that Mr. Yost and his colleagues were referring to ABC's speculative purchasing

practices, which allowed ABC to generate profits by purchasing substantial quantities of Wyeth's products in advance of Wyeth's list price increases.

6. In approximately October 2003 I attended a meeting in Dublin, Ohio with Cardinal Health, Inc. ("Cardinal"). Cardinal is another large wholesaler customer of Wyeth, with annual purchases from Wyeth of approximately $1.3 billion. Mike Kauffman (Executive VP of Purchasing), Jim Scott (Senior VP of Purchasing), and others attended this meeting on behalf of Cardinal. At this meeting, Cardinal stressed the importance of speculative purchasing with respect to its Wyeth business. In particular, Cardinal noted that it realized a 2.5% profit margin on Wyeth's human pharmaceuticals, which was attributable to buy-ins and investment purchasing.

7. I declare under penalty of perjury under the laws of the United States, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on March 11, 2004.

*John Trzaskalski* /(e)
John Trzaskalski