UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **J.B.D.L. CORP. D/B/A** | **CASE NO. C-1-01-704** |
| **BECKETT APOTHECARY, ET AL.** | **(BECKWITH, J.)** |
|     **PLAINTIFFS** | **(HOGAN, M.J.)** |
| | |
| VS. | |
| | |
| **WYETH-AYERST LABORATORIES, INC.,** | |
| **ET AL.,** | |
|     **DEFENDANTS** | |

**ORDER**

Before the Court are Wyeth's Motion to Compel the Production of Documents from Cardinal Health, Inc. and Amerisource Bergen Corp. (Doc. 77), Wyeth's Motion to Compel the Production of Documents from CVS Meridian, Inc. and Rite Aid Corp. (Doc. 91), Direct Purchaser Class Plaintiffs' Memorandum in Opposition (Doc. 87), Plaintiffs' Memorandum in Opposition to Wyeth's Motion to Compel the Production of Documents from CVS Meridian, Inc. and Rite Aid Corporation (Doc. 98), Wyeth's Reply Brief in Support of its Motion to Compel Discovery (Doc. 97), and Wyeth's Reply Brief in Support of its Motion to Compel the Production of Documents from CVS and Rite Aid (Doc. 100). Also before the Court are Direct Purchaser Class Plaintiffs' Motion for a Protective Order (Doc. 78), Wyeth's Opposition to Direct Purchaser Class Plaintiffs' Motion for a Protective Order (82) and Direct Purchaser Class Plaintiffs' Reply Memorandum in Support of Their Motion for a Protective Order (Doc. 92). Also before the Court are Absent Class Member Amerisource Bergen's Cross-Motion to Modify Wyeth's Subpoena Duces Tecum and to Quash Subpoenas Ad Testificandum (Doc. 86), Absent Class Member Cardinal Health's Cross-Motion to Modify Wyeth's Subpoena Duces Tecum and to Quash Subpoenas Ad Testificandum (Doc. 88), and Wyeth's Brief in Opposition to Cross-Motions to Modify or Quash Subpoenas (Doc. 97)

**BACKGROUND INFORMATION**

This is an anti-trust case. Wyeth is the manufacturer of a drug called Premarin. Plaintiffs allege that they have been damaged as a result of being compelled to pay inflated prices for Premarin because of Wyeth's alleged exclusionary contracts with certain managed care organizations called MCOs. It is alleged that sales of a competing drug, Cenestin, were thwarted by Wyeth's exclusionary contracts. Thus Plaintiffs' basic argument is that the contracts themselves violate Section 2 of the Sherman Act and incorporate illegal pricing practices. Wyeth seeks information on speculative purchasing to establish that its pricing is the result of competitive market forces. Wyeth alleges, among other things, that Plaintiff's inability to compete is caused by certain internal inefficiencies and because the price charged for Premarin is the product of down stream market manipulations by the Plaintiffs themselves. Wyeth, in other words, accuses Plaintiffs of "speculative purchasing," a practice whereby wholesalers stockpile products in anticipation of price increases by manufacturers and then make money by raising retail prices when manufacturers implement their price increases. Thus Wyeth seeks discovery from Cardinal Health and Amerisource Bergen, two wholesalers and direct purchasers, but absent class members, because they "are responsible for nearly half (48%) of all Premarin purchases for the entire class during the class period." It was represented that similar requests for discovery documents were made to McKesson Corp. and Quality King Distributors, Inc., both of which complied. Cardinal and Amerisource Bergen have not complied, thus the reason for Wyeth's Motion.

Wyeth also seeks document discovery from CVS and Rite Aid, two major retail pharmacy chains that opted out of the direct purchaser class action. Since the law firm of Hangley, Aronchick, Segal & Pudlin had represented Wyeth in a prior matter and have filed this action against Wyeth on behalf of CVS and Rite Aid, Wyeth seeks document discovery relevant to its conflict-of-interest theory. Wyeth also seeks document discovery from CVS and Rite Aid relative to the formulary status of Cenestin, the extent to which Cenestin prescriptions were reimbursed by managed care organizations and the extent to which Cenestin was subjected to higher co-payments by ultimate consumers of the product.

