1994 WL 248172                                                                                                                    Page 1
(Cite as: 1994 WL 248172 (D.N.J.))

Only the Westlaw citation is currently available.

United States District Court, D. New Jersey.

EASTON & CO., Plaintiff,
v.
MUTUAL BENEFIT LIFE INSURANCE CO.;
Henry E. Kates; Shearson Lehman Brothers, Inc.;
and Ernst and Young,
Defendants.
EASTON & CO., Plaintiff,
v.
SHEARSON LEHMAN BROTHERS, INC.,
Defendant.

**CIV. Nos. 91-4012 (HLS), 92-2095 (HLS).**

May 18, 1994.

### SECOND AMENDED OPINION

PISANO, United States Magistrate Judge:

### INTRODUCTION

**\*1** This matter comes before the court upon the motion of plaintiff Easton & Co. ("Easton") for a protective order precluding defendants Ernst & Young and Shearson Lehman Brothers ("Shearson") from taking discovery of absent class members. Oral argument was heard on February 14, 1994.

### BACKGROUND

Easton, a broker and securities dealer, purchased bonds issued on or about May 3, 1991 by the DeKalb Georgia Housing Authority (the "DeKalb Bonds"). Mutual Benefit Life Insurance Co. ("Mutual") guaranteed the interest payments on the DeKalb Bonds. Defendant Henry Kates was the President, CEO, and a director of Mutual until July 16, 1991. Defendant Ernst & Young, a partnership of certified accountants which acted as Mutual's auditor, issued opinion letters for Mutual. Lehman Brothers, a division of Shearson, was the lead underwriter and seller of the DeKalb Bonds. Shearson prepared and disseminated to the investment public an Official Statement regarding the DeKalb Bonds.

On September 7, 1991, plaintiff filed a complaint ("*Easton I*") against Mutual, Henry Kates, Shearson, and Ernst & Young, claiming that the defendants knowingly disseminated inaccurate and misleading written statements regarding Mutual's guarantee and the investment risks associated with the DeKalb bonds. Specifically, Easton asserts that the defendants knew of Mutual's precarious financial situation, but failed to disclose the information in the Official Statement offering the DeKalb Bonds for sale. The *Easton I* complaint alleges that defendants violated section 10(b) of the Securities and Exchange Act of 1934 and 15 U.S.C. § 78j(b). Easton also asserts a state law negligent misrepresentation claim.

Easton filed *Easton I* on behalf of a class comprised of:
> all persons and entities who purchased DeKalb, Georgia Housing Authority Multifamily Housing Revenue Refunding Bonds (North Hill Ltd. Project), Series 1991, due November 30, 1994 (the "DeKalb Georgia Bonds") from May 3, 1991 through July 1991. Excluded from the class are defendants, subsidiaries and affiliates of the corporate and partnership defendants, and their respective principals, officers and directors, and the individual defendant and members of his immediate family, and the affiliates, heirs, successors or assignees.

(Pl.'s Br. in Supp. of Class Certification at 22).

On May 18, 1992, Easton filed a second class action (*Easton II*) naming only Shearson as a defendant. The *Easton II* complaint alleges that: 1) Shearson orally misrepresented that Mutual-backed bonds were rated AA or AAA and were a safe, conservative investment; 2) Shearson knew, or recklessly disregarded, facts showing that Mutual was experiencing financial difficulties and was rapidly moving toward insolvency, thus making Mutual's guarantees of the bonds worthless and the bonds a risky investment; and 3) had Easton and the class known of Mutual's financial position, they never would have purchased the Mutual-backed bonds.

**\*2** Easton filed the complaint in *Easton II* on behalf of:
> all persons and entities who purchased any bond guaranteed by Mutual ... from Shearson during the period April 19, 1991 through July 16, 1991,

1994 WL 248172 Page 2
**(Cite as: 1994 WL 248172 (D.N.J.))**

excluding Shearson, Mutual, or their subsidiaries, affiliates, principals, officers and directors and their heirs, successors or assignees.

