IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| J.B.D.L. Corp. d/b/a BECKETT APOTHECARY, et al., | ) ) ) Civil Action No. C-1-01-704 ) |
| Plaintiffs, | ) Judge Sandra S. Beckwith ) Magistrate Judge Timothy S. Hogan |
| v. | ) ) |
| WYETH-AYERST LABORATORIES, INC., et al., | ) ) ) |
| Defendants. | ) ) |

**WYETH'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER QUASHING WYETH'S SUBPOENAS FOR "SPECULATIVE PURCHASING" DISCOVERY FROM CLASS MEMBER WHOLESALERS**

Pursuant to Federal Rule of Civil Procedure 72, Defendants Wyeth and Wyeth Pharmaceuticals (collectively, "Wyeth") respectfully object to the portion of Magistrate Judge Hogan's Order of June 7, 2004 (the "Order") that quashes Wyeth's subpoenas for documents and deposition testimony relating to "speculative purchasing" from Cardinal Health ("Cardinal") and AmerisourceBergen ("Amerisource").

**INTRODUCTION AND SUMMARY**

The issue of "speculative purchasing" is of crucial importance to Wyeth's defense in this case. Plaintiffs' core allegation is that Wyeth's list prices for Premarin were artificially inflated as a result of allegedly exclusionary contracts that Wyeth entered into with third-party managed care organizations ("MCOs"). Wyeth, however, intends to prove that these contracts had no impact on its list prices, and that increases in the prices

of Premarin during the relevant period were the result of legitimate market factors. One such market factor is the widespread practice known as "speculative purchasing."

As Judge Hogan explained in his Order, "speculative purchasing" is a type of arbitrage – *i.e.*, buying low and selling high. Wholesalers purchase large stockpiles of pharmaceutical products in anticipation of a manufacturer's price increases; once the manufacturer actually implements the price increase, the wholesalers increase their own resale prices and thereby reap greater profits on all the products purchased at the manufacturer's lower price. Accordingly, as Wyeth witnesses will testify, Wyeth was able to increase its prices for Premarin without resistance from its large wholesaler customers because those customers were not harmed, but in fact benefited, from price increases. In other words, it was not the challenged contracts between Wyeth and MCOs that caused Premarin prices to increase; rather, it was legitimate market forces such as speculative purchasing.

In these circumstances, Judge Hogan correctly concluded that speculative purchasing is "an important issue in this case." Order at 6. Judge Hogan ruled:

> (1) the information sought is relevant to the issue of Wyeth's alleged liability;
>
> (2) discovery on the issue is not precluded by the Supreme Court's ruling in *Hanover Shoe v. United Shoe Machinery*, 392 U.S. 481 (1968);
>
> (3) CVS and Rite Aid, two retailers who opted out of the class and sued Wyeth directly, must comply with Wyeth's speculative purchasing discovery requests; but
>
> (4) Cardinal and Amerisource, the two largest pharmaceutical wholesalers in the nation, need not provide any speculative purchasing discovery to Wyeth, because they are members of the class and

> discovery against class members should be "sharply limited."

Wyeth objects only to the last of these four rulings. Judge Hogan properly applied controlling law in reaching the conclusion that speculative purchasing information is relevant to important issues of liability in this case, and that discovery of such information is not barred by *Hanover Shoe v. United Shoe Machinery*, 392 U.S. 481 (1968). Order at 5-6. Wyeth submits, however, that Judge Hogan erred in ruling that Wyeth could not obtain any speculative purchasing discovery from Cardinal and Amerisource – two large wholesalers that account for almost half of the purchases *of the entire class* at issue in this case. *Id*. at 6. Accordingly, Wyeth seeks to have that portion of the Order reversed, for the following reasons:

- First, numerous courts have recognized that discovery from class members is appropriate where, as here, the information sought is relevant and is not available from the named class representatives. *See*, *e.g.*, *Transamerican Ref. Corp. v. Dravo Corp.*, 139 F.R.D. 619, 621 (S.D. Tex. 1991); *Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 450-51 (S.D.N.Y. 1995). Judge Hogan declined to compel Cardinal and Amerisource to produce speculative purchasing evidence on the ground that discovery from absent class members "should be sharply limited and allowed only on a strong showing of justification." Order at 6. Wyeth respectfully submits, however, that the case law does not support this unduly restrictive standard.

