**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **J.B.D.L. Corp. d/b/a BECKETT APOTHECARY, et al.** Plaintiffs, v. **WYETH** Defendant. | : | **NO. C-1-01-704** **Judge Sandra S. Beckwith** **Magistrate Judge Timothy S. Hogan** |
| **CVS MERIDIAN, INC. and RITE AID CORPORATION,** Plaintiffs, v. **WYETH** Defendant. | : | **No. C-1-03-781** **Judge Sandra S. Beckwith** |

**PLAINTIFFS CVS' AND RITE AID'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER COMPELLING PRODUCTION OF DOCUMENTS**

Plaintiffs CVS Meridian, Inc. ("CVS") and Rite Aid Corporation ("Rite Aid"), pursuant to Federal Rule of Civil Procedure 72, respectfully object to portions of Magistrate Judge Timothy S. Hogan's June 7, 2004 Order ("Order") partially granting the Motion to Compel of Defendant Wyeth. Specifically, Plaintiffs object to that part of the Order directing CVS and Rite Aid to produce documents relating to speculative purchasing of pharmaceutical products (including Premarin and Cenestin) and documents relating to any and all profits earned

on the sale Premarin and Cenestin - - whether through speculative purchasing or otherwise. Plaintiffs seek reconsideration of this Order on the grounds that Judge Hogan misinterpreted relevant case law which prohibits the discovery of downstream information in an overcharge case such as the action presently before this Court. Such discovery is clearly impermissible and Judge Hogan's Order concerning this issue should be reversed.

In addition, Plaintiffs object to Judge Hogan's Order concerning Wyeth's Request No. 25 seeking contracts between Plaintiffs and managed care organizations that relate to payments received for the dispensing of Premarin, Cenestin, and similar products. The facts show that the information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and Judge Hogan's Order concerning this issue should also be reversed.

**BACKGROUND AND PROCEDURAL HISTORY**

On December 23, 2003, Wyeth served Plaintiffs CVS and Rite Aid with first sets of merits-related requests for production of documents. These included the following requests related to the purported speculative purchasing practices of the Plaintiffs:

> Request No. 7: All documents reflecting actual, potential, or anticipated increases in the prices you paid for Premarin or other pharmaceutical products, including but not limited to any business plan or budget which anticipates such price increases.
>
> Request No. 8: All documents which relate to "speculative purchasing" of Premarin or other pharmaceutical products.
>
> Request No. 9: All documents which relate to whether your business model, or wholesalers' business models, have relied upon price increases by manufacturers or average wholesale price increases for Premarin and other products in order for your or wholesalers to maintain or increase profitability.
>
> Request No. 11: All documents relating to your guidelines policies, procedures, or practices in setting prices for Premarin,

> Cenestin, or any products purchased using "speculative purchasing" practices.
>
> Request No. 17: All documents relating to the amount of profits or percentage of profit you earned from sales of Premarin and Cenestin.
>
> Request No. 18: All documents relating to whether you have received an economic benefit from price increases of Premarin.

CVS and Rite Aid objected to these requests on the grounds that they were overly broad, unduly burdensome, sought production of irrelevant information, and were not reasonably calculated to lead to the discovery of admissible evidence.

On February 27, 2004 Wyeth filed a motion to compel production of documents which sought, *inter alia*, production of the speculative purchasing documents. Plaintiffs filed a timely opposition to this motion and oral argument was heard by Magistrate Judge Hogan on April 30, 2004. Judge Hogan subsequently issued an order on June 7, 2004 ordering Plaintiffs to produce the requested documents related to speculative purchasing. CVS and Rite Aid object to that portion of the June 7 Order.

## ARGUMENT

### I. The Magistrate Judge's Order Directing Plaintiffs to Produce "Speculative Purchasing" Documents is Contrary to Law and Should Be Reversed.

