A. Relevance

1. Defendants' Desire To Establish Lack Of Impact As Basis For Discovery Of 'Downstream' Data

The information sought by Defendants is not relevant to the merits of the underlying antitrust actions and is likewise unlikely to lead to the discovery of admissible evidence. Every private antitrust action requires proof of three elements:

1) an antitrust violation;
2) direct injury, or impact, to the plaintiff from such violation; and
3) damages sustained by the plaintiff.

DeLoach v. Philip Morris Cos., Inc., 206 F.R.D. 551, 558 (M.D.N.C. 2002)(citing Windham v. American Brands, Inc., 565 F.2d 59, 65 (4th Cir.1977)).

It is well settled law that in order for a direct purchaser to establish injury in an antitrust conspiracy case alleging price fixing and customer allocation, Plaintiffs need only demonstrate that they paid a higher price for polyester staple purchased from Defendants than they would have absent the existence of a conspiracy. Hanover Shoe v. United Shoe Machinery Corp., 392 U.S. 481, 489 (1968); Illinois Brick Co. v. Illinois, 431 U.S. 720, 724-25 (1977). Thus, the second element of direct injury or impact may be presumed in antitrust cases involving a conspiracy to fix prices or allocate customers. Id.

Similarly, antitrust damages in price-fixing cases are typically measured by "the difference between the price paid and the market or fair price . . . under natural conditions" in the absence of a conspiracy. Chattanooga Foundry & Iron Works v. City of Atlanta, 203 U.S. 390, 396 (1906). Therefore, if Plaintiffs' claims of illegally inflated prices of polyester staple are proven, the requisite injury, impact, liability and amount of damages are all established at the point of sale between Direct Purchaser Plaintiffs and Defendants.

Hanover Shoe, 392 U.S. at 489 ("We think it sound to hold that when a buyer shows that the price paid by him for materials purchased for use in his business is illegally high and also shows the amount of the overcharge, he has made out a prima facie case of injury and damage within the meaning of [Section 4 of the Clayton Act.]) Notwithstanding what occurs after this initial sale, under Hanover Shoe and its progeny, Direct Purchasers are entitled to recover the full extent of the overcharge.[3] Id.

In this case, Defendants contend that downstream data requested is discoverable because it is necessary in establishing that Plaintiffs have not suffered any injury from the alleged conspiracy.[4] However, a review of the pertinent case law reveals that this argument is one routinely made by defendants in antitrust actions - an argument routinely rejected by various federal courts. In Re Carbon Dioxide Antitrust Litigation, MDL 940 (M.D. Fla. Nov. 18 1993). Therefore, there is no need to engage in a complicated impact or injury analysis as Defendants suggest. As Plaintiffs emphasize in their filings, this can be proven by comparing Plaintiffs' volumes of sales with the extent of increased price. The information sought is simply not relevant to the injury or impact element of Plaintiffs' claims.

Likewise, downstream data is not relevant to any defense Defendants may assert at trial. Generally, a defendant in an antitrust action may not assert a "pass-on" defense (the defense that the plaintiff has no damages because he passed the overcharge to its

---

[3] Plaintiffs only seek to recover the actual amount of overcharge (as opposed to consequential damages).

[4] Because Defendants do not purport to seek the information in order to oppose Plaintiffs' calculation of damages, the Court will not discuss that element of the offense.

customer, or down the production line) against direct purchaser plaintiffs.[5] Hanover Shoe, 392 U.S. at 489-494. In addition, although Defendants contend that "downstream" market pressures, if explored, may reveal that certain class members were less sensitive to price fluctuations than others, this fact is legally insignificant because the purchaser's "profit picture" is irrelevant. Id.; In Re Folding Carton Antitrust Litigation, MDL 250, Pretrial Order No. 32 (N.D. Ill. May 5, 1978); In Re Carbon Dioxide Antitrust Litigation, MDL 940 (M.D.Fla. Nov. 18, 1993). Defendants' motion cannot be sustained on this basis.

2. **State Law Indirect Purchaser Claims As Basis For Discovering 'Downstream' Data**

Defendants also contend that downstream data is relevant to state law Indirect Purchaser claims brought by certain Non-Class Plaintiffs. Defendants' request in this regard is also without merit.[6] As an initial matter, Non-Class Plaintiffs represented during the hearing that to the extent these entities could also be considered Indirect Purchasers, those entities have already provided information about their indirect purchases of polyester staple fiber (or "PSF"). In addition, as Direct Purchasers, Non-Class Plaintiffs are not required to produce information regarding the amount of overcharges passed on to indirect purchasers who may also be plaintiffs in the case. In re Vitamins, 198 F.R.D. at 301. Even if marginally relevant to damages claims made by Indirect Purchasers, the Court still finds Defendants' request unduly burdensome. The District of Columbia recently stated:

---

[5] Although Defendants vehemently contend that they do not intend to assert such a pass-on defense, the Court cannot ignore the Supreme Court's rationale in Hanover Shoe.

[6] For purposes of this Order, the undersigned need not reach the issue of whether Indirect Purchasers' claims for monetary damages, if any, are cognizable under North Carolina law.

6