> [T]he fact remains that no court has ever allowed production of individualized downstream data and certainly there are other antitrust cases in which direct and indirect purchasers were named together as parties to the litigation. Therefore, the proposition that there are indirect purchasers in this case who may assert claims for damages other than direct overcharges is not sufficient to carry defendants' burden of showing that this information ought to be produced by the direct purchasers.

Id. This Court adopts this reasoning in denying Defendants' motion.

### 3. Class Certification As A Basis For Discovery Of 'Downstream' Data

Defendants also maintain that the downstream data is discoverable to enable them to adequately oppose certification of Direct Purchaser Plaintiffs' claims as a single class. In support of this proposition, Defendants rely almost solely on the recent Eleventh Circuit opinion, Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181 (11th Cir. 2003). Defendants' reliance on Valley Drug is misplaced.

While Valley Drug stands for the proposition that 'downstream' data may be relevant to the issue of class certification in certain cases, the facts of Valley Drug are distinguishable. Id. at 1192. Defendants concede that Valley Drug involved a potential conflict of interest among class members that is not present here.[7] (Defendants' Motion, at 16.) More specifically, in Valley Drug, there was evidence presented that some of the class representatives actually benefitted from the alleged conspiracy and, therefore, may not adequately represent the other class members. There was also evidence that these class representatives entered into "cost-plus" contracts, a limited exception to the general rule that a 'pass-on' defense is not permitted. Hanover Shoe, 392 U.S. at 494; Illinois Brick

---

[7] However, during oral argument, counsel for Defendants asserted that Valley Drug was the case most analogous to the facts of the instant case.

Co., 431 U.S. at 724 n. 2. There is no evidence Plaintiffs engaged in "cost-plus" contracts here. More importantly, Valley Drug was legitimately described as a "conflicts case" during oral argument. For that reason, the principles announced by the Fourth Circuit in Gunnells are that much more persuasive. Gunnells v. Healthplan Services, Inc., 348 F.3d 417 (4th Cir.2003)(stating that in order to defeat class certification, a conflict must be "fundamental" and "go to the heart of the litigation").[8]

There is no fundamental conflict present, or any other identifiable (as opposed to speculative) conflict, among the potential class members that causes the undersigned to question the adequacy of the class representatives. In seeking to establish that there is a fundamental conflict present that will lead to admissible evidence on the issue of adequacy of representation under Rule 23, Defendants ask the Court to rely on events that have already occurred in the instant case. For example, Defendants point to the ultimate exclusion of fiberfill from the definition of polyester staple within the DAK Settlement. However, Lead Counsel for Class Plaintiffs clarified during the hearing that DuPont and the other DAK Defendants do not manufacture fiberfill. Thus, there was no mysterious or suspect reason for Class Plaintiffs' decision to exclude fiberfill products from the definition of polyester staple in that context.

The Court also agrees with Class Plaintiffs that the predominance requirement of Rule 26(b)(3) can be established if an illegal overcharge occurring as a result of an alleged

---

[8] Defendants' counsel went to great lengths hoping to establish that because Defendants do not seek the downstream data for the purposes proscribed by the Supreme Court in Hanover Shoe and Illinois Brick, these cases are not determinative of either issue raised by Defendants' motion. As alluded to earlier, Defendants cannot deny that the teachings of these Supreme Court opinions are not only instructive, but also favor Plaintiffs' contention that Valley Drug stands alone.

8

single conspiracy to fix prices or allocate customers is proven. DeLoach, 206 F.R.D. at 561. This is true even if the extent of the injury or damages varied among the Plaintiffs. Id.

### B. Benefits To Defendants Versus Plaintiffs' Burden If Discovery Of Downstream Data Is Allowed

Applying the relevant factors, the Court finds that the burden to Plaintiffs far outweighs any potential benefit to Defendants. FED. R. CIV. P. 26(b)(2)(iii). For the reasons set forth herein, the information sought by Defendants is not relevant and, therefore, not helpful in resolving the issues before the Court.[9] Further, even if the Court deemed downstream data relevant for the purposes identified by Defendants, the burden that would be placed upon Plaintiffs by granting Defendants' motion far outweighs Defendants' purported need for the information sought. Indeed, Defendants recognized as much and proposed to withdraw certain portions of their discovery request in order to lessen Plaintiffs' burden. Despite this, the breadth of the information sought, given any conceivable compromise, would continue to impose an unimaginable and heavy burden in terms of both time and expense on Plaintiffs.[10] Consistent with the findings of other federal district courts facing complex antitrust litigation, this Court finds no need for requiring production of this type of individualized downstream data.

---

[9] This factor, along with the Plaintiffs' argument regarding the estimated strain on their resources, is determinative notwithstanding the fact that the amount in controversy is obviously great given the trebling provision within the Clayton Act.

[10] The Court relies on the affidavits submitted by both Class and Non-Class Plaintiffs.

9

IV. Order

In conclusion, the Court finds the downstream data sought by Defendant is not relevant to the underlying merits of the direct purchaser antitrust actions before the Court. In addition, Defendant has not met its burden of establishing the need for individualized downstream data (not already provided) as it may pertain to the indirect purchaser claims before the Court. Moreover, Defendants' sole authority in support of their contention that downstream data is crucial to class certification issues is not persuasive here. Finally, regardless of the purported purpose for Defendants' motion to compel downstream data, the Court finds it significant that Defendants failed to provide an economist's affidavit or declaration explaining why individualized downstream data is necessary.

IT IS, THEREFORE, ORDERED that Defendants' Motion To Compel Discovery Of Downstream Data is hereby DENIED.

IT IS FURTHER ORDERED that the instant Order governs all forms of discovery, including depositions.

THIS the 5th day of February, 2004.

RICHARD L. VOORHEES
UNITED STATES DISTRICT COURT JUDGE