-4-

argument ignores the principle we recognized in Pretrial Order No. 20, In Re Folding Carton Antitrust Litigation, 75 F.R.D. 727 (N.D. Ill. 1977), that where a conspiracy to fix prices is established, all members of the class are presumed to have been injured in fact. That is, assuming that it is demonstrated that the prices of folding cartons were fixed, all buyers thereof will be presumed to have paid higher prices for those cartons by reason of the price-fixing conspiracy. Whether certain buyers made profits is irrelevant to the question whether those buyers actually paid higher prices as a result of the alleged conspiracy to fix prices. Moreover, buyers' leverage is not determined by profits, but by volume of purchases. Plaintiffs state that they have already made available to defendants information regarding the quantity of their folding carton purchases.

"Backward Integration"

Defendants argue that the financial data sought could be used to assess the size and prosperity of buyers to measure the feasibility of "backward integration" by which purchasers of folding cartons would develop their own folding carton manufacturing facilities. Defendants contend that evidence that "backward integration" is relatively easy and inexpensive, coupled with evidence of prosperous buyers able to make the necessary capital investment, would tend to demonstrate the lack of impact of any price-fixing conspiracy.

-5-

Defendants submit that if "price-fixers" caused folding carton prices to become excessive, buyers would make their own cartons.

Plaintiffs contend that the feasibility of "backward integration" is equally immaterial in a case such as this where overcharge is the sole basis for damage. They concede that some purchasers of cartons use relatively large numbers of cartons, and state that they have provided discovery, without objection, as to purchases they made. Nevertheless, plaintiffs submit that their profits or losses in other aspects of their business would not be pertinent and would involve the very inquiries prohibited by Illinois Brick Co. v. State of Illinois, 431 U.S. 720 (1977).

We find defendants' relevance arguments with respect to "backward integration" without merit. The feasibility of "backward integration" is immaterial where, as here, the sole basis for damages is overcharge. Even assuming that some of the plaintiffs had the power to enter the folding carton manufacturing business and manufacture their own folding cartons, this would not make the details of their financial situations relevant to an overcharge case in which they were suing as purchasers. A fortiorari, such financial information is irrelevant where it is unknown whether "backward integration" is feasible. Moreover, while

-6-

evidence regarding the feasibility of "backward integration" might well be relevant in a monopoly case, it is irrelevant to the alleged price-fixing conspiracy before us.

### Profitability and Damage Evidence

Defendants state that the financial data sought could help them to rebut plaintiffs' damage evidence. Defendants contend that "if the profitability of the buyers' operations using folding cartons increased by more than the standard price indices during the precise time at which the plaintiffs claim the conspiracy became effective," (Defendants' Brief at 6) it would detract from the weight of plaintiffs' damage evidence. Defendants further state that because plaintiffs traditionally use defendants' profit data to prove overcharges and damages, defendants should be entitled to discover plaintiffs' profitability in order to attempt to develop evidence of lack of impact and damages.

Plaintiffs contend that "[w]hether 'the profitability of the buyers' operations using folding cartons increased by more than the standard price indices' is not only irrelevant, but clearly illustrates the vice of defendants' entire position on Request No. 16." (Plaintiffs' Brief at 4). Plaintiffs submit that "the Court would be obliged to inquire into the economics and finances of practically every major industry using cartons, to ascertain whether each purchaser absorbed, passed-on or made a profit on the overcharges, in comparison with industry generally, and the amounts thereof."