IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| J.B.D.L. Corp. d/b/a BECKETT APOTHECARY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WYETH-AYERST LABORATORIES, INC., et al., <br><br> Defendants. | Civil Action No. C-1-01-704 <br><br> Judge Sandra S. Beckwith <br> Magistrate Judge Timothy S. Hogan |
| CVS MERIDIAN, INC. AND RITE AID CORP., <br><br> Plaintiffs, <br><br> v. <br><br> WYETH, <br><br> Defendant. | Civil Action No. C-1-03-781 <br><br> Judge Sandra S. Beckwith |

**WYETH'S RESPONSE TO OBJECTIONS OF PLAINTIFFS
CVS AND RITE AID TO MAGISTRATE JUDGE'S ORDER
COMPELLING PRODUCTION OF DOCUMENTS**

Defendants Wyeth and Wyeth Pharmaceuticals (collectively, "Wyeth") respectfully submit this brief in opposition to the objections of plaintiffs CVS Meridian, Inc. ("CVS") and Rite Aid Corporation ("Rite Aid") to portions of Magistrate Judge Hogan's Order of June 7, 2004 directing CVS and Rite Aid to respond to discovery from Wyeth. Judge Hogan's Order requiring CVS and Rite Aid to produce discovery was well-reasoned and well-supported by the applicable case law, and it should be upheld.

## INTRODUCTION AND SUMMARY

In his Order dated June 7, 2004 (the "Order"), Magistrate Judge Hogan properly ruled that CVS and Rite Aid must produce documents related to "speculative purchasing" of pharmaceutical products. He also ordered CVS and Rite Aid to produce some (but not all) of the documents that Wyeth sought relating to payments or reimbursements for dispensing of Premarin and Cenestin to customers. Order at 8. CVS and Rite Aid's objections to these rulings have no basis, and Judge Hogan's Order should be affirmed with respect to CVS and Rite Aid.[1]

- The sole argument that plaintiffs make in support of their objection to producing speculative purchasing discovery is that such discovery should be barred by *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968). However, Judge Hogan carefully reviewed the applicable case law and correctly rejected plaintiffs' overbroad interpretation of *Hanover Shoe*. Judge Hogan recognized that speculative purchasing is "an important issue in this case," which is wholly unrelated to the "pass-on" defense that was at issue in *Hanover Shoe*. Order at 5-6. Indeed, even cases relied upon by plaintiffs acknowledge that *Hanover Shoe* does not foreclose discovery where, as here, the discovery is to be used for purposes other than establishing a "pass on" defense.

- Judge Hogan also properly rejected plaintiffs' argument that Wyeth is not entitled to discovery of speculative purchasing evidence unless Wyeth first produces evidence establishing that defense. No case supports plaintiffs' view that a defendant must prove its defense before it is entitled to obtain discovery relevant to that defense. Moreover, as plaintiffs are aware, Wyeth did submit substantial evidence to Judge Hogan demonstrating the sound basis for its speculative purchasing defense.

- Plaintiffs' fall-back position – namely, that it should be required only to produce speculative purchasing evidence limited solely to Premarin – is a transparent effort to negate Judge Hogan's ruling. Evidence of speculative

---

[1] Wyeth has separately filed objections to that portion of Judge Hogan's Order that refused to allow Wyeth to obtain speculative purchasing discovery from two wholesalers, Cardinal Health and Amerisource Bergen; Judge Hogan ruled that such discovery was relevant and important to Wyeth's defense, but that the burden on the wholesalers of providing such discovery outweighed its importance to Wyeth.

      purchasing in plaintiffs' possession will presumably relate generally to the issue of speculative purchasing, or to the issue of speculative purchasing of a combination of products, including Premarin. Allowing plaintiffs to withhold such clearly relevant materials – simply because the documents might refer to pharmaceutical products in addition to Premarin – would unduly impair Wyeth's rights to obtain important evidence. Judge Hogan considered and quite properly rejected this approach.

- Finally, plaintiffs also object to Judge Hogan's decision to grant *in part* Wyeth's request for managed care contracts. Judge Hogan has already restricted this discovery request to managed care contracts relating to Premarin and Cenestin; plaintiffs now wish to eliminate the request altogether. Yet plaintiffs' core allegations in this case relate to managed care contracts; Wyeth is clearly entitled to discovery of the managed care contracts that govern plaintiffs' sale of Premarin or Cenestin.

