Westlaw.

Not Reported in F.Supp.2d
(Cite as: 2003 WL 21011148 (S.D.Ohio))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. Ohio, Eastern Division.

Aleksandar S. BALALOVSKI, Plaintiff,
v.
LUCENT TECHNOLOGIES, INC., Defendant.

No. 2:00-CV-189.

April 10, 2003.

*OPINION AND ORDER*

SARGUS, J.

*1 This matter is before the Court on the Defendant's Motion for Reconsideration of the Magistrate Judge's September 5, 2002 *Opinion and Order*. (Doc. # 60). For the reasons that follow, the Defendant's motion is denied.

I.

This is an employment discrimination action commenced by Plaintiff Aleksandar Balalovski against his former employer, Defendant Lucent Technologies, Inc. The complaint presents claims for disability discrimination under the Americans with Disabilities Act ["ADA"], 42 U.S.C. § 12101, *et seq.,* age discrimination under the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. § 621, *et seq.* and similar claims under Ohio law, O.R.C. § 4112, together with state law claims for intentional infliction of emotional distress and wrongful discharge in violation of Ohio public policy. Balalovski also brings claims for retaliation.

Plaintiff was employed by Lucent for thirty years as a production associate, until he was discharged on December 6, 1998. Plaintiff suffers from cervical disc disease, a condition which affects his back and neck. (*Complaint* at ¶ 8). Plaintiff's treating physician recommended that Plaintiff not perform occupational duties that required lifting more than twenty five pounds, or involved repetitious bending or stooping or reaching above shoulder height. (*Id.* at ¶ 9). Plaintiff claims that his supervisors "constantly assigned him duties contrary to his restrictions" (*Id.* at ¶ 10), which resulted in his condition being aggravated. Plaintiff further alleges that he received poor performance evaluations as a result. (*Id.* at ¶ 11).

Plaintiff sought assistance in enforcing his medical restrictions from Lucent's Medical Director, Dr. Napolean V. Carandang, who is now deceased. (*Id.* at ¶ 12). Plaintiff claims that Dr. Carandang "insisted that [Plaintiff] violate those restrictions and perform the tasks he was assigned." (*Id.* at ¶ 12). As a result of such performance, Plaintiff's condition was aggravated and he went on sick leave. (*Id.* at ¶ 13). Upon his return to work, Plaintiff was informed by his supervisors that Dr. Carandang deemed Plaintiff "medically not acceptable for work." (*Id.* at ¶ 14). Plaintiff then went on short-term disability leave and was later dismissed from employment for allegedly being unable to perform his work. (*Id.* at ¶ 15). After several appeals of the decision and an independent medical evaluation, Plaintiff was deemed capable of returning to work with certain restrictions. (*Id.* at ¶ 16). Shortly before his scheduled return, Plaintiff suffered a panic attack, allegedly triggered by the prospect of resuming work at Lucent. (*Id.*). Plaintiff sought treatment and did not return to work at Lucent. (*Id.* at ¶ 17).

II.

The Defendant seeks reconsideration of the Magistrate Judge's ruling denying Defendant's motions for protective order as to the taking of depositions of two physicians employed by Lucent as well as to the limited production of the personnel files of two other Lucent physicians. On August 30, 2001, Plaintiff noticed the depositions of Lawrence Shoner, M.D. and Ilona Brandt-Sasin, M.D. [FN1] In response, Defendant filed motions for protective

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d  
(Cite as: 2003 WL 21011148 (S.D.Ohio))

Page 2

order on the basis that the witnesses do not possess knowledge relevant to this case as they did not treat Plaintiff and are not familiar with Plaintiff's condition. Prior to the completion of briefing on the motions, Magistrate Judge Kemp considered Plaintiff's motion to modify a protective order that was issued in another case in which Plaintiff's counsel was involved, *Holt v. Lucent Technologies,* 2:02- CV-99-463 (Marbley, J.).

> FN1. Plaintiff also noticed the deposition of Allen Ritchie. This deposition is not the subject of any discovery dispute.

*2 In the *Holt* case, the parties entered into a Stipulated Protective Order as to certain documents concerning Lucent's medical practices towards employees. Plaintiff's counsel used the documents in that case in violation of the protective order. Judge Marbley found counsel in contempt and assessed payment of a fee. In this case, Plaintiff requested that Magistrate Judge Kemp modify the protective order to permit use of the documents. Judge Kemp concluded that "Plaintiff has neither shown that the *Holt* protective order was improvidently entered nor demonstrated a compelling need to have the *Holt* protective order modified." (*Opinion and Order,* June 10, 2002 at 5). Thus, Plaintiff's request was denied. Magistrate Judge Kemp concluded that Plaintiff's counsel's use of the *Holt* documents in this case is "unauthorized, and this Court will not permit [Plaintiff's counsel] to use the documents in any fashion from this point forward." (*Id.* at 9).

