IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| J.B.D.L. Corp. d/b/a <br> BECKETT APOTHECARY, et al. <br> Plaintiffs, <br><br> v. <br><br> WYETH <br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | NO. C-1-01-704 <br><br><br> Judge Sandra S. Beckwith <br> Magistrate Judge Timothy S. Hogan |
| CVS MERIDIAN, INC. and <br> RITE AID CORPORATION, <br> Plaintiffs, <br><br> v. <br><br> WYETH <br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | No. C-1-03-781 <br><br><br> Judge Sandra S. Beckwith <br><br> **<u>Oral Argument Requested</u>** |

**REPLY IN SUPPORT OF PLAINTIFFS CVS' AND RITE AID'S
OBJECTIONS TO MAGISTRATE JUDGE'S ORDER
COMPELLING PRODUCTION OF DOCUMENTS**

In its initial brief in support of their objections to the Magistrate Judge's June 7, 2004 Order ("Order"), CVS Meridian, Inc. ("CVS") and Rite Aid Corporation ("Rite Aid") demonstrated that Judge Hogan's Order directing production of "speculative purchasing" documents was contrary to law and should be reversed. In holding that discovery of downstream information is permissible because Defendant Wyeth has not asserted a "pass-on" defense, Judge Hogan relied almost exclusively on one case, *In re Infant Formula Antitrust Litigation*, MDL

878 (N.D. Fla. 1992), that contains no discussion whatsoever of *Hanover Shoe, Inc. v. United States Shoe Machinery Corp.*, 392 U.S. 481 (1968) or its progeny, the seminal cases on this issue. Furthermore, Judge Hogan dismissed the significance of cases which clearly hold that downstream discovery is impermissible even when it is *not* being used to assert a pass-through defense.

In its response to Plaintiffs' objections, Wyeth urges the Court to reaffirm Judge Hogan's Order, arguing that applicable case law does not bar downstream discovery for purposes other than establishing a pass-on defense. However, like Judge Hogan, Wyeth gives insufficient weight to key cases and too much weight to those which are of little precedential value.

## ARGUMENT

### I. The Case Law Does Not Support Judge Hogan's Conclusion that Discovery of Downstream Pricing Practices is Permissible

In his decision, Judge Hogan disregarded *Hanover Shoe* and its progeny which held that downstream discovery for assertion of any defense is impermissible. Judge Hogan also dismissed the significance of *In re Folding Carton Antitrust Litigation*, MDL 250 (N.D. Ill. May 5, 1978) despite the fact that *Folding Carton* is virtually indistinguishable from this case, holding that discovery of downstream financial data would not be permitted for the purpose of showing that purchasers of folding cartons had "countervailing power" to prevent price increases. *Id.* at 3.

Downstream discovery for purposes other than the assertion of a pass-on defense was also prohibited in *In re Polyester Staple Antitrust Litigation*, MDL 3:03-CV-1516 (WDNC Feb. 5, 2004). Judge Hogan dismissed the significance of this case based on the mistaken belief that the *Polyester Staple* court disallowed the discovery because it pertained to calculation of damages and the assertion of a pass-on defense. In fact, the *Polyester Staple* defendants sought to prove "alternative explanations justifying . . . [the] alleged illegal price increase." *Id.* at 1.

2

This clearly had nothing to do with the assertion of a pass-on defense and still the *Polyester Staple* court held that the discovery was improper.

In its response, Wyeth ignores the significance of these cases and urges the Court to rely on a number of cases which are of little or no value in assisting the Court on the downstream discovery issue. First, Wyeth cites *In re Infant Formula Antitrust Litigation*, MDL 878 (N.D. Fla. Jan. 23, 1992), the same case relied heavily upon by Judge Hogan. *Infant Formula*, however, is of little value to this Court because the case did not contain any discussion or even mention *Hanover Shoe*, *Illinois Brick*, or the extensive body of case law denying downstream discovery in antitrust overcharge cases.

Wyeth also cites *Blue Cross and Blue Shield of NJ, Inc. v. Phillip Morris Inc.*, 138 F. Supp. 2d 357 (E.D.N.Y. 2001) which held that downstream pricing was "permissible background information" to show how the insurance business operated. *Blue Cross*, however, was a RICO fraud case, not an antitrust case. The Court held that while evidence that premium increases were passed on to subscribers was not legally relevant, 138 F. Supp.2d at 365, it nevertheless held that background information on the insurance industry should be permitted because the Court was concerned that the jury might engage in improper speculation. The Court itself described the decision as an "apparent anomaly" and it is clear that its narrow holding should not be extended beyond the context of that particular case. *Id.* at 360.

