# ARNOLD & PORTER LLP

David Eggert
David_Eggert@aporter.com

202.942.5133
202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

November 18, 2004

**BY FACSIMILE**

Gordon A. Einhorn
Hangley Aronchick Segal & Pudlin
30 North Third Street
Suite 700
Harrisburg, PA 17101-1710

      Re:   <u>CVS, et al. v. Wyeth, No. C-1-03-781</u>

Dear Gordon:

      As you know, Judge Beckwith has overruled the objections of CVS and Rite-Aid to Magistrate Judge Hogan's Order Compelling Production of Documents. *See* Order of November 4, 2004. You have not yet provided us with a date by which CVS or Rite Aid will comply with their document production obligations. We request that CVS and Rite Aid complete their production of documents promptly and that you immediately provide us with a firm date by which you anticipate that production will be complete. In no event should that date be later than December 6, 2004, which gives you more than a month after Judge Beckwith's order and approximately six months since Judge Hogan's order that you produce the documents.

      We also would like to schedule the previously noticed depositions of witnesses from CVS and Rite Aid. We propose the following dates and locations:

    A.    CVS Meridian, Inc.

        1.    Deposition of CVS Meridian, Inc. pursuant to Fed. R. Civ. P. 30(b)(6)

            a.    Date: December 15, 2004

            b.    Location: Radisson, 2081 Post Road, Warwick, RI 02886

# ARNOLD & PORTER LLP

Gordon A. Einhorn
November 18, 2004
Page 2

    2.    Mary Tafuri Ross

        a.    Date:  December 16, 2004

        b.    Location:  Radisson, 2081 Post Road, Warwick, RI 02886

    3.    Matthew Leonard

        a.    Date:  December 17, 2004

        b.    Location:  Radisson, 2081 Post Road, Warwick, RI 02886

**B.**    Rite Aid Corporation

    1.    Deposition of Rite Aid Corporation pursuant to Fed. R. Civ. P. 30(b)(6)

        a.    Date:  December 13, 2004

        b.    Location:  McNees Wallace & Nurick LLC, 100 Pine Street, Harrisburg, PA 17108.

We would be willing to discuss the possibility of alternative dates or locations if these are not satisfactory, but would like to complete the depositions promptly.  In addition, we noticed the deposition of Kate Shattuck who, you advised, is no longer employed by CVS.  Accordingly, we will plan to issue a subpoena for this deposition Please call me if you would like to discuss any of these issues further.

Sincerely,

David S. Eggert

# ARNOLD & PORTER LLP

**David Eggert**
David_Eggert@aporter.com

202.942.5133
202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

December 17, 2004

**BY FACSIMILE AND FEDEX**

Gordon A. Einhorn
Hangley Aronchick Segal & Pudlin
30 North Third Street, Suite 700
Harrisburg, PA  17101

      Re:     *J.B.D.L. Corp. d/b/a Beckett Apothecary, et al. v. Wyeth-Ayerst
             Laboratories, Inc., et al.* Civil Action No. C-1-01-704

Dear Gordon:

      In response to your prior email messages on this subject, Wyeth requests that
CVS and Rite Aid provide sample purchase/sales data pursuant to Magistrate Judge
Hogan's June 7, 2004 Order for the following dates:

- February 1, 1999 through May 1, 1999

- August 1, 1999 through November 1, 1999

- February 1, 2000 through May 1, 2000

- August 1, 2000 through November 1, 2000

- February 1, 2001 through May 1, 2001

- October 1, 2001 through January 1, 2002

- May 1, 2002 through August 1, 2002

- November 1, 2002 through May 1, 2004

Washington, DC    New York    London    Brussels    Los Angeles    Century City    Northern Virginia    Denver

# ARNOLD & PORTER LLP

Gordon A. Einhorn
December 17, 2004
Page 2

Further, please provide data from pharmacies in the following states:

| **CVS Meridian, Inc.** | **Rite Aid Corporation** |
|---|---|
| Arizona | California |
| California | Kentucky |
| Florida | Maine |
| Kansas | Michigan |
| Kentucky | Mississippi |
| Maine | Nevada |
| Massachusetts | New York |
| Michigan | Ohio |
| Mississippi | Tennessee |
| Nevada | West Virginia |
| New Mexico | |
| New York | |
| Ohio | |
| Tennessee | |
| West Virginia | |

