# EXHIBIT 8

Westlaw.

Not Reported in F.Supp.2d
1999 WL 988799 (N.D.Ill.)
(Cite as: 1999 WL 988799 (N.D.Ill.))

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
Edwin R. BAKER, individually, and as father and next of friend of Howard Ross Baker, a minor, Plaintiffs,
v.
INDIAN PRAIRIE COMMUNITY UNIT, SCHOOL DISTRICT NO. 204, et al., Defendants.
No. 96 C 3927.

Oct. 27, 1999.

*MEMORANDUM OPINION AND ORDER*

NOLAN, Magistrate J.

### I. INTRODUCTION

*1 This case arises from injuries Howard Ross Baker sustained to his right hip and femur when he was twelve years old and involved in a sledding accident at May Watts School, which is located in Naperville, Illinois and is part of Indian Prairie Community Unit School District No. 204. Howard Ross Baker, and his father, Edwin Baker, now allege negligence and wilful and wanton conduct against Indian Prairie Community Unit School District No. 204 and numerous other defendants and seek to recover damages and medical expenses attributable to minor Baker's injuries. Defendants maintain that they owed no duty to minor Baker because the dangers associated with his sled run were "open and obvious." All Defendants have moved summary judgment on the issue of whether the conditions encountered by minor Baker were "open and obvious."

After the Bakers responded to Defendants' motions for summary judgment, Defendants ServiceMaster Management Services Limited Partnership and the ServiceMaster Company ("ServiceMaster") and Peter Vlamis moved to strike the affidavits of the Bakers' experts and of minor Baker. Defendants Indian Prairie Community Unit School District No. 204, Naperville Park District, W.E. Mundy Landscaping & Garden Center, Inc., Intech Consultants, Inc., Naperville Excavating, Inc., L.J. Dodd Construction, Inc., and Phillips Swager Associates, Inc. join ServiceMaster and Vlamis' Motion to Strike. The Court stayed the filing of Defendants' reply briefs in support of summary judgment pending a ruling on the current Motion to Strike. The Motion to Strike is now ripe for determination. For the reasons set forth below, ServiceMaster and Vlamis' Motion to Strike (# 222) is GRANTED IN PART and DENIED IN PART.

### II. DISCUSSION

ServiceMaster and Vlamis request that the Court strike the affidavits of the Bakers' experts, Harold Wakeley and Eugene Holland, because, among other reasons, certain of Wakeley's and Holland's opinions are new and rendered after the expert disclosure deadline. The Court agrees and will address the timeliness of the expert opinions first and then the remaining arguments related to each affidavit in turn.

A. *Timeliness of Expert Witness Disclosures*

ServiceMaster and Vlamis contend that numerous opinions and data contained in Wakeley's and Holland's affidavits are untimely and should be stricken. Rule 26(a)(2)(B) requires expert witnesses to prepare a written report containing a complete statement of all opinions to be expressed, the basis and reasons therefore, and the data or other information considered by the expert in forming the opinions as well as a list of exhibits to be used, the expert's qualifications, the expert's compensation, and a list of other cases in which the expert testified in the last four years. A party's failure to comply with Rule 26(a) results in an "automatic and mandatory" exclusion of expert testimony "unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 988799 (N.D.Ill.)
(Cite as: 1999 WL 988799 (N.D.Ill.))

Page 2

harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996); Fed.R.Civ.P. 37(c)(1). A district court's decision to exclude evidence under Rule 37 is reviewed for abuse of discretion. *Doe, By and Through G.S. v. Johnson*, 52 F.2d 1448, 1446 (7th Cir.1995). The Bakers have not shown that their failure to timely disclose all of Wakeley's and Holland's opinions was either justified or harmless, and the arguments raised by the Bakers in response to the timeliness issue are without merit.

*2 The Bakers first claim, without any citation to authority, that it is "patently unfair and prejudicial to the plaintiff to prevent him from consulting with his experts and obtaining from them updated, modified or even new opinions and data in response to Motions for Summary Judgment filed after the expert disclosure date." The Bakers' Response, pp. 4-5. The expert disclosure deadlines do not prohibit the Bakers from thereafter consulting with their experts but do establish firm dates for disclosure of experts and expert opinions. The Bakers' assertion that expert disclosure deadlines do not prevent them from later offering new expert opinions is frivolous. Deadlines play an important role in the Court's ability to manage and control its docket, and the Court has the ability to establish and enforce its deadlines. *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1024-1025 (7th Cir.1991) (holding courts have the power to establish and enforce deadlines concerning expert testimony and are not required to fire a warning shot prior to imposing sanctions).

