# EXHIBIT A

Westlaw.

91 Fed.Appx. 384                                                                 Page 1
91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))
**(Cite as: 91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio)))**

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT RECOMMENDED FOR FULL--TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.
Kathleen **CETLINSKI**, James Cetlinski, Deborah Gothro, and Roger Gothro,
Plaintiffs-Appellants,
v.
Jeffrey **BROWN**, M.D. and Associated Physicians of MCO, Inc., Defendants-
Appellees.
**No. 02-3199.**
Jan. 14, 2004.

**Background:** Patients brought action against physician and his employer under § 1983, and claims of medical negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, and promissory estoppel alleging physician performed an experimental procedure on them without obtaining informed consent. The United States District Court for the Northern District of Ohio entered judgment after jury verdict in favor of defendants. Plaintiffs appealed.

**Holdings:** The Court of Appeals, Rogers, Circuit Judge, held that:

(1) patients were not prejudiced by alleged non-disclosure of defense experts' prospective testimony on informed consent issue;

(2) probative value of testimony of physician's other patients was substantially outweighed by danger of unfair prejudice; and

(3) plaintiffs were not prejudiced by admission of videotape produced after trial commenced.
Affirmed.

West Headnotes

**[1] Federal Courts ⊜895**
170Bk895 Most Cited Cases
Patients were not prejudiced by alleged non-disclosure of defense experts' prospective testimony on informed consent issue in expert reports and thus patients were not entitled to a new trial in medical malpractice action against physician and his employer; patients did not disagree with experts' definition of informed consent, expert reports clearly stated procedure was not experimental, patients conceded that consent forms they signed were appropriate for nonexperimental procedures, issue of informed consent was at heart of case, and patients declined to depose experts before trial. Fed.Rules Civ.Proc.Rule 26(a), 28 U.S.C.A.

**[2] Evidence ⊜146**
157k146 Most Cited Cases
In medical malpractice action, probative value of testimony of physician's other patients, who underwent same surgery, about their results was substantially outweighed by danger of unfair prejudice; other patients were allowed to testify about pre-operational things, results of other surgeries had little bearing on whether or not surgery was considered experimental at time plaintiffs underwent procedure, and admission of testimony would have created confusion of issues and undue delay. Fed.Rules Evid.Rule 403, 28 U.S.C.A.

**[3] Federal Courts ⊜895**
170Bk895 Most Cited Cases
In medical malpractice action, plaintiffs were not prejudiced by admission of videotape produced after

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 384                                                                                          Page 2
91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))
**(Cite as: 91 Fed.Appx. 384,  2004 WL 68540 (6th Cir.(Ohio)))**

trial commenced which contained one plaintiff stating that surgery improved her condition and relieved her pain; although plaintiffs' counsel did not receive tape until after trial commenced, tape had been mailed to counsel a week before trial, plaintiff admitted she experienced temporary relief after surgery, tape went towards damages issue which jury did not reach, plaintiffs did not explain why they required additional preparation time, and plaintiffs' counsel also made untimely disclosures.

*385 On Appeal from the United States District Court for the Northern District of Ohio.

Patrick J. Burkett, Sommers, Schwartz, Silver & Schwartz, Gary A. Krochmal, Freedman, Krochmal, Goldin, Smith & Harris, Southfield, MI, for Plaintiffs-Appellants.

Brian D. Sullivan, Michael F. Schmitz, Reminger & Reminger, Steven J. Hupp, Patrick J. Quallich, Bonezzi, Switzer, Murphy & Polito, Cleveland, OH, for Defendants-Appellees.

Before RYAN, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

**1 Kathleen Cetlinski ("Cetlinski") and Deborah Gothro ("Gothro") charge that Dr. Jeffrey Brown performed an experimental procedure-motor cortex stimulation surgery-on them without obtaining informed consent. Cetlinski and Gothro, and their husbands, filed suit against *386 Brown and his employer, the Associated Physicians of Medical College of Ohio, Inc. ("APMCO"). in the United States District Court for the Northern District of Ohio. The plaintiffs asserted a claim under 42 U.S.C. § 1983, and claims of medical negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, and promissory estoppel against the defendants. A jury found for the defendants on all counts.

