# EXHIBIT B

37 Fed.Appx. 730 Page 2
37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))
**(Cite as: 37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.)))**

**[3] Federal Civil Procedure** ⬅︎2240
170Ak2240 Most Cited Cases
Jury's failure to award noneconomic damages in § 1983 suit was inconsistent with its finding that police officers used excessive force and unlawfully detained plaintiff in violation of his constitutional rights, and thus district court's submission of additional jury interrogatories to clarify applicability of comparative fault to federal civil rights claims was not abuse of discretion, where court did not instruct jury that it had to award noneconomic damages, or redetermine jury's findings. 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 49(a), 28 U.S.C.A.

**[4] Civil Rights** ⬅︎1465(1)
78k1465(1) Most Cited Cases
(Formerly 78k275(1))
Award of punitive damages in amount of $1.2 million in § 1983 suit against police officers was not excessive, where jury awarded noneconomic damages of $200,000, and jury found that officers used excessive force and intentionally assaulted plaintiff. 42 U.S.C.A. § 1983.

**[5] Civil Rights** ⬅︎1488
78k1488 Most Cited Cases
(Formerly 78k303)
District court did not abuse its discretion in using hourly rate of $350 in calculating attorney fee award for prevailing plaintiff in § 1983 suit, in light of evidence that rate was reasonable in national, regional, and local markets. 42 U.S.C.A. §§ 1983, 1988.

**[6] Federal Civil Procedure** ⬅︎1685
170Ak1685 Most Cited Cases

**[6] Federal Civil Procedure** ⬅︎2791
170Ak2791 Most Cited Cases
Refusal to award attorney fees to defendants in personal injury action based on plaintiff's failure to admit that he had preexisting fracture in his neck was not abuse of discretion, where plaintiff relied on statements made by his treating physician and his retained expert in preparing complaint and responding to request for admissions, expert did not change his opinion on subject until after trial began, and defendants were not required to incur unnecessary expense in discounting claim of broken neck. 28 U.S.C.A. § 1927; Fed.Rules Civ.Proc.Rules 26(g)(3), 37(c), 28 U.S.C.A.

**[7] Federal Civil Procedure** ⬅︎2727
170Ak2727 Most Cited Cases
District court's refusal to award costs to defendant that prevailed in personal injury action was not abuse of discretion, even though court did not explicitly determine that case was "difficult," where court found that case was close, trial lasted 23 days, and jury was presented with testimony of 31 witnesses and nine expert witnesses and had to determine parties' respective liability and to understand complex medical testimony on fractures and subluxation to determine legal issue of causation. Fed.Rules Civ.Proc.Rule 54(d)(1), 28 U.S.C.A.

*732 On Appeal from the United States District Court for the Eastern District of Michigan.

Before GUY and BATCHELDER, Circuit Judges; WALTER, District Judge. [FN*]

> FN* The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

PER CURIAM.

**1 Defendants, Jesse Harris and William Grace, appeal from a judgment in favor of plaintiff, Michael McHugh, claiming reversible error in the denial of their motion for judgment notwithstanding the verdict or for a new trial. They also argue the district court erred in denying their motion for remittitur and in granting in total plaintiff's motion for attorney fees and expenses. Defendants, Olympia Entertainment, Incorporated; Theater Operators, Limited; Richard Ward; James Duffin; Al Glazewski; and Robert Barrett (the Olympia defendants), appeal the denial of their motions for sanctions, attorney fees, and costs. Defendant, Gregory Palmer, appealed the denial of his motion for costs. [FN1] After review, we affirm.

> FN1. Defendant Palmer's appeal was dismissed on December 12, 2001, upon his motion to dismiss pursuant to Fed. R.App. P. 42(b).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Fed.Appx. 730 Page 3
37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))
**(Cite as: 37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.)))**

### I.

Plaintiff attended a Black Crowes concert at the Fox Theatre in Detroit, Michigan, on October 18, 1996. Olympia Entertainment, Inc., owns and operates the Fox. Theater Operators, Inc., provides security guards or crowd managers for concerts at the Fox under contract with Olympia Entertainment. Robert Barrett, Al Glazewski, Richard Ward, and James Duffin were employed by Theater Operators as security guards at the Black Crowes concert. Jesse Harris and William Grace were Detroit police officers. Gregory Palmer was a reservist with the Detroit police department.

Plaintiff attended the concert with Nicole Weidenfeller. During the concert, security guards ordered plaintiff to take his seat when he began dancing in the aisle. When he failed to do so, the security guards removed him from the theater. Plaintiff testified that the guards grabbed his head and arms and forcibly dragged him up the aisle while repeatedly pushing his face into the floor.

Plaintiff has no memory of the following events. Weidenfeller, however, was present and testified that plaintiff was seized by a reservist and police officer when he was ejected from the theater. The officer *733 grabbed him by the head and neck and began beating him. Plaintiff was thrown onto a police car, grabbed by his hair, and thrown to the ground striking his head on the cement.

