IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| J.B.D.L. Corp. d/b/a BECKETT APOTHECARY, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>WYETH-AYERST LABORATORIES, INC., et al.,<br><br>　　　　　　Defendants. | Civil Action No. C-1-01-704<br><br>Judge Sandra S. Beckwith<br>Magistrate Judge Timothy S. Hogan |
| CVS MERIDIAN, INC. AND RITE AID CORP.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>WYETH,<br><br>　　　　　　Defendant. | Civil Action No. C-1-03-781<br><br>Judge Sandra S. Beckwith |

**BRIEF OF DEFENDANT WYETH IN OPPOSITION TO PLAINTIFFS'
MOTIONS FOR LEAVE TO FILE "SUR-REPLY" BRIEFS**

Defendant Wyeth respectfully opposes the untimely and unfounded request by plaintiffs in the above-captioned cases to file additional "sur-reply" briefs in further opposition to Wyeth's motion for summary judgment.

**INTRODUCTION**

Plaintiffs have already filed briefs exceeding 230 pages in opposition to Wyeth's motion for summary judgment, including one "supplemental" brief that they filed several weeks after their opposition briefs were filed. Wyeth's briefs, in contrast, total roughly one-half the volume of plaintiffs' briefs. Nevertheless, plaintiffs now seek leave to file

yet another set of briefs. Their proffered "sur-reply" briefs are untimely. Wyeth's reply brief was filed on March 9, and plaintiffs never once suggested to Wyeth or this Court during the ensuing five weeks that there was any basis for filing another set of briefs. In addition to being untimely, plaintiffs' proffered sur-reply briefs are inaccurate and misleading, and thus there is no "good cause" to support their filing.

Plaintiffs' motion for leave to file sur-reply briefs should be denied. However, if this Court were inclined to grant plaintiffs' motion to file their proffered sur-replies, then Wyeth respectfully requests that this Court grant Wyeth a reasonable period of time to file its own supplemental brief to correct the many inaccuracies and misleading arguments that plaintiffs make for the first time in their sur-reply briefs.

## DISCUSSION

Even where a litigant acts promptly, sur-reply briefs are "discouraged by local rule," *see Crihfield v. Monsanto Co.,* 844 F. Supp. 371, 373 (S.D. Ohio 1994), and motions for leave to file such briefs should be granted only in "rare circumstances." *See Jackson v. U.S. Postal Service,* 162 F. Supp. 2d 1246, 1249 n.2 (D. Kan. 2001). In light of plaintiffs' inexcusable delay, their motions for leave to file the sur-reply briefs would lack merit even if Wyeth's reply brief actually had raised "new" arguments (which it did not). *See, e.g., Hook v. Baker,* 352 F. Supp. 2d 839, 841 (S.D. Ohio 2004) (refusing to consider supplemental brief that was "untimely filed"); *Frito-Lay of Puerto Rico, Inc. v. Canas*, 92 F.R.D. 384, 389-90 & n.2 (D.P.R. 1981) (denying motion to file sur-reply papers because the "papers were untimely filed"); *Hatch v. Fleet Mortgage Corp.*, 158 F. Supp. 2d 962, 968 (D. Minn. 2001) (denying motion for leave to submit supplemental brief as "untimely").

Moreover, plaintiffs' rationale for seeking leave to file sur-reply briefs does not come close to meeting the strict legal requirement of "good cause" for the filing of such briefs. *See, e.g., White v. Honda of Am. Mfg., Inc.,* 191 F. Supp. 2d 933, 944 (S.D. Ohio 2002) (denying motion to file sur-reply brief for lack of "good cause"); *Adams v. Noble,* 137 F. Supp. 2d 1054, 1056 (S.D. Ohio 2001) (striking sur-reply brief for failure to show "good cause"). Wyeth did not raise any "new" arguments in its reply brief. Far from it. Wyeth's reply brief simply corrected plaintiffs' misinterpretation of governing legal standards and pointed out glaring errors in arguments *that plaintiffs had made in their opposition briefs.* Indeed, the bulk of plaintiffs' proffered sur-reply briefs is merely an effort by plaintiffs to re-cast arguments that they previously made in their opposition papers. They simply want another bite at the apple – a chance to have "the last word" to try to give the impression that there are genuine issues of disputed fact where none actually exist. That is not "good cause."

