IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| J.B.D.L. Corp. d/b/a BECKETT APOTHECARY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WYETH-AYERST LABORATORIES, INC., et al., <br><br> Defendants. | Civil Action No. C-1-01-704 <br><br> Judge Sandra S. Beckwith <br> Magistrate Judge Timothy S. Hogan |
| CVS MERIDIAN, INC. and RITE AID CORP. <br><br> Plaintiffs, <br><br> v. <br><br> WYETH, <br><br> Defendant. | Civil Action No. C-1-03-781 <br><br> Judge Sandra S. Beckwith |

**PLAINTIFFS' *DAUBERT* MOTION TO PRECLUDE DEFENSE EXPERTS DENNIS W. CARLTON, Ph.D., CHRISTOPHER M. JAMES, Ph.D., KENNETH W. SCHAFERMEYER, Ph.D., AND E.M. KOLASSA, Ph.D. FROM TESTIFYING CONCERNING ALLEGED "SPECULATIVE PURCHASING"**

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................... 1

II.  ARGUMENT ........................................................ 3

    A.   Expert Testimony Must Be Relevant To Be Admissible Under *Daubert* and FRE 702 ............................................. 3

    B.   The Proposed Testimony of Wyeth's Experts Regarding "Speculative Purchasing" Should Be Excluded Because It Relates Only To The "Downstream" Effect Of Wyeth's Illegal Conduct, Which This Court Has Already Correctly Found to be Irrelevant To This Antitrust Case Seeking Overcharge Damages ..................................... 4

III. CONCLUSION ...................................................... 8

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Buspirone Patent and Antitrust Litig.*,
 210 F.R.D. 43 (S.D.N.Y. 2002) .................................................................................. 5

*County of Oakland v. City of Detroit*,
 866 F.2d 839 (6th Cir. 1989) ..................................................................................... 5

*Daubert v. Merrell Dow Pharm., Inc.*,
 509 U.S. 579 (1993) ............................................................................................. 1, 3

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
 392 U.S. 481 (1968) ......................................................................................... 2, 5, 6

*Hawaii v. Standard Oil Co. Of Cal.*,
 405 U.S. 251 (1972) ................................................................................................. 5

*Illinois Brick Co. v. Illinois*,
 431 U.S. 720 (1977) ................................................................................................. 5

*J.B.D.L. v. Wyeth-Ayerst Labs. Inc.*,
 225 F.R.D. 208 (S.D. Ohio 2003) ....................................................................... 2, 3, 5

*Neely v. Miller Brewing Co.*,
 246 F. Supp. 2d 866 (S.D. Ohio 2003) ................................................................... 3, 6

*Pride v. BIC Corp.*,
 218 F.3d 566 (6th Cir. 2000) ..................................................................................... 3

*In re Relafen Antitrust Litig.*,
 218 F.R.D. 337 (D. Mass. 2003) ................................................................................ 5

*U.S. v. Langan*,
 263 F.3d 613 (6th Cir. 2001) ..................................................................................... 3

*Williamson Oil Co. Inc. v. Phillip Morris USA*,
 346 F.3d 1287 (11th Cir. 2003) ................................................................................. 3

I. **INTRODUCTION**

This Motion to preclude defendant's experts from testifying concerning "speculative purchasing" (alternatively referred to as "forward purchasing") is submitted on behalf of the Direct Purchaser Class and CVS and Rite Aid Plaintiffs (collectively "Plaintiffs").[1]

Under Federal Rule of Evidence 702, expert testimony must be both reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). To satisfy the relevance prong, the proposed expert testimony must "fit" the facts of the case and must assist the jury in deciding issues relevant to the claims to be tried. *Id.* at 591.

Plaintiffs move to preclude Wyeth's experts from testifying relating to alleged "speculative purchasing" because that testimony fails to meet the relevance or "fit" test. As this Court may recall, "speculative buying," as Wyeth uses the term, refers to the supposed practice by certain wholesaler and chain pharmacy class members, and allegedly by CVS and Rite Aid, of purchasing drugs such as Premarin in advance of expected future price increases. According to Wyeth, those class members and parties who engage in this practice may have derived a "benefit" from Wyeth's price increases because such increases allowed them to resell Premarin at a higher profit.