Lastly, Wyeth seeks document discovery from CVS and Rite Aid relative to hormone therapy products other than Premarin and Cenestin and documentation of rebate agreements that these pharmacies have with health maintenance organizations.

Taking a different route to the same goal, Wyeth has issued subpoenas duces tecum and ad

testificandum to Amerisource Bergen, Cardinal Health, Rite Aid and CVS. The subpoenaed entities have filed Motions for Protective Orders and to Quash subpoenas. The same arguments support the parties' positions with respect to these Motions as discussed under Wyeth's Motions to Compel.

## WYETH'S ARGUMENT

Cardinal and Amerisource Bergen have cited *Hanover Shoe v. United Shoe Machinery*, 392 U.S. 481 (1968), a case they say prohibits Wyeth's discovery overture. Wyeth argues that while the *Hanover* case held that a "pass on" defense is not permitted to a price-fixing claim, it did not deal with discovery aspects. Thus Wyeth seeks documents relating to Cardinal and Amerisource Bergen's use of business models that rely on regular price increases and are convinced that such models exist because of public filings by those companies whereby they admit to "high levels of inventory." Instead, Wyeth relies upon *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003), a decision which permitted downstream discovery.

Wyeth argues that the discovery sought is relevant to the issues in the case because its list prices were unaffected by its contracts with the MCOs and that increased competition between Wyeth and other manufacturers would not lead to lower list prices for direct purchasers. Wyeth also seeks the disputed documents to show that the named class representatives profited from the alleged exclusive contracts and that a potential conflict with other class members exists.

Wyeth also seeks discovery from CVS and Rite Aid in a number of respects. Wyeth seeks discovery of documents relating to the conflict of interest that CVS and Rite Aid's lawyer, Steve D. Shadowen, Esq., allegedly has because of his prior representation of Wyeth in contract matters. Wyeth points out that CVS and Rite Aid's objection to that discovery is not based on either relevance or privilege, but is merits based. Perhaps Wyeth's best argument is that it never executed a written waiver of the conflict, nor did it agree to Hangley, Aronchick, Segal & Pudlin's "Proposal on Dealing with Potential Conflicts."

## THE ARGUMENT AGAINST THE DISCOVERY SOUGHT

Direct Purchaser Class Plaintiffs argue that if Wyeth set its list prices for Premarin by considering the downstream practices of wholesalers, Wyeth would possess all the information it

needs to demonstrate how its prices were set. Direct Purchaser Class Plaintiffs also argue that a direct purchaser's antitrust injury is complete when that purchaser pays an illegal overcharge. The fact that the overcharge may be "passed on" is irrelevant. Direct Purchaser Class Plaintiffs also argue that Judge Beckwith, in her decision certifying the class, held that there was no conflict between class representatives and other class members "if indeed some of the direct purchasers were able to recoup the overcharge through price increases passed on to other purchasers."

Plaintiffs CVS Meridian, Inc. and Rite Aid Corporation also object to Wyeth's document discovery as it affects them. CVS and Rite Aid assert that Wyeth's demand that they produce the contracts with insurance companies or MCOs (Doc. Request 25), which state how CVS or Rite Aid would be reimbursed for dispensing prescriptions for Premarin, Cenestin or other estrogen therapy products is overbroad and burdensome. CVS and Rite Aid argue that Wyeth possesses the reimbursement rates for Premarin because its own contracts would state that rate. CVS and Rite Aid argue that the relevant information about Cenestin would have been received in the *Duramed* litigation.

With respect to Document Requests 26, 27 and 29, CVS and Rite Aid state that their computer systems "do not capture and retain information where Cenestin was dispensed despite a higher co-pay" and to recall information relative to individual prescriptions from more than 7,500 stores would be a monumental and cost-prohibitive venture.