(Pl.'s Br. in Supp. of Class Certification at 22).

On November 4, 1992, Judge Sarokin entered an order consolidating *Easton I* and *Easton II.* On February 9, 1993, Judge Sarokin issued an Opinion certifying *Easton I* to proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure. Prior to this time, Shearson had agreed to certification of an *Easton II* class consisting of all fixed-rate bondholders.

On June 1, 1993, the Court entered an Order approving the proposed notices of pendency of the class actions and directed that the notices be provided to potential class members. The notices approved by the court informed class members that they need not take any action to be included in the class action, but gave them an opportunity to "opt-out" of the class by August 31, 1993. None of the class members elected to be excluded. Easton represents that there are 160 *Easton I* and *Easton II* class members.

On August 13, 1993 and November 16, 1993, respectively, Ernst & Young and Shearson served fifteen interrogatories and a single document request on the class members. The defendants do not dispute that the questions generally relate to the individual circumstances of each class member's purchase of the bonds and resulting damages. The information defendants seek includes:

(1) the number of bonds purchased;

(2) the price at which the bonds were purchased;

(3) the name of the broker used for each purchase;

(4) the dates and amounts for which the bonds were sold;

(5) the person to whom they were sold;

(6) the broker(s) used in connection with the purchase/sale;

(7) all advice, information, and/or documents received, reviewed, or relied upon in connection with the bond purchases;

(8) whether class members regularly read *The Wall Street Journal;*

(9) when class members learned of Mutual's financial difficulties;

(10) prior investment history of each absent class member from January 1987 through July 1991, including a listing of up to fifteen purchases of securities items identified by name, price, and date.

(Pl.'s Br. in Supp. of Protective Order at 6).

The instructions to defendants' discovery requests inform class members that they will risk dismissal of their claims if they fail to respond or if their responses are insufficient.

On December 23, 1993 Easton filed the instant motion for a protective order precluding the class members from answering Shearson and Ernst & Young's interrogatories. On January 7, 1994, Shearson and Ernst & Young filed separate submissions in opposition to Easton's motion. Oral argument was heard on February 14, 1994.

## DISCUSSION

**\*3** It is fairly well-settled that, where warranted, discovery may be taken of absent class members during the course of class action litigation under Rule 23. In *Brennan v. Midwestern United Life,* 450 F.2d 999, 1005 (7th Cir.1971), the court explained that:
> If discovery from the absent members is necessary or helpful to the proper presentation and correct adjudication of the principal suit, [there is] no reason why it should not be allowed, so long as adequate precautionary measures are taken to insure that the absent class members are not misled or confused.

The guidelines first discussed in *Brennan* were modified by later cases, notably *Clark v. Universal Builders,* 501 F.2d 324 (7th Cir.1974) and *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546 (11th Cir.1986), *cert. denied,* 479 U.S. 883 (1986). One court, which undertook a survey of the various federal decisions following *Brennan,* concluded that:
> [t]he majority of courts considering the scope of discovery against absent class members have granted discovery via interrogatories or document requests (1) where the information requested is relevant to the decision of common questions, (2) when the discovery requests are tendered in good faith and are not unduly burdensome, and (3) when the information is not available from the class representative parties.

*Transamerican Refining Corp. v. Dravo,* 139 F.R.D.

1994 WL 248172                                                                                                                Page 3
**(Cite as: 1994 WL 248172 (D.N.J.))**

619, 621 (S.C.Tex.1991) (citing *Dellums v. Powell,* 566 F.2d 167 (D.C.Cir.1977); *United States v. Trucking Employers, Inc.,* 72 F.R.D. 101 (D.D.C.1976); and *Brennan* ). A fourth requirement was referred to in *Clark:* that the discovery not seek information on matters already known to defendants. *Clark,* 501 F.2d 324, 341 n. 24

Easton essentially argues that the discovery currently at issue is irrelevant to the decision of common questions. The interrogatories focus on the reliance of the class members as individuals upon the alleged misrepresentations. Easton maintains that questions of individual reliance are irrelevant to the determination of class-wide issues relating to the liability of the defendants. According to Easton, this determination focuses on the "fraud on the market" theory.