- Second, even applying the standard articulated by Judge Hogan, *i.e.*, that Wyeth must have a "strong justification" for obtaining discovery of speculative purchasing evidence from Cardinal or Amerisource, Wyeth is entitled to this discovery. Judge Hogan expressly found that speculative purchasing information is "an important issue" in this case, and that "[t]he fact finders need to know how and why Wyeth determined its allegedly noncompetitive price." Order at 5-6. Moreover, the speculative purchasing information sought by Wyeth cannot be obtained elsewhere: Wyeth cannot establish from its own files – or the files of the named class representatives or CVS or Rite Aid – how important speculative purchasing is to the business of its large wholesale customers, and why it is reasonable that such wholesalers would be receptive to price increases to sustain their speculative purchasing. Because Wyeth has been denied the right to obtain any discovery from

- Cardinal or Amerisource relating to speculative purchasing, Wyeth's ability to defend itself has been significantly hindered.

- Third, it would be fundamentally unfair to allow Cardinal and Amerisource – who will reap the lion's share of any recovery in this suit – to avoid all discovery obligations, particularly when plaintiffs themselves have required many third-party recipients (with no relationship to the lawsuit at all) to produce substantial discovery in this case and Wyeth has provided more than 700,000 pages of documents and 12 witnesses for deposition.

Wyeth therefore respectfully requests this Court to reverse that portion of Judge Hogan's Order that declined to require Cardinal and Amerisource to produce documents and provide deposition testimony regarding the issue of speculative purchasing. Wyeth does not challenge the Order insofar as it applies to retailers CVS and Rite Aid.[1]

## DISCUSSION

**I.    STANDARD OF REVIEW**

Under Fed. R. Civ. P. 72, a pretrial discovery order by a magistrate judge must be overturned if it is clearly erroneous or inconsistent with governing law. *See*, *e.g.*, *AMW Materials Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67, 70 (S.D.N.Y. 2003). Where – as here – a discovery order affects a key element of a party's defense, a court may also review the ruling *de novo*. *See In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 285 (D. Minn. 1996) (finding that magistrate's denial of defendants' request for discovery from absent class members "trenche[d] heavily on an aspect of defendants'

---

[1] Wyeth has also filed a motion with Judge Hogan to reconsider his Order. In its motion for reconsideration, Wyeth requests Judge Hogan to modify his Order by directing Cardinal and Amerisource to respond to two of the nine discovery requests seeking speculative purchasing evidence (Requests Nos. 2 and 3) and to produce two witnesses to testify at deposition. In light of the requirements for timely filing of objections pursuant to the Federal Rules of Civil Procedure, Wyeth is compelled to file these objections now with this Court, rather than awaiting a decision from Judge Hogan on its motion for reconsideration. If Judge Hogan grants Wyeth's motion for reconsideration (or modifies the June 7, 2004 Order in any respect), Wyeth will promptly inform this Court and will amend or withdraw its objections accordingly.

claimed defense" and thus was subject to *de novo* review). Under either standard, the order denying Wyeth the ability to obtain discovery from Cardinal and Amerisource should be overturned.

## II.     ARGUMENT

### A.     "Speculative Purchasing" Evidence Is Relevant, Discoverable, and Vitally Important to Wyeth's Defense.

The primary argument advanced by the subpoenaed parties in opposition to Wyeth's discovery was that such discovery is barred under the Supreme Court's ruling in *Hanover Shoe v. United Shoe Machinery*, 392 U.S. 481 (1968). Judge Hogan carefully reviewed the applicable law and correctly rejected the contention that such discovery is so barred. Speculative purchasing evidence is simply unrelated to the "pass on" defense that was at issue in *Hanover Shoe*.