In its motion to compel production of documents related to any speculative purchasing by Plaintiffs, Wyeth prefaced it's argument by explaining that speculative purchasing is a type of arbitrage, whereby large resellers stockpile quantities of a pharmaceutical product at existing prices, in anticipation of a list price increase by the manufacturer, allowing the reseller to sell the stockpiled product at an increased price after the manufacturer announces a list price increase. Wyeth argued that information concerning Plaintiffs' speculative purchasing of

Premarin was relevant because it would show that Wyeth's list price increases were not caused by the anti-competitive contracts Wyeth entered into with managed care organizations (MCO's), as alleged by Plaintiffs, but were, according to Wyeth, the result of normal market forces such as speculative buying by large customers like CVS and Rite Aid. Put another way, Wyeth asserted that Plaintiffs relied upon anticipated price increases and speculative purchasing to increase their profits and exerted pressure on Wyeth to increase its list prices for Premarin in order to increase their own profits. According to Wyeth, this practice by Plaintiffs and not Wyeth's contracts with MCOs resulted in Wyeth's price increases.[1]

Wyeth acknowledged the Supreme Court's holding in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 489 (1968), holding that in the face of an illegal overcharge, an antitrust defendant cannot employ a "pass-on" defense, but dismissed its importance arguing that the decision's prohibition on the use of downstream information is applicable only when the defendant intends to use it to make a "pass-on" defense, which Wyeth has not asserted.

In his Order of June 7, 2004, Judge Hogan held that because Wyeth sought the downstream discovery not to assert a "pass-on" defense or to mitigate its damages but to show that Wyeth's price increases were the result of speculative purchasing, the discovery was not precluded by *Hanover Shoe* and would be permitted.[2] (Order at 5) Specifically, Judge Hogan

---

[1] Wyeth also asserted a second rationale, that under the antitrust rule of reason, a Defendant is entitled to show "all the circumstances" surrounding the alleged restraint on trade and the circumstances here (including speculative purchasing) would demonstrate that the list price increases for Premarin would have occurred even in the absence of the anticompetitive contracts with the MCOs. This argument is essentially another way of stating Wyeth's initial argument, i.e. that Plaintiffs' speculative purchasing and not Wyeth's own contracts was the cause of Wyeth's list price increases.

[2] While Judge Hogan found that CVS and Rite Aid must produce documents related to speculative purchasing, absent class members Cardinal Health Inc. and Amerisource

held that *Hanover Shoe* did not prohibit downstream discovery when the information sought was relevant to the issue of liability and not for mitigation of damages. Furthermore, Judge Hogan observed that *Hanover Shoe* was a decision on the merits and not a decision clarifying the requirements for setting limitations on discovery permitted by Rule 26(b)(1) and therefore should not be viewed as the last word on what is or is not permissible discovery in an overcharge case.

In reaching this decision, however, Judge Hogan completely disregarded the cases which followed *Hanover Shoe,* holding that *Hanover Shoe* provided a rule of discovery and holding that downstream discovery for the assertion of *any* defense is impermissible. *See, e.g. In re Polyester Staple Antitrust Litigation*, MDL 3:03-cv-1516 (W.D.N.C. Feb. 5, 2004) (denying downstream discovery); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296 (DCDC 2000) (denying individualized downstream discovery); *In re Monosodium Glutamate Antitrust Litigation*, MDL 00-1328 (D. Minn. Sept. 14, 2000) (denying as irrelevant defendants' motion to compel documents regarding plaintiffs' re-sales); *In re Carbon Dioxide Antitrust Litigation*, MDL 92-940 at 4 (M.D. Fla. Nov. 18, 1993) (defendants not entitled to information about plaintiffs' costs and profits since information was irrelevant to issue of price-fixing); *In re Wirebound Boxes Antitrust Litigation*, 131 F.R.D. 578 (D. Minn. 1990) (plaintiffs' financial information was irrelevant where damages would be calculated by extent of unlawful overcharge); *Go-Tane Service Stations, Inc. v. Ashland Oil, Inc.*, 508 F. Supp. 200 (N.D. Ill. 1981) (plaintiff's motion to strike pass-on defense granted; related discovery ceased); *In re Folding Carton Antitrust*

---

Bergen Corporation need not produce such documents given the fact that discovery from absent class members should be sharply limited and allowed only on a strong showing of justification. (Order, p. 6)

*Litigation*, MDL 250, Pretrial Order No. 32 (N.D. Ill. May 5, 1978) (denying downstream discovery).[3]

Rather than follow the holdings in these numerous cases, all of which prohibited discovery of downstream information, Judge Hogan instead relied without discussion upon *one* case cited by Wyeth, *In re Infant Formula Antitrust Litigation*, MDL 878 (N.D. Fla. 1992). (Order at 6) Significantly, this case did not engage in any discussion of or even mention *Hanover Shoe* or its progeny that denied downstream discovery.