Judge Hogan carefully considered the legal precedents as well as the factual assertions of the parties in weighing Wyeth's motion to compel discovery. As Judge Hogan recognized, speculative purchasing is "an important issue in this case," and is therefore a "legitimate end to be pursued via discovery." Order at 6. Furthermore, as Judge Hogan noted, CVS and Rite Aid chose to opt out of the class and sue Wyeth directly, and therefore are subject to the same discovery obligations as any other party. Order at 7. Yet Wyeth has produced over 700,000 pages of documents in response to discovery requests, while CVS and Rite Aid have produced fewer than 1000 pages (and three computer discs). Plaintiffs' objections seek to rehash the same arguments that Judge Hogan thoroughly analyzed and rejected in his Order.

## DISCUSSION

### I. STANDARD OF REVIEW

      Under Fed. R. Civ. P. 72, a pretrial discovery order by a magistrate judge must be affirmed unless it is clearly erroneous or inconsistent with governing law. *See*, *e.g.*, *Balalovski v. Lucent Techs. Inc.*, No. 2:00-CV-189, 2003 WL 21011148, at *4 (S.D. Ohio

Apr. 10, 2003) (attached as Exhibit 1); *Farley v. Farley*, 952 F. Supp. 1232, 1235 (M.D. Tenn. 1997). Judge Hogan's conclusion that speculative purchasing is a relevant issue and is not barred by *Hanover Shoe* is well-supported by the case law. Plaintiffs have failed to demonstrate any error of fact or law with respect to his ruling.

II.   **ARGUMENT**

    A.    **Plaintiffs Have No Grounds for Objecting to Wyeth's Speculative Purchasing Discovery Requests.**

        1.    **"Speculative Purchasing" Evidence Is Relevant, Discoverable, and Central to Wyeth's Defense.**

The issue of "speculative purchasing" is of crucial importance to Wyeth's defense in this case. Plaintiffs' core allegation is that Wyeth's list prices for Premarin were artificially inflated as a result of allegedly exclusionary contracts that Wyeth entered into with third-party managed care organizations ("MCOs"). Wyeth, however, intends to prove that these MCO contracts had no impact on its list prices, and that increases in the prices of Premarin during the relevant period were the result of legitimate market factors. One such market factor is the widespread practice known as "speculative purchasing."

As Judge Hogan explained in his Order, "speculative purchasing" is a type of arbitrage – *i.e.*, buying low and selling high. Wholesalers purchase large stockpiles of pharmaceutical products in anticipation of a manufacturer's price increases; once the manufacturer actually implements the price increase, the wholesalers increase their own resale prices and thereby reap greater profits on all the products purchased at the manufacturer's lower price. Accordingly, as Wyeth witnesses will testify, Wyeth was able to increase its prices for Premarin without resistance from its large wholesaler customers because those customers were not harmed by – but rather benefited from – the

price increases. In other words, it was not the challenged contracts between Wyeth and MCOs that caused Premarin prices to increase; rather, it was legitimate market forces, including speculative purchasing.

Wyeth's document requests seek information that directly relates to plaintiffs' speculative purchasing practices. As Judge Hogan properly found, such documents are clearly relevant to a central liability issue in this case – *i.e.*, whether Wyeth's list price increases were caused by its allegedly exclusionary contracts with MCOs (as plaintiffs allege) or were instead the normal result of market forces such as speculative purchasing by large customers. Order at 5-6. Judge Hogan specifically found that speculative purchasing is "an important issue"; that the fact-finders "need to know how and why Wyeth determined its allegedly noncompetitive price"; and that discovery of speculative purchasing issues is "a legitimate end to be pursued in discovery." Order at 5-6.

Furthermore, as discussed below, Judge Hogan carefully considered and rejected plaintiffs' argument that such discovery is barred by *Hanover Shoe*; as Judge Hogan held, *Hanover Shoe* only addressed the relevance of "pass on" defenses, and Wyeth is *not* seeking speculative purchasing discovery for purposes of establishing a "pass on" defense.