Magistrate Judge Kemp noted Lucent's concern that some of the information contained in the *Holt* documents could be available from other sources and potentially be used by Plaintiff in connection with discovery in this case. With respect to this issue, Judge Kemp held:

> If Plaintiff has an independent basis either for requesting similar information in this case, or an independent basis for arguing that the depositions which he noticed ought to go forward, he is still entitled to present that information to the Court. The Court will, of course, scrutinize those arguments closely to insure that they are not based on the *Holt* documents or the information contained in those documents, and if it does not believe that counsel has successfully segregated what they learned in *Holt* but are not permitted to disclose from what has otherwise been made available to them through appropriate discovery, the Court reserves the right both to deny relief and to impose further sanctions.

(*Opinion and Order,* June 10, 2002 at 10). Accordingly, Judge Kemp ordered that Plaintiff respond to the Defendant's motions for protective order regarding the three depositions "without making any reference to documents which are covered by the *Holt* protective order or information contained in those documents." (*Id.* at 11).

On September 5, 2002, Magistrate Judge Kemp issued a ruling on the Defendant's motions for protective order, which ruling Defendant now moves to reconsider. In addition to the propriety of deposing Drs. Shoner and Brandt-Sasin, the Magistrate Judge considered Plaintiff's request for production of the personnel files of Dr. Carandang and Dr. Maseys. Magistrate Judge Kemp denied the motions for protective order and ordered limited production of the personnel files. In ruling, Judge Kemp concluded that Plaintiff "has eliminated any reference to documents produced in [the *Holt* ] litigation pursuant to the ... protective order." ( *Opinion and Order,* September 5, 2002 at 2). He further concluded that the *Holt* documents had not substantially influenced the arguments presented in opposition to Defendant's motions.

*3 As to the taking of depositions, Magistrate Judge Kemp concluded that the depositions were at least reasonably calculated to lead to the discovery of admissible evidence. In particular, Judge Kemp stated:

> Although Lucent might wish to try this case as if Plaintiff's allegations were confined solely to the way in which he was treated by Dr. Carandang, Plaintiff wishes to expand the case beyond that. Whether the trial judge ultimately permits such evidence to be introduced is not the issue here. Rather, the issue is whether the requested discovery has some bearing upon Mr. Balalovski's claims or defenses. For discovery purposes, the Court believes that it does. Since Dr. Shoner was the recipient of the two letters in question, and because Dr. Brandt-Sasin was in a supervisory position over Dr. Carandang, their depositions cannot be deferred simply on the basis that they have no relevant testimony to give.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

(*Id.* at 6). The letters referenced were written by Union representatives to Lucent concerning Dr. Carandang. Specifically, on October 16, 1998, Cindy Grice, Chairperson of the IBEW, Local 2020 Welfare & Benefit Committee wrote to Dr. Shoner about problems that members were having with Dr. Carandang. According to Magistrate Judge Kemp, the

> [a]llegations reported to Dr. Shoner were similar to the claims set forth in Mr. Balalovski's complaint. They include assertions that Dr. Carandang encouraged workers to retire, misdiagnosed injuries, and told employees to perform maneuvers that their own doctor had instructed them not to perform. Another letter was written to Dr. Shoner, this time by Russ Stuller, the President and Business Manager of Local 2020, on March 12, 1998. Again, the letter questioned "Dr. Carandang's ability to function in the position of Columbus Works Medical Director."

(*Id.* at 5-6).

Defendant moves for reconsideration of this ruling on the basis that Plaintiff has failed to demonstrate "an independent basis for seeking the depositions." (*Motion to Reconsider* at 13). Defendant argues that Plaintiff's reliance on the letters from Union representatives as an independent basis is insufficient because the letters do not "mention ... the [alleged] nefarious company-wide policy Plaintiff's counsel believe to be in existence" regarding the Medical Department's relation with employees. (*Id.* at 14).