Wyeth's reliance upon *Valley Drug Co. v. Geneva Pharms. Inc.*, 350 F.3d 1181 (11th Cir. 2003) is similarly misplaced. *Valley Drug* stands only for the proposition that downstream data may be relevant to the issue of class certification in certain cases, namely when there is a potential conflict of interest among class members. In addition, there was also evidence that the class representatives in that case had entered into "cost-plus" contracts, a

limited exception to the general rule that a "pass-on" defense is not permitted. *Hanover Shoe*, 392 U.S. at 494. *Valley Drug* is completely irrelevant outside of its very specific context and provides no support for Wyeth's argument that downstream discovery should be permitted against non-class plaintiffs like CVS and Rite Aid.

Finally, Wyeth relies on *In re Vitamins Antitrust Litigation*, 198 F.R.D. 296, 299 (D.D.C. 2000), citing the Court's statement that *Hanover Shoe* and its progeny do not prohibit individualized downstream data for all purposes. *Id*. at 299. However, the *Vitamins* court *denied* the discovery, noting that "no court has ever allowed production of individualized downstream data" and holding that the defendants' argument was essentially equivalent to the "countervailing power" argument that was rejected in *Folding Carton*. After considering the applicable law, the Court denied the defendants' motion to compel production of downstream financial data.

Wyeth further contends that the cases cited by Plaintiffs, particularly *Folding Carton* and *Polyester Staple* stand only for the proposition that requests for downstream discovery are only denied when being sought to establish a pass-on defense. This is simply incorrect. As discussed above, the *Folding Carton* defendants were not asserting a pass-on defense but sought downstream discovery to show that Plaintiffs could have used their "countervailing power" to prevent price increases. *In re Folding Carton Antitrust Litigation* at 3. Furthermore, Wyeth contends that *Folding Carton* refutes Plaintiffs' arguments, because, according to Wyeth, the *Folding Carton* court acknowledged that downstream evidence might be relevant in a monopoly case in order to establish the feasibility of vertical integration into the relevant market. Wyeth Response at 10. This statement is misleading. The *Folding Carton* defendants sought downstream financial data in order to determine the feasibility of "backward integration" by which purchasers of folding cartons would develop their own folding carton

4

manufacturing facilities if folding carton prices became too excessive.  The court actually held that while that evidence regarding feasibility of "backward integration" might be relevant in a monopoly case, "the feasibility of 'backward integration' is immaterial where, as here, the sole basis for damages is overcharge."  *In re Folding Carton Antitrust Litigation* at 5.  Thus, *Folding Carton* does not refute Plaintiffs' arguments as Wyeth contends.

        Wyeth likewise contends that the *Polyester Staple* court held only that downstream discovery was impermissible to assert a pass-on defense.  In fact, the court specifically noted that the defendant was *not* asserting a pass-on defense and still prohibited the downstream discovery, stating, "Although defendants vehemently contend that they do not intend to assert such a pass-on defense, the court cannot ignore the Supreme Court's rationale in *Hanover Shoe*."  *In re Polyester Staple Antitrust Litigation* at 6, fn. 5.  Furthermore, Wyeth's contention that the *Polyester Staple* court acknowledged that downstream pricing evidence may be relevant for purposes other than "pass-on" (such as class certification) is not strictly accurate.  The Court acknowledged that *Valley Drug* had permitted downstream discovery for that purpose but rejected it in the case before it, essentially holding that *Valley Drug* should be limited to the very specific facts which confronted the *Valley Drug* court.  The court stated:

> Defendants' counsel went to great lengths hoping to establish that because defendants do not seek the downstream data for the purposes prescribed by the Supreme Court in *Hanover Shoe* and *Illinois Brick*, these cases are not determinative of either issue raised by Defendants motion.  As eluded to earlier, defendants cannot deny that the teachings of these Supreme Court opinions are not only instructive, but also favor Plaintiffs contention that *Valley Drug* stands alone.

*In re Polyester Staple Antitrust Litigation* at 8, fn. 8.

        Thus, Wyeth's contention that *Polyester Staple* refutes Plaintiffs' arguments is incorrect.