As you requested, below is a list of NDC codes for Premarin and Cenestin:

| NDC | Description | Bottle Size |
|---|---|---|
| **Premarin** | | |
| 00046-0864-81 | PREMARIN 0.9MG TABLET | 100 |
| 00046-0865-81 | PREMARIN 2.5MG TABLET | 100 |
| 00046-0865-91 | PREMARIN 2.5MG TABLET | 1000 |
| 00046-0866-81 | PREMARIN 1.25MG TABLET | 100 |
| 00046-0866-91 | PREMARIN 1.25MG TABLET | 1000 |
| 00046-0866-95 | PREMARIN 1.25MG TABLET | 5000 |
| 00046-0866-99 | PREMARIN 1.25MG TABLET U-D | 100 |
| 00046-0867-81 | PREMARIN 0.625MG TABLET | 100 |
| 00046-0867-91 | PREMARIN 0.625MG TABLET | 1000 |
| 00046-0867-95 | PREMARIN 0.625MG TABLET | 5000 |
| 00046-0867-99 | PREMARIN 0.625MG TABLET U-D | 100 |
| 00046-3867-81 | PREMARIN 0.625MG TABLET D/F | |
| 00046-0868-81 | PREMARIN 0.3MG TABLET | 100 |
| 00046-0868-91 | PREMARIN 0.3MG TABLET | 1000 |
| 00046-936-81 | PREMARIN 0.45MG TABLET LOW DOSE | |

# ARNOLD & PORTER LLP

Gordon A. Einhorn
December 17, 2004
Page 3

**Cenestin**

| | | |
|---|---|---|
| 51285-0441-02 | CENESTIN 0.3MG TABLET F/C | 100 |
| 51285-0442-02 | CENESTIN 0.625MG TABLET F/C | 100 |
| 51285-0442-05 | CENESTIN 0.625MG TABLET F/C | 1000 |
| 51285-0443-02 | CENESTIN 0.9MG TABLET F/C | 100 |
| 51285-0443-05 | CENESTIN 0.9MG TABLET F/C | 1000 |
| 51285-0444-02 | CENESTIN 1.25MG TABLET F/C | 100 |
| 51285-0444-05 | CENESTIN 1.25MG TABLET F/C | 1000 |
| 51285-0446-02 | CENESTIN 0.45MG TABLET F/C | |

We understand from your correspondence that the data produced will include the following information: Date the prescription was dispensed, store number, state, NDC number, label (drug name and dosage), cost (product cost paid by third party plan), fee (dispensing fee paid by plan), copay, quantity dispensed, price. You also indicated that you were checking to see if information concerning other items we had requested, such as the name of the formulary and the coverage status, were available. In addition, we want to make sure that the sample production includes sales to uninsured consumers

Also, I understand that CVS acquired some of Eckerd Corporation's retail pharmacies on July 31, 2004. Accordingly, the records provided should reflect purchases from those pharmacies as well.

Finally, be advised that pursuant to the Case Management Orders in *Marjorie Ferrell, et al. v. Wyeth-Ayerst Laboratories, Inc., et al.* Civil Action No. C-1-01-447 and *Elizabeth Blevins, et al. v. Wyeth-Ayerst Laboratories, Inc., et al.* No. 324380 – indirect purchaser actions filed in the Southern District of Ohio and California Superior Court for the County of San Francisco respectively – the records produced by CVS and Rite Aid in accordance with the Court's order also will be considered discovery in those cases.

Sincerely,

David S. Eggert

# ARNOLD & PORTER LLP

**David Eggert**
David_Eggert@aporter.com

202.942.5133
202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

December 22, 2004

**BY FACIMILE**

Gordon Einhorn
Hangley Aronchick Segal & Pudlin
30 North Third Street, Suite 700
Harrisburg, Pennsylvania  17101-1710

      Re:    J.B.D.L. Corp., et al. v. Wyeth-Ayerst Laboratories, Inc., et al.

Dear Gordon:

      This letter follows up on our discussion concerning the completion of CVS' and Rite Aid's document production obligations in the J.B.D.L./CVS case.

      More than six months ago Judge Hogan ordered additional production from CVS and Rite Aid, and Judge Beckwith affirmed Judge Hogan's order on November 4, 2004. On November 18, 2004, I sent you a letter requesting the completion of the production by December 7, 2004, and pursuant to a subsequent discussion you indicated that the production would be completed in December.