The Bakers also maintain that the affidavits of Wakeley and Holland merely supplement their prior reports. Although Rule 26(e) provides that a party has a duty to "supplement or correct" its prior disclosures if it learns that the prior information "is incomplete or incorrect," the statements at issue are new conclusions which do not merely correct or complete prior opinions of Wakeley or Holland. For example, Wakeley's report contained one opinion: minor Baker demonstrated a level of hazard perception and risk awareness entirely consistent with his age and level of development. In his affidavit, Wakeley concludes not only that Baker acted reasonably and rationally for his age but also that the dangers associated with sledding down the hill and over the snow pile were not obvious to a twelve year old boy and that the risk involved is not similar to the risk involved in a fall. Wakeley's opinions concerning the obviousness of the risk and whether the risk encountered by minor Baker were similar to a fall are new and offered for the first time after Defendants' summary judgment arguments on the exact same issues.

Finally, the Bakers contend that Defendants cannot show any prejudice as a result of the new expert opinions because: (1) "[t]his is a summary judgment proceeding;" (2) if summary judgment is denied, Defendants "will have ample opportunity to obtain appropriate expert opinions;" and (3) Defendants chose not to take depositions of the Bakers' experts. The Bakers appear to misunderstand the Federal Rules of Civil Procedure and the role of expert reports.

The sanction of exclusion applies at summary judgment as well as at trial. Rule 37(c)(1) explicitly provides that untimely disclosures may not be used "at a trial, at a hearing, *or on a motion.*" Moreover, Defendants need not wait until after a ruling on summary judgment to discover all of Wakeley's and Holland's opinions and data where the Court set an expert opinion disclosure deadline prior to the dispositive motion deadline. Rule 26(a) requires expert reports to be "detailed and complete" and "not sketchy, vague or preliminary in nature." *Salgado By Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n. 6 (7th Cir.1998) (citing Fed.R.Civ.P. 26 Advisory Committee's note). A complete expert report includes "the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor." *Id.* The requirement of a complete expert report minimizes the need for expert depositions. "The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Id.*

*3 Although correct, the Bakers' argument that Defendants chose to stay expert depositions until after the Court rules on summary judgment misses the point. Defendants did not move to stay expert depositions until after the Bakers' expert opinion disclosure deadline. After reviewing Wakeley's and Holland's reports, Defendants concluded it was unnecessary to engage in expensive expert

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 988799 (N.D.Ill.)
(Cite as: 1999 WL 988799 (N.D.Ill.))

Page 3

depositions prior to moving for summary judgment on certain issues, including the issue of whether the risks encountered by minor Baker were "open and obvious." Defendants were entitled to assume that Wakeley's and Holland's reports were complete. Defendants are now unfairly prejudiced by the Bakers' reliance on new and untimely expert opinions in response to summary judgment. The Bakers' failure to inform Defendants of their experts' latest opinions denied Defendants the opportunity to depose Wakeley and Holland prior to moving for summary judgment. One of the primary goals of the federal civil discovery rules and Rule 26(a) is to "eliminate surprise." The Court will not allow the Bakers to ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment. *Salgado*, 150 F.3d at 742 n. 6. [FN1]

> FN1. The Court additionally notes that it granted the Bakers numerous extensions in this matter, including extensions of the discovery deadlines. If the Bakers needed more time to work with their experts and obtain expert opinions, they should have filed an appropriate motion before the expert opinion disclosure deadline rather than wait until after Defendants filed for summary judgment to come forward with new opinions in their experts' affidavits.