The plaintiffs now appeal three evidentiary rulings made by the district court. Specifically, the plaintiffs argue that the district court erred by (1) refusing to exclude "surprise" testimony from defense experts on

the issue of informed consent, (2) excluding testimony from other patients of Brown about the results of their surgeries, and (3) refusing to exclude a videotape of Gothro (which was not timely produced by the defendants). The defendants purport to cross-appeal, though they did not file a notice of cross appeal. The defendants argue that the district court erred by permitting testimony from other patients of Brown concerning their "pre-operative care" and by denying their motion for a directed verdict.

The plaintiffs have not shown that they were prejudiced by any of the alleged errors. Therefore, we affirm the judgment of the district court.

BACKGROUND
*1. The Surgeries.*

In 1998, Brown performed motor cortex stimulation surgery ("MCSS") on Gothro and on Cetlinski. MCSS entails a pair of operations. First, an electrode is surgically implanted onto the patient's dura (the outer covering of the brain). The physician then administers electrical stimulation and assesses the patient's pain relief. Second, if the patient reports sufficient pain relief, a pulse generator is implanted, and a wire is placed under the skin from the pulse generator to the electrode.

Gothro suffered from severe facial pain after she was struck in the face with a brick while riding in an automobile. Gothro was referred to Brown by her family doctor who was familiar with Brown's work performing balloon implants, a different procedure. On January 22, 1998. Brown examined Gothro and discussed possible treatments, including MCSS. According to Gothro, Brown's assistant stated that the procedure "had been done hundreds of time and that it was very successful in France and Germany," and Brown stated that the procedure "would make [her] hundred percent [sic] pain-free and that [she] would get [her] life back." Also according to Gothro, Brown's assistant showed Gothro a map with red pushpins that purportedly marked the residences of patients who had successfully undergone MCSS; she placed another pushpin at the spot of Gothro's residence and stated "this is going to be you." According to Brown, he and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 384
91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))
**(Cite as: 91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio)))**

Gothro discussed the complications and risks associated with the procedure.

**\*\*2** On January 23, 1998, Brown performed the first operation on Gothro. A few days later, after an apparently successful trial period, he performed the second operation. Prior to each operation, Gothro signed a standard consent form.

Initially, Gothro experienced some relief from her facial pain. However, "eventually, everything started tapering off until [she] was receiving no help from it whatsoever." Additionally, Gothro reports that the procedure has created new problems. She states that she receives a shock from the electrode when she passes underneath high power lines, when she passes through security screening devices, and when she approaches magnets. She also states that **\*387** the pulse generator and the wire cause extreme pain and discomfort.

Cetlinski suffered from severe facial pain as a result of a dental injection. Cetlinski received Brown's name from an oral surgeon, and, in February 1998, she contacted Brown's office. Brown informed her that he "had this procedure that helped for what [she] was having."

On March 19, 1999, Cetlinski met with Brown. Brown examined Cetlinski and discussed possible treatments, including MCSS. According to Cetlinski, Brown told her that she would be "pain-free" and showed her the map with the red pushpins. According to Brown, he informed Cetlinski that, on average, MCSS patients experience only a 50% pain reduction. Also according to Brown, he cautioned that he could not guarantee that the procedure would be successful. Prior to Cetlinski's surgery, Brown arranged a meeting between Cetlinski and Gothro, who had already undergone the procedure, to discuss the pros and cons of MCSS.

On April 17, 1998, Brown performed the first operation on Cetlinski. On April 21, 1998, after an apparently successful test period, he performed the second operation. Cetlinski executed a standard consent form before both operations. [FN1] According to Cetlinski, Brown gave her a booklet describing the pulse generator, but only after the second operation.

FN1. Later, in March 1999, Brown sent an additional consent form to Gothro and Cetlinski. According to Gothro and Cetlinski, the new form belatedly disclosed that their surgeries were part of a "research study." According to Brown, the new form did not indicate that Gothro and Cetlinski had been part of a research study; instead, it simply requested Gothro's and Cetlinski's consent for the inclusion of their surgeries in a study.

Cetlinski reports that "her life is worse" after the procedure. Initially, she experienced some relief from her facial pain, but soon it returned to pre-operation level. Moreover, the pulse generator. which turns on by itself and sends "an electrical current through [her] body" that makes her feel like she is being "electrocuted," causes her to suffer additional pain.