After the assault, plaintiff and Weidenfeller waited in a parking lot until the end of the concert. Friends took plaintiff to the hospital when they observed bruises on his face. Plaintiff also had lacerations on his face and a broken nose. He was placed in cervical traction and later had fusion surgery. Plaintiff claimed the surgery was required because the assault caused an acute subluxation in his neck. The subluxation put him in danger of further dislocation of his vertebrae with resulting paralysis or death. The defendants argued that the traction and surgery were required because of an os odontoideum (a preexisting or old fracture in his neck).

Plaintiff brought this action against the City of Detroit; police officers William Grace and Jesse Harris; police reservists Ronald Cooper, Jeff Shasheen, and Gregory Palmer; and the Olympia defendants alleging violations of 42 U.S.C. § 1983 and state law claims of assault and battery, gross negligence and negligence, and failure to supervise and train. [FN1] During the 23-day jury trial, 31 witnesses and nine expert witnesses were called.

> FN1. The case was originally filed in Wayne County Circuit Court and removed by defendants to federal court.

**2 The jury returned a verdict against plaintiff in favor of the Olympia defendants and the police reservists. The jury returned a verdict in favor of plaintiff against the police officers, Grace and Harris. The jury found that Grace and Harris (1) committed an assault and battery upon plaintiff; (2) were grossly negligent or recklessly indifferent to any injury to plaintiff in their detention and physical restraint of him; (3) violated plaintiff's constitutional right to be free from excessive use of force; (4) violated his constitutional right to be free from unreasonable detention; and (5) failed to protect or intercede to protect plaintiff from excessive force by the crowd managers, police reservists, or other police officers. The jury awarded zero dollars in actual damages and $1,200,000 in punitive damages. The jury found that plaintiff was 60% comparatively negligent, and that Grace and Harris were each 20% comparatively negligent. The jury was then instructed over objection from defendants Grace and Harris that comparative negligence does not apply to civil rights claims. The jury then found $200,000 in noneconomic damages for the civil rights claims. On March 16, 2000, the district court entered judgment against Grace and Harris in the amount of $1,400,000 plus pre and post-judgment interest.

The district court denied a motion for judgment notwithstanding the verdict or new trial and a motion for remittitur filed by Grace and Harris. The district court granted plaintiff's motion for attorney fees and costs, but denied the motions for attorney fees and costs filed by the Olympia defendants and Palmer. This appeal followed.

### II.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Fed.Appx. 730 Page 4
37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))
**(Cite as: 37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.)))**

### A. Motion for Judgment Notwithstanding the Verdict or for New Trial

We review *de novo* the denial of a motion for judgment notwithstanding the verdict. We do not weigh the evidence, evaluate the credibility of the witnesses, or substitute our judgment for that of the *734 jury. Instead, we must view the evidence in a light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. We will reverse the denial of the motion only if reasonable minds could not come to a conclusion other than one in favor of the movant. *Wehr v. Ryan's Family Steak Houses, Inc.,* 49 F.3d 1150, 1152 (6th Cir.1995).

A new trial is warranted under Fed.R.Civ.P. 59(a) when a jury has reached a seriously erroneous result as evidenced by (1) the verdict being against the weight of the evidence, (2) the damages being excessive, or (3) the trial being unfair to the moving party. *See Holmes v. City of Massillon,* 78 F.3d 1041, 1045-46 (6th Cir.1996). We review the grant or denial of a motion for new trial under an abuse of discretion standard. *Slayton v. Ohio Dep't of Youth Servs.,* 206 F.3d 669, 675 (6th Cir.2000).

Defendants Grace and Harris argue that they were prejudiced by the exclusion of the treating physician's testimony, the admission of plaintiff's expert witness's testimony, and the reinstruction of the jury after it returned its initial verdict.

### 1. Exclusion of Testimony of Treating Physician

**\*\*3** Grace and Harris argue that the district court erred when it ruled that defendants could not question plaintiff's treating physician, Dr. Daniel Elskens, on whether the fracture in plaintiff's neck preexisted the 1996 incident, and whether Dr. Elskens would have performed surgery upon plaintiff regardless of any acute injury sustained on October 18, 1996. A review of the record shows that defendants ultimately were given the opportunity to ask Dr. Elskens these questions.

Dr. Elskens was listed as an expert witness by the defendant police officers, but a written report under Fed.R.Civ.P. 26(a)(2) was never submitted. Plaintiff filed a motion *in limine* to exclude the testimony of certain experts, including Dr. Elskens. The district judge initially denied the motion. In a subsequent motion *in limine,* plaintiff again asked the court to exclude or limit Dr. Elskens's testimony. The district court held that the motion was moot because the parties had resolved the issues raised in the motion *in limine* at a pretrial conference. The record does not indicate how the issue was resolved.