      1. First, plaintiffs assert that they need another chance to try to distinguish *N.W.S. Michigan, Inc. v. Gen. Wine & Liquor Co.,* 58 Fed. Appx. 127, 2003 WL 264731 (6th Cir. 2003), a critical Sixth Circuit case that flatly refutes the core legal arguments upon which plaintiffs' case is based, and that makes clear that discounts and rebates are not illegal where – as is the case here – such discounts and rebates are not predatory (below cost). Yet Wyeth cited and discussed *N.W.S. Michigan* in its principal summary judgment brief. *See* Wyeth Mem. (Nov. 22, 2004) at iv, 6, and 44-46. *Plaintiffs have conceded that they extensively discussed this case in their opposition briefs.* Pl. Sur-Reply Mem. at 8. There is absolutely no reason why plaintiffs need another brief to discuss this case yet again; indeed, the fact that they seek yet another opportunity to try to

distinguish the case is powerful evidence of just how fatal the *N.W.S. Michigan* decision is to their claims.

2.  Second, plaintiffs seek to argue *yet again* that Wyeth could be guilty of "monopolizing" the relevant market even if it was possible for Cenestin to compete against Premarin for formulary status. In plaintiffs' view, a dominant firm can "monopolize" the market simply by competing vigorously and thereby "frustrating" a competitor's efforts to win business – even if the competitor could have matched the dominant firm's discounts but chose not to do so. Pl. Sur-Reply Mem. at 1-4. That is not the law, of course. The legal standard that plaintiffs advance in their sur-reply for denying summary judgment would be tantamount to prohibiting dominant firms from competing vigorously – a proposition which this Circuit and other courts have conclusively rejected, as Wyeth showed *in its original brief*. *See* Wyeth Mem. (Nov. 22, 2004) at 37-41. Yet more importantly, plaintiffs already tried to advance their untenable legal standard for Sherman Act §2 claims in their opposition briefs. Pl. Opp. at 67-69. They simply want a chance to make exactly the same argument one more time.

3.  In their opposition briefs, plaintiffs expressly put forth the analysis of their expert (Dr. Leitzinger) as a calculation of the alleged loss of "Premarin Family" rebates. *See* Pl. Opp. at 89. In its reply brief, Wyeth demonstrated that plaintiffs had misrepresented their own expert's analysis – i.e., their expert had not assessed competition against "Premarin Family" rebates, as plaintiffs' opposition brief contended, but instead had based his calculations on an assumption that Wyeth had bundled rebates of all its products. Rather than admit the material mistake they had made in their opposition brief, plaintiffs' proffered sur-reply compounds their earlier mistake by citing

4

a Wyeth document to support their claim that a shift of just 10% market share from Premarin to Cenestin would result in significant losses of rebates to an MCO. Pl. Sur-Reply Mem. at 6. In truth, the document cited by plaintiffs says no such thing. Rather, it discusses the effects of a 50% market share shift, not a mere 10% shift. *See* Pl. Opp. Ex. P102 at 118082. This document is irrelevant, as plaintiffs have themselves alleged that Cenestin was incapable of achieving a market share anywhere near 50% (and could not have been injured, even under plaintiffs' theory, if it had been capable of achieving a 50% share). *See* Pl. Opp. at 80-82.

Similarly, plaintiffs' proffered sur-reply asserts that their expert's computations were "contained in Wyeth's own 'field spread sheets' from Wyeth's own Cenestin Impact Model." Pl. Sur-Reply Mem. at 5. Yet even a cursory review of the actual "spread sheets" shows that their expert did his own computations; nothing in the Wyeth spread sheets contains these computations or supports the analysis of plaintiffs' expert.

4.  Plaintiffs argue that Wyeth "misstated" the extent to which Cenestin had obtained formulary status when Wyeth showed that Cenestin had successfully won placement on formularies throughout the United States covering over 125 million lives. CVS Sur-Reply Mem. at 4. But Wyeth made this argument in its original brief; for plaintiffs to suggest it is a "new" argument is false. Wyeth Mem. (Nov. 22, 2004) at 21, 28-29, 36. Furthermore, the 125 million figure is an indisputable fact derived from Duramed's own admissions. Plaintiffs' effort to "recalculate" the 125 million lives is a transparent attempt to achieve a lower number; but it is also rife with errors, and cannot fairly be allowed into the record now. If plaintiffs had really contested the indisputable fact that Cenestin had obtained placement on formularies covering 125 million lives, they

5

should have presented their arguments in their opposition brief. Furthermore, their novel suggestion that the Court should look at formulary status for only a fraction of the relevant time period at issue in this suit (i.e., until 2001) defies common sense, and not surprisingly is unsupported by any legal precedent whatsoever.