---

[1] Defendant ("Wyeth") has secured no fewer than four (4) experts who render opinions regarding so-called "speculative purchasing" or "forward buying" in their pretrial reports. *See* Expert Reports of Dennis W. Carlton, Ph.D., dated July 7, 2004 ("Carlton Report") (excerpts attached hereto as Exhibit A), Christopher M. James, Ph.D., dated July 8, 2004 ("James Report") (excerpts attached hereto as Exhibit B), Kenneth W. Schafermeyer, Ph.D., dated July 8, 2004 ("Schafermeyer Report") (excerpts attached hereto as Exhibit C), and E.M. Kolassa, Ph.D., dated July 7, 2004 ("Kolassa Report") (excerpts attached hereto as Exhibit D).

1

The testimony of Drs. Carlton, James, Schafermeyer, and Kolassa[2] regarding "speculative buying" should be excluded because it relates to a subject that this Court has already held to be irrelevant to this "overcharge" case, namely whether certain class members derived higher profits from Premarin price increases. *See J.B.D.L. v. Wyeth-Ayerst Labs. Inc.*, 225 F.R.D. 208, 216 (S.D. Ohio 2003), *citing, e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 489 (1968) and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-5 (1977).

The very same law and logic this Court followed in holding that the supposed ability of certain class members "to resell [Premarin] at a greater profit after price increases" was irrelevant mandates the exclusion of the proposed testimony of Wyeth's experts regarding "speculative purchasing." Wyeth seeks to proffer such testimony in an improper effort to confuse the jury about the meaning of antitrust injury in this overcharge case. According to Wyeth, because certain class members and parties supposedly earned higher profits on the **resale** of overpriced Premarin, the overcharges Plaintiffs allegedly suffered should be reduced (or negated) to reflect the gains Plaintiffs supposedly earned on those resales. This is the exact type of argument that the Supreme Court (and this Court) intended to preclude in holding that: (1) the antitrust injury is complete when the direct purchaser pays the overcharge; and (2) inquiries into the downstream effect of the overcharge are irrelevant to overcharge cases like this case. *See J.B.D.L. v. Wyeth-Ayerst Labs.*, 225 F.R.D. at 216.

---

[2] *See* Carlton Report at ¶101; James Report at 12; Schafermeyer Report at 2, 4, 5; Kolassa Report at 5-6.

Since it is hornbook law that expert testimony regarding irrelevant issues must be excluded, Wyeth's proffered expert testimony regarding "speculative purchasing" must be precluded; otherwise, clear error will result.

## II. ARGUMENT

**A.     Expert Testimony Must Be Relevant To Be Admissible Under *Daubert* and FRE 702**

For expert testimony to satisfy the relevance requirement of Rule 702, the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Williamson Oil Co. Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1322-23 (11th Cir. 2003), *quoting Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id. See also U.S. v. Langan,* 263 F.3d 613, 623 (6th Cir. 2001) (expert testimony may only be admitted if it "will assist the trier of fact in understanding the evidence or in determining a fact at issue"); *Pride v. BIC Corp.,* 218 F.3d 566, 578 (6th Cir. 2000) (". . . under *Daubert* and its progeny, a party offering expert testimony must show. . . that the expert. . . is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case").

It is axiomatic that expert testimony regarding topics that are irrelevant to the issues to be tried should be excluded under FRE 702. *See, e.g., Neely v. Miller Brewing Co.*, 246 F. Supp. 2d 866, 872 (S.D. Ohio 2003) (Beckwith, J.) (excluding proposed expert testimony where it was based upon facts irrelevant to the claims in the case).

B.   **The Proposed Testimony of Wyeth's Experts Regarding "Speculative Purchasing" Should Be Excluded Because It Relates Only To The "Downstream" Effect Of Wyeth's Illegal Conduct, Which This Court Has Already Correctly Found to be Irrelevant To This Antitrust Case Seeking Overcharge Damages**