CVS and Rite Aid join the Direct Purchaser Class Plaintiffs in arguing with respect to Document requests 7-9, 11 and 17-18 that downstream data is not relevant to any defense in an antitrust case. In addition, CVS and Rite Aid cite two decisions from multi-district litigation cases which followed *Hanover Shoe*: *In re Polyester Staple Antitrust Litigation*, MDL No. 3:03-CV-1516 (W.D.N.C. Feb. 5, 2004) and *In re Folding Carton Antitrust Litigation*, MDL No. 250 (N.D. Ill. May 5, 1978). CVS and Rite Aid also argue that to the extent any of the Plaintiffs exerted pressure on Wyeth to increase prices, Wyeth would be in possession of the relevant documents.

CVS and Rite Aid agree with Wyeth's request for document discovery relative to communications between Plaintiffs and any person relative to the "price, availability, coverage or reimbursement" for both Premarin and Cenestin (Discovery Requests 5 & 10), but object to the same information for other estrogen and hormone therapy products. CVS and Rite Aid argue that the information Wyeth seeks is available from commercial data services.

CVS and Rite Aid also object to producing documents relating to the retention in this case of Hangley, Aronchick, Segal & Pudlin by CVS and Rite Aid. Wyeth retained the law firm previously to represent it in contract matters, and Plaintiffs wish to explore in discovery whether or not the firm has a conflict of interest. CVS and Rite Aid admit that the potential for a conflict of interest developed when Wyeth's former lawyer, Steve D. Shadowen, Esq., now counsel for CVS and Rite Aid, contemplated joining the law firm, but that Wyeth's in-house counsel was notified and a workable solution was agreed upon by both Wyeth and the law firm. Thus CVS and Rite Aid regard discovery efforts in this category as an unnecessary diversion into otherwise privileged matters.

CVS and Rite Aid object to Document Requests 13 and 20 dealing with rebates or discounts in connection with any product sold, based on market share exclusivity or preferential product exclusivity. The objection is primarily based on relevance, but the duo also argue that Rule of Reason analysis does not apply to Section 2 of the Sherman Act, under which this case was brought. With that latter assertion, we strongly disagree.

## DOWNSTREAM DISCOVERY

There are essentially three possible reasons why Wyeth would seek speculative purchasing information from Amerisource Bergen and Cardinal health: (1) Wyeth wants to make use of what has become known as the "pass on" defense, (2) Wyeth wants to mitigate its damages by showing that Plaintiffs' caused a portion of their own loss by speculative purchasing or (3) Wyeth wants to show that its own price setting was the result and not the cause of downstream speculative purchasing. Plaintiffs argue that all three of Wyeth's overtures are precluded by the *Hanover* case. Wyeth agrees that the first two reasons are precluded by *Hanover*, but asserts that it is pursuing rationale #3, a position not precluded by the *Hanover* case. We agree. This is the antitrust version of which is first, the chicken or the egg. The question is, as we see it, what caused the price increases, Wyeth's contracts with managed care organizations or the speculative purchasing practices of Wyeth's customers. The second question is whether or not the price increases were anti-competitive. The fact finders need to know how and why Wyeth determined its allegedly noncompetitive price. It also makes sense to us, as recognized by the decision in *In re Vitamins Antitrust Litigation*, 198 F.R.D. 296 (D.C.D.C. 2000), that Wyeth has possession of the facts which allowed it to set its price for Premarin; however, corroboration of those facts from

Amerisource Bergen and Cardinal is a legitimate end to be pursued via discovery. We also understand that an antitrust injury is complete when the direct purchaser pays an illegal overcharge and whether or not the illegal overcharge was "passed on" to indirect purchasers is irrelevant. However, to apply the principle of law just mentioned, one has to first determine that the overcharge is illegal and that cannot be done at this stage of the case. We believe the information sought from Amerisource Bergen and Cardinal is relevant to the liability issue and not precluded by *Hanover,* which was a decision on the merits and not a decision clarifying the requirements of or setting limitations on discovery permitted by Rule 26(b)(1). Put another way, we believe that whether the indirect purchasers were passive victims of price increases or active promoters of such activity is an important issue in this case.