The Supreme Court has explained that:
> The fraud on the market theory is based on the hypothesis that ... the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Basic v. Levinson,* 485 U.S. 224, 241-42 (1988). In *Basic,* the Supreme Court held that when a plaintiff asserts a "fraud on the market" theory of liability, a presumption of causation arises. *Id.*

*4 However, the presumption of causation is rebuttable. *Id.* at 250. *Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57 (1976), set forth the manner in which a defendant may rebut the presumption of causation in a "fraud on the market" case:
> (1) by disproving materiality, or by proving that despite materiality, an insufficient number of traders relied on the deception so as to inflate the price; or (2) by proving that an individual plaintiff purchased despite knowledge of the falsity of a representation, or that he would have, had he known of it.

Therefore, as summarized in *Jaroslawicz v. Engelhard Corp.,* 724 F.Supp. 294, 301 (D.N.J.1989), "defendants may rebut fraud-on-the-market reliance as to the class, or as to each class member."

Defendants assert that, because they may rebut reliance as to the class and as to each class member, the discovery at issue is relevant to the common question of whether the market was actually defrauded. Defendants explain that if the discovery shows that a significant number of class members who were purchasers in the market had information about Mutual's decline from sources other than Lehman, it would tend to prove that the market was not defrauded, and thus the benefit of the "fraud on the market" presumption would be unavailable on a common basis to any of the class members, including individuals who might not themselves have learned of Mutual's problems. (Shearson's Br. in Opp'n to Protective Order at 10-11).

In a case very similar to the one at hand, *In re SciMed Life Securities Litigation,* Civ. No. 3-91-575, 1992 WL 413867, at *3 (D.Minn. Nov. 20, 1992), the court permitted discovery of plaintiffs' investment history and background. As in the present case, the *SciMed* class of stock purchasers sought to assert a "fraud on the market" theory of liability. The plaintiffs objected to discovery relating to their investment background and history. *Id.* at *2. The defendants argued that the information was highly relevant to the plaintiffs' reliance-based claims. *Id.*

Citing *Blackie,* the court noted that the presumption of reliance raised by the "fraud on the market" theory may be rebutted as to individual plaintiffs. *Id.* at *3. The court also noted that, as in the present case, the plaintiffs had asserted common law actions of fraud and negligent misrepresentation, which require showings of actual reliance. *Id.* (citing *Rosenberg v. Digilog, Inc.,* 648 F.Supp. 40 (E.D.Pa.1985)). The *SciMed* court concluded that the need for the defendants to conduct discovery concerning the plaintiffs' entire investment history and background was important, and ordered compliance with the majority of the requested discovery. [FN1] *Id.*

The requests for discovery in the instant case are similar to those permitted in *SciMed*. As defendants admit, the discovery is relevant to issues of individual reliance. However, these issues of individual reliance are relevant to the ultimate determination of liability under the "fraud on the market" theory, the theory of liability which plaintiffs raise as a class. Therefore, the requested discovery is relevant to the determination of common questions.

*5 Easton also claims that the requested discovery is unduly burdensome and amounts to an impermissible "opt-in" requirement of class members. Easton

bases this argument on case law emphasizing that class members should not be made to take affirmative steps to remain in a class. *See Clark v. Universal Builders, Inc.* 501 F.2d 324 (7th Cir.1974); *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546 (11th Cir.1986), *cert. denied,* 479 U.S. 883 (1986); *B & B Investment Club v. Kleinert's,* 62 F.R.D. 140 (E.C.Pa.1974); *Wainwright v. Kraftco,* 54 F.R.D. 532 (N.D.Ga.1972). However, in the cases plaintiff cites, rejection of the disputed discovery was routinely based on the failure of the discovery to comport with guidelines first discussed in *Brennan.*

In *Clark,* the Seventh Circuit found that the requested discovery was abusive in that it required the civil rights plaintiffs to acquire technical and legal advice in order to understand the questions and formulate responses, *Clark,* 501 F.2d at 340-41 n. 24. Moreover, the court found that the *Clark* defendants made no showing that the requested information was necessary to trial preparation, in contravention of the guidelines set forth in *Brennan.* *Id.* at 340.