#### 1.     Wyeth Seeks Speculative Purchasing Discovery for Legitimate Reasons, Not to Assert a "Pass On" Defense.

In *Hanover Shoe,* the Supreme Court ruled that where a plaintiff establishes that a price increase is "illegal" (e.g., if it is the result of price-fixing), a defendant may not avoid damages by showing that the illegal price increase was "passed on" to the plaintiff's own customers. 392 U.S. at 493-94. As Judge Hogan ruled, *Hanover Shoe* is inapplicable here, because Wyeth is not attempting to assert a "pass on" defense. Order at 5-6. Rather, information about the speculative purchasing practices of large wholesalers is directly relevant to the central issue of liability in this case – *i.e.*, whether Wyeth's prices were illegal in the first place. *Id.*

The requested evidence of speculative purchasing practices will show that, during the class period, large wholesalers employed business models that both anticipated and

relied upon regular increases in list prices by manufacturers such as Wyeth. This evidence will support Wyeth's argument that list price increases were not a result of Wyeth's "exclusionary" contracts, but rather were the result of other market factors, including wholesalers who profited from such increases. Put another way, the challenged MCO contracts did not cause Wyeth's list prices to class members to increase; list prices would have increased in the absence of those contracts.

      The discovery sought is also relevant to another fundamental aspect of Wyeth's defense – namely, showing how pricing in the pharmaceutical industry works. Under the antitrust rule of reason, a defendant is entitled to show – and the jury is entitled to know – " 'all the circumstances' " surrounding the alleged restraint on trade. *Ezzo's Invs., Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980, 986 (6th Cir. 2001) (quoting *Bus. Elec. Corp. v. Sharp Elec. Corp.*, 485 U.S. 717, 723 (1988)); *see also Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918) (under rule of reason, court must "consider the facts peculiar to the business to which the restraint is applied"). The discovery sought by Wyeth will be critical to showing the fact-finder why increased competition with Cenestin would not likely have led to lower list prices of Premarin for direct purchasers. By educating the fact-finder about the competitive realities of this unusual marketplace, Wyeth will show that list prices of Premarin would likely have been the same regardless of the existence of the alleged "exclusive dealing" contracts that plaintiffs are challenging.

Finally, speculative purchasing is relevant to the question of whether the class in this case should be decertified.[2] Evidence that wholesaler class members, by engaging in speculative purchasing, actually *benefited* from the price increases challenged by the named class representatives would demonstrate a basic conflict within the class that should preclude this case from proceeding to trial as a class action. In similar circumstances, the Eleventh Circuit recently reversed an order certifying a class of direct pharmaceutical purchasers, based on a finding that the district court refused to allow discovery into the issue of whether the three largest wholesalers "arguably experienced a net gain from the conduct alleged to be illegal by the named representatives." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003).

### 2. Cases Confirm that Discovery of "Downstream" Pricing Practices Is Permissible Here.

The case law confirms Judge Hogan's ruling that discovery of "downstream" pricing practices is permissible, as long as the evidence is used for purposes other than to establish a "pass on" defense.[3] For example, the court allowed discovery of "downstream" pricing information from plaintiffs in *In re Infant Formula Antitrust Litigation*, MDL 878 (N.D. Fla. Jan. 23, 1992), in which defendants sought to develop

---

[2]  Under Federal Rule of Civil Procedure 23(c)(1), a court may alter or amend a decision on class certification "before the decision on the merits." The Court is obligated to monitor the decision on class certification and amend or alter the decision as needed in light of case developments.

[3]  Indeed, the *Hanover Shoe* decision itself recognizes that downstream cost and pricing information is not barred if such information relates to issues other than a "pass on" defense. Specifically, the Supreme Court recognized the relevance of evidence relating to the plaintiff's costs of borrowing money, because such costs would be used to calculate the profits that the plaintiff "would have earned" in the absence of the allegedly illegal conduct. *Hanover Shoe,* 392 U.S. at 503-04.

evidence that retail pharmacies "hold prices of all infant formulas steady, regardless of fluctuations in wholesale prices." *See* Exhibit H to Wyeth's Motion to Compel the Production of Documents from Cardinal Health, Inc. and Amerisource Bergen Corp., at 7. The *Infant Formula* defendants urged that "[w]ith this pricing scheme in place, the manufacturers have no incentive to lower wholesale prices: to do so would not increase market share, but would rather only cut profits." *Id*. Likewise, Wyeth wishes to develop evidence that the speculative purchasing of wholesalers meant that Wyeth lacked any incentive to lower wholesale prices.