Judge Hogan briefly discussed one of the major cases cited by Plaintiffs, *In re Polyester Staple Antitrust Litigation*, MDL 3:03-CV-1516 (WDNC Feb. 5, 2004) and dismissed its significance, stating that the downstream information in that case was sought in order to show that plaintiffs had not suffered any injury from the alleged conspiracy, thus indicating that the *Polyester Staple* Court disallowed the discovery because it pertained to calculation of damages. (Order at 6) As such, Judge Hogan felt *Polyester Staple* had no relevance here. However, this is a misreading of that case. The *Polyester Staple* Court specifically noted that "Defendants do not purport to seek the information in order to oppose Plaintiffs' calculation of damages . . . ." *In re Polyester Staple Antitrust Litigation* at 5, fn 3. In fact, the defendants in *Polyester Staple*, like Wyeth here, argued that downstream information should be permitted for a purpose other than to support a pass-on defense or a mitigation of damages. The *Polyester Staple* Court described defendant's argument in favor of the discovery, stating:

> "More specifically, defendants claim that downstream data will enable them to dispel Plaintiffs' claim that an antitrust conspiracy existed by *demonstrating alternative explanations justifying* or offsetting *any alleged illegal price increase* during the relevant time period. In order to do as they propose, *Defendants state that*

[3] Copies of unpublished decisions were previously submitted to the Court with Class Plaintiffs' Protective Order Memorandum. (Doc #78)

> *they need to be able to explore 'demand variations' within the industry*."

*In re Polyester Staple Antitrust Litigation* at 1 (emphasis added).

Judge Hogan also dismissed the significance of another case relied upon by Plaintiffs, *In re Folding Carton Antitrust Litigation*, MDL 250 (N.D. Ill. May 5, 1978), noting that while the two judge panel in that case denied the requested downstream discovery, the reasons advanced by the defendants in *Folding Carton* for permitting the discovery were not the same reasons advanced by Wyeth here. (Order at 7) But *Folding Carton* is in fact indistinguishable from this case. The *Folding Carton* defendants asserted that the financial data sought was relevant to determine whether large and prosperous purchasers of folding cartons exercised "countervailing power" to prevent prices of folding cartons from rising to improperly high levels. This argument is simply the flip side of the argument that Wyeth makes here. Wyeth asserts that Plaintiffs somehow asserted influence over Wyeth which *caused* in Wyeth's price increases on Premarin. The *Folding Carton* defendants asserted that the plaintiffs there used their "countervailing power" to *prevent* prices of folding cartons from rising. The *Folding Carton* court found that this argument did not justify discovery of the downstream financial information. The Court stated:

> We do not find defendants 'countervailing power' argument persuasive. The defense that plaintiffs' economic power could have kept the prices of folding cartons down is irrelevant where, as here, the crucial issue is whether there was a conspiracy to fix prices. To suggest that conspiracy was not as successful as it might otherwise have been because of the Plaintiffs countervailing economic power is absurd. Such an alleged "economic check" is of no consequence in a price fixing case.

*Id.* at 3.

In granting discovery of Plaintiffs' documents relating to speculative purchasing, Judge Hogan overlooked the considerable body of case law holding that discovery of such

downstream materials is impermissible for any purpose. As such, the decision was contrary to law and should be reversed.