    **2. The Case Law Amply Supports Judge Hogan's Conclusion That Discovery of "Downstream" Pricing Practices Is Permissible Here and Not Barred by *Hanover Shoe*.**

In *Hanover Shoe*, the Court found that if a plaintiff establishes that a price increase is "illegal" (*e.g.*, if a defendant is proved to have engaged in price-fixing), a defendant may not avoid damages by showing that the illegal price increase was "passed on" by the plaintiff to its own customers. 392 U.S. at 493-94. But as Judge Hogan

correctly found, *Hanover Shoe* does not apply here, because Wyeth is not attempting to assert a "pass on" defense. Order at 5-6. Rather, information about the speculative purchasing practices of large resellers is directly relevant to the central, threshold issue of liability in this case – *i.e.*, whether Wyeth's prices were illegal in the first place – not the secondary issue of damages mitigation, which *Hanover Shoe* addressed (whether unlawful prices that are "passed on" to plaintiffs' downstream customers eliminate any injury to plaintiff). Plaintiffs ignore this critical legal distinction; Judge Hogan quite properly recognized it. Order at 5-7.

Nothing in *Hanover Shoe* remotely suggests that discovery of downstream pricing practices is barred where such evidence is to be used for purposes *other than* establishing a "pass on" defense.[2] Contrary to the assertions of CVS and Rite Aid, cases decided after *Hanover Shoe* confirm that downstream pricing evidence is discoverable when it is relevant to issues other than "pass on." For example, in *In re Infant Formula Antitrust Litigation*, MDL 878 (N.D. Fla. Jan. 23, 1992), defendants sought to develop evidence that retail pharmacies "hold prices of all infant formulas steady, regardless of fluctuations in wholesale prices." The *Infant Formula* defendants urged that "[w]ith this pricing scheme in place, the manufacturers have no incentive to lower wholesale prices: to do so would not increase market share, but would rather only cut profits." *Id*. Because this

---

[2]  Indeed, the *Hanover Shoe* decision itself recognizes that downstream cost and pricing information may be relevant to issues other than a "pass on" defense. Specifically, the Supreme Court recognized the relevance of evidence relating to the plaintiff's costs of borrowing money, because such costs would be used to calculate the profits that the plaintiff "would have earned" in the absence of the allegedly illegal conduct. *Hanover Shoe,* 392 U.S. at 503-04. In short, one need look no further than the *Hanover Shoe* decision itself to refute plaintiffs' claim that all downstream pricing and cost data is irrelevant.

was not a "pass on" defense, the court allowed discovery of "downstream" pricing information from plaintiffs. *See* Exhibit H to Wyeth's Motion to Compel the Production of Documents from Cardinal Health, Inc. and Amerisource Bergen Corp., at 7. As in *Infant Formula,* Wyeth seeks evidence that the speculative purchasing of major purchasers reduced any incentive for Wyeth to lower prices. As was found in *Infant Formula,* discovery of such information is clearly permissible.

Likewise, in *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357, 369 (E.D.N.Y. 2001), the court held that downstream pricing evidence was relevant (and admissible at trial) as "permissible background information" to show how the insurance business operated. The plaintiff there argued that any evidence relating to "pass on" of damages was precluded by *Hanover Shoe*. The court disagreed, ruling that the jury was entitled to know how insurers set premiums, and that *Hanover Shoe* did not hold otherwise. Any danger that the jury might misuse the evidence to reduce damages inappropriately could be obviated by a limiting instruction. *Id*. at 371.

Similarly, the Eleventh Circuit has ruled that *Hanover Shoe* cannot bar a defendant from obtaining discovery of downstream pricing information in order to establish a conflict among members of a class of pharmaceutical purchasers. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1192 (11th Cir. 2003). The Court rejected the argument that *Hanover Shoe* precludes discovery of downstream pricing practices when such evidence is relevant to issues other than a "pass on" defense. Recently, in this Court's Order of June 30, 2004 in *Ferrell v. Wyeth-Ayerst Labs.,* No. C-1-01-447 (granting in part and denying in part plaintiffs' motion for certification of "indirect

purchaser" classes), this Court cited *Valley Drug* and observed that "[s]hould the evidence in this case establish a fundamental conflict among differently-situated [class members] with respect to the economics of the challenged rebate system, the Court will revisit this issue." Certification Order of June 30, 2004, at 12. Needless to say, Wyeth could never develop evidence necessary to establish a conflict between large wholesalers (who benefited from Wyeth's price increases through speculative purchasing) and smaller class members (who allegedly were harmed by such price increases) if it were barred from obtaining discovery of such evidence by *Hanover Shoe*. *Valley Drug* makes clear that *Hanover Shoe* is inapplicable here.