Defendant also seeks reconsideration of the Magistrate Judge's ruling that the personnel files of Drs. Carandang and Maseys be disclosed to a limited extent. In briefing before the Magistrate Judge, Plaintiff argued that he would have requested the files even if his counsel had been completely unaware that the same were produced in the *Holt* litigation. Defendant argued, and maintains in its present motion, that the information learned by Plaintiff's counsel in *Holt* cannot be separated from the instant discovery request. While Magistrate Judge Kemp gave some credence to the Defendant's position, he nonetheless concluded that "Plaintiff would reasonably have requested documents which encompass the types of documents which might appear in Dr. Carandang's personnel file, and that these documents are therefore producible." (*Opinion and Order* (September 5, 2002) at 8). Judge Kemp further held:

>  *4 [T]he only documents which would appear to be relevant for discovery purposes are those which would comment upon Dr. Carandang's professional qualifications to perform his job, documents which would reflect Lucent's knowledge or acquiensce[nce] in his job performance, or documents which reflect Lucent's directions to Dr. Carandang to perform his job in a certain way. If there are any similar documents in Dr. Maseys' personnel file, those should be produced as well. The Court assumes that most of the information in both doctors' personnel files would be unrelated to any allegations made in this case and are therefore not discoverable.

(*Id.*).

In moving for reconsideration. Defendant continues to assert that Plaintiffs have no independent basis, apart from the *Holt* litigation, for requesting production of the doctors' personnel files. Thus, the Defendant contends that the Magistrate Judge's ruling allowing discovery was in error.

### III.

Fed.R.Civ.P. 72(a) provides for reconsideration by the District Judge of orders of the Magistrate Judge on nondispositive matters. The rule provides that, in considering objections to such orders, the District Judge "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). The clearly erroneous standard "mandates that the district court affirm the magistrate's decision unless, on the entire evidence, it 'is left with the definite and firm conviction that a mistake has been committed.' In the absence of clear error, the magistrate's order must stand." *Farley v. Farley,* 952 F.Supp. 1232, 1235 (M.D.Tenn.1997) (internal citations omitted).

### IV.

The Court has considered the arguments made by defense counsel as well as the opinions of the Magistrate Judge on the discovery issues at bar. The Court finds no evidence to demonstrate that a mistake has been committed and, consequently, the Court finds Magistrate Judge Kemp's decisions

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d  
(Cite as: 2003 WL 21011148 (S.D.Ohio))

Page 4

neither clearly erroneous nor contrary to law. Rule 72(a); 28 U.S.C. § 636(b)(1)(A). The Court concurs with the Magistrate Judge's conclusion that Plaintiff has come forward with an independent basis for the discovery requested.

As to the depositions of Drs. Brandt-Sasin and Shoner, the Court finds that the letters relied on by Plaintiff satisfies Judge Kemp's requirement that Plaintiff's counsel come forward with evidence independent of the *Holt* documents to justify taking the doctors depositions. The Court rejects Defendant's argument that these doctors could provide no relevant information to the issues raised in Plaintiff's complaint. As Magistrate Judge Kemp observed, the testimony is at least reasonably calculated to lead to the discovery of admissible evidence as to practices at the Medical Department at Lucent's Columbus facility.

With respect to production of the personnel files of Drs. Carandang and Maseys, the Court finds no error in Magistrate Judge Kemp's conclusion that the files, to a limited extent, are discoverable. Plaintiff makes specific allegations in his complaint as to the care he received from Dr. Carandang. Plaintiff is entitled to the limited discovery which Magistrate Judge Kemp permitted with regard to Dr. Carandang's personnel file. Similarly, the Court finds no error in the Magistrate Judge's conclusion that similar documents in Dr. Maseys' personnel file be produced, if such documents exist.

*5 As the Magistrate Judge observed, whether the foregoing evidence is ultimately admissible at trial is an issue separate from the issue as to whether discovery should be permitted. At this juncture, the Court makes no decision as to subsequent admissibility at trial. The Court finds no error, however, in the Magistrate Judge's decision to allow discovery to the extent outlined in the September 5, 2002 *Opinion and Order*.

V.

For the foregoing reasons, the Defendant's Motion for Reconsideration (Doc. # 60) is DENIED. The Magistrate Judge's September 5, 2002 *Opinion and Order* is AFFIRMED in all respects.

As previously ordered by Judge Kemp, the parties shall complete the discovery within ninety (90) days of the date of this Order. Any motions for summary judgment shall be filed thirty(30) days thereafter. This case is hereby scheduled for TRIAL on Monday, September 15, 2003 at 9:00 a.m. The Court will establish all other pertinent trial preparation dates by separate Order.

IT IS SO ORDERED.

2003 WL 21011148 (S.D.Ohio)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works