5

## II. Wyeth's Reliance on Speculative Purchasing is Unsupported by any Evidence

In its initial brief, Plaintiffs asked the Court to take into consideration that Wyeth had essentially conjured up its speculative purchasing defense in order to by-pass the prohibitions of *Hanover Shoe* and obtain otherwise prohibited downstream discovery. In support of this, Plaintiffs showed that of the more than 700,000 documents Wyeth had produced, it had not produced a single document that even hinted that Wyeth raised its prices in response to Plaintiffs' desires to increase their profits through speculative purchasing. Wyeth has responded to this by arguing that it has produced significant evidence of speculative purchasing, including public statements by large Wyeth customers about their speculative purchasing activities and deposition testimony of Wyeth witnesses regarding the fact that speculative purchasing takes place. Wyeth Response at 11. The examples cited by Wyeth show only that speculative purchasing occurs, a fact which is not in dispute. It is well known that speculative purchasing occurs in the pharmaceutical industry. However, what Wyeth says is at issue here is whether Wyeth increased the magnitude of its price increases as the result of Plaintiffs' desire to increase their profits through speculative purchasing. Wyeth has not denied and, in fact, cannot deny that it has not produced a single document that even suggests that Wyeth raised its prices in response to pressure from Plaintiffs or as the result of Plaintiffs' failure to object to earlier price increases. Either Wyeth has such documents in its possession and has not produced them or no such documents exist. One can only presume that the latter is true and that Plaintiffs' conduct (or silent acquiescence) had absolutely nothing to do with the price increases, a fact which would have been well documented in Wyeth's files had it been the case. From this, one must conclude that the speculative purchasing defense was devised to avoid the prohibitions of *Hanover Shoe* and obtain otherwise prohibited downstream discovery.

6

Finally, Wyeth argues that the rules of procedure do not place any initial burden on parties to justify their discovery requests. However, the rules also do not condone mere fishing expeditions. *Hofer v. Mac Trucks Inc.*, 981 F.2d 377, 382 (8th Cir. 1992) ("Where the standard of relevance in the context of discovery is broader than in the context of admissibility, this . . . should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.") Wyeth's utter lack of evidence on this issue demonstrates that the relevance threshold has not been crossed and this discovery should not be permitted.

### III. Production of Speculative Purchasing Documents, If Permitted, Should be Limited to Premarin Only

Plaintiffs previously requested that in the event that this Court determines that speculative purchasing documents must be produced, the production be limited to documents relating to the speculative purchasing of Premarin only. Requests Nos. 7, 8, 9, and 11 seek production of documents relating to speculative purchasing of not only Premarin but also Cenestin and "other pharmaceutical products". The requests are therefore overbroad, irrelevant, and not likely to lead to the discovery of admissible evidence. It is Wyeth's contention that Plaintiffs' speculative purchasing of Premarin ultimately lead to Wyeth's higher than normal price increases on Premarin. Wyeth, however, is unable to state a coherent explanation as to why speculative purchasing documents related to Cenestin and every other pharmaceutical product purchased by Plaintiffs are relevant to this inquiry. Wyeth states that documents relating to the speculative purchasing of products other than Premarin will "help Wyeth establish that speculative purchasing is a pervasive business practice of its customers, not limited to Premarin." Wyeth Opp. at 13. However, whether or not speculative purchasing is a pervasive business

7

practice in the pharmaceutical industry is not the issue. The real issue, according to Wyeth's own theory, is whether speculative purchasing of *Premarin* resulted in Wyeth's unusually large price increases on Premarin. Speculative purchasing documents relating to any pharmaceutical products other than Premarin are irrelevant to this inquiry and production of those documents should not be required.[1]

### IV.     Plaintiffs' Objections to Request No. 25 Should be Sustained

Plaintiffs have objected to Request No. 25 seeking "All contracts, agreements, or arrangements with insurance companies or MCOs that relate to their payment or reimbursement to you for dispensing prescriptions of Premarin, Cenestin, or other ET or HT products." Judge Hogan denied Wyeth's motion to compel with respect to documents related to other estrogen or hormone therapy products and ordered that only contracts involving Premarin and Cenestin should be produced. However, as discussed in Plaintiffs' opening brief, Judge Hogan's Order makes clear that he misunderstood the nature of these contracts. Once again, these contracts contain only a formula providing how the plans will reimburse for all brand-name prescription drugs without reference to any particular drug, stating that the pharmacy will be reimbursed the

---

[1] Furthermore, as discussed in Plaintiffs' prior brief, if speculative purchasing documents must be produced, Plaintiffs should not be required to produce documents in response to Request No. 17, which requests "All documents relating to the amount of profits or percentage of profits you earned from sales of Premarin and Cenestin." This request seeks information relating to *all* profits earned from the sale of Premarin (not just profits earned through speculative purchasing) and seeks information relating to *all* profits earned from the sale of Cenestin. Even under the theory advanced by Wyeth, this request is overbroad in that it seeks profits information for Premarin not related to speculative purchasing and information on profits from Cenestin which likewise have no relevance. Under Wyeth's speculative purchasing theory, the only information that is arguably relevant is the amount of profits Plaintiffs earned through speculative purchasing of Premarin. This information is already covered by Request No. 18, which asks for "all documents relating to whether you have received an economic benefit from price increases of Premarin." Thus, in the event that downstream discovery is allowed, the objections to Request No. 17 should nevertheless be sustained.

drugs' average wholesale price (AWP) minus a negotiated discount (expressed as a percentage of AWP), plus a negotiated dispensing fee and less any co-payment to be paid by the customer. Even the amount of the co-pay is not stated in the contract but is only learned by the pharmacist at the time each prescription is adjudicated. The fact that Judge Hogan ordered that only contracts relating to Premarin and Cenestin should be produced and not those relating to other ET or HT products demonstrates that he fundamentally misperceived the nature of these contracts.