      At this point, however, the additional production has been limited to approximately 25 contracts with managed care entities.  You advised me last week that CVS and Rite Aid may have up to 2000 additional such contracts that have not yet been produced.  By this letter, I confirm my preliminary reaction last week that Wyeth would like all of them to be produced.  In addition, you advised that CVS had preliminarily advised you that it had no documents responsive to Wyeth's "speculative purchasing" requests.  When I expressed skepticism on this point, you agreed to go back to CVS on this issue, and to press Rite Aid for the speculative purchasing materials as well.

      Given that these document requests have been pending for a substantial period of time, as well as your prior commitments to complete production in December and the fact that we need to take the depositions of CVS and Rite Aid representatives, I request that (1) you continue to produce documents on a rolling basis as expeditiously as possible, and (2) that you complete the CVS and Rite Aid productions by January 10, 2005.  (If

# ARNOLD & PORTER LLP

Gordon Einhorn
December 22, 2004
Page 2

you need additional time for the data requests that were the subject of my letter of December 17, 2004, please let me know.

Sincerely,

David S. Eggert



30 North Third Street, Suite 700
Harrisburg, PA 17101-1701
717-364-1020 /facsimile

One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
215-568-0300 /facsimile

20 Brace Road, Suite 201
Cherry Hill, NJ 08034-2634
856-616-2170 /facsimile

www.hangley.com

**HANGLEY ARONCHICK SEGAL & PUDLIN**

*Attorneys at Law | A Professional Corporation*

Gordon A. Einhorn
Direct Dial: 717-364-1004
E-mail: geinhorn@hangley.com

January 6, 2005

*Via Facsimile*

David S. Eggert
ARNOLD & PORTER
555 Twelfth Street, N.W.
Washington, DC 20004

Re:    CVS Meridian, Inc. and Rite Aid Corp. v. Wyeth

Dear David:

This letter is in response to your letter of December 22, 2004 concerning the document production issues which we had previously discussed. I was out of the office over the holidays and have only recently had an opportunity to review your letter.

As you noted in your letter, CVS and Rite Aid have so far produced approximately 25 contracts with managed care entities. As I previously explained, these contracts represent a sampling of agreements that have been entered into by Rite Aid and CVS with small, medium, and large MCOs. We will continue to produce additional contracts on a rolling basis and will do so as expeditiously as possible. While I may have earlier suggested that this production could be completed by the end of December, at the time of the comment, I did not have a clear picture of how many contracts were involved nor did I realistically account for the holiday period and its affect on our clients' ability to produce this large number of documents. I will have the next batch of contracts to you in the next few days but I do not expect that the production will be completed by January 10 as you requested. Furthermore, I remind you of my previous suggestion that you take advantage of the rolling nature of the production and let us know when no further production of these documents will be necessary. Given the similarity of the reimbursement provisions in these contracts, I believe you will agree that it is unnecessary to produce every contract.

With respect to the documents relating to speculative purchasing, I can confirm that I have asked our clients to make a further search to see if they have any responsive documents. I have learned that one document previously produced, the

David S. Eggert
January 6, 2005
Page 2

contract between CVS and Cardinal, has references to this issue and that you may have overlooked this.

Finally, there is the issue of the additional data to be produced. As you know, I advised you of the available data fields on November 30, 2004 and asked you to propose time and geographic parameters for a valid statistical sampling. Your proposal for the sampling was received on December 17, 2004 in your letter faxed to me on that date.

Having reviewed your proposal, it is quite clear that it is far more than a sampling with respect to both the number of months and states requested. You have essentially requested data from 8 months of every year from February 1999 through August 2002 and data from every month from November 1, 2002 through May 1, 2004. In total you have requested 46 months of data drawn from a 5 year period. I think you would have to admit that this is far more than a sampling.

The same is true of the number of states you propose for each company. CVS has stores in 38 states and yet you have requested data from 15 of those states. Similarly, Rite Aid has stores in 28 states and you have requested data from 10. Again, with respect to each to company, the number proposed -- over a third of the available states -- is too large to be a sampling.

As you know, I previously informed you that both CVS and Rite Aid only kept this data on their system for a limited period of time, 24 months in the case of CVS and 30 months with respect to Rite Aid. I further informed you that any earlier data could only be accessed with substantial difficulty. I have since learned that CVS is able to access data as far back as 1999. The data available from Rite Aid is subject to the limitations that I originally described.