The following untimely expert opinions and data are stricken from the Bakers' experts' affidavits: (1) Harold Wakeley's Affidavit-paragraphs 6(b), 6(c), and subparts (b) and (c) in the sentence below 6(c) and (2) Eugene Holland's Affidavit-paragraphs 4-27, first paragraph and last sentence in 29, and paragraph 35. While ServiceMaster and Vlamis have moved to strike the entire affidavits of Wakeley and Holland, the Court believes it more appropriate to strike only the untimely portions of the affidavits. *Prudential Ins. Co. of America v. Curt Bullock Builders, Inc.*, 626 F.Supp. 159, 164 (N.D.Ill.1985) (stating "[w]hen admissible facts and inadmissible statements occur in the same affidavit, the court need not strike the entire affidavit but rather may rely on the facts and disregard the rest.").

B. *Harold Wakeley's Affidavit*

ServiceMaster and Vlamis also request that the Court strike Wakeley's remaining opinion that Baker acted reasonably and rationally for his age because it is a legal conclusion contrary to Illinois law, does not assist the trier of fact, and is not "scientifically valid" under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Court finds that the Bakers have not made a sufficient showing that Wakeley's testimony meets the criteria of *Daubert*.

To be considered on a motion for summary judgment, expert testimony must be admissible. *See* Fed.R.Civ.P. 56(e) (stating "Supporting and opposing affidavits shall ... set forth such facts as would be admissible in evidence and show affirmatively that the affiant is competent to testify to the matters stated therein."). *Daubert* held that under Federal Rule of Evidence 702, trial courts must ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. When considering the admissibility of expert testimony, trial courts may consider the following factors: (1) whether theories or techniques can and have been tested; (2) whether it is generally accepted by the scientific community; (3) whether it has been the subject of publication or peer review; and (4) whether it has an acceptable known or potential error rate. *Id.* at 592-594. The inquiry is "flexible" and should be based "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594-595. *Daubert* applies to all expert testimony. *Kumho v. Tire Co., Ltd. v. Carmichael*, 119 S.Ct. 1167, 1174 (1999).

*4 Trial courts must employ a two-step analysis when determining the admissibility of expert testimony. *Cummins v. Lyle Industries*, 93 F.3d 362, 367 (7th Cir.1996). First, the court must determine whether the expert's testimony is reliable. *Id.* Conclusions in expert reports must be based on scientific methods and procedures, rather than subjective belief and unsupported speculation. *Daubert*, 509 U.S. at 590. Second, the court must decide "whether evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Cummins*, 93 F.3d at 368. "An expert's affidavit must be sufficiently complete to satisfy the criteria of the *Daubert* decision...." *Navarro v. Fuji Heavy Industries, Ltd.*, 117 F.3d 1027, 1032 (7th Cir.1997), *cert. denied*,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 988799 (N.D.Ill.)
(Cite as: 1999 WL 988799 (N.D.Ill.))

Page 4

118 S.Ct. 600 (1997). "[T]here is no duty to cross-examine or depose your opponent's witnesses so that they can supplement the testimony they failed to give on direct examination or in their affidavit." *Id.* The proponent of expert testimony bears the burden of establishing its admissibility. *Bradley v. Brown,* 852 F.Supp. 690, 697 (N.D.Ind.), *aff'd,* 42 F.3d 434 (7th Cir.1994).

The Court has reviewed Wakeley's report and affidavit. Wakeley is an engineering psychologist with M.S. and Ph.D. degrees in experimental psychology. Since 1990, he has been employed by the Human Factors Research Group as a Human Factors Scientist/Engineer. Between 1955 and 1990, he worked as a scientist/engineer at Illinois Institute of Technology (IIT) Research Institute. Wakeley also served as adjunct associate professor of engineering psychology at IIT between 1970 and 1985. Wakeley describes his professional experience as involving the determination of:

> [T]he range and limits of human performance. The objective of these studies is to produce machines and systems that are cost-effective, productive, and safe in operation without endangering life and the environment. The approach used is the application of engineering and scientific knowledge about materials and human behavior to the design of things people use, methods for their use, and the environment in which people function.