*2. Procedural History.*

*a. The Lawsuit.*

On February 1, 2000, Gothro and Cetlinski, and their husbands, initiated this action by filing a complaint against Brown and APMCO in the District Court for the Northern District of Ohio. Stated generally, the plaintiffs' charges were that Brown performed an experimental procedure (*i.e.,* MCSS) on Gothro and Cetlinski without obtaining their informed consent by explaining the experimental nature of the procedure and by disclosing that they were part of a research study. In their amended complaint, the plaintiffs asserted medical negligence, substantive due process (actionable under § 1983), intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, and promissory estoppel claims against the defendants.

*b. Defense Experts.*

**\*\*3** About five months before trial, on August 13, 2001, the plaintiffs moved to prohibit the defendants' experts from testifying. The plaintiffs asserted that the experts' reports failed to disclose adequately their opinions and the bases for their opinions in violation of Fed.R.Civ.P. 26(a)(2). The defendants provided

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 384                                                                                     Page 4
91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))
**(Cite as: 91 Fed.Appx. 384,  2004 WL 68540 (6th Cir.(Ohio)))**

supplemental reports and, on December 19, 2001, the district court entered an order denying the plaintiff's motion.

On January 9, 2002, while taking the *de bene esse* deposition of Dr. Robert M. Levy, one of the defense experts, plaintiffs' *388 attorney learned that Levy intended to opine on the issue of informed consent. On January 14, 2002, the plaintiffs moved to strike Levy's testimony on the issue on the grounds that Levy-in violation of Fed.R.Civ.P. 26(a)(2)-had not disclosed in his expert report that he intended to testify on the informed consent issue. Additionally, during the trial, the plaintiffs objected on the same ground to testimony on the issue by Dr. Kenneth A. Follett, another defense expert.

At trial, during Follett's testimony, the district court ruled that Levy and Follett could testify on the informed consent issue. [FN2] The court noted that the expert reports by Levy and Follett stated that they would testify that Brown had met "the standard of care," and it concluded that "the standard of care" encompassed the obligation to obtain the informed consent of the patient.

> FN2. The district court did not rule on the plaintiff's motion to strike Levy's testimony prior to the trial. Instead, the district court ruled on the plaintiffs' objections to the testimony of both experts when the issue came up during Follett's direct testimony.

At trial, Follett opined that the standard consent form executed by Gothro and Cetlinski prior to their operations "meets the essential elements of informed consent" under the circumstances. During his deposition, which was played at trial, Levy opined that Brown had "proper and adequate informed consent" for the procedures.

*c. Exclusion of Testimony from Other MCSS Patients of Brown.*

On January 7, 2000, the defendants filed a motion in limine to exclude the testimony of Olin Hasty, a former patient of Brown who underwent MCSS. They argued

that, since the parties had been unable to obtain Hasty's medical records, they would not have a fair opportunity to cross-examine Hasty or to challenge plaintiffs' counsel's attempt to analogize Hasty's case to Gothro's and Cetlinski's cases. On the same day, the defendants filed a second motion in limine to exclude the testimony of additional, as-yet-unnamed patients of Brown who underwent MCSS. They argued that they would be prejudiced by this testimony in that they would be "forced to try several tangential malpractice cases within the *Cetlinski/Gothro* case" and in that they would not have the records of these patients to use in cross-examination.

The district court granted the defendants' motions in part. It ruled that Brown's other MCSS patients could testify about "pre-operational things" (*e.g.,* whether they received a consent form and whether they signed the form) but not about the results of the surgeries. The court did not explicate its reasoning.

*d. The Gothro Videotape.*

**4 During the trial, defense counsel handed plaintiffs' counsel a videotape depicting Gothro shortly after surgery. [FN3] The videotape was shot by Brown in his office at some undetermined time after Gothro's surgeries, and it shows Gothro answering a series of questions from Brown about her post-surgical condition. In the videotape, Gothro appears healthy, and she reports that the procedure had succeeded in relieving her pain. In particular, she stated that she experienced an 85% reduction in pain (90% when the pulse generator was on), that she no longer needed pain medication, and that she was considering returning to college. When asked why the *389 videotape had not been produced earlier, defense counsel explained that Brown had just located the videotape because, until recently, he had not "look[ed] through the right things." [FN4]

> FN3. Defense counsel had mailed the videotape to plaintiffs' counsel the week before trial. However, it did not arrive at his office (located in Michigan) until after he left for trial (in Ohio).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 384                                                                                          Page 5
91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))
**(Cite as: 91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio)))**

FN4. Specifically, defense counsel stated, "We couldn't find it. Dr. Brown-No.1, when Dr. Brown left [APMCO], things were left at [APMCO]. He didn't know where things were, et cetera, et cetera, and it was a matter of trying to find it among a lot of different things." He advised that Brown had found the videotape "among some personal possessions that he had at home." He continued, "I think they had been looked through but they just, it wasn't found. It was a matter of looking through the right things and getting it from the right things."