At trial, the Olympia defendants called Dr. Elskens. The Olympia defendants had listed Dr. Elskens as a witness but not an expert witness. When asked whether plaintiff had a fractured neck, Dr. Elskens testified that plaintiff had os odontoideum, which he described as a healed or old fracture. When asked to explain the plaintiff's condition, Dr. Elskens testified that the first cervical vertebra (C1) was separated from the second cervical vertebra (C2). Upon plaintiff's objection, the district court refused to allow defendants to ask Dr. Elskens when the separation occurred. The district court also refused to allow Dr. Elskens to testify whether he would have done the surgery even without the 1996 injury because Dr. Elskens could not offer expert opinion testimony when an expert report was not provided under Rule 26.

The Olympia defendants later made an offer of proof that Dr. Elskens would have testified that the 1996 injury brought to light the need for the surgery on the os odontoideum. After a recess, the district judge said that his notes showed that he ruled at the second pretrial conference that the treating physician's notes were comparable to a formal Rule 26 report. The district judge then informed defense counsel that he could recall Dr. Elskens *735 and "ask the questions that call for his opinion."

When Dr. Elskens was recalled, however, he was only asked why he operated on the plaintiff. Dr. Elskens testified: "I operated on him to stabilize the spine for the os odontoideum." He was asked no further questions by any party.

[1] The record shows, therefore, that the district court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Fed.Appx. 730  Page 5
37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))
**(Cite as: 37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.)))**

modified the original ruling, which defendants challenge in this appeal, to allow the expert opinion testimony of Dr. Elskens. Defendants, however, elected not to ask Dr. Elskens whether he would have performed the surgery upon plaintiff regardless of any injury sustained in 1996.

**2. Admission of Plaintiff's Expert Testimony**

**\*\*4** Defendants Grace and Harris argue the district court erred when it allowed Dr. Albert I. King to testify beyond his Rule 26 report as to the mechanical forces necessary to cause subluxation in an individual with a preexisting fracture. Defendants argue that Dr. King's report was focused on the forces necessary to cause an odontoid fracture, and that the district court should have excluded his testimony because plaintiff did not supplement his report to cover subluxation.

Rule 26 requires a party to supplement an expert report "by the time the party's disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(1). Nothing in Rule 26, however, precludes an expert from revising or further clarifying opinions, particularly in response to points raised in the presentation of a case. See Johnson v. H.K. Webster, Inc., 775 F.2d 1, 7 (1st Cir.1985). See also Phil Crowley Steel Corp. v. Macomber, Inc., 601 F.2d 342, 344 (8th Cir.1979) (noting trial judge has wide discretion to allow expert testimony even though it was revised shortly before trial). Rule 26 must be read in light of its dual purposes of narrowing the issues and eliminating surprise. We need to balance fairness to the opposing party with the realities of adversarial litigation. Johnson, 775 F.2d at 7. We review evidentiary decisions under Rule 26 for abuse of discretion. See King v. Ford Motor Co., 209 F.3d 886, 900 (6th Cir.2000); and United States v. Talley, 194 F.3d 758, 765 (6th Cir.1999).

Dr. King's report stated in pertinent part: "Three sets of x-rays taken over the next day or so revealed a fracture of the odontoid process near its base with anterior displacement of the odontoid along with the arch of C1." In his report, Dr. King opined that: "Mr. Michael McHugh sustained an odontoid fracture with anterior displacement of C1 over C2." He further opined that: "There is no biomechanical basis to assert that he had a chronic os odontoideum prior to the assault because he would have been killed or paralyzed if his odontoid process was not intact before the assault."

At trial, Dr. King changed his opinion and stated that there was a preexisting fracture or os odontoideum at the time of the assault. [FN2] The district court ruled that Dr. King could testify as to the forces necessary to cause subluxation:

> FN2. No one claims that Dr. King changed his opinion before trial. Nor does anyone claim that plaintiff deliberately concealed or evaded disclosing his changed opinion on the existence of the os odontoideum.

The motion is denied. And the motion is denied for several reasons, but the key reason is what Mr. Hecht just said; that anterior displacement, as I recall the testimony of the neuroradiologist, can be described as an anterior displacement or a fracture. Obviously, when **\*736** somebody talks about a broken neck, a layperson, they may not be very careful. And his definition of subluxation is not any different than anterior displacement.

[2] Plaintiff clearly identified Dr. King as a biomechanical expert who would testify as to the mechanical forces necessary to cause injury to a neck. His report indicated that he was opining as to a fracture and an anterior displacement. Expert testimony showed that an anterior displacement was the same thing as subluxation. [FN3] The change in his position on the preexisting fracture did not constitute unfair surprise as to the nature of Dr. King's testimony. His testimony was not a departure from the general scheme of his report. See Johnson, 775 F.2d at 8.

> FN3. Subluxation is defined as "an incomplete or partial dislocation." Dorland's Illustrated Medical Dictionary 1488 (25th ed. 1974). Dislocation is defined as "the displacement of any part, more especially of a bone .... Called also *luxation*." *Id.*, at 465. Anterior is defined as "situated ... toward the head end of the body." *Id.*, at 103.