5. Plaintiffs argue that they need a sur-reply brief to respond to Wyeth's statement that its MCO contracts served a pro-competitive purpose. Pl. Sur-Reply Mem. at 9. Yet as plaintiffs are well aware, Wyeth's summary judgment motion does *not rely in any way* upon an assessment of the pro-competitive purposes for Wyeth's contracts. Wyeth simply stated in its reply brief (to correct a misleading argument by plaintiffs in their opposition briefs) that Wyeth would address this issue *if the case were to go to trial.* Wyeth Reply Mem. (Mar. 9, 2005) at 7. The pro-competitive purposes underlying Wyeth's contracts are simply not relevant to Wyeth's summary judgment motion, and there is no basis for debating this issue in sur-reply briefs. In any event, the arguments that plaintiffs make in their sur-reply were already made in their opposition brief. *See* Pl. Mem. at 108-09.

6. In their parallel motion for leave to file a sur-reply, plaintiffs CVS and Rite Aid ("CVS") assert that they need a sur-reply to respond to Wyeth's arguments that the antitrust laws only protect against injury to overall competition in the market, and not (as here) purported injury to a single competitor (i.e., Cenestin). CVS Sur-Reply Mem. at 2. But Wyeth's original brief made this key legal argument quite directly. Wyeth Mem. (Nov. 22, 2004) at 3-4, 25-29. Wyeth showed in its original brief that there is *no evidence in the record* that Wyeth's contracts had any adverse effect on *any* of the competing estrogen therapy products other than Cenestin. To the contrary, these other

6

products flourished during the relevant time period. On this ground alone, summary judgment should be granted. Plaintiffs had ample opportunity to try to explain this fatal flaw in their case when they submitted their opposition briefs. Their failure to respond adequately at that time is no basis for allowing them to try again in a sur-reply brief.

* * *

Wyeth's summary judgment motion is based on well-established antitrust legal principles and undisputed facts in the record. These arguments include the lack of evidence of injury to competition, the lack of evidence of any truly "exclusive" contractual arrangements, the lack of evidence of predatory (below-cost) pricing, and the lack of any "antitrust injury" to plaintiffs. Plaintiffs' proffered sur-reply briefs do not contest the core legal arguments upon which Wyeth's motion for summary judgment is premised; instead, plaintiffs once again seek to divert attention from the governing legal arguments by raising extraneous factual issues and misstating Wyeth's arguments.

## CONCLUSION

Plaintiffs' untimely motions for leave to file sur-reply briefs are not supported by "good cause" and should be denied. However, if these sur-reply briefs are allowed into the record, Wyeth respectfully requests that this Court provide it with a comparable opportunity to file its own supplemental briefs, to enable Wyeth to address fully the misleading assertions that plaintiffs make for the first time in their sur-reply briefs.

Dated:  April 15, 2005

Respectfully submitted,

s/*Grant S. Cowan*_____
Grant S. Cowan   (0029667)

OF COUNSEL:

**FROST BROWN TODD LLC**
2200 PNC Center
201 E. Fifth Street

Dan K. Webb
W. Gordon Dobie
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois  60601-9703
(312) 558-5600

Cincinnati, Ohio  45202-4182
(513) 651-6745
gcowan@fbtlaw.com
Trial Attorneys for Defendants

Douglas L. Wald
David S. Eggert
**ARNOLD & PORTER LLP**
555 Twelfth Street, N.W.
Washington, D.C.  20004-1206
(202) 942-5000

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a copy of the foregoing Brief of Defendant In Opposition to Plaintiffs' Motions for Leave to File Sur-Reply Briefs has been served electronically on all counsel of record with CM/ECF Registration on this 15th day of April, 2005, and by regular U.S. mail, postage prepaid upon the following:

Eliot G. Long, Esq.
**BUCHANAN INGERSOLL PC**
1835 Market Street
14th Floor
Philadelphia, PA 19103

Krishna Narine, Esq.
**SCHIFFRIN & BARROWAY LLP**
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004

Marc H. Edelson, Esq.
**HOFFMAN & EDELSON**
45 West Court Street
Doylestown, PA 18901

Barry S. Taus, Esq.
**GARWIN BRONZAFT GERSTEIN & FISHER L.L.P**.
1501 Broadway, Suite 1416
New York, NY 10036

s/*Grant S. Cowan*
Grant S. Cowan, Esq.
Frost Brown Todd LLC