Wyeth seeks to proffer testimony from its experts – Drs. Carlton, James, Schafermeyer, and Kolassa – regarding the purported "benefits" obtained by certain class members and parties from Premarin's inflated prices through the use of "speculative purchasing." *See supra* n. 2. According to Wyeth's experts, these customers "benefitted" from the unprecedented price increases caused by Wyeth's exclusionary conduct because such conduct allowed the customers to resell Premarin at the higher prices, and therefore allegedly earn more profit on the resale of Premarin. *Id.* For instance, Dr. Carlton opines that "wholesalers may sometimes benefit from list price increases and thus may not resist them" purportedly because "wholesalers typically derive revenues from the practice of 'speculative purchasing,' which depends on list price increases." Carlton Report at ¶101. Likewise, Dr. James proposes to testify that wholesalers engage in "speculative purchasing" and that it "can be quite profitable and is thus an important part of wholesalers' overall business model." James Report at 12. Dr. Schafermeyer also opines that wholesalers and pharmacies benefit from engaging in speculative buying (Schafermeyer report at 4-5), and Dr. Kolassa similarly renders the opinion that wholesalers and other direct purchasers "do not object to price increases" because they benefit from speculative purchasing. Kolassa Report at 5-6.[3]

Yet the Court has already held that the "downstream" effects of any overcharge caused by Wyeth's illegal acts are completely irrelevant to this lawsuit. In opposing class certification,

---

[3] Drs. Schafermeyer and Kolassa also refer to speculative buying as "forward buying" and "anticipatory buying."

4

Wyeth argued that "there is a conflict between the class representatives and some class members because some class members purchased large quantities of Premarin and were able to resell it at a greater profit after price increases." *J.B.D.L. v. Wyeth-Ayerst Labs. Inc.*, 225 F.R.D. 208, 216 (S.D. Ohio 2003). This Court emphatically rejected Wyeth's argument, based on long-established Supreme Court precedent:

> This argument is also without merit. **Antitrust injury is considered complete when the direct purchaser pays an illegal overcharge and whether he was able to pass through the overcharge to indirect purchasers is irrelevant to the inquiry.** Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 489 (1968); Hawaii v. Standard Oil Co. Of Cal., 405 U.S. 251, 262 n.14 (1972); Illinois Brick, 431 U.S. at 724-25. Thus, as long as the price paid by the class members for Premarin was higher than it would have been absent the alleged anticompetitive conduct, there is no conflict created if indeed some of the direct purchasers were able to recoup the overcharge through price increases passed on to other purchasers.

*Id.* (emphasis added). Other courts, some in the very context of antitrust lawsuits alleging overcharges incurred by direct purchasers of pharmaceuticals, are in accord. *See also County of Oakland v. City of Detroit*, 866 F.2d 839 (6th Cir. 1989); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 344 (D. Mass. 2003) ("Consistent with the rule of *Hanover Shoe*, the direct purchaser plaintiffs here seek damages in the form of overcharges, rendering [defendant's] arguments regarding actual economic harm irrelevant"); *In re Buspirone Patent and Antitrust Litig.*, 210 F.R.D. 43, 58-60 (S.D.N.Y. 2002) (rejecting, as irrelevant under *Hanover Shoe* and progeny, argument that drug wholesalers alleging overcharge damages experienced net benefit from alleged anticompetitive conduct that artificially inflated price).

Since this Court has already held (correctly) that: (1) antitrust injury is complete at the time of class members' purchase of Premarin from Wyeth at an inflated price; and (2) it is

5

irrelevant whether certain direct purchasers could recoup that overcharge from the "downstream" resale of Premarin, Wyeth's speculation that certain class members and parties may have benefitted from the inflated price on the resale of Premarin is irrelevant to this lawsuit.[4]

Because speculative buying is irrelevant to this lawsuit, Wyeth's proposed expert testimony on that subject should be excluded from this case, as it will not assist the jury in deciding any issue at trial. To the contrary, allowing expert testimony regarding irrelevant issues such as the supposed "downstream" benefits of speculative buying would create a significant risk of misleading and confusing the jury, unduly prejudicing Plaintiffs, and injecting error into the record. *See Neely*, 246 F. Supp. 2d at 872 (excluding proposed expert testimony where it was based upon facts irrelevant to the claims in the case).