The problem for Wyeth, however, is that neither Amerisource Bergen nor Cardinal are class representatives, but absent class members, and for the Court to compel discovery by them requires that the burden or expense of making discovery outweigh the benefit to Wyeth. There is no doubt that the Document Requests submitted by Wyeth are extensive and that the expense in complying with these Requests would be considerable. When weighing the benefit to Wyeth against the time and expense required for Amerisource Bergen and Cardinal to comply, taking into consideration that Wyeth has in its possession the facts it claims justifies the setting of its own price and is seeking corroboration of those facts from absent class members, we believe the fulcrum tips in favor of Amerisource Bergen and Cardinal, notwithstanding the fact that they are large wholesalers. Discovery from absent members of a class should be sharply limited and allowed only on a strong showing of justification. See Manual for Complex Litigation, Section 30.232 (3d ed. 2000). Therefore, neither Amerisource Bergen nor Cardinal are required to produce the discovery sought by Wyeth's Document Requests 2-4, 6, 8, 9, 12, 13 and 17. See *In re Polyester Staple Litigation,* MDL No. 3:03CV1516 (W. D. N. C., February 5, 2004).

The next issue to be resolved is whether or not CVS and Rite Aid should comply with Wyeth's Document Requests Nos. 7-9, 11, 17 and 18, the Document Requests that deal with downstream speculative purchasing practices. Wyeth cites *In re Formula Antitrust Litigation*, MDL 878 (N.D. Fla. 1992) in support of its claim that such downstream discovery should be permitted. CVS and Rite Aid counter with *In re Polyester Staple Antitrust Litigation*, MDL No. 3:03-CV-1516 (W.D.N.C. Feb. 5, 2004) and *In re Folding Carton Antitrust Litigation*, No. MDL 250 (N.D. Ill. May 5, 1978). In the *Polyester Staple* case, the purpose of the downstream

discovery was to show that "Plaintiffs have not suffered any injury from the alleged conspiracy." Judge Vorhees reasoned that since the measure of damages was the difference between the price paid and the fair market price under natural conditions, that the amount of damages was established at the point of sale between the direct purchaser and the manufacturer. Similarly in the *Folding Carton* case, the decision of a two-judge panel denied the type of information sought by Wyeth in this case because the defendants in *Folding Carton* advanced three reasons for permitting the discovery, none of which were the reason advanced by Wyeth here. Wyeth's theory is that its price was not fixed by what its opponents call "exclusive contracts" with HMOs, but was the result of market forces, one of which was downstream speculation by its customers.

We see no reason why Wyeth's Document Requests directed to CVS and Rite Aid should not be compelled. CVS and Rite Aid elected to opt out of the class, have sued Wyeth directly and Wyeth's Document Requests are not as restricted as are its Document Requests which are directed to absent class members, Amerisource Bergen and Cardinal. CVS and Rite Aid shall respond to Wyeth's Document Requests Nos. 7-9, 11, 17 and 18.