Similarly, *Cox* did not hold that propounding interrogatories on absent class members is impermissible *per se.* In *Cox,* the Eleventh Circuit reversed a district court ruling dismissing the claims of absent class members who had failed to answer interrogatories. The interrogatories had been prefaced with a warning that failure to answer the interrogatories could result in dismissal from the class action suit. *Cox,* 784 F.2d at 1556. The Court of Appeals observed that dismissal is the most severe of sanctions and is to be used only where noncompliance results from willful or bad faith disregard. *Id.* The Court of Appeals found that, because "the lower court made no finding of any bad faith resistance to discovery orders and, further, left no indication on the record that it considered and rejected sanctions less severe than dismissal," the district court erred in dismissing the claims. *Id.*

The Eleventh Circuit declined "to approve the use of the discovery sanction of dismissal against passive class members in a class action suit even to the extent that it may be permitted by *Brennan* and *Clark.*" *Id.* at 1556- 57. However, the court discussed the guidelines set forth in *Brennan* and *Clark* and specifically found that the disputed interrogatories failed to satisfy those guidelines because they were an improper attempt to reduce class size and were of questionable necessity. *Id.* at 1556.

As drafted, the discovery in the instant case is not abusive. Class members need not obtain counsel to answer the interrogatories and document requests. However, the discovery may be made less burdensome. The discovery is prefaced by warnings that failure to respond completely and accurately could result in dismissal of individual claims. As noted in *Cox,* dismissal is the most severe of sanctions. The threat of dismissal need not be raised at this juncture, where there is no indication that class members will fail to comply with the discovery requests. Therefore, as a precaution against unnecessary intimidation of class members, the court directs that defendants re-draft the discovery requests to exclude the warnings regarding dismissal.

**\*6** Moreover, based upon the representations of defense counsel at oral argument, the court finds that the discovery requests could be streamlined by incorporating information already available to defendants. At oral argument, the court proposed that the discovery be re-drafted in the form of a questionnaire informing an individual class member of the securities purchased by him or her, as well as the dates, prices, and brokers correlating to those purchases. (Tr. of 2/14/94 at 26:13 to 27:4). Mr. Charles M. Lizza, counsel for Shearson, admitted that producing such a questionnaire would be possible. (Tr. at 27:6-8). In keeping with *Clark's* directive that discovery not seek information on matters already known to defendants, the court orders defendants to redraft the discovery requests as questionnaires providing, to the extent possible, the following information: (1) the securities purchased by the individual class member; (2) the dates of such purchases; (3) the prices paid for such securities; (4) the brokers involved in such transactions.

### CONCLUSION

Easton's motion for a protective order precluding discovery of absent class members is denied. The discovery requests propounded by defendants Shearson and Ernst & Young shall be re-drafted in the manner prescribed by the court.

> FN1. The *SciMed* court found that the defendants did not need the plaintiffs' financial statements or tax returns to adequately assess plaintiffs' investment history and background. *Id.* at \*3. The court ordered the plaintiffs to comply with requests for customer agreements, account statements, margin agreements, prospectus and official statements, correspondence concerning securities purchases, and documents concerning purchases and sales

1994 WL 248172 Page 5
**(Cite as: 1994 WL 248172 (D.N.J.))**

of securities.  *Id.*

1994 WL 248172, 1994 WL 248172 (D.N.J.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works