Similarly, in a case heavily relied upon by plaintiffs, *In re Vitamins Antitrust Litigation,* 198 F.R.D. 296, 299 (D.D.C. 2000), the court ruled:

> Defendants are correct that *Hanover Shoe* and its progeny do not render irrelevant plaintiffs' individualized downstream data because defendants are not seeking discovery of this data in order to assert a pass-on defense; rather defendants contend that this information is relevant to the determination of consumer demand which … is a relevant factor in the calculation of "but for" prices that will be determinative of plaintiffs' damages.

Likewise, in *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d. 357, 369 (E.D.N.Y. 2001), the court held that downstream pricing evidence was relevant (and admissible at trial) as "permissible background information" to show how the insurance business operated. The plaintiff there argued that any evidence relating to "pass on" of damages was precluded by *Hanover Shoe*. The court disagreed, holding that the jury was entitled to know how insurers set premiums. Any danger that the jury might misuse the evidence to reduce damages inappropriately would be obviated by a limiting instruction. *Id*. at 371. Finally, as discussed above, the

Eleventh Circuit has recently ruled that *Hanover Shoe* cannot bar a defendant from obtaining discovery of downstream pricing information in order to establish a conflict among members of a class of pharmaceutical purchasers. *Valley Drug*, 350 F.3d at 1192.

In sum, Judge Hogan was correct in ruling that speculative purchasing is relevant and important to Wyeth's defense, and that nothing in *Hanover Shoe* precludes discovery of such crucial information. Wyeth submits, however, that, having correctly determined that the information Wyeth seeks on speculative pricing is relevant and important to Wyeth's defense, Judge Hogan should not have precluded such relevant discovery from Cardinal and Amerisource based on concerns about the potential burdens of the discovery on those two large wholesalers.

### B. The Standard for Discovery from Absent Class Members Permits Wyeth's Requested Discovery from Cardinal and Amerisource.

Courts have consistently permitted discovery of absent class members when (1) the information is relevant to the common issues in the case, (2) the requests are tendered in good faith, and (3) the same information is not available from class representatives. *Transamerican Ref. Corp. v. Dravo Corp.*, 139 F.R.D. 619, 621 (S.D. Tex. 1991); *Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 450-51 (S.D.N.Y. 1995) (permitting depositions of absent class members where depositions would focus on liability issues and were not intended to harass absent class members); *Easton & Co. v. Mut. Benefit Life Ins. Co.*, Civ. Nos. 91-4012, 92-2095, 1994 WL 248172 (D.N.J. May 18, 1994) (permitting discovery of absent plaintiff class members because "[i]t is fairly well-settled that, where warranted, discovery may be taken of absent class members"); *United States v. Trucking Employers, Inc.*, 72 F.R.D. 101, 105 (D.D.C. 1976) (permitting

interrogatories to absent class members where inquiries were relevant to issues to be tried, and were not unduly burdensome).[4]

The requirements for allowing discovery of class members are easily satisfied here. First, the relevance of speculative purchasing evidence is undeniable. Judge Hogan concluded that speculative purchasing evidence would be "relevant to the liability issue" and is "a legitimate end to be pursued via discovery;" he further ruled that speculative purchasing is "an important issue in this case" that involves issues "[t]he fact finders need to know." Order at 5-6.

Second, there was no evidence whatsoever that Wyeth was engaging in discovery to harass class members or was otherwise acting in bad faith. Wyeth did not shower broad discovery demands upon hundreds of small class members. Just the opposite: the discovery at issue involved a very narrow subject – speculative purchasing – and was directed at a tiny handful of the largest, most powerful customers in the class. Indeed, the two wholesalers who refused to produce such discovery – Cardinal and Amerisource – are multibillion-dollar corporations, which by themselves account for 48% of all purchases of Premarin by the entire class. They were the targets of discovery not because they were class members, but because they are large wholesalers who engage in speculative purchasing.

---

[4] *See also Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1004-06 (7th Cir. 1971) (holding that discovery from absent class members was appropriate where directed at information relevant to liability issue and not used to take undue advantage of class members); *Robertson v. Nat'l Basketball Ass'n,* 67 F.R.D. 691, 700-01 (S.D.N.Y. 1975) (same); *Bogosian v. Gulf Oil Corp.*, 1983 WL 1938 (E.D. Pa. 1983) (permitting depositions of absent class members identified as witnesses).