In reviewing Judge Hogan's Order, this Court should also take into consideration that Wyeth, like many previous defendants in antitrust overcharge cases, has essentially conjured up a "defense" that allows it to obtain downstream information by claiming that the "defense" relates to something other than a "pass-on" defense. Wyeth contends that the information concerning speculative purchasing will show that Wyeth's list price increases were not caused by the exclusive contracts Wyeth had with MCOs but were the result of speculative buying by large customers like the Plaintiffs which, Wyeth contends, is simply a normal market force. While this theory is certainly imaginative, the Court should bear in mind that this record contains not a scintilla of evidence indicating that Wyeth increased its prices on Premarin under pressure from its customers to do so. Judge Hogan held that Wyeth was entitled to *corroborate* its theory through discovery received from Plaintiffs. While corroboration is certainly a legitimate goal, there are no facts to corroborate - - Wyeth itself has produced *no evidence* supporting its theory. During discovery Wyeth produced more than 700,000 documents relating to Premarin and its price increases and yet Wyeth *did not produce a single document that even so much as hints that Wyeth raised its prices in response to Plaintiffs desires to increase their profits through speculative purchasing*. In fact, the documents which have been produced suggest that in raising prices, Wyeth had no goal other than to maximize its own profitability. This is clearly not an instance of corroboration being needed but a case of an imaginative defendant who has conjured up a defense in order to by-pass the prohibitions of *Hanover Shoe* and obtain otherwise prohibited downstream discovery. The Court should not permit this gambit to succeed.

If, however, the Court believes that Wyeth is entitled to "corroborate" its theory that Plaintiffs engaged in speculative purchasing of Premarin which resulted in Wyeth's price increases, then Wyeth already has all the corroborating evidence from Plaintiffs that it needs. CVS and Rite Aid have already produced all of the data concerning their purchases of Premarin from Wyeth during the relevant period. This information will corroborate Wyeth's own data reflecting sales of Premarin to Plaintiffs. Wyeth then needs only to compare the dates of the relevant price increases for Premarin (which it certainly has in its possession) to the number of Premarin units purchased by Plaintiffs just prior to each price increase. If Plaintiffs' speculative purchasing caused the price increases, then Wyeth will observe unusual spikes in Premarin purchases just prior to each relevant price increase. If that occurred, Wyeth will have the evidence it needs to try to convince the trier of fact its price increases were in response to speculative purchasing.

Wyeth is simply the latest in a long line of antitrust defendants who have tried to avoid *Hanover Shoe* by dressing up their "pass-on" arguments as something else. Courts have routinely rejected such efforts. *See, e.g., In re Polyester Staple Antitrust Litigation* MDL 3:03-CV-1516 (WDNC Feb. 5 2004) ("downstream data is not relevant to any defense defendants may assert at trial"); *In re Folding Carton Antitrust Litigation* (MDL 250 (N.D. Ill. May 5, 1978) ("whether purchasers absorbed, passed on, or made a profit on the overcharges in comparison with the industry generally is irrelevant, and investigation into such matters are prescribed by *Illinois Brick*.") Indeed, the Court in *In re Vitamins Antitrust Litigation*, 198 F.R.D. 296 (DCDC 2000) rejected requests for downstream discovery and made a point of noting that if the circumstances of purchasers had an effect on the defendants own pricing, the defendants "must

already have in their possession the information" they claim was needed to support their argument. *Id.* at 301.

## II. Production of Speculative Purchasing Documents, if Permitted, Should be Limited to Premarin Only

In the event that this Court rejects Plaintiffs' objections and determines that speculative purchasing documents must be produced, the production should be limited to documents relating to the speculative purchasing of Premarin only. Request numbers 7, 8, 9 and 11 all request production of documents relating to speculative purchases of not only Premarin but also of Cenestin and "other products." These requests, however, are clearly irrelevant and will not lead to discovery of admissible evidence. Wyeth contends that it needs speculative purchasing documents *relating to Premarin* in order to show that Plaintiffs' support for Premarin price increases resulted in those price increases. Clearly, the requests relating to speculative purchases of Cenestin and other products have no relevance to this inquiry.

In addition, if discovery is permitted into Plaintiffs' speculative purchasing of Premarin, Plaintiffs should not be required to respond to Request number 17 which states as follows:

> Request No. 17: All documents relating to the amount of profits or percentage of profits you earned from sales of Premarin and Cenestin.