Indeed, as Judge Hogan noted, even cases relied upon by plaintiffs do not support their contention that *Hanover Shoe* bars discovery in this case. For example, in *In re Vitamins Antitrust Litigation*, 198 F.R.D. 296, 299 (D.D.C. 2000), the court ruled:

> [D]efendants are correct that *Hanover Shoe* and its progeny do not render irrelevant plaintiffs' individualized downstream data because defendants are not seeking discovery of this data in order to assert a pass-on defense; rather defendants contend that this information is relevant to the determination of consumer demand which, according to [defendants' experts] is a relevant factor in the calculation of "but for" prices that will be determinative of plaintiffs' damages.

In short, Judge Hogan followed well-established case precedent in ruling that *Hanover Shoe* does not bar discovery of downstream pricing evidence that is sought in connection with issues other than a "pass-on" defense. After weighing the arguments of the parties, and after a careful review of the case law, Judge Hogan concluded that speculative purchasing was not only relevant, but was "an important issue in this case." Order at 6. Judge Hogan's conclusion is clearly correct.

### 3. The Case Law Relied on by Plaintiffs Does Not Support Their Contention That Judge Hogan Erred.

In their objections, plaintiffs contend that "Judge Hogan overlooked the considerable body of case law holding that discovery of such downstream materials is impermissible for any purpose." (Plfs' Objections at 7-8.) This contention is doubly flawed: (1) Judge Hogan plainly did not "overlook" any of the relevant case law, but in fact addressed many of the cases plaintiffs contend he ignored; and (2) these cases in no way support plaintiffs' overbroad interpretation of *Hanover Shoe*. *See* Order at 5-7.

The cases cited by plaintiffs simply stand for the undisputed proposition that requests for "downstream" discovery may be denied when the purpose – unlike Wyeth's purpose here – is to establish a pass-on defense. *See*, *e.g.*, *Go-Tane Serv. Stations, Inc. v. Ashland Oil, Inc.*, 508 F. Supp. 200, 204-06 (N.D. Ill. 1981) (striking affirmative defense that illegal charges were "passed through" to customers); *In re Folding Carton Antitrust Litig.*, MDL 250, Pretrial Order No. 32 (N.D. Ill. May 5, 1978) (Attachment 2 to Plfs' Objections) (denying defendants' request for financial documents to support pass-on defense); *In re Carbon Dioxide Antitrust Litig.*, MDL 92-940 (M.D. Fla. Nov. 18, 1993) (holding that in a price-fixing case, information about plaintiffs' costs and profits was not relevant to the issue of whether defendants actually fixed prices); *In re Polyester Staple Antitrust Litig.*, MDL No. 3:03CV1516, slip op. at 5 (W.D.N.C. Feb. 5, 2004) (Attachment 1 to Plfs' Objections) (barring discovery of downstream pricing evidence where such evidence was intended to show "that [p]laintiffs have not *suffered any injury*

from the alleged [price-fixing] conspiracy") (emphasis added).[3]

Moreover, many of the cases cited by plaintiffs actually refute plaintiffs' arguments, and acknowledge that discovery of "downstream" information is permissible under *Hanover Shoe* where (as here) the discovery does not relate to a "pass-on" defense. The court in the *Vitamins* case, as noted above, expressly acknowledged that *Hanover Shoe* does not bar discovery of "downstream" evidence that relates to an issue other than a "pass on" defense. 198 F.R.D. at 301. The court in *Folding Carton* acknowledged that downstream evidence "might well be relevant in a monopoly case" in order to establish the feasibility of vertical integration into the relevant market. Slip op. at 5-6. Similarly, in *Polyester Staple*, the court acknowledged that "downstream" pricing evidence may be relevant for purposes other than "pass on," such as class certification issues. Slip op. at 7 (citing *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181 (11th Cir. 2003), which held that discovery of downstream pricing information was relevant and not barred by *Hanover Shoe*).

In sum, plaintiffs have no basis for contending either that Judge Hogan "overlooked" relevant precedents, or that the "overlooked" precedents support their contention that *Hanover Shoe* bars discovery in this case. Judge Hogan considered the relevant case law, and he interpreted that case law correctly.