In its opposition, Wyeth does not dispute the fact that these contracts do not address specific drugs or provide actual dollar amounts for reimbursements or co-payments. Nevertheless, Wyeth argues that the information is relevant because it relates to "the alleged impact that MCO contracts have on pricing of Premarin and Cenestin." Wyeth Opp. at 14. This, however, was not the reason Wyeth originally put forward in support of its motion to compel. Wyeth stated that the contracts were relevant on three issues: 1) the extent to which Cenestin was included on MCO formularies, 2) the extent to which Cenestin prescriptions were reimbursed by MCOs notwithstanding whether or not it was on MCO formularies, and 3) the extent to which Cenestin was subjected to higher co-payments than Premarin. Wyeth's Mem. In Support of Motion to Compel at 10.

Given the fact that neither Cenestin nor any other drugs are identified in the reimbursement contracts, it is clear that none of the information sought by Wyeth in Request No. 25 is contained in the contracts. The contracts do not reveal 1) the extent to which Cenestin was included on MCO formularies, 2) the extent to which Cenestin prescriptions were reimbursed as compared to Premarin, or 3) the extent to which Cenestin was subjected to higher co-payments than Premarin. As such, the contracts requested are neither relevant nor reasonably calculated to

9

lead to the discovery of admissible evidence and Judge Hogan's Order directing production of these contracts should be reversed.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs CVS Meridian, Inc. and Rite Aid Corporation respectfully request that their objections to the June 7, 2004 Order of Magistrate Judge Timothy S. Hogan be sustained and that Plaintiffs not be required to produce the documents requested in Wyeth's document requests numbers 7 – 9, 11, 17, 18, and 25.

Respectfully submitted,

*s/ Gordon A. Einhorn*_____
Steve D. Shadowen, I.D. No. 41953
Gordon A. Einhorn, I.D. No. 59006
30 North Third Street, Suite 700
Harrisburg, PA 17101
(717) 364-1004
(717) 364-1020 – facsimile

W.B. Markovits (0018514)
Markovits & Griewe, Co. L.P.A.
119 E. Court Street
Cincinnati, OH 45202
(513) 977-4774

*Attorneys for Plaintiffs CVS Meridian, Inc. and Rite Aid Corporation*

Dated: July 26, 2004

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been served this 26th day of July 2004 via facsimile and first class mail.

| | |
|---|---|
| Grant S. Cowan<br>FROST BROWN TODD LLC<br>2200 PNC Center<br>201 East Fifth Street<br>Cincinnati, OH  45202<br>Facsimile:  513 651-6981 | Kenneth A. Wexler<br>KENNETH A. WEXLER AND ASSOCIATES<br>One North LaSalle, Suite 2000<br>Chicago, IL  60602<br>Facsimile:  312 346-0022 |
| Theresa L. Groh<br>MURDOCK, GOLDENBERG, SCHNEIDER & GROH<br>700 Walnut Street, Suite 400<br>Cincinatti, OH  45202<br>Facsimile:  513 345-8294 | Daniel E. Gustafson<br>HEINS MILLS & OLSON, P.C.<br>700 Northstar East<br>608 Second Avenue South<br>Minneapolis, MN  55402<br>Facsimile:  612 338-4692 |
| Jay S. Cohen<br>SPECTOR, ROSEMAN & KODROFF<br>1818 Market Street, Suite 2500<br>Philadelphia, PA  19103<br>Facsimile:  215 496-6611 | Joseph E. Conley, Jr.<br>BUECHEL & CONLEY<br>25 Crestview Hills Mall Road, Suite 104<br>Crestview Hills, KY  41017<br>Facsimile:  859 578-6609 |
| Ruthanne Gordon<br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Facsimile:  215 875-4604 | Marc H. Edelson<br>HOFFMAN & EDELSON<br>45 West Court Street<br>Doylestown, PA 18901<br>Facsimile: |
| David S. Eggert<br>ARNOLD & PORTER<br>555 Twelfth Street, N.W.<br>Washington, DC  20004<br>Facsimile:  202 942-5999 | Patrick E. Cafferty<br>MILLER FAUCHER & CAFFERTY LLP<br>101 N. Main Street, Suite 885<br>Ann Arbor, MI  48104<br>Facsimile:  734 769-1207 |
| Janet G. Abaray<br>LOPEZ, HODES, RESTAINO, MILMAN, SKIKOS & POLOS<br>312 Walnut Street, Suite 2090<br>Cincinnati, OH  45202<br>Facsimile: 513 852-5611 | |

                                                          *s/Gordon A. Einhorn*_____
                                                          Gordon A. Einhorn