I have also learned from CVS that they may be able to include a data field for AWP and a field showing a code indicating which PBM managed the patient's pharmacy benefit. However, it would not necessarily provide the identity of the patient's health plan. The CVS data will also apparently provide some Eckerd information, to the extent that information has been integrated into the CVS database.

With all this in mind, we make the following proposal. CVS will produce data in the data fields previously identified for the first week of February, May, August, and November for each of the years from 1999 through 2004, and will do so for five (5) states of your choosing. This would provide you with a weeks worth of data for each quarter of every year in question. With respect to Rite Aid, our proposal is somewhat more limited given the fact that the data currently on their system goes back only 30 months, to July 2002. Any data prior to that time is archived and in order to access it, the company would have to rebuild the files for a given year by manually loading more than 100 tapes per year onto its computer system. This would obviously be a tremendous burden, requiring substantial

David S. Eggert
January 6, 2005
Page 3

manpower and computer time to complete a task that, due to technological constraints, would have to be done during non-business hours. Rite Aid is therefore prepared to produce data for the first week of February, May, August, and November from November 2002 to November 2004. This data will be produced for four (4) states that you may designate.

We believe this information should be sufficient to meet your needs. I look forward to hearing from you.

Very truly yours,

Gordon A. Einhorn

GAE/jhb

# ARNOLD & PORTER LLP

**David Eggert**
David_Eggert@aporter.com

202.942.5133
202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

January 14, 2005

**BY FAX**

Gordon Einhorn
30 North Third Street
Suite 700
Harrisburg, PA 17101-1701

      Re:    <u>CVS and Rite Aid Production</u>

Dear Gordon:

      This letter responds to your letter of January 6, 2005 and follows up on my letters of December 22, 2004, and December 17, 2004.

      Wyeth considers the slow pace of production by CVS and Rite Aid to be wholly unacceptable. Your clients chose to sue as plaintiffs in this lawsuit and are seeking approximately $90 million in damages. Wyeth served these discovery requests well over a year ago. After a motion to compel was fully briefed and argued, Magistrate Judge Hogan ordered CVS and Rite Aid to produce documents last June. As you know, Magistrate Judge Hogan's order was never stayed, so CVS and Rite Aid have been under an obligation to produce the documents in question for over six months. Moreover, Magistrate Judge Hogan's order was affirmed by Judge Beckwith two-and-a-half months ago. We have previously requested that the production be completed by December 7 and then by January 10. At the beginning of December, you advised that the production would be completed that month. In order to bring this matter to a close, we request that all additional MCO contracts and speculative purchasing materials (discussed further below) be provided by next Friday, January 21, 2005. Otherwise, Wyeth intends to seek appropriate action from the Court.

      <u>MCO Contracts</u>. Insofar as the "rolling" nature of the production concerning MCO contracts is concerned, in December, you produced approximately 25 of what you then estimated to be a total of 2000 managed care contracts. Since then, you have produced approximately ten additional contracts by CVS, which means that more than 1900 contracts have still not been provided. Moreover, as I advised you previously, you are under court order to produce *ALL* of these contracts, notwithstanding your continued hope that Wyeth "will agree that it is unnecessary to produce every contract."

# ARNOLD & PORTER LLP

Gordon Einhorn
January 14, 2005
Page 2

_Speculative Purchasing_. With respect to "speculative purchasing" documents, I advised you last month that it was difficult to believe that CVS and Rite Aid had no responsive documents as you suggested at that time. My understanding is that both of these entities has engaged in the practice of advance buying or speculative purchasing. Moreover, it seems bizarre that CVS and Rite Aid would object to producing these documents, force a motion to compel and a court hearing to resolve the dispute, and only then inform Wyeth that they had forced Wyeth and the Court to litigate a meaningless abstract issue since there are no responsive documents in any event. Since our conversation, you have produced a handful of documents from CVS on this subject. We demand that all additional responsive documents be produced by next Friday. Please be aware that this issue will be thoroughly covered in our depositions and Wyeth reserves all of its rights against CVS and Rite Aid if it identifies responsive documents that CVS and Rite Aid have failed to produce.