Wakeley Aff. ¶ 4. With respect to the present case, Wakeley opines that "Howard Ross Baker demonstrated a level of hazard perception and risk awareness entirely consistent with his age and level of development" because Baker was taken to an area specially prepared to be used by children for sledding purposes, the area showed evidence that others had recently used it, he observed a peer using the area, there was no information to indicate that the contemplated slide was hazardous, and there was no barrier to use of the slide area. *Id.* ¶ 6(a). Wakeley states that the bases for his opinion is as follows:

> People can perceive physical "hazards" but recognizing and accepting or rejecting a "risk" depends upon the subjects use of relevant skills, rules, and knowledge to predict whether an action will have a safe outcome. Children, including 12 year olds, because they lack skills, familiarity with rules, and specialized knowledge, are far less able to reliably discern dangerous situations.

*5 Wakeley Aff. ¶ 7.

Wakeley's affidavit fails to specifically explain how he arrived at his conclusion that minor Baker "demonstrated a level of hazard perception and risk awareness entirely consistent with his age and level of development." What level of hazard perception and risk awareness does a twelve year old boy possess? How does Wakeley know what level of hazard perception and risk awareness a twelve year old boy possesses? What particular skills, experience, and capabilities possessed by minor Baker made his behavior reasonable for a twelve year old boy and made him not able to successfully predict whether the sled run would have a safe outcome? What is the reasoning behind Wakeley's conclusion? Did he recreate the accident or do any testing to support his opinion? [FN2] These questions remain unanswered by Wakeley's affidavit.

> FN2. The Court is not holding that a finding of reliability necessarily requires that Wakeley recreate the accident or do any other testing. Wakeley need only show that his testimony is consistent with the "same standards of intellectual rigor that are demanded in [his] professional work." *Cummins,* 93 F.3d at 369. Wakeley's affidavit does not specifically explain how experts in the field of human factors investigate and analyze accidents. Thus, the Court is unable to determine whether the methodology used by Wakeley to reach his conclusion in this case meets the standards of his profession.

Wakeley claims that in his research he applies "engineering and scientific knowledge" to human behavior, materials, and the environment. How did Wakeley apply "engineering and scientific knowledge" to Baker's accident? Wakeley also states in his affidavit that he "reviewed the human factors aspects of children's recreational behavior, in particular risk perception and cognition/decision-making of children, both as to minor Baker and as to 12- year-olds generally." Wakeley Aff.¶ 5. What are the "human factors aspects of children's recreational behavior" and how is Wakeley an expert in the area of child perception

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 988799 (N.D.Ill.)
(Cite as: 1999 WL 988799 (N.D.Ill.))

Page 5

and cognition/decision-making? The generalized and unsupported nature of Wakeley's conclusion makes its difficult tell what analyses and methodology he used to reach his conclusion. Moreover, although Wakeley has impressive credentials, it is not evident from his curriculum vitae that he has any particular expertise in children's recreational behavior.

Rather than provide the Court with any indicia of reliability for Wakeley's conclusion, the Bakers' Response states only the following regarding Wakeley's qualifications as an expert and the admissibility of his opinion: "Dr. Wakeley is an expert on human factors. His qualifications are as disclosed in his curriculum vitae attached to his Affidavit. By virtue of his education, training and experience, he possesses knowledge that would be helpful to the trier of fact in understanding the various factors that go into perception and recognition of the conditions involved in this case from the point of view of a 12 year old, as the law requires." Bakers' Resp., pp. 5-6. Impressive credentials do not guarantee the admissibility of expert testimony.

Wakeley's opinion provides nothing more than a "bottom line" conclusion and fails to demonstrate that it is supported by scientific rigor. *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 658 (7th Cir.1998) (stating "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.") (quoting *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir.1989)); *Navarro*, 117 F.3d at 1031 (holding expert's affidavit contained no support for conclusion and "a conclusion without any support is not one based on expert knowledge and entitled to the dignity of evidence."). As the Seventh Circuit explained in *Navarro*, an expert must explain how his conclusion is based on expert analysis:

*6 An expert's affidavit must be sufficiently complete to satisfy the criteria of the Daubert decision, and one of those criteria, as we have been at pains to emphasize, is that the expert show how his conclusion ... is grounded in-follows from-an expert study of the problem.
*Navarro*, 117 F.3d at 1032.