The district court admitted the videotape over the plaintiffs' objection. The court reasoned that, as it was allowing the plaintiffs to present the testimony of witnesses who had not been identified timely, "[s]auce for the goose, sauce for the gander." It further reasoned that it did not "think anybody is being hurt by these problems in late production."

*e. Disposition of the Case.*

On January 25, 2002, a jury returned a verdict in favor of the defendants. On January 29, 2002, the district court entered judgment in favor of the defendants. On February 11, 2002, the plaintiffs filed a timely notice of appeal. The defendants did not file a notice of cross-appeal, though they raised a number of "cross-assignments of error" in their reply briefs.

ANALYSIS
*1. "Surprise" Testimony of Defense Experts on the Informed Consent Issue.*

[1] The alleged failure of the defense experts to disclose their prospective testimony on the "informed consent" issue in their expert reports does not constitute grounds for a new trial, as the plaintiffs have not explained how they were prejudiced by the alleged non-disclosure.

This court reviews a district court's rulings concerning the admission of expert testimony for an abuse of discretion. *Pride v. BIC Corp.,* 218 F.3d 566, 575 (6th Cir.2000); *King v. Ford Motor Co.,* 209 F.3d 886, 900

(6th Cir.2000). "A finding of abuse of discretion will be made only where the reviewing court is firmly convinced that a mistake has been made." *Greenwell v. Boatright,* 184 F.3d 492, 495 (6th Cir.1999) (internal quotation omitted). Moreover, "even if the trial court abuses its discretion, a new trial is not required unless 'substantial rights' of a party are affected." *United States v. Cope,* 312 F.3d 757, 775 (6th Cir.2002) (internal quotation marks and citations omitted). The burden of showing harmful prejudice rests on the party seeking the new trial. *Tobin v. Astra Pharm. Prods., Inc.,* 993 F.2d 528, 541 (6th Cir.1993).

Rule 26(a) of the Federal Rules of Civil Procedure requires an expert witness to provide a written report containing, *inter alia,* (1) "a complete statement of all opinions to be expressed and the basis and reasons therefor," and (2) "the data or other information considered by the witness in forming the opinions." Fed.R.Civ.P. 26(a)(2)(B). Relatedly, Rule 37(c) provides that "a party that without substantial justification fails to disclose information required by Rule 26(a) ... is not. unless such failure is harmless, permitted to use as evidence at trial ... any witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1). Rule 37(c) further provides that "[i]n addition to or in lieu of this sanction, the court ... may impose other appropriate sanctions." *Id.*

**\*\*5** The plaintiffs contend that the defense experts violated Rule 26(a) by failing to **\*390** disclose in their expert reports that they would testify on the "informed consent" issue. In his supplemental report. Dr. Levy stated

... I hold the opinion that Dr. Brown's care of these two patients was entirely within the standard of care.

My specific opinions include:
(1) The procedure of motor cortical stimulation for chronic pain is not experimental.
(2) While not an FDA approved procedure, and many common neurosurgical pain procedures are not FDA approved, motor cortex stimulation is appropriately performed using a treating physician's discretion, so called "off label" use. This off label use is supported by the published literature, presentations at national and international meetings and the clinical experience

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 384                                                                                          Page 6
91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))
**(Cite as: 91 Fed.Appx. 384,  2004 WL 68540 (6th Cir.(Ohio)))**

of several neurosurgeons around the world. There is no standard of care requirement that a physician discuss off label use with their patients and it was not necessary that Dr. Brown advise either of these patients of this.
(3) Dr. Brown used good clinical judgment in the evaluation, diagnosis and treatment of these two patients.
(4) Psychiatric or psychological evaluation of patients prior to motor cortex stimulation is not required under the standard of care, nor is it absolutely necessary in and of itself prior to the trial of motor cortical stimulation for chronic pain.
J.A. at 111.