37 Fed.Appx. 730                                                                                                           Page 6
37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))
**(Cite as: 37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.)))**

**\*\*5** Moreover, defendants have not identified how they were prejudiced by Dr. King's testimony beyond baldly asserting that they were prejudiced. Obviously, any error that might arise was harmless when the same facts were presented to the jury through other witnesses. Plaintiff's other witness, Dr. William Sanders, also testified the subluxation occurred in 1996. Furthermore, defendants were able to rebut Dr. King's testimony through their own experts who testified as to the preexisting nature of the fracture and the subluxation. Finally, defendants were able to impeach Dr. King's testimony by questioning him about his changed opinion. Under these circumstances, we cannot find that the district court abused its discretion in allowing Dr. King's testimony or in denying the motion for new trial.

**3. Reinstruction of the Jury**

The district judge did not immediately excuse the jury after the original verdict was read. Instead, he sent the jury back to the jury room and asked counsel whether the comparative negligence rule applied to punitive damages. Counsel for the police officers responded that the rule did apply. The record does not reflect how the district judge answered this question. Comparative negligence, however, does not apply to damages for federal constitutional rights violations. *See Quezada v. County of Bernalillo,* 944 F.2d 710, 721 (10th Cir.1991); *Clappier v. Flynn,* 605 F.2d 519, 530 (10th Cir.1979). [FN4]

> FN4. We also reject defendants' argument that Michigan's comparative fault statute applies to plaintiff's civil rights claims under 42 U.S.C. § 1988(a). Section 1988 authorizes a federal court to use state law to facilitate but not to hinder proceedings in the vindication of civil rights. *Lefton v. City of Hattiesburg,* 333 F.2d 280, 284 (5th Cir.1964). A state law should be disregarded if it is inconsistent with the policy underlying § 1983: deterrence and compensation. *See Board of Regents v. Tomanio,* 446 U.S. 478, 489, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). The protection afforded under § 1983 was not intended to differ from state to state, and federal, not state, common law governs the determination of damages in a § 1983 action. *Busche v. Burkee,* 649 F.2d 509, 518 (7th Cir.1981). To apply comparative fault statutes in civil rights actions would result in the protection afforded under § 1983 to differ from state to state and would be inconsistent with the underlying policy of deterrence and compensation.

Counsel for the police officers then raised the issue of whether punitive damages can be awarded without actual damages. The district judge said that issue could be addressed without involvement of the jury. In fact, punitive damages may be recovered in civil rights cases even in the absence of actual loss to the plaintiff. **\*737** *See Beauford v. Sisters of Mercy-Province, Inc.,* 816 F.2d 1104 (6th Cir.1987) (§ 1981); *Davis v. Locke,* 936 F.2d 1208 (11th Cir.1991) (§ 1983).

Plaintiff then argued that a previous instruction on comparative fault in tort actions under Michigan law may have improperly caused the jury not to award noneconomic damages for the civil rights claims because they found that plaintiff was 60% comparatively negligent. [FN5] The first sentence of the instruction given to the jury at the close of arguments on comparative negligence referenced to "Plaintiff's claim of negligence only." After describing the law on comparative negligence and the burden of proof, the court then instructed the jury that: "The Plaintiff, however, is not entitled to noneconomic damages if he is more than 50% at fault for his injuries." On the written instructions that were provided to the jury, this sentence appears by itself on a separate page (page 42) from the rest of the instruction on comparative negligence.

> FN5. Michigan Compiled Laws Annotated § 600.2959 (West 2000) provides: "In an action based on tort or another legal theory seeking damages for personal injury ... the court shall reduce damages by the percentage or comparative fault of the person upon whose injury ... the damages are based .... If that person's percentage of fault is greater than the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Fed.Appx. 730                                                                                                                    Page 7
37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))
**(Cite as: 37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.)))**

> aggregate fault of the other person ... noneconomic damages shall not be awarded."

During deliberations, the jury sent a note to the district judge that said: "At page 42, what does this sentence mean?" The district judge identified the sentence on page 42 as the one stating that plaintiff is not entitled to noneconomic damages if he is more than 50% at fault.

After discussion with counsel, the district court instructed the jury as follows:

> **6 The Court and counsel agree that this question is asking for a definition of noneconomic damages. And if you will refer to page seven of the verdict form, number 5(A), which is also repeated--that's in terms of present injuries, injuries up to the present, which obviously includes the past--and page 11, which is 6(B), which talks about future injuries, noneconomic damages may be defined as pain and suffering, embarrassment, humiliation, outrage, mental anguish, fright and shock--and you don't have to write these because I'm reading from 5(A)--denial of social pleasure, disfigurement, disability and aggravation of conditions.