Wyeth has no other theory of relevance for speculative buying that is supported with sufficient evidence to entitle it to circumvent this settled authority. At one time, Wyeth attempted to link "speculative purchasing" to price increases based on its direct customers' alleged "desire" for those increases. Wyeth lawyers have absurdly argued that the reason it took price increases was because direct purchasers "wanted" them. However, Wyeth has produced absolutely no evidence to support this theory. *In fact, none of Wyeth's experts endorses – or even*

---

[4]Indeed, one of the primary reasons why the Supreme Court held that such "downstream" effects are irrelevant in an "overcharge" case – and that the direct purchasers are entitled to recover the entire amount of the overcharge, regardless of who may have absorbed that overcharge further down the distribution chain – was to prevent antitrust defendants from unnecessarily adding to the cost and complexity of an antitrust case by arguing that effects of the alleged overcharge must be traced "downstream" through the chain of distribution. *Hanover Shoe*, 392 U.S. at 491-94. The Supreme Court recognized that permitting such "downstream" inquiries would make overcharge cases hopelessly complicated and difficult to litigate, and would therefore undermine a critical purpose of the antitrust laws – *i.e.*, to deter conduct that violates the antitrust laws. *Id.*

*says anything about – Wyeth's after-the-fact rationalization for its price increase, much less grounds his opinions regarding speculative purchasing on this theory.* To the contrary, Wyeth's own experts admit that wholesalers are not relevant to Wyeth's pricing decisions because they are *not* able to influence shifts in market share. *See, e.g.*, Exhibit A, excerpts from Carlton Report at ¶14. Indeed, Wyeth's expert on class certification, Janusz Ordover, Ph.D., showed *why* drug manufacturers do *not* consider wholesaler reaction when making decisions about price increases: because wholesalers do not create demand for the product. *See* Declaration of Janusz Ordover, Ph.D. at ¶21 (excerpts attached hereto as Exhibit E) ("the total amount of a drug sold by all wholesalers (for example) is driven by how many prescriptions for a given drug are written by physicians, and not by the wholesaler's marketing and promotional efforts. Consequently, a direct purchaser will only purchase a drug in greater volumes if it expects to be able to sell the larger quantity to its customers. And that expectation will only arise as a result of an increase in patient demand, as determined by physician prescribing behavior").

In sum, each mention of "speculative purchasing" in Wyeth's expert reports is clearly and solely intended for the improper purpose of establishing that certain wholesalers obtained a net "benefit" (in terms of profits) on the resale of Premarin from the artificially inflated prices alleged by Plaintiffs. But as detailed above, this Court has already held, based on *Hanover Shoe* and *Illinois Brick*, that such a "downstream" effect is, as a matter of law, irrelevant to this case. Because Wyeth's experts have proffered **nothing** except a legally irrelevant purpose for their testimony regarding speculative buying, such proposed testimony should be excluded.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court preclude Wyeth's experts from testifying regarding "speculative" or "forward" purchasing at the trial of this matter.

Respectfully submitted,

s/Theresa L. Groh
Theresa L. Groh
**MURDOCK GOLDENBERG
  SCHNEIDER & GROH, L.P.A.**
35 East Seventh Street, Suite 600
Cincinnati, OH 45202
Tel: (513) 345-8291
Fax: (513) 345-8294

*Local Counsel for Direct Purchaser Class*

H. Laddie Montague, Jr.
Eric L. Cramer
Peter R. Kohn
Candice J. Enders
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

*Co-Lead Counsel for Direct Purchaser Class*

Eugene A. Spector
Jay S. Cohen
**SPECTOR ROSEMAN & KODROFF, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
*Co-Lead Counsel for Direct Purchaser Class*

*Additional Class Counsel*:

Barry S. Taus
Jan Bartelli
**GARWIN BRONZAFT GERSTEIN
   & FISHER, L.L.P.**
1501 Broadway, Suite 1416
New York, NY 10036
Tel.: (212) 398-0055
Fax: (212) 764-6620

Kendall Zylstra
**SCHIFFRIN & BARROWAY, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 677-7706
Fax: (610) 667-7056

John P. McCarthy
**LAW OFFICES OF JOHN P. McCARTHY**
217 Bay Avenue
Somers Point, NJ 08224
Tel: (609) 653-1094
Fax: (609) 653-3021

### CERTIFICATE OF SERVICE

    I hereby certify that on May 13, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants.

                                      _s/Theresa L. Groh_
                                      Theresa L. Groh, No. 0029806

9