### HANGLEY ARONCHICK & ATTORNEY-CLIENT PRIVILEGE

Wyeth also seeks document discovery from the Rite Aid and CVS as a possible prelude to a Motion to Disqualify Counsel on the basis that: (1) Hangley Aronchick, Rite Aid's and CVS' lawyers, had represented Wyeth in the past, (2) Hangley Aronchick negotiated with lawyer, Steve D. Shadowen, who had represented clients adverse to Wyeth in the past, (3) Hangley Aronchick accepted Shadowen as a member of the Hangley Aronchick firm and (4) Wyeth then found itself a defendant in this law suit in which a party adverse to Wyeth is represented by Mr. Shadowen and the Hangley Aronchick firm. Wyeth believes that the law firm was preparing a suit against it while serving as its counsel or learned incriminating evidence about Wyeth in the context of an attorney-client relationship. In order to bring this hypothetical into the realm of reality, Wyeth proposed document discovery, in the form of billing records and retainer agreements, to Rite Aid and CVS, both of which have objected to the discovery on the basis of the work product and attorney-client privileges. In addition, Rite Aid and CVS mount a merits defense to an anticipated Motion to Disqualify. Oddly, neither submits either a written waiver of the conflict or any written proof that Hangley Aronchick's proposal for resolution of the conflict was accepted.

This Court holds that neither privilege applies to the business records that Wyeth

seeks. See *Humphreys, Hutcheson & Mosley v. Donovan*, 755 F.2d 1211 (6th Cir. 1985). In the event that there are, in fact, privileged disclosures on the face of the requested documents, Rite Aid and CVS may redact the privileged information, but must produce it. CVS and Rite Aid must respond to Wyeth's Document Requests 1-3.

### CVS & RITE AID'S INDIVIDUAL TRANSACTIONS WITH CONSUMERS

Wyeth requests the production of ultimate consumer records with the pharmacies and the contracts between managed care organizations and the pharmacies. Wyeth is looking for records showing co-payments made for Premarin and Cenestin purchases, as well as records showing rebates to the pharmacies. The purpose of the request for individual records and the contracts is the same, to dispel the theory that Cenestin did not appear on the pharmacy formularies and when it was dispensed, the customer had to pay full cost and the pharmacy received no rebate from the managed care organization. Rite Aid and CVS represent that they have approximately 7,500 retail pharmacies and argue that to produce evidence of individual transactions would be not only burdensome, but unnecessary. We agree that the number of individual transactions would be too voluminous unless limited to a statistically valid sample, but the same cannot be true for the contracts. CVS and Rite Aid must provide the documents requested in Document Request No. 25, but shall confine the contracts to those involving Premarin and Cenestin, not other estrogen or hormone therapy products. CVS and Rite Aid need not provide evidence of individual transactions as described in Document Requests 26, 27 and 29, but instead must provide any summaries of the data requested in the aforementioned document requests or provide a statistically valid sample.

### OTHER HORMONE THERAPY PRODUCTS

In Document Requests Nos. 5 and 10, Wyeth seeks the production of all communications between CVS and Rite Aid and any person relating to the price, availability, coverage or reimbursement for all estrogen therapy and hormone therapy products and records showing their purchase of these products. The parties agree on the production of documents relating to Premarin and Cenestin, but disagree on an extension to other similar products. CVS and Rite Aid argue that the information sought by Wyeth is available from commercial data services that cater to the pharmaceutical market. Whether or not the relevant market includes other estrogen replacement

drugs, Wyeth does not assert that the information it seeks is unavailable from the commercial data services. Thus, we think that a reasonable limitation on the otherwise expansive discovery that Wyeth seeks is to limit it in this category. CVS and Rite Aid must respond to these two Document Requests with material limited to Premarin and Cenestin only.

## REBATES AND DISCOUNTS

Plaintiffs accuse Wyeth of entering into exclusive contracts with health maintenance organizations whereby incentives in the form or rebates are paid to the HMOs based on market share of Premarin or preferential positioning of Premarin on drug formularies. Wyeth argues that its competition does the same thing as do Rite Aid and CVS with regard to items sold in its stores. As Rite Aid and CVS point out, Wyeth's Document Requests (Nos. 13 and 20) are not restricted to estrogen or hormone replacement drugs, but encompasses all products sold. We agree with CVS and Rite Aid that Wyeth's request, to the extent it deals with grocery products, hardware, etc., is entirely too broad. If, as CVS and Rite Aid assert, that rebate contracts are common in the pharmaceutical industry, it would seem to us that their contracts with Wyeth's competitors and with HMOs, about which CVS and Rite Aid do not complain, would be relevant evidence in the case. We understand that whether or not a practice is anti-competitive is a question of law, but a factual baseline on the subject of acceptable industry practice would be helpful to the fact finders. Wyeth's Document Requests, to the extent they relate to estrogen or hormone replacement products, must be answered.