Third, the evidence of speculative purchasing could not be obtained from the named class representatives. The class representatives are small *retailers*, and speculative purchasing is a practice engaged in by large *wholesalers*. Although Judge Hogan ordered two opt-out plaintiffs (CVS and Rite Aid) to produce speculative purchasing information, those plaintiffs also are retailers, not large wholesalers like Cardinal and Amerisource. It is critical to Wyeth's defense to obtain speculative purchasing information from these large wholesalers – who account for most of the Premarin purchases by the class as a whole, and whose acceptance of price increases would therefore have the greatest impact on the market.[5]

Thus, under the three-prong test used by courts today, Cardinal and Amerisource should be required to produce the speculative purchasing evidence sought by Wyeth. However, Judge Hogan instead ruled that, "notwithstanding the fact that they are large wholesalers," neither Cardinal nor Amerisource would be required to produce any discovery. Order at 6, 10. Judge Hogan reached this conclusion by adopting plaintiffs' proposed standard that "[d]iscovery from absent members of a class should be sharply

---

[5]  As noted in Wyeth's motion to compel, large wholesalers (unlike other class members) have repeatedly admitted in public filings that they historically have depended upon such speculative purchasing. For example, Cardinal's 2003 10-K states that it has "historically invested capital in pharmaceutical inventory to take advantage of relevant market dynamics, including anticipated manufacturer price increases." Cardinal 10-K, at 16. Indeed, the same filing noted that certain manufacturers had recently taken actions to "limit the ability of the company to invest capital in pharmaceutical inventories in advance of price increases" and that these changes could "have a negative impact on [Cardinal's] investment inventory margins." *Id*. at 5. *See also* AmerisourceBergen 2001 10-K (noting that its increase in inventories reflected "inventory purchased to take advantage of buy-side gross profit margin opportunities including opportunities associated with manufacturer price increases and negotiated deals"); AmerisourceBergen 2003 10-K ("we have been able to lower our overall cost of goods and increase our profit margins by purchasing surplus inventory from pharmaceutical manufacturers in advance of anticipated price increases . . . ."). Thus, Cardinal and AmerisourceBergen are uniquely positioned to provide the information sought by Wyeth relating to speculative purchasing.

limited and allowed only on a showing of strong justification." Order at 6. However, as discussed above, this proposition does not reflect the prevailing case law.

Moreover, even if Wyeth were entitled to discovery only upon a showing of "strong justification," that showing has clearly been made here. As Judge Hogan recognized, speculative purchasing relates to a core allegation of liability. Direct evidence of speculative purchasing can be obtained only from large wholesalers like Cardinal and Amerisource. Had Cardinal and Amerisource been ordinary (non-class) subpoena recipients, they surely would have been required to produce the requested discovery. Indeed, plaintiffs themselves have subpoenaed thousands of pages of documents from third parties with no financial stake in the case, and have also required third parties to submit to depositions. *See*, *e.g.*, 5 A. Conte and H. Newberg, *Newberg on Class Actions* 16:3 (4th ed. 2002) (noting that absent class members are subject to same discovery procedures available for nonparty witnesses). Similarly, Wyeth itself has produced more than 700,000 pages of documents and 12 witnesses for deposition. It is unfair that Cardinal and Amerisource – whose claims in this case will likely amount to hundreds of millions of dollars – should be immune from critically important discovery simply because they are members of the class.

Wyeth submits that, by placing undue weight on Cardinal and Amerisource's status as class members, Judge Hogan erred in concluding that the theoretical burden of discovery upon them outweighed Wyeth's interest in obtaining evidence vital to its defense. Indeed, because neither Amerisource nor Cardinal complied with the well-established requirement that claims of burden be supported by specific, detailed affidavits or similar evidence, there is no factual basis upon which to conclude that any burden

exists.[6] But even if the wholesalers' claims of burden had been properly documented, Wyeth should still be entitled to discovery of this information in light of its importance. The discovery requests in dispute were limited to a single issue and, given the significant stake of Cardinal and Amerisource in this case, were entirely justified. The fact that Judge Hogan concluded that two opt-out plaintiffs (CVS and Rite Aid) should respond to the same discovery confirms that the requests were not unduly burdensome. Under well-established law and as a fundamental matter of fairness to the defendant, any "balancing" of burden and need should have resulted in an order requiring these wholesalers to respond to Wyeth's narrowly focused and vitally important discovery.