This request is clearly unnecessary in light of Request No. 18 which states:

> Request No. 18: All documents relating to whether you have received an economic benefit from price increases of Premarin.

Through Request No. 18, Wyeth will obtain information relating to the amount of profits Plaintiffs earned through speculative purchasing of Premarin. This information is all that is arguably relevant to Wyeth's inquiry and the additional information sought in Request No. 17

is, without doubt, overly broad and irrelevant. First, Request No. 17 seeks information relating to *all* profits earned from the sale of Premarin and not just profits earned through speculative purchasing. Furthermore, it requests the same information relating to Plaintiffs' sales of Cenestin despite the fact that Wyeth has no need for information relating to the amount of profits Plaintiffs earned from the sale of Cenestin, whether through speculative purchasing or otherwise. Request No. 17 is overly board and not calculated to lead to the discovery of admissible evidence and in the event that discovery into Plaintiffs' speculative purchasing of Premarin is permitted, the objections to Request No. 17 should, nevertheless, be sustained.

## III. The Magistrate Judge's Order Directing Plaintiffs to Produce Documents in Response to Request No. 25 is Contrary to Law and Clearly Erroneous.

Magistrate Judge Hogan has also ordered that CVS and Rite Aid produce documents in response to Wyeth's document Request No. 25 which states as follows:

> Request No. 25: All contracts, agreements, or arrangements with insurance companies or MCOs that relate to their payment or reimbursement to you for dispensing prescriptions of Premarin, Cenestin, or other ET or HT products.

Plaintiffs objected to this request on the grounds that it is overly broad, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Judge Hogan granted in part and denied in part Wyeth's motion to compel these documents, holding that Plaintiffs "shall confine the contracts to those involving Premarin and Cenestin, not other estrogen or hormone therapy products." (Order at 8) However, Judge Hogan apparently overlooked facts brought to the Court's attention at oral argument, facts which make clear that Plaintiffs' objections should have been sustained with respect to Premarin and Cenestin as well.

The contracts that Wyeth seeks in Request No. 25 are between CVS or Rite Aid and the HMOs to which their customers belong or pharmacy benefit managers ("PBMs") which manage the pharmacy benefit for those HMOs. These contracts determine how much the retail pharmacy will be paid by the HMO when a customer has a prescription filled.

Wyeth contends that these contracts are relevant on three issues:

1. The extent to which Cenestin was included in MCO formularies;

2. The extent to which Cenestin prescriptions were reimbursed by MCOs not withstanding whether or not it was MCO formularies;

3. The extent to which Cenestin was subjected to higher co-payments than Premarin.

(Wyeth's Memorandum in Support of Motion to Compel at 10)

At oral argument, Plaintiffs informed Wyeth's counsel and the Court that a cross-section of these numerous contracts had been reviewed and it had been determined that none of these contracts contained the information sought by Wyeth. While the contracts contain a single formula for how payment (*i.e.* reimbursement) shall be determined for all brand-name prescription drugs, the contracts do not mention Cenestin or, for that matter, any drug. Furthermore, the contracts do not state how the pharmacies will be reimbursed for Cenestin as compared to any other drug, what rate of co-pay a customer purchasing Cenestin must pay, or even whether Cenestin (or any other drug) is on that Plan's formulary.[4]

These HMO/PBM contracts contain only a formula providing how the Plans will reimburse for *all* brand-name prescription drugs without reference to any particular drug. These formulas are essentially the same from contract to contract, stating that the pharmacy will be paid

[4] This is true of all the reimbursement contracts, not just those selected for review. The Plaintiffs' 30(b)(6) witnesses will confirm this when deposed.

average wholesale price (AWP) minus a negotiated discount, plus a negotiated dispensing fee and less any co-payment paid by the customer. The amount of the co-pay is not stated in the contract because it will constantly vary depending on the drug and the rules of the each Plan. The retail pharmacy only learns how much of a co-pay a customer must pay when the customer presents the prescription and a pharmacist performs an on-line adjudication and is then told by the Plan how much of co-pay to collect from the customer. The dollar amount of the co-pay is the only information provided to the pharmacist at the point of sale and he is not made aware what position the drug being dispensed occupies on the Plan's formulary.