---

[3] Some of the cases cited by plaintiffs do not even address the purpose of the discovery at issue, and thus are not of any precedential value at all. *E.g.*, *In re Monosodium Glutamate Antitrust Litig.*, MDL 00-1328 (D. Minn. Sept. 14, 2000) (providing no discussion of purpose of discovery at issue); *In re Wirebound Boxes Antitrust Litig.*, 131 F.R.D. 578 (D. Minn. 1990) (same).

### B. Wyeth's Reliance on Speculative Purchasing Is Supported by Substantial Evidence.

Plaintiffs next assert that Judge Hogan erred in permitting Wyeth to obtain discovery relevant to its speculative purchasing defense, because Wyeth allegedly has "conjured up" this defense in order to "obtain otherwise prohibited downstream discovery." (Plfs' Objections at 8.) In fact, plaintiffs go so far as to contend that "the Court should bear in mind that this record contains not a scintilla of evidence" supporting Wyeth's speculative purchasing defense. *Id.*

This contention is baseless. As plaintiffs are well aware, Wyeth included significant evidence regarding the existence and relevance of speculative purchasing in its motion to compel. Such evidence included numerous public statements by large customers of Wyeth about their speculative purchasing activities; deposition and affidavit testimony of Wyeth witnesses regarding speculative purchasing; and an internal document from Wyeth's own files memorializing an instance in which Wyeth personnel recommended expedited implementation of a price increase in order to induce large customers to begin selling Premarin from their stockpiles, rather than hoarding product in anticipation of a month-end price increase. (AHP176865.)

As Wyeth's Vice President for Global Pricing, Forecasting and Contracting has testified at deposition, "wholesalers [who purchased Premarin directly from Wyeth] were very happy with the price increases [implemented by Wyeth] because their inventory automatically appreciated by the amount that we took our price increase and that was profit for the wholesalers." (Raymond Tiedemann Deposition at 242, attached as Exhibit 1 to Wyeth's Reply Brief in Support of Its Motion to Compel Discovery and Brief in

Opposition to Cross Motions to Modify or Quash Subpoenas, dated March 19, 2004).[4] In short, plaintiffs' unsupported contention that Wyeth has "conjured up" this defense is baseless.

In any event, there is no requirement in the Federal Rules of Civil Procedure that a defendant must provide proof of its substantive defenses to obtain discovery supporting such defenses. *See, e.g.*, *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 69 (2d Cir. 2003) ("the [federal] rules generally do not place any initial burden on parties to justify their deposition and discovery requests"); *In re Infant Formula, supra* at 7-8 ("[i]t is not necessary that [defendant's theory] be proven valid before discovery thereon will be allowed"); 8 Charles A. Wright, et al., *Federal Practice and Procedure* § 2008 (2d ed. 1994 & Supp. 2004) ("Discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient."). Indeed, any such requirement would be illogical. If a defendant were denied discovery necessary to prove its defense unless it first established that defense, the right to discovery would be rendered all but meaningless. Judge Hogan committed no error in rejecting this untenable argument.

---

[4] Wyeth also cited other supporting evidence to Judge Hogan. For example, in a 2003 meeting with Wyeth, one wholesaler (Cardinal Health) "stressed the importance of speculative purchasing with respect to its Wyeth business," and "noted that it realized a 2.5% profit margin on Wyeth's human pharmaceuticals, which was attributable to buy-ins and investment purchasing." (Declaration of John Trzaskalski, attached as Exhibit 2 to Wyeth's Reply Brief in Support of Its Motion to Compel Discovery and Brief in Opposition to Cross Motions to Modify or Quash Subpoenas, dated March 19, 2004, at ¶ 6). Similarly, another wholesaler (Amerisource Bergen) noted in a November 2002 meeting with Wyeth that "Wyeth's product line, including Premarin, was very profitable for ABC because of the frequency and size of Wyeth's list price increases." (*Id.* at ¶ 5.)

### C. Plaintiffs' Production of Speculative Purchasing Information Should Not Be Limited as CVS and Rite Aid Suggest.

Apparently recognizing the weakness of their argument that Judge Hogan committed legal error in ruling that *Hanover Shoe* does not bar discovery of speculative purchasing evidence, plaintiffs argue that Judge Hogan abused his discretion by refusing to reduce the scope of this discovery. Specifically, plaintiffs now ask this Court to overturn Judge Hogan's ruling permitting Wyeth to obtain documents relating to speculative purchasing, and to limit Wyeth's discovery narrowly to "documents relating to the speculative purchasing of Premarin only." (Plfs' Objections at 10.)