_Sample Data_. Third, your proposal regarding the representative sample of retail-level data required under the Court's order is significantly less than we requested in our December 17 letter of in the subject. The limited time periods that you propose in your letter of January 6 are not sufficient for our sampling purposes. Thus, we request that you provide data for the time periods specified in our letter of December 17. You also propose that you produce data for just five states. We are willing to consider agreeing to this limitation if CVS, Rite Aid, and class counsel stipulate that they will not challenge the adequacy of the sample data obtained for purposes of projecting what the data would show for all CVS and Rite Aid stores around the country. Please let me know if you are amenable to that stipulation. (Because we are still in discussions regarding this item, I understand that this aspect of the production is unlikely to be completed by January 21.)

Sincerely,

David Eggert

01/19/05  17:35 FAX 202 943 5999    ARNOLD & PORTER LLP #2    ⊘002
Case 1:01-cv-00704-SSB-TSH    Document 146-2    Filed 02/10/2005    Page 13 of 20

01/19/2005   17:32   HANGLEY ARONCHICK SEGAL & PUDLIN → 900#020#120294259999#    NO.004   □02



30 North Third Street, Suite 700
Harrisburg, PA 17101-1701
717-364-1030 /facsimile

One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
215-568-0300 /facsimile

20 Brace Road, Suite 201
Cherry Hill, NJ 08034-2634
856-616-2170 /facsimile

www.hangley.com

Attorneys at Law | A Professional Corporation

Monica L. Rebuck
Direct Dial: 717-364-1007
E-mail: mrebuck@hangley.com

January 19, 2005

**Via Facsimile**

Mr. David Eggert
Arnold & Porter
555 Twelfth Street, NW
Washington, DC  20004-1206

Re:  CVS Meridian, Inc., et al. v. Wyeth

Dear David:

      This is in response to your January 14, 2005 letter.  That letter grossly mischaracterizes the efforts that Rite Aid and CVS (collectively "Plaintiffs") have made to comply with the Court's November 2004 Order.  As you are well aware, Plaintiffs have been working with Defendant over the past two months to produce documents in compliance with the Court's Order.  And Plaintiffs will continue to work with Defendant towards that end.  Plaintiffs cannot, however, let the mischaracterizations in your most recent letter pass without response.

      Defendant has made it clear that representatives of Rite Aid and CVS will not be deposed until *all* documents have been produced.  As you are well aware, it is Defendant, not Plaintiffs, who has caused the delay in completing the document production and scheduling those depositions.

      Pursuant to the Court's Order, in late November Plaintiffs provided a detailed description of the sample sales data that they have available.  It was then up to Defendant to propose a temporal and geographic scope for the sampling that the Court ordered produced.  To this day, establishing that scope remains the impediment to getting this data produced, and Defendant remains the impediment to establishing that scope.

      It took several weeks for Defendant to propose a sampling plan.  Defendant did not propose a plan until December 17 (over a month after entry of the November Order), and the

Mr. David Eggert
January 19, 2005
Page 2

plan that Defendant finally did propose was wholly unreasonable. Rather than requesting a reasonable sampling as was required by the Court Order, Defendant requested that Plaintiffs produce detailed data for every sale of Premarin and Cenestin made to customers in 15 of the 38 states in which CVS does business and 10 of the 28 states in which Rite Aid does business, for a time period that includes 8 months of every year from February 1999 through August 2002 and every month from November 1, 2002 through May 1, 2004. Plaintiffs rejected that proposal as unreasonable and proposed a more reasonable production.

On January 14, Defendant responded by indicating that the time period Plaintiffs proposed is not sufficient. However, Defendant failed to make any counter-proposal. Plaintiffs again reject Defendant's original proposal as unreasonable. The Court ordered that the production would be limited to a sampling. Data for 46 months of a 60 month time period is simply not a sampling. As for the geographic scope of the request, you have suggested that Defendant may be willing to accept Plaintiffs' proposal that data be produced for five states of Defendant's choosing for CVS and four states of Defendant's choosing for Rite Aid, but only if Plaintiffs stipulate that data for those states can be projected to show corporate-wide data. What this request seems to ignore is that Defendant is in control of what states are chosen. As such, Plaintiffs simply cannot make any such stipulation in advance. However, Plaintiffs again want to make it clear that Defendant's original proposal that Plaintiffs produce data for over a third of the states in which they do business is not acceptable. That is much more than a sampling.