The Bakers have also failed to provide the Court with any information concerning the four indices of reliability identified by the Supreme Court in *Daubert. Daubert*, 590 U.S. at 592-594. The Court recognizes that those factors are "flexible" and "neither necessarily nor exclusively appl[y] to all experts or in every case." *Kumho Tire Co.*, 119 S.Ct. at 1171. Because the Bakers failed to address *Daubert*, the Court is unable to evaluate whether the four *Daubert* factors are relevant to determining the admissibility of a human factors expert's testimony. The absence of evidence supporting the four *Daubert* factors does not automatically foreclose a finding of reliability, but the Bakers must provide some basis for a finding of reliability. This record fails to disclose Wakeley's methodology and reasoning, and the Court cannot evaluate the reliability of an undisclosed methodology. Thus, given the current record, Wakeley's affidavit is inadmissible under *Daubert*.

The Court grants ServiceMaster and Vlamis' Motion to Strike the remaining conclusion of Harold Wakeley for purposes of ruling on summary judgment. The Court expresses no opinion on whether Wakeley can demonstrate the necessary reliability for trial, if the Bakers' claims survive summary judgment. Having found that Wakeley's opinion fails to meet the *Daubert* criteria, the Court need not address the remainder of ServiceMaster and Vlamis' arguments regarding Wakeley's affidavit.

C. *Eugene P. Holland's Affidavit*

Defendants additionally argue that the remaining portions of Eugene Holland's affidavit should be stricken because many of Holland's opinions are legal conclusions contrary to Illinois law on the issue of an "open and obvious" condition and do not assist the trier of fact.

ServiceMaster and Vlamis contend that the following opinions by Holland are inadmissible legal conclusions contrary to Illinois law: (1) a dangerous condition existed; (2) certain of Defendants' actions constituted negligence; and (3) Defendants knew or should have known that the sledders would use the snow pile. According to ServiceMaster and Vlamis, Illinois law dictates that Baker was expected to appreciate and avoid the obvious risk inherent in his sled down the hill and over the snow pile. Whether the risks associated

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 988799 (N.D.Ill.)
(Cite as: 1999 WL 988799 (N.D.Ill.))

Page 6

with the sledding jump were "open and obvious" is the ultimate issue to be decided on summary judgment. The Court declines to rule on the merits of the open and obvious issue until the motion for summary judgment is fully briefed and thus, refuses to strike Holland's opinions on this ground.

Defendants correctly contend that Holland's opinion in paragraph 32(a) of his affidavit that the contract between District No. 204 and ServiceMaster required ServiceMaster to supervise the snow removal work of Mundy usurps the Court's role as the interpreter of the contract between ServiceMaster and the School District. An expert may not ordinarily interpret the meaning of a contract. *Delta Mining Corp. v. Big Rivers Electric Corp.*, 18 F.3d 1398, 1402 (7th Cir.1994) (stating "[a]bsent any need to clarify or define terms of art, science or trade, expert opinion testimony to interpret contract language is inadmissible."). The Court strikes that portion of paragraph 32(a) of Holland's affidavit. [FN3]

> FN3. In their reply brief, ServiceMaster/Vlamis, W.E. Mundy Landscaping, and Indian Prairie Community School District # 204 request that the Court strike paragraphs 24, 25, 26, 31, 32, and 34 of Holland's affidavit. Intech Consultants and Phillips Swager Associates contend that Holland is not qualified to opine as to the standard of care applicable to civil engineers or architects and that Holland's opinions fail to establish with appropriate foundation what the standard of care is or the manner in which it may have been breached. The Court has previously stricken paragraphs 24-26 as untimely. The Court is unwilling to strike paragraphs 31, 32, and 34 of Holland's affidavit or his opinions regarding Intech Consultants and Phillips Swager Associates where Defendants' arguments regarding these matters were first raised in their reply brief and the Bakers have not had an opportunity to respond. The Court denies Defendants request to strike these matters from Holland's affidavit without prejudice. If Defendants wish to pursue these arguments for purposes of summary judgment, they may file an additional motion to strike containing these arguments at the same time they file their reply briefs in support of summary judgment. The Bakers' response to an additional motion to strike is due within seven days thereafter. Defendants may file a reply within seven days after the Bakers' response.