In his initial report, Dr. Follett wrote as follows:
Based upon my review of the records, I believe Dr. Brown complied with a reasonable standard of care in the treatment of these patients with complex pain disorders. As noted in the records, these individuals received extensive conservative care of their chronic pain disorders prior to undergoing surgical treatment. The surgical treatment (implantation of a motor cortex stimulation system) was carried out using the standard accepted approach, including a "trial" period of stimulation (which provided good pain relief for both individuals) prior to implantation of the subcutaneous battery pack. This surgery is not experimental. It is a reasonable option for the treatment of intractable neuropathic pain. I find no information in any of the records I have reviewed that Dr. Brown caused either of these individuals injury or harm.
J.A. at 72.

The district court concluded that the experts adequately disclosed their prospective testimony on the "informed consent" issue. The court reasoned that it agreed "with the basic contention that in a case of this sort with the issues that this case clearly presents and has been apparent from day one [sic], the standard of care encompasses notifying the patient of what the patient needs to be notified about and securing consent." J.A. at 534; *see also* J.A. at 536 (stating that the issue of "informed consent" is "the heart of the case" and that the experts' testimony was foreseeable). [FN5]

FN5. The plaintiffs framed Brown's alleged failure to obtain informed consent as a violation of the "standard of care." For example, in their amended complaint, the plaintiffs allege that Brown violated "the standard of practice" by failing "to obtain proper Informed Consent," "to inform Plaintiffs that the surgery was experimental," and "to inform Plaintiffs that they would be part of a research study." J.A. at 39. Similarly, in his expert report, one of the plaintiffs' experts opined that Brown "fell below the standard of care" by failing to inform Cetlinski of "the experimental nature of this procedure." J.A. at 74. Likewise, in his expert report, another of the plaintiffs' experts opined that "there was a violation of the standard of care by failing to fully and completely inform Deborah Gothro and Kathleen Cetlinski of the nature of the surgery they were to undergo." J.A. at 80. Finally, plaintiffs' expert opined that Gothro and Cetlinski did not receive "the appropriate informed consent that would meet the applicable, appropriate standard of care." J.A. at 344.

*391 On appeal, the plaintiffs challenge the district court's conclusion that the reports adequately disclosed the expert's prospective testimony on the "informed consent" issue. They argue that generic references to the "standard of care" did not satisfy Rule 26(a)(2)(B)'s mandate, as a number of issues fell under the "standard of care" rubric (specifically, whether the procedure was experimental and whether Brown obtained informed consent). Appellants' Br. at 35, 38. Moreover, they assert that, in any event, the mere assertion that Brown satisfied "the standard of care" hardly qualifies as a complete statement of the experts' opinions on the issue of informed consent. *Id.* at 35, 37. Finally, they claim that they suffered prejudice as plaintiffs' counsel was denied ammunition for cross-examination and was forced to scramble at the last minute to meet the testimony. *Id.* at 36.

**6 Assuming *arguendo* that the expert reports were inadequate, the plaintiffs have not shown prejudice

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 384
91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))
**(Cite as: 91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio)))**

from the admission of the testimony, as required for a new trial. In the testimony cited by the plaintiffs' (Appellants' Br. at 27), the experts opine on three subjects. First, they define the concept of "informed consent." J.A. at 543-44, 590. Second, they opine that MCSS is not an experimental procedure. J.A. at 548-49. Third, they opine that Brown obtained informed consent by having Gothro and Cetlinski review and execute the standard consent form, given that MCSS is not an experimental procedure. J.A. at 544-47, 590.

Fatally, the plaintiffs have not explained how they were unfairly prejudiced by any of these lines of questioning. First, the plaintiffs have not stated that they disagree with the definition of informed consent offered by the defense experts. Second, the reports clearly disclose the opinion that MCSS was not an "experimental" procedure. J.A. at 72, 111. Third, it appears that the plaintiffs concede that the consent forms executed by Gotho and Cetlinski were appropriate for "non-experimental" procedures. *See* J.A. at 354. In short, the plaintiffs' case of prejudice is premised entirely on bald assertions of "harm" and "prejudice."

Moreover, it is dubious that the plaintiffs were "surprised" by-and unable to prepare for-the testimony that Brown obtained informed consent. As the district court observed, the issue of informed consent is "the heart of the case." and the plaintiffs must have foreseen the experts' testimony. Additionally, the experts were simply borrowing the plaintiffs' phraseology when they framed their testimony in terms of "the standard of care." Finally, the plaintiffs could have avoided any surprise by deposing the experts, which they declined to do. *See Brewer v. Webster County Coal Co.,* No. 96-5960, 1998 WL 199727. at *2 (6th Cir. April 16, 1998) (noting that "any surprise that plaintiff may have experienced cannot be laid at the feet of the trial court, but instead would have been the result of his failure to depose Smith or otherwise prepare for trial").