After receiving the jury's verdict and discussing the parties' concerns, the district court reinstructed the jury, over the defendant police officers' objection, as follows: "Comparative negligence's 50 percent rule does not apply to civil rights claims. The question then for you is should any noneconomic damages be awarded to Michael McHugh for the civil rights claims? If so, how much?" [FN6] After approximately one hour of deliberation, the jury returned and answered that there were noneconomic damages for the civil rights claims in the amount of $200,000.

> FN6. No one challenges the other question submitted to the jury after the original verdict was rendered--whether plaintiff's comparative negligence was attributable to his intoxication.

Defendants Grace and Harris argue that there was no apparent confusion or mistake on the part of the jury with their original verdict and that, therefore, the district court did not have authority to resubmit the issue to the jury. Defendants also argue that the jury may have been coerced to award noneconomic damages by the district court's reinstruction.

This case used a general verdict with interrogatories. Rule 49(b) governs general *738 verdicts accompanied by interrogatories and specifically allows resubmission:

> When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.

Fed. R. Civ. P. 49(b).

We should be deferential to the determination of inconsistency made by a district judge "who has observed the jury during the trial, prepared the questions and explained them to the jury" because he "is in the best position to determine whether the answers reflect confusion or uncertainty." _Richard v. Firestone Tire & Rubber Co., 853 F.2d 1258, 1260 (5th Cir.1988)_. See also _Veranda Beach Club v. Western Sur. Co., 936 F.2d 1364, 1381 (1st Cir.1991)_ (trial court must be given substantial latitude in determining whether the jury response to the verdict form is clear and free from ambiguity.)

In the present case, the district judge did not just resubmit the original questions and verdict form. He reinstructed the jury and submitted clarifying questions. In _McLaughlin v. The Fellows Gear Shaper Company, 786 F.2d 592 (3d Cir.1986)_, the district court gave the jury further instructions and submitted to the jury two supplemental interrogatories in order to clarify an inconsistency in the answers to the original interrogatories. The Third Circuit held:

> **7 Although the _Stanton_ case involves resubmission to the jury of the same questions and the case under review presently involves resubmission of supplemental interrogatories, the underlying purpose of both options is identical: namely, to obtain clarification from a still-empaneled jury of the meaning of its answers and verdict. Interestingly, we did identify and endorse in _Stanton_ the option of submitting supplemental interrogatories to harmonize inconsistent jury responses.

_Id._ at 597. See also _Riley v. K Mart Corp., 864 F.2d_

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Fed.Appx. 730                                                                                                         Page 8
37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))
**(Cite as: 37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.)))**

1049 (3d Cir.1988) (while the district court's original jury instructions were comprehensive and correct, the district court had sufficient cause to believe that the jury was somewhat confused).

In this case, the verdict form had sets of questions on different pages. The sets were numbered one through ten. Numbers one through four asked the jury to find whether each defendant had committed the separate acts alleged by the plaintiff. In number four, the jury stated that the police officers had committed assault and battery; were grossly negligent or recklessly indifferent in their detention and physical restraint of plaintiff; had violated plaintiff's constitutional right to be free from excessive use of force and from unreasonable detention; and had failed to protect or intercede to protect plaintiff from excessive force by the crowd managers, police reservists, or other police officers. Numbers five and six asked the jury to state the amount of present and future actual damages (economic and noneconomic) suffered by plaintiff. It did not ask the jury to distinguish the damages suffered from the separate acts committed by the police officers, *i.e.*, the damages for the constitutional violations were not distinguished from the damages for the negligence. Numbers seven through nine asked about plaintiff's comparative negligence. Number ten asked the jury whether punitive damages should be awarded against any of the parties. Again, no distinction was made between the negligence and the constitutional rights violations.

*739 [3] The jury found that defendants Grace and Harris used excessive force and unlawfully detained plaintiff in violation of his constitutional rights but did not award any noneconomic damages. Under these circumstances, we cannot find that the district court abused its discretion under Rule 49(b) in finding that the answers reflected confusion and were inconsistent. The district court could have reasonably been concerned that there was confusion on the part of the jury given the layout of the instruction on the 50% rule and comparative fault, the jury's question on this instruction, the form of the questions on the verdict form, and the finding of constitutional violations. Defendants offered nothing more than mere speculation that the reinstruction was coercive. The court's reinstruction simply clarified that the comparative fault rule did not apply to civil rights claims. The district judge did not instruct the jury that it had to award noneconomic damages. The instruction simply asked for the amount *if* the jury found that there were noneconomic damages for the civil rights claims. Because the district court did not redetermine the findings made by the jury, we find no error in using a reinstruction and supplemental questions to obtain clarification of a jury's original answers and verdict.

**B. Remittitur**

**\*\*8** We review the district court's denial of a motion for remittitur *de novo*. See Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001); EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 514 (6th Cir.2001).

Defendants argue that the punitive damages were excessive. Grossly excessive damages are prohibited by the due process clause of the Fourteenth and Fifteenth Amendments. See BMW of North Am., Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Determination of whether an award is grossly excessive requires analysis of three factors: (1) reprehensibility of the wrongful conduct, (2) disparity between the harm or potential harm and the amount of the award, and (3) comparison of the punitive award with other penalties imposed in similar cases. Id. at 575.