We do not mean to impinge on the trial judge's prerogative to state the relevant market in the context of this anti-trust case. Whether the relevant market is restricted to conjugated estrogens or includes other forms of estrogen and hormone replacement medications is a premature question. We take a broad approach at this point in the case and explain the apparent contradiction in our earlier ruling limiting discovery to Premarin and Cenestin because the data from other medications was available through national commercial data reporting entities and rebate contracts obviously are not.

## THE SUBPOENAS

Wyeth served subpoenas upon Cardinal Health, Inc., Amerisource Bergen Corp., McKesson Corp., Wal-Mart Stores, Inc., Quality King Distributors. Inc., Eckerd Corp., The

Kroger Co. and Walgreen's Co., all of which are Direct Purchasers, but absent class members. Direct Purchasers object on the basis of relevance and on the basis that discovery from absent class members should be "sharply limited." Wyeth's argument is that the information sought, the speculative purchasing practices of the Direct Purchasers, is relevant to the issue of whether or not its price increases were illegal and to the issue of whether or not some class members have a conflict of interest, the latter of which point was precluded, in our view, by Judge Beckwith's decision certifying the class. While we believe that Wyeth, a manufacturer, will find it difficult to convince the fact finder that its price was somehow determined by the practices of those to whom it sells, we cannot foreclose the use of downstream information during the discovery phase of the case on the basis of relevance. In other words, it seems much more logical that a purchaser, despite its desire to maximize profits, would be more inclined to buy low and sell high than it would to buy high and sell higher. Nevertheless, we cannot identify the factors upon which Wyeth set its price at this stage of the case and cannot say whether or not it is attempting to circumvent the bar of the "pass on" defense.

What is clear, however, is that responding by absent class members to discovery of this type is both burdensome and unjustified by Wyeth's purpose, to corroborate from its opponents, what it must be able to present directly, the basis upon which its price was determined. We understand Wyeth's argument to the contrary, that while Cardinal and Amerisource are direct purchasers, accounting for large volumes of sales, they cannot hide behind their absent-class-member status. Nevertheless, one must weigh the benefits of the anticipated discovery against the burden caused by responding to it. Because Wyeth has in its possession the factors upon which its price was based, it has no compelling need for the same information from the buyers of its wares. Therefore, Direct Purchaser's Motion for a Protective Order (Doc. 78) should be granted.

Amerisource Bergen and Cardinal Health also move the Court to modify or quash Wyeth's subpoenas duces tecum and ad testificandum (Docs. 86 and 88). The arguments for and against this type of discovery have been previously stated with respect to Document Requests. Seeking deposition testimony from absent class members is not justified and is subject to an even heavier burden. See *In re Worlds of Wonder Sec. Litig.*, 1992 WL 330411. The two Motions to Quash (Docs. 86 and 88) are granted.

**IT IS THEREFORE ORDERED THAT**:

Wyeth's Motion to Compel the Production of Documents from Cardinal Health and

Amerisource Bergen Corp. (Doc. 77) is denied.

Wyeth's Motion to Compel the Production of Documents from CVS Meridian, Inc. and Rite Aid Corp. (Doc. 91) is granted in part and denied in part consistent with this opinion.

Direct Purchaser Class Plaintiffs' Motion for a Protective Order (Doc. 78) is granted.

Absent Class Members Amerisource Bergen Corp.'s and Cardinal Health, Inc.'s Motions to Modify Wyeth's Subpoenas Duces Tecum and to Quash Subpoenas Ad Testificandum (Docs. 86 and 88) are granted.

June 7, 2004                                       s/Timothy S. Hogan
                                                   Timothy S. Hogan
                                                   United States Magistrate Judge