## **CONCLUSION**

Speculative purchasing is an important issue in this case, as Judge Hogan correctly concluded. The evidence of speculative purchasing is within the possession of two large wholesalers, and is not available from the named plaintiffs or from Wyeth's

---

[6] *See*, *e.g., Zatko v. Rogers Mfg. Co.*, 37 F.R.D. 29, 31 (N.D. Ohio 1964) (rejecting objection to discovery as burdensome because it was "not accompanied by affidavits revealing the exact nature of the burden"); *Sams v. State Farm Fire & Cas. Co.*, 123 B.R. 788, 794 (S.D. Ohio 1991) (denying motion for protective order where motion "contain[ed] only unsubstantiated allegations of 'annoyance and expensive burden' and [did] not provide either the specific examples or the articulated reasoning necessary to satisfy requirements for the issuance of a protective order"); *Laufman v. Oakley Bldg. & Loan Co.*, 72 F.R.D. 116, 121 (S.D. Ohio 1976) (rejecting arguments that discovery would be unduly burdensome where there was no "specific showing" of burden). *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 513 (N.D. Iowa 2000) (rejecting objection to discovery as overbroad because "plaintiffs fail to offer any evidence or affidavits in support of these objections"); *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997) ("The objecting party must show specifically how each discovery request is burdensome or oppressive by submitting affidavits offering evidence revealing the nature of the burden. . . . [A]n unsubstantiated allegation that a substantial period of time would be required to respond to the request does not carry the objecting party's burden."); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 59-60 (D.D.C. 1984) ("An objection must show specifically how [a discovery request] is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.").

own files.  Judge Hogan declined to order the production of such relevant evidence, because Cardinal and Amerisource are members of the class.  However, under the facts and circumstances of this case, Wyeth should be permitted to obtain this crucial evidence from Cardinal and Amerisource, class members that clearly engage in speculative purchasing and that account for nearly 50% of all purchases of Premarin by the entire class.  As noted above, Wyeth was subjected to the burden of producing more than 700,000 pages of documents and 12 witnesses for deposition.  Wyeth should not be forced to defend against the class claims without critical evidence from the class members who stand to benefit the most from this litigation.  *See Johnstone v. Fox*, No. 85 C 3179, 1986 WL 7978 (N.D. Ill., July 11, 1986) ("Discovery . . . is a two-way street.").

The June 7, 2004 Order should be modified to require Cardinal and Amerisource to comply with Wyeth's discovery requests.

|  | Respectfully submitted, |
|---|---|
|  | s/Grant S. Cowan |
|  | James R. Adams  (0008253) |
|  | Grant S. Cowan   (0029667) |
|  | **FROST BROWN TODD LLC** |
|  | 2200 PNC Center |
|  | 201 E. Fifth Street |
|  | Cincinnati, Ohio  45202-4182 |
|  | |
|  | **ARNOLD & PORTER LLP** |
|  | 555 Twelfth Street, N.W. |
|  | Washington, D.C.  20004-1206 |
|  | (202) 942-5000 |
|  | |
|  | **WINSTON & STRAWN LLP** |
|  | 35 West Wacker Drive |
|  | Chicago, Illinois  60601-9703 |
|  | (312) 558-5600 |
|  | |
|  | Counsel for Defendants |

Dated:  June 21, 2004
**CINLIBRARY/1409098.1**

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a copy of the foregoing has been served electronically this 21st day of June, 2004 on on all Counsel of Record with the CM/ECF Registration and by U.S. mail, postage prepaid and facsimile upon the following:

    Eliot Long
    **BUCHANAN INGERSOLL**
    **1835 Market Street, 14th Floor**
    **Philadelphia, PA  19103-2985**
    **Fac**simile: 215-665-8760

                                            s/Grant S. Cowan
                                            Grant S. Cowan
                                            Frost Brown Todd LLC