Given this information it is clear that Wyeth's counsel misunderstood the nature of these reimbursement contracts when it propounded Request No. 25. Furthermore, it appears that Judge Hogan did not take this information into account when ordering that Plaintiffs should produce documents, but limited to contracts concerning Premarin and Cenestin.[5] Given the nature of these contracts described above, it is clear that the documents are not relevant to Wyeth's stated purpose nor are they reasonably calculated to lead to the discovery of admissible evidence. It is therefore respectfully requested that Judge Hogan's decision on this issue be reversed and the objections sustained.

---

[5] The fact that Judge Hogan held that contracts should be produced concerning Premarin and Cenestin but not ERT or HRT products indicates he may have misperceived the nature of the contracts.

**CONCLUSION**

For the foregoing reasons, Plaintiffs CVS Meridian, Inc. and Rite Aid Corporation respectfully request that their objections to the June 7, 2004 Order of Magistrate Judge Timothy S. Hogan be sustained and that Plaintiffs not be required to produce the documents requested in Wyeth's document requests numbers 7 – 9, 11, 17, 18, and 25.

Respectfully submitted,

*s/Gordon A. Einhorn*
Steve D. Shadowen, I.D. No. 41953
Gordon A. Einhorn, I.D. No. 59006
30 North Third Street, Suite 700
Harrisburg, PA 17101
(717) 364-1004
(717) 364-1020 – facsimile

W.B. Markovits (0018514)
Markovits & Griewe, Co. L.P.A.
119 E. Court Street
Cincinnati, OH 45202
(513) 977-4774

*Attorneys for Plaintiffs CVS Meridian, Inc. and Rite Aid Corporation*

Dated: June 22, 2004

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been served this 22nd day of June 2004 via facsimile and first class mail.

| | |
|---|---|
| Grant S. Cowan<br>FROST BROWN TODD LLC<br>2200 PNC Center<br>201 East Fifth Street<br>Cincinnati, OH 45202<br>Facsimile: 513 651-6981 | Kenneth A. Wexler<br>KENNETH A. WEXLER AND ASSOCIATES<br>One North LaSalle, Suite 2000<br>Chicago, IL 60602<br>Facsimile: 312 346-0022 |
| Theresa L. Groh<br>MURDOCK, GOLDENBERG, SCHNEIDER & GROH<br>700 Walnut Street, Suite 400<br>Cincinatti, OH 45202<br>Facsimile: 513 345-8294 | Daniel E. Gustafson<br>HEINS MILLS & OLSON, P.C.<br>700 Northstar East<br>608 Second Avenue South<br>Minneapolis, MN 55402<br>Facsimile: 612 338-4692 |
| Jay S. Cohen<br>SPECTOR, ROSEMAN & KODROFF<br>1818 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>Facsimile: 215 496-6611 | Joseph E. Conley, Jr.<br>BUECHEL & CONLEY<br>25 Crestview Hills Mall Road, Suite 104<br>Crestview Hills, KY 41017<br>Facsimile: 859 578-6609 |
| Ruthanne Gordon<br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Facsimile: 215 875-4604 | Marc H. Edelson<br>HOFFMAN & EDELSON<br>45 West Court Street<br>Doylestown, PA 18901<br>Facsimile: |
| David S. Eggert<br>ARNOLD & PORTER<br>555 Twelfth Street, N.W.<br>Washington, DC 20004<br>Facsimile: 202 942-5999 | Patrick E. Cafferty<br>MILLER FAUCHER & CAFFERTY LLP<br>101 N. Main Street, Suite 885<br>Ann Arbor, MI 48104<br>Facsimile: 734 769-1207 |
| Janet G. Abaray<br>LOPEZ, HODES, RESTAINO, MILMAN, SKIKOS & POLOS<br>312 Walnut Street, Suite 2090<br>Cincinnati, OH 45202<br>Facsimile: 513 852-5611 | |

*s/Gordon A. Einhorn*__________
Gordon A. Einhorn