Such a limitation, however, would thwart Wyeth's ability to obtain critically important evidence. To establish that plaintiffs' speculative purchasing practices were a cause of Premarin price increases, Wyeth needs documents discussing the overall speculative purchasing practices of its customers, including business and strategic plans, which are likely to contain high-level discussions of the role and importance of speculative purchasing to plaintiffs' businesses. Presumably, many of these highly relevant documents will discuss the issue of speculative purchasing in general terms, and will not be confined to speculative purchasing of Premarin alone. Likewise, documents that discuss speculative purchasing of Premarin and that would be highly relevant here may well discuss speculative purchasing of other products as well. Furthermore, documents relating to the speculative purchasing of products other than Premarin will also help Wyeth establish that speculative purchasing is a pervasive business practice of its customers, not limited to Premarin.

In essence, plaintiffs argue that Judge Hogan abused his discretion by allowing Wyeth to obtain highly relevant documents relating to the critically important issue of

speculative purchasing, rather than artificially restricting Wyeth's discovery to a narrow segment of such relevant documents. Judge Hogan acted well within his discretion in refusing to restrict Wyeth's discovery to the artificial boundaries urged by plaintiffs.

> **D. Judge Hogan Correctly Ruled That CVS and Rite Aid Must Produce Documents Responsive to Request No. 25.**

Finally, CVS and Rite Aid object to the portion of Judge Hogan's Order compelling them to produce documents relating to MCOs' reimbursement of CVS and Rite Aid with respect to Premarin and Cenestin prescriptions.[5] Plaintiffs contend that the MCO contracts covered by this request are irrelevant because they do not contain information specific to the reimbursement of Premarin or Cenestin, but rather "contain a single formula for how payment (i.e., reimbursement) shall be determined for all brand-name prescription drugs" without reference to any particular drug. (Plfs' Objections at 12.) Plaintiffs' objection misses the point. The core allegation in this case focuses on the alleged impact that MCO contracts have on pricing of Premarin and Cenestin. Wyeth is clearly entitled to know the procedures and formulas by which MCOs reimburse plaintiffs for Premarin and Cenestin. Plaintiffs admit that this information is contained in the requested contracts. The fact that the contracts apply equally to all products, and do not contain individualized reimbursement procedures for Premarin and Cenestin, is immaterial. Judge Hogan acted well within his discretion in ordering the production of these unquestionably relevant contracts.

---

[5]  Wyeth also sought contracts relating to other estrogen therapy and hormone therapy products, but Judge Hogan ordered plaintiffs only to produce contracts relating to Premarin and Cenestin.

## CONCLUSION

Judge Hogan's analysis of relevant legal precedents was thorough and well-supported. He relied on authoritative case law to conclude that *Hanover Shoe* does not prohibit discovery where, as here, the discovery is sought for purposes other than to establish a "pass on" defense. None of the cases relied upon by plaintiffs suggests that Judge Hogan committed any error of law. His Order requiring discovery from CVS and Rite Aid was a sound exercise of his discretion and should be upheld.

Respectfully submitted,

s/Grant S. Cowan
James R. Adams  (0008253)
Grant S. Cowan   (0029667)
**FROST BROWN TODD LLC**
2200 PNC Center
201 E. Fifth Street
Cincinnati, Ohio  45202-4182


**ARNOLD & PORTER LLP**
555 Twelfth Street, N.W.
Washington, D.C.  20004-1206
(202) 942-5000


**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois  60601-9703
(312) 558-5600

Counsel for Defendants

Dated:  July 12, 2004

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing has been served electronically this 12th day of July, 2004 on all Counsel of Record with the CM/ECF Registration, and by U.S. mail, postage prepaid, and facsimile, upon the following:

Eliot Long
**BUCHANAN INGERSOLL**
1835 Market Street, 14th Floor
Philadelphia, PA  19103-2985
Facsimile: 215-665-8760

                                        s/Grant S. Cowan
                                        Grant S. Cowan
                                        Frost Brown Todd LLC