In any event, it is thus clear that *Defendant*, not Plaintiffs, has been dilatory in resolving this issue.

Despite its own delay, Defendant now attempts to impose a one-week deadline for Plaintiffs to produce other documents. This is disingenuous.

Plaintiffs have been producing documents in response to the November Order since early December 2004. On December 9, Plaintiffs produced certain managed care contracts. Plaintiffs have since confirmed that there are thousands of similar contracts. In light of the burden associated with producing all such contracts and the limited value of doing so, Plaintiffs suggested that a sampling of these contracts should be more than sufficient. And, as a further demonstration of good faith, Plaintiffs produced an additional group of contracts just last week.

Seemingly without any rationale or purpose other than harassment, Defendant has rejected Plaintiffs' suggestion that a sampling of contracts be produced, and now Defendant demands that all such contracts be produced. Plaintiffs continue to believe that a sampling of managed care contracts should be more than sufficient. Given Defendant's refusal to even entertain that request, however, Plaintiffs will make the managed care contracts available for Defendant's immediate inspection at Plaintiffs' respective headquarters. Please contact me to make arrangements for that inspection to be completed before your January 21 deadline.

18042_1 January 19, 2005 (5:28 PM)

Mr. David Eggert
January 19, 2005
Page 3

       Plaintiffs also have produced responsive speculative purchasing documents. Plaintiffs have been diligent in their search for and production of those documents. We believe that additional documents may exist and are working to collect any such documents. To the extent that any additional documents covered by the November Order are located, those documents will be produced promptly and in any event well in advance of the proposed depositions – which await Defendant's agreement on the sampling of sales data.

       Please contact me at your earliest convenience to arrange a review of the managed care contracts in advance of January 21,

       Sincerely,

       Monica Rebuck

18043_1 January 19, 2005 (5:28 PM)

# ARNOLD & PORTER LLP

David Eggert
David_Eggert@aporter.com

202.942.5133
202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

February 2, 2005

**BY FACSIMILE**

Monica L. Rebuck, Esq.
Hangley Aronchick Segal & Pudlin
30 North Third Street
Suite 700
Harrisburg, Pennsylvania 17101-1701

Re:    <u>CVS Meridian, Inc., et al. v. Wyeth</u>

Dear Ms. Rebuck:

This letter briefly responds to your letter of January 19.

I strongly disagree with your suggestion that my letter of January 14 contained any "mischaracterizations." Rather than respond to the tone of your letter in kind, however, I will attempt to be constructive.

<u>First</u>, I advised you last week that we need a firm date by which CVS and Rite Aid will complete their production of documents, including speculative buying documents. Instead of supplying such a date, you have now filed a motion to "clarify" Judge Hogan's order on an issue that neither you nor Mr. Einhorn has ever even discussed with me, notwithstanding our numerous communications regarding speculative buying documents. We will request a firm date for production from the Court in our response to your motion. In the meantime, please provide those documents that you anticipate providing before February 10.

<u>Second</u>, we agreed that we need to come to closure on the issue of data from a representative sample of CVS and Rite Aid stores. Magistrate Judge Hogan's Order requires that CVS and Rite Aid produce "a statistically valid sample." Order at 8. You asked Wyeth to provide you with the names of sample states and time periods for which we desired data, and we did so. You then complained that the number of states and time periods specified were too broad and indicated that CVS/Rite Aid would produce materials for four one-week periods each year for stores in five states, if Wyeth selected

# ARNOLD & PORTER LLP

Monica L. Rebuck, Esq.
February 2, 2005
Page 2

the states. However, when I inquired as to whether CVS/Rite Aid would agree that any such sample was representative of all their stores, you refused to so stipulate.

As I mentioned to you on the phone last week, Wyeth believes that the best way for CVS to respond to the Judge's order is to provide all available data for a representative sample of their 7500 stores. There is no need to provide all data for all stores in a particular state. But we believe that complete data should be provided for the sample stores.

If you nevertheless insist on producing periodic data from all stores in a subset of states, Wyeth would be willing to accept such data for the time periods Wyeth previously specified[1] for the eight states of New York, California, Florida, Ohio, Minnesota, Michigan, Arizona, and North Carolina. Once again, however, our willingness to agree to this proposal is contingent upon your agreement that the sample is representative of all CVS and Rite Aid stores -- which is what Judge Hogan ordered you to produce. Again, we would like for you to complete production of the sample materials by February 10, if possible.