D. *Harold Ross Baker's Affidavit*

*7 ServiceMaster and Vlamis lastly contend that minor Baker's affidavit should be stricken because it conflicts with his prior deposition testimony. Specifically, ServiceMaster and Vlamis argue that through his affidavit, minor Baker improperly implies that he was not aware that he would land on pavement after his sled run. "[A] plaintiff cannot create an issue of material fact merely by manufacturing a conflict in his own testimony by submitting an affidavit that contradicts an earlier deposition and, in turn, defeat a defendant's motion for summary judgment." *Ernst & Young, L.L.P.*, 171 F.3d 527, 532 (7th Cir.1999) (internal citations omitted). "[W]hen a conflict arises between a plaintiff's own sworn deposition and his sworn affidavit, the deposition testimony overrides statements made in the affidavit." *Id.*

At his deposition, Baker testified as follows:
Q: So the parking lot on the day of the accident is or was similar to that depicted in photograph 7-1; is that right?
A: Correct.
Q: So there's some icy patches but, most of it you could see the paved surface below it?
A: Yes.
Baker dep., p. 47.
Q: And whereabouts where you when you saw him coming down the hill? Were you on the hill? In the parking lot?
A: I believe I was standing on the concrete just going up--beginning up the hill when I saw him go over the bottom.
Baker dep., p. 51.
Q: And [Jasper] landed in the parking lot?
A: Yes.
Baker dep., p. 54.
Q: I'm sorry, I though you told me-
A. I don't remember exactly in relation to where I had landed Tim had landed. I knew he had landed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 988799 (N.D.Ill.)
(Cite as: 1999 WL 988799 (N.D.Ill.))

Page 7

on the concrete in that general vicinity, but I don't know in relation to where I landed he did.

* * *

Q: Did you land approximately on the same area of pavement, approximately five feet from the-
A: I think I was a little farther, but I don't know for sure because I was rolling after I hit the ground.
Q: Okay. Same area on the concrete, but might have rolled a little bit so it's hard to determine exactly how you landed?
A: Yes.

Baker dep., p. 64.

Q: You eventually slid over a mound at the base of the hill; is that right?
A: After I went down and got to the base?
Q: Yes.
A. Yes.

Baker dep., p. 49.

Q: You were the next person to go down the hill after Tim Jasper; is that correct?
A: I believe so.
Q: And Tim landed in the parking lot also, correct, on his feet?
A: Yes.
Q: So you knew that you were going to end up in the parking lot on a harder surface; correct?
A: Yes.

Baker dep., 142.

In his affidavit filed in opposition to summary judgment, minor Baker states in part:

> On that date, I could not tell where the pavement of the parking lot began and the sled hill ended because of the piled snow. There were patches of ice and/or snow covering the asphalt surface of the parking lot in the area to the north of the snow pile. The path that I saw Tim Jasper take down the sled hill to the snow pile was continuos snow or ice covered, with no bar spots. The snow pile at the base of the hill was pushed to the pile so the pile began before the hill ended. There was no flat area between the sled hill and the snow pile involved. The sled hill dropped until it met the snow pile which then began to rise. The snow pile appeared to be part of the sledding experience existing at May Watts Park/School at the time.

*8 Ross' Affidavit, ¶¶ 2-6, 9.

Taken individually, the statements in minor Baker's affidavit do not necessarily contradict the assertions made in his deposition concerning his knowledge of whether he would land on concrete. On the other hand, when considered together, it may reasonably be inferred from Baker's affidavit statements that he was not aware that he would land on concrete. Such an inference would contradict his above-quoted deposition testimony. Because the Court does not know at this stage of the proceedings whether minor Baker's affidavit may be used for other permissible purposes in response to summary judgment, the Court declines to strike his affidavit. However, when ruling on summary judgment, the Court will not consider minor Baker's affidavit statements for the proposition that he did not understand he would land on pavement after his sled run. [FN4]

> FN4. Defendants request for the first time in their reply that they be allowed to redepose minor Baker if his affidavit is allowed to stand. Defendants' request is denied.

### III. CONCLUSION

For the reasons explained above, Defendants ServiceMaster and Vlamis' Motion to Strike Affidavits of Plaintiff and Plaintiff's Experts is GRANTED IN PART and DENIED IN PART. Defendants' reply briefs in support of summary judgment are due by November 9, 1999.

1999 WL 988799 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

. 1:96CV03927 (Docket)
(Jun. 28, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.