In conclusion, the district court did not abuse its discretion in admitting the testimony **\*392** of the defense experts on the issue of informed consent.

*2. The Exclusion of Testimony from Brown's Other*

*MCSS Patients Concerning the Results of Their Surgeries.*

[2] The district court's exclusion of testimony from Brown's other MCSS patients about the results of their surgeries does not constitute grounds for a new trial, as the testimony was properly excluded under Fed.R.Evid. 403 and as the plaintiffs have not shown prejudice from the exclusion of the testimony.

This court reviews a district court's evidentiary rulings for abuse of discretion, and a district court's judgment will be reversed only if the abuse of discretion caused more than harmless error. *Argentine v. United Steelworkers of Am.,* 287 F.3d 476, 486 (6th Cir.2002); *Trepel v. Roadway Exp., Inc.,* 194 F.3d 708, 716 (6th Cir.1999). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overruled." *United States v. Jackson-Randolph,* 282 F.3d 369, 376 (6th Cir.2002).

**\*\*7** As defined by the Federal Rules of Evidence, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. All relevant evidence is admissible. Fed.R.Evid. 402. However,

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
> Fed.R.Evid. 403.

On appeal, the plaintiffs assert that their case "was sorely prejudiced" by the district court's ruling that Brown's other MCSS patients could testify about "pre-operational things" (*e.g.,* whether they received a consent form and whether they signed it) but not about the results of their surgeries. J.A. at 264-65. The plaintiffs explain that the former patients would have testified that their results "were no better" than Cetlinksi's and Gothro's results, and the plaintiffs

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 384                                                                                    Page 8
91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))
**(Cite as: 91 Fed.Appx. 384,  2004 WL 68540 (6th Cir.(Ohio)))**

contend that this testimony would have helped show that MCSS was an experimental procedure. Appellants' Br. at 41-42. "Evidence that this surgery never helped anyone," they summarize, "legitimately proves its intrinsically experimental nature." *Id.* at 42.

The district court properly concluded that the testimony should be excluded under Fed.R.Evid. 403. [FN6] The testimony has minimal relevance, if any, to the issue of the "experimental" nature of MCSS. As framed by the plaintiffs, the issue of whether a procedure is "experimental" turns on whether there was a "long-term *393 track record over many years" showing positive results. J.A. at 193. [FN7] Testimony that Brown did not successfully treat his other six MCSS patients-only one or two of whom had the surgery prior to the plaintiffs-adds little to the plaintiffs' argument that MCSS lacked "a track-record" when Gothro and Cetlinski were subjected to the procedure. Given the small number of the other surgeries (six), the timing of the other surgeries (all but one or two were performed after the plaintiffs' surgeries), and the inability to assess the long-term results of the other surgeries at the time of the plaintiffs' surgeries (Brown's earliest surgery was performed approximately four months before Gothro's surgery), the results of the other surgeries-positive or negative-have little bearing on the classification of MCSS at the time the plaintiffs' underwent the procedure.

> FN6. From a review of the transcript, the basis of the district court's ruling is not entirely clear. *See* J.A. at 264-65. However, in their briefs, the parties agree that the district court excluded the testimony under Fed.R.Evid. 403. *See* Appellant's Br. at 40 ("The District Court found merit, in part, in Defendants' argument that such testimony would lead to confusion of the issues, and unduly burden the defense with mini-trials in the nature of additional medical malpractice cases not involving these Plaintiffs."); Brown's Br. at 31 (arguing that the trial court did not abuse its discretion in weighing the probative value of the evidence against Rule 403's exclusionary factors); *see also In re Air Crash Disaster*, 86 F.3d 498, 530 n. 21 (6th

Cir.1996) (noting that the court could affirm the district court's exclusion of evidence on the authority of Fed.R.Evid. 403 even though the district court based its ruling on another ground).

> FN7. *See also* Appellant's Br. at 5 ("This was 'experimental surgery' because Dr. Brown had just commenced performance of such procedures, and completed only eight such operations in one year (including Plaintiffs'), before he ceased doing so; and, further, there had been no more than a couple dozen such surgeries ... for neuropathic facial pain 'ever done in the world. None in the United States.' "); J.A. at 192-93 (plaintiff's expert opining that MCSS was "experimental" because "there had only been 21 procedures of motor cortex stimulation procedures for facial pain" in the world and. thus. "[t]his was a procedure that was untried in-in this particular instance or for this particular diagnosis in any great number, so that complications, ultimate outcome generally were unknown"); J.A. at 345-50 (another plaintiff's expert opining that MCSS was "experimental" because the literature identified "only 21 patients who are similar to [the plaintiffs'] and because 'we really don't know the long term effects' " of the procedure).