In determining the reprehensibility of a defendant's wrongful conduct, an important factor is whether violence has occurred. See Id. at 576. The jury found that the police officers used excessive force and intentionally assaulted plaintiff. The plaintiff presented evidence that plaintiff was grabbed by the head and neck and beaten by police officers. Plaintiff was also thrown onto a police car, grabbed by his hair, and thrown to the ground striking his head on the cement. The assault continued while plaintiff's friend, Nicole Weidenfeller, pleaded with the officers to stop. This conduct was clearly violent and exhibited reprehensibility.

Defendants rely heavily on the ratio of punitive

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Fed.Appx. 730                                                                                                                    Page 9
37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))
**(Cite as: 37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.)))**

damages to actual damages in arguing that the punitive damages were excessive. The ratio of punitive damages to actual damages was six to one. The Supreme Court has consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award. BMW, 517 U.S. at 582-83. The jury could have believed that potential damages were much larger than $200,000, given the evidence of the assault upon plaintiff. The ratio, therefore, could be even lower than the already reasonable ratio of six to one.

[4] When considering the final BMW factor, the court may look to the amount of punitive damages award necessary to deter similar misconduct in the future. *740 BMW, 517 U.S. at 584-85. Given the evidence of the intentional assault upon plaintiff, the punitive damages were not an inappropriately large deterrent amount.

### C. Award of Attorney Fees and Costs to Plaintiff

Defendants Grace and Harris argue that the attorney fees awarded to plaintiff were unreasonable in both the number of hours and the hourly rates. We review an award of attorney fees, including the fee rate, for abuse of discretion. Hadix v. Johnson, 65 F.3d 532, 534 (6th Cir.1995).

Defendants argue that plaintiff's Chicago attorney rates were unreasonably high in comparison to the Detroit market rates. Plaintiff offered two affidavits stating that the rates were reasonable in national and Chicago markets. Plaintiff also relied on affidavits submitted by the Olympia defendants in support of their motion for attorney fees, which stated that $350 is an appropriate hourly rate in the Detroit market. This is the same top rate billed by plaintiff's Chicago attorneys. In opposing plaintiff's motion for attorney fees, defendants Harris and Grace did not offer any evidence on reasonable rates in any market.

**9 [5] Generally district courts are free to look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases. See Louisville Black Police Officers Org. v. City of Louisville, 700 F.2d 268, 278 (6th Cir.1983). A court's choice not to apply local market rates for attorney fees is not an abuse of discretion. See Wayne v. Village of Sebring, 36 F.3d 517, 533 (6th Cir.1994). All the evidence in the record shows that the rates charged by plaintiff's Chicago attorneys were reasonable in national, regional, and local markets. The district court did not abuse its discretion in refusing to reduce the amount of attorney fees based on the hourly rates charged. [FN7]

> FN7. Defendants also argue that plaintiff could have found a less expensive attorney in Detroit and did not have to retain a Chicago attorney. A party is free to choose whatever attorney it desires. The question is the reasonableness of the rate. Defendants also argue that the rates charged for travel time should have been reduced. Defendants offered no proof on reasonable rates for travel time in any market.

Defendants argue that since plaintiff did not prevail against all the parties, the amount of fees should have been reduced. Defendants also claim that plaintiff did not keep accurate records to account for fees incurred against the other defendants. A party seeking an award of attorney fees must establish entitlement to an award and document the appropriate hours expended. Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). When claims are based on related legal theories, they should not be treated as distinct claims for the purpose of calculating attorney fees. The cost of litigating related claims, therefore, should not be reduced. Thurman v. Yellow Freight Svs., Inc., 90 F.3d 1160, 1169 (6th Cir.1996). Nor should the fees be reduced when the suit is successful against some of the defendants but not others if the theories of recovery are related. See Wayne, 36 F.3d at 532.

Plaintiff in this case provided the district court with itemized, contemporaneous time records. Plaintiff reduced the fees for work relating to the Olympia defendants. The theories and proofs against the police officers and the reservists were similar if not the same. Some of the theories and proofs against all of the defendants, including the Olympia defendants,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Fed.Appx. 730                                                                                            Page 10
37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))
**(Cite as: 37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.)))**

overlapped. Based on the documentation provided by plaintiff, we cannot find that the district *741 court abused its discretion in awarding the attorney fees requested by plaintiff. Given the "district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters," an award of attorney fees under § 1988 is entitled to substantial deference. Hadix, 65 F.3d at 534.

### D. Denial of Attorney Fees to Olympia Defendants

At the conclusion of trial, the Olympia defendants moved for an award of attorney fees and costs under 28 U.S.C. § 1927, Fed.R.Civ.P. 37(c), and Fed.R.Civ.P. 26(g)(3). The Olympia defendants argue that plaintiff persistently pursued the groundless claim that he did not have a preexisting fracture in his neck (the os odontoideum).