Finally, I understand that the files made available for review last week at CVS and Rite Aid did not contain contracts with pharmaceutical manufacturers. Magistrate Judge Hogan's Order requires CVS and Rite Aid to produce "all documents relating to contracts or other arrangements [they] have entered into with [any managed care organizations or drug manufacturers] that provide for discounts or rebates with respect to [estrogen or hormone therapy products] based on market share, exclusivity, or preferential product positioning . . . within [their] store[s]." Request to CVS No. 13 (corresponding to Request to Rite Aid No. 14); *accord* Order at 8 (June 7, 2004). Please produce these documents as required by the Order immediately, but in no event later than February 10.

---

[1]    In order to accommodate your desire to produce with respect to four one-week periods, we would be willing to so limit the time parameters of the production for transactions in which a consumer paid a co-pay (as opposed to the cash price).

# ARNOLD & PORTER LLP

Monica L. Rebuck, Esq.
February 2, 2005
Page 3

     Please address any further correspondence regarding Plaintiffs' production of documents and data to my colleague Ryan Watts.

Sincerely,

David S. Eggert

cc:  Ryan Watts



30 North Third Street, Suite 700
Harrisburg, PA 17101-1701
717-364-1020 /facsimile

One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
215-568-0300 /facsimile

20 Brace Road, Suite 201
Cherry Hill, NJ 08034-2634
856-616-2170 /facsimile

www.hangley.com

# HANGLEY ARONCHICK SEGAL & PUDLIN

Attorneys at Law | A Professional Corporation

Monica L. Rebuck
Direct Dial: 717-364-1007
E-mail: mrebuck@hangley.com

February 4, 2003

**Via Facsimile**

Mr. Ryan Watts
Arnold & Porter
555 Twelfth Street, NW
Washington, DC 20004-1206

Re: CVS Meridian, Inc., et al. v. Wyeth

Dear Ryan:

In his February 2 letter, David Eggert asked that I direct any further communications to you. I am writing to discuss the outstanding issues.

I wanted to update you on the status of the documents you selected for copying last week. The Rite Aid documents are in the process of being printed. I have looked at some of those documents and noticed that you selected a lot of documents that are outside the scope of the discovery requests. The discovery requests call for the production of documents for a period that begins March 30, 1998. As I made clear before you began reviewing the documents, we will not agree to produce any documents that predate 1998. Therefore, our document production will be limited to documents that are within the time period covered by the document requests. I expect to have the Rite Aid documents bates-stamped and copied for you next week. CVS has arranged for a service to come into its facility to copy the documents you selected. I should be able to give you an estimate of when to expect those documents early next week. This letter will confirm that you have agreed to pay for the copying costs associated with these document productions.

Our discussions regarding the sample data seem to be going in circles. As an initial matter, we have not insisted on producing periodic data from all stores in a subset of states. To my knowledge, no other approach has ever been proposed. If you have another approach, please share it with us. How would you select the "representative" stores? How many

18042_1 February 4, 2005 (3:03 PM)

Mr. David Eggert
February 4, 2005
Page 2

such stores would you propose selecting? Stores close and new stores open on a fairly regular basis. Would you make any adjustments for these openings/closures? Also will you agree that data would be limited to non-archived data?

With regards to the approach that we have been discussing for the past two months, we have made some progress towards an agreement on the geographic scope of the data, but we remain far apart on the temporal scope. The time period Mr. Eggert proposes in his February 2 letter is the same time period that was proposed before and rejected. That time period remains unacceptable. The Court did not order that all data be produced. Recognizing the burden associated with this undertaking, the Court ordered that a *sampling* of data be produced. Data covering 46 months of a 60 month time period is simply not a sampling. Therefore, we will not agree to that proposed time period.

Regarding the speculative purchasing documents, we have filed a motion to clarify the scope of the Court's Order. Until we receive that clarification, we cannot produce any additional documents on this issue.

Finally, you inquired about the status of our producing contracts with pharmaceutical manufacturers. As a quick review of our document productions will show, CVS and Rite Aid already have produced responsive documents. I am in the process of confirming that all responsive documents have been produced.

Sincerely,

Monica Rebuck

18042_1 February 4, 2005 (3:03 PM)