Conversely, the admission of the testimony would have created a substantial danger of unfair prejudice and of confusion of issues and would have engendered undue delay. The defendants would have been compelled to respond with evidence that the surgeries were successful, generating a series of "mini-trials" on the adequacy of Brown's treatment of his other patients. Presented with this evidence, the jury may well have fastened on ancillary issues or have considered the testimony of the other patients for improper purposes (*e.g.,* it may have punished Brown for his negligence in treating the other patients). And, unquestionably, the proceedings would have been prolonged significantly-just to allow for the introduction of evidence of dubious value. In short, the probative value of the testimony was substantially outweighed by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 384                                                                     Page 9
91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))
**(Cite as: 91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio)))**

factors favoring exclusion, and the evidence was properly excluded under Fed.R.Evid. 403.

**\*\*8** Additionally, assuming *arguendo* that the district court abused its discretion in excluding the testimony, the plaintiffs have not demonstrated prejudice. As discussed *supra,* the testimony added little, if anything, to the testimony of plaintiffs' experts that MCSS was "experimental" because the procedure had been performed only 21 times (each time outside of the United States) prior to Brown's foray into the area. *See City of Cleveland v. Cleveland Elec. Illuminating Co., 734 F.2d 1157, 1164 (6th Cir.1984)* (finding an absence of prejudice given "the merely cumulative impact" of the proffered evidence).

*3. The Admission of the Gothro Videotape.*

**[3]** The district court's admission of the Gothro videotape does not constitute grounds for a new trial, as the plaintiffs have not shown prejudice from the admission of the videotape. This court reviews "the district court's evidentiary decisions for abuse of discretion, and we will reverse only when we find that such abuse of discretion has caused more than harmless **\*394** error." *Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1330 (6th Cir.1994) (internal quotation omitted).

In *Erskine v. Consol. Rail Corp.,* 814 F.2d 266 (6th Cir.1987), this Court discussed the admission of "surprise" evidence:
> One of the primary objectives of the discovery provisions embodied by the Federal Rules of Civil Procedure is elimination of surprise in civil trials. *Davis v. Marathon Oil Co.,* 528 F.2d 395, 404 (6th Cir.1975), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85. 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976); *Nutt v. Black Hills Stage Lines, Inc.,* 452 F.2d 480, 483 (8th Cir.1971). "[T]rial by ambush is not contemplated by the Federal Rules of Civil Procedure." *Woods v. International Harvester Co.,* 697 F.2d 635, 639 (5th Cir.1983). Nevertheless, a new trial will not be granted on the ground that surprise evidence was admitted unless the moving party was prejudiced. *See, e.g., DeBenedetto v. Goodyear Tire & Rubber Co.,* 754 F.2d 512, 518 (4th Cir.1985); *Saltzman v. Fullerton Metals Co.,* 661

F.2d 647, 651-52 (7th Cir.1981); *Caisson Corp. v. Ingersoll-Rand Co.,* 622 F.2d 672, 682-85 (3d Cir.1980). In order to prevail on his motion for a new trial, plaintiff must show that he was prejudiced and that failure to grant a new trial is inconsistent with substantial justice. *Saltzman,* 661 F.2d at 650-52; 28 U.S.C. § 2111.
> *Id.* at 272.

The videotape, which runs approximately two minutes, shows Gothro being interviewed by Brown about the (then-positive) results of her surgery. [FN8] Gothro described her condition prior to the surgery, and she reported that, following the surgery. 85% of her pain was "gone" (90% when her pulse generator was on). She stated that, prior to the surgery, "[her] whole life revolved around the pain." but that she now "can forget about [her pain]." She revealed that, given her recovery, she was considering returning to work and to school. When asked whether she would have the surgery again, she responded that, although it was "a difficult decision" to have the surgery because it was "really rough" on her, she would.

> FN8. The parties were not able to say when the videotape was recorded. Brown testified that the videotape was recorded on March 6, 1998. or on November 12, 1998. Gothro testified that the videotape was recorded between six weeks and a couple of months after the procedure was completed.