We review the denial of attorney fees under 28 U.S.C. § 1927, Fed.R.Civ.P. 37(c), and Fed.R.Civ.P. 26(g)(3) for abuse of discretion. *See* Holmes v. City of Massillon, 78 F.3d 1041, 1049 (6th Cir.1996) (§ 1927); Bradshaw v. Thompson, 454 F.2d 75, 81 (6th Cir.1972) (Rule 37(c)); and Martin v. Labelle, No. 00-1157, 2001 WL 345791, 7 Fed.Appx. 492 (6th Cir. March 27, 2001), *cert. denied*, 534 U.S. 827, 122 S.Ct. 67, 151 L.Ed.2d 34 (2001) (unpublished disposition) (Rule 26(g)(3)).

**10 An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An award is warranted if an attorney engaged in conduct from an objective standpoint that "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." Holmes, 78 F.3d at 1049 (internal quotation marks omitted). While a showing of bad faith is not required, the attorney's conduct must amount to more than inadvertence or negligence. *Id.*

Rule 37(c) allows a party to request reasonable expenses, including attorney fees, incurred in proving the truth of a matter the other party refused to admit in response to a request for admissions. The court "shall make the order [for reasonable expenses] unless it finds that (A) the request was held objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit." Fed. R. Civ. P. 37(c)(2).

Rule 26 requires discovery-related filings to be signed by the attorney of record. The signature certifies that the filing conforms to the discovery rules, is made for a proper purpose, and does not impose undue burdens on the opposing party in light of the circumstances of the case. Fed. R. Civ. P. 26(g)(2). Sanctions under Rule 26(g)(3) are not discretionary if the district court finds that a discovery filing was signed in violation of the rule.

Plaintiff's complaint stated that his neck was broken as a result of the defendants' actions. In response to Requests for Admissions, plaintiff stated as follows:
  *REQUEST NO. 4:* That when Plaintiff alleged he sustained a broken neck, Plaintiff was referring to the fracture at the odontoid process.
  *RESPONSE:* Denied. Plaintiff was referring generically to injuries he sustained in the neck area. Mr. McHugh was not advised of the specific nature of his injuries other than reference by Dr. Elskins and others to a "broken neck." *742 Indeed, Dr. Elskins and others advised Mr. McHugh that his neck was broken.
  *REQUEST NO. 5:* That the incident at the Fox Theatre on or about October 18, 1996 did not cause the odontoid fracture.
  *RESPONSE:* Denied. Plaintiff's expert has concluded that the fracture at the odontoid process as well as other injuries sustained by Mr. McHugh were consistent with his beating by security guards and police.

The expert referred to by plaintiff in his response to Request No. 5 was Dr. Albert King. Dr. King opined in his expert report and during his deposition that the fracture was not preexisting to plaintiff's 1996 injuries.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Fed.Appx. 730                                                                                                    Page 11
37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))
**(Cite as: 37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.)))**

At trial, however, Dr. King changed his opinion. Plaintiff's other expert, William Sanders, also testified at trial that there was a preexisting fracture:

> **11 Well, he had another condition in his neck, which is what's kind of confusing in this case, I think, to some of the people involved. He has a condition in which part of the bone of C2 is not fused to the rest of the bone of C2. It's called os odontoideum.

The Olympia defendants argue that plaintiff should have been aware that the fracture was preexisting when it obtained a copy of a dental x-ray in April 1999. Defendants assert that Plaintiff's expert, Dr. Sanders, admitted the dental x-ray taken in 1988 showed a preexisting fracture. In fact, Dr. Sanders testified:

> Q. Looking at those--I thought I heard you say today that there is a suggestion of the OO condition in those?
> A. I did not say that.
> Q. Is there any hint at all in those 1988 x-rays of the OO condition?
> A. It's very difficult to say. The x-ray was not performed to look at the neck. So, the quality wasn't that great. And on just a single lateral view, that can actually be a very difficult diagnosis to make.
> Q. I appreciate that answer, Doctor. And that's why I didn't ask that question. That's why I--what I did say is, is there any hint of the OO condition in 1988?
> A. There might be a hint, yes.

In denying the Olympia defendants' motion for attorney fees and costs under § 1927, Rule 37(c), and Rule 26(g)(3), the district court held:

> I find that there is no bad faith on the part of the Plaintiffs.
> ... I am denying the request for attorney fees and costs both under statute 28 USC Section 1927 and under the court rules cited by Mr. Seward, Federal Rules of Civil Procedure 26(b) and Federal Rules of Civil Procedure 37(c)(2).
> ....
> I think that at least before the trial started, the OO, the question of the OO condition was a subject of dispute by the experts. And again, I find there was no basis for awarding costs and attorney fees.