**\*\*9** Plaintiffs' counsel did not receive the videotape from defense counsel until a point during trial, despite prior requests for it by plaintiffs' counsel. Defense counsel had mailed a copy of the videotape to plaintiffs' counsel the week before trial, but it did not arrive at his office in Michigan until after he had departed for trial in Ohio. [FN9] Defense counsel advised the district court that Brown had just located the videotape, explaining that "when Dr. Brown left [APMCO] things were left at [APMCO]. He didn't know where things were et cetera, et cetera, and it was a matter of trying to find it among a lot of different things." J.A. at 306.

> FN9. Apparently, however, plaintiffs' counsel received a transcript of the videotape the week

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 384                                                                                    Page 10
91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))
(Cite as: 91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio)))

before trial, prior to leaving for Ohio. J.A. at 303.

The district court overruled the plaintiffs' objection to the admission of the videotape, noting that the plaintiffs had made untimely disclosures as well. Specifically, the court stated

> I'll tell you what I'm going to do. I'm going to make this real simple. I'm **\*395** going to let this tape in. and these two witnesses, I mean Jankowski and whatever [former MCSS patients of Brown], or I'm going to keep them both out. It's up to you guys. Sauce for the goose, sauce for the gander. It's the same deal as far as I'm concerned. It's stuff that should have been produced long ago by the both of you.

J.A. at 307. [FN10]

> FN10. *See also* J.A. at 311 ("All of it should have been produced earlier. I really don't think anybody is being hurt by these problems in late production."); J.A. at 310 ("Well, the point I was making was basically I'm going to let you both use both these things because I think that they are both probative, and all I'm saying is that they should have both been produced sooner, but this having come up now, I'm not going to throw them both out.").

On appeal, the plaintiffs claim that they were prejudiced by the late production and admission of the videotape. Specifically, they contend that they

> had no opportunity to prepare Ms. Gothro to meet the contents of the tape, to explain the same, and to demonstrate to the jury that the tape was taken during the brief few months just after surgery when Ms. Gothro was experiencing some, temporary relief from her prior, facial pain.

Appellants' Br. at 45. [FN11]

> FN11. Plantiffs' counsel received the videotape (via hand-delivery from defense counsel) a day or two prior to Gothro's testimony. J.A. at 302.

Despite their protestations, the plaintiffs have not shown that they were prejudiced by the admission of the videotape, as required for a new trial. First, Gothro conceded that she experienced some temporary relief from her pain following the procedure. [FN12] To the extent that the videotape contradicted Gothro's testimony, it went primarily to the issue of damages-namely, the duration and the extent of the pain relief-which the jury never reached. Second, the plaintiffs have not explained why they required additional preparation time or how Gothro's testimony would have differed if they had received the videotape earlier. Gothro admitted that the videotape was an accurate recording of what she said at the time (J.A. at 424). and she testified that the videotape was made approximately 6 weeks after her surgery-during the period when she admitted experiencing relief from pain. J.A. at 428. Third, the district court admitted the videotape in part because the plaintiffs had also made untimely disclosures (namely, the identification of certain fact witnesses), a move well-within its discretion. [FN13]

> FN12. *See, e.g.,* J.A. at 378 ("It helped for a few months, but eventually everything started tapering off until I was receiving no help from it whatsoever."); J.A. at 334 ("Several months I had pain relief, but after that, it started going away and I was receiving no pain relief from it at all.").

> FN13. The plaintiffs also complain that the videotape was so inaudible that a transcript was necessary, a transcript prepared by the defense. Appellants' Br. at 44. However, the plaintiffs do not identify any errors in the transcription or explain how they were prejudiced by the transcription (apart from the late production of the videotape itself).

In short, the district court did not abuse its discretion by admitting the videotape.

*4. Defendants' Cross-Appeal.*

**\*\*10** Given the court's disposition of the plaintiffs' appeal, the defendants' cross-appeal is moot, and the court will not address the merits.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 384
91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))
**(Cite as: 91 Fed.Appx. 384,  2004 WL 68540 (6th Cir.(Ohio)))**

CONCLUSION

For the foregoing reasons, we AFFIRM the judgment
of the district court.

91 Fed.Appx. 384, 2004 WL 68540 (6th Cir.(Ohio))

**Briefs and Other Related Documents <ins>(Back to top)</ins>**

• <ins>02-3199</ins> (Docket)

(Feb. 20, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.