[6] On this record, we cannot find that the district court abused its discretion in finding that, at least until the trial, the fracture was a condition subject to dispute by the experts. [FN8] In preparing the complaint and responding to the Request for Admissions, plaintiff relied on the statements *743 made by his treating physician and his retained expert. Dr. Sanders's testimony showed that it was not reasonable to expect plaintiff to detect the fracture from the 1988 dental x-ray.

> FN8. Defendants argue that the district court applied the wrong standard under § 1927. While the district court noted no bad faith, it applied an objective standard as required under § 1927 when it concluded that the fracture was the subject of dispute between the experts.

Defendants do not allege that Dr. King changed his opinion prior to trial, or that plaintiff should have conceded the existence of the fracture before trial because of Dr. King's or Dr. Sanders's opinions. Other than the dental x-rays, defendants rely on contradictory statements made in closing arguments to support their claim for attorney fees and costs. The statements in closing argument are not relevant to the question of whether plaintiff needlessly multiplied the proceedings by forcing defendants to prove the os odontoideum. The relevant and determining fact is that plaintiff had reasonable grounds to dispute the existence of the fracture until his expert changed his opinion *at trial.*

**12 Moreover, defendants were not required to incur unnecessary expense in discounting the claim of a broken neck. Defendants had to present evidence not only that the fracture but also the subluxation preexisted the 1996 injuries suffered by plaintiff. The plaintiff never conceded that, in layman's terms, his neck was not broken in 1996 or that the subluxation did not occur in 1996.

**E. Denial of Costs under Fed.R.Civ.P. 54(d)(1)**

The Olympia defendants also challenge the district court's refusal to grant them costs under Fed.R.Civ.P. 54(d)(1). We review for abuse of discretion. *White & White, Inc. v. Am. Hosp. Supply Corp.,* 786 F.2d 728,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Fed.Appx. 730                                                                                                Page 12
37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))
**(Cite as: 37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.)))**

730 (6th Cir.1986).

Costs are generally awarded to a prevailing party as a matter of course. The district court, however, may in its discretion deny a request for costs. *Jones v. Cont'l Corp.,* 789 F.2d 1225, 1233 (6th Cir.1986). The district court's discretion is more limited than it would be if the rule were nondirective. The unsuccessful party must show circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party. *Goostree v. Tennessee,* 796 F.2d 854, 863-64 (6th Cir.1986). On appeal, the party seeking reversal of a denial of costs must show that the district court committed error in applying the criteria for the denial of costs. *White & White, Inc.,* 786 F.2d at 732.

A district court's denial of costs is a proper exercise of discretion when the case is "close and difficult." *Id.* at 730 (quoting *United States Plywood Corp. v. Gen. Plywood Corp.,* 370 F.2d 500, 508 (6th Cir.1966)). The closeness of a case is determined by the refinement of perception required to recognize, sift through, and organize relevant evidence and by the difficulty of discerning the law of the case. *White & White,* 786 F.2d at 732-33. A case can be characterized as difficult based on the length of the trial, the number of witnesses, and the amount of evidence submitted to the jury. *Id.* at 732.

In denying costs to the Olympia defendants, the district court held:
> And the fourth factor is the one that I do think applies, and that is where the case is a close and difficult one. And I think we are not talking about the legal theories, and I fear I would agree with Mr. Hecht when he says that-- and agree with Mr. Seward when they both say that this factually and conceptually was not an overwhelmingly difficult case, such as Mr. Seward referred to the Microsoft case.
> Although there was some complexity injected and came into play in terms of the alternative theory of liability which required some extra work and extra instructions *744 to clarify to the Jury, but I think Mr. Hecht has the better of the arguments in terms of the closeness of the case when we're talking about a difference between the slam dunk, and I guess the extreme slam dunk would be a motion for summary judgment having been granted, and the other extreme, the perhaps ultimate close case would be a hung jury where the facts were that close that reasonable minds could and would and did differ.
> **13 On that continuum, this case is a close case, and I'm exercising my discretion in denying Rule 54 costs.

[7] The Olympia defendants argue they are entitled to costs because the district court did not find that the case was difficult. While the district court concluded that the case was not as difficult as the Microsoft case, it did find that there were complex issues presented on the alternative theory of liability requiring extra instructions to the jury. We also find that the case was difficult on the question of causation. The trial in this matter lasted 23 days, and the jury was presented with the testimony of 31 witnesses and nine expert witnesses. The jury was required to recognize, sift through, and organize all of this evidence to determine the parties' respective liability and to understand complex medical testimony on fractures and subluxation to determine the legal issue of causation. The district court did not abuse its discretion in finding that the case was close and difficult and denying the Olympia defendants' request for costs.

**AFFIRMED.**

37 Fed.Appx. 730, 2002 WL 1065948 (6th Cir.(Mich.))

**Briefs and Other Related Documents (Back to top)**

• 00-2234 (Docket)
    (Oct. 23, 2000)

• 00-2195 (Docket)
    (Oct. 17, 2000)

• 00-1956 (Docket)
    (Aug. 23, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.