# EXHIBIT 3

# ANTITRUST LAW DEVELOPMENTS (FIFTH)

## Volume I

Editorial Board

Debra J. Pearlstein
*Chair*

Robert E. Bloch
Ronan P. Harty
Paul B. Hewitt
Harvey I. Saferstein
James I. Serota
Willard K. Tom







Defending Liberty
Pursuing Justice

American Bar Association

present the best available evidence of its damages.[185] Where an antitrust violation and injury have been shown but damages cannot be calculated except through guesswork or speculation, an award of nominal or no damages is permissible.[186]

b.  CALCULATION OF DAMAGES

The appropriate measure of damages depends on the nature of the violation shown. In price-fixing cases[187] and cases involving monopolistic overcharges,[188] the measure of damages in a suit by a purchaser normally is the difference between the price the purchaser paid and the price it would have paid absent the violation. In *Berkey Photo, Inc. v. Eastman Kodak Co.*,[189] the Second Circuit held that the measure of damages in such a case is "the price increment caused by the anticompetitive conduct that originated or augmented the monopolist's control over the market" rather than "the entire excess of the monopolist's price over that which would prevail in a competitive market." The latter rule, the court concluded, improperly would require the monopolist "to forfeit its legitimately acquired advantage" instead of "simply [requiring it] to compensate its customers for the consequences of its wrongful action."[190]

---

awarded where jury required to speculate); Copper Liquor, Inc. v. Adolph Coors Co., 624 F.2d 575, 580 (5th Cir. 1980); International Travel Arrangers, Inc. v. Western Airlines, 623 F.2d 1255, 1270 (8th Cir.), *cert. denied*, 449 U.S. 1063 (1980).

185. *See, e.g.*, Harkins Amusement Enters. v. General Cinema Corp., 748 F. Supp. 1399, 1405-06 (D. Ariz. 1990); ILC Peripherals Leasing Corp. v. IBM, 458 F. Supp. 423, 436 (N.D. Cal. 1978), *aff'd per curiam sub nom.* Memorex Corp. v. IBM, 636 F.2d 1188 (9th Cir. 1980), *cert. denied*, 452 U.S. 972 (1981); Cecil Corley Motor Co. v. General Motors Corp., 380 F. Supp. 819, 830 (M.D. Tenn. 1974); Riss & Co. v. Association of Am. R.Rs., 190 F. Supp. 10, 18 (D.D.C. 1960), *aff'd in part and rev'd in part on other grounds*, 299 F.2d 133 (D.C. Cir.), *cert. denied*, 370 U.S. 916 (1962); William Goldman Theatres v. Loew's, Inc., 69 F. Supp. 103, 106 (E.D. Pa. 1946), *aff'd*, 164 F.2d 1021 (3d Cir.), *cert. denied*, 334 U.S. 811 (1948).

186. *See, e.g.*, Rosebrough Monument Co. v. Memorial Park Cemetary Ass'n, 666 F.2d 1130, 1147 (8th Cir. 1981) (district court instructed to award $3 where plaintiff established exclusion from the market but failed to prove the amount of damages), *cert. denied*, 457 U.S. 1111 (1982); United States Football League v. NFL, 644 F. Supp. 1040, 1051-54 (S.D.N.Y. 1986) (award of $1 upheld where court could not distinguish losses occasioned by monopolistic practices from those caused by mismanagement), *aff'd*, 842 F.2d 1335 (2d Cir. 1988); *cf.* General Leaseways, Inc. v. National Truck Leasing Ass'n, 830 F.2d 716, 729 (7th Cir. 1987) (award of "zero" dollars proper where jury finds plaintiff was injured but equally at fault, or where the jury could not accept plaintiff's proof of damage).

187. *See, e.g.*, Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 396 (1906); New York v. Hendrickson Bros., 840 F.2d 1065, 1077 (2d Cir.), *cert. denied*, 488 U.S. 848 (1988); Burlington Indus. v. Milliken & Co., 690 F.2d 380, 385 (4th Cir. 1982), *cert. denied*, 461 U.S. 914 (1983); *In re* Airline Ticket Comm'n Antitrust Litig., 918 F. Supp. 283, 285-87 (D. Minn. 1996); *In re* Potash Antitrust Litig., 159 F.R.D. 682, 697-98 (D. Minn. 1995) (describing appropriate methodologies in class action price-fixing suit).

188. *See, e.g.*, Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 491 (1968); Three Crown Ltd. P'ship v. Salomon Bros., 906 F. Supp. 876, 885 (S.D.N.Y. 1995); Package Shop v. Anheuser-Busch, Inc., 675 F. Supp. 894, 946 (D.N.J. 1987).

189. 603 F.2d 263 (2d Cir. 1979), *cert. denied*, 444 U.S. 1093 (1980).

190. *Id.* at 297-98; *accord* Allegheny Pepsi-Cola Bottling Co. v. Mid-Atlantic Coca-Cola Bottling Co., 690 F.2d 411, 415 (4th Cir. 1982); *see also* Gulfstream III Assocs. v. Gulfstream Aerospace Corp., 995 F.2d 425 (3d Cir. 1993) (purchaser's prior settlement of claims against six jet manufacturers for an amount exceeding purchaser's losses justified summary judgment in favor of nonsettling coconspirator; court reasoned plaintiff already had been fully compensated for its losses).

In tying cases, the measure of damages to an injured purchaser is described as "the difference between the price actually paid for the tied product and the price at which the product could have been obtained on the open market."[191] However, several courts have held that damages can be recovered only if the combined fair market value of both the tying and tied products is exceeded by the amount actually paid for both.[192]

In many other contexts, the measure of damages ordinarily is the plaintiff's lost profits.[193] Although most courts limit recovery to lost net profits,[194] lost gross profits may be recovered in some instances where the difference between gross and net profits is minimal.[195] Where the plaintiff's business is totally or partially destroyed

---

191. MCA Television Ltd. v. Public Interest Corp., 171 F.3d 1265, 1280-81 (11th Cir. 1999); Crossland v. Canteen Corp., 711 F.2d 714, 722 (5th Cir. 1983); Bell v. Cherokee Aviation Corp., 660 F.2d 1123, 1133 (6th Cir. 1981); *accord* Northern v. McGraw-Edison Co., 542 F.2d 1336, 1347 (8th Cir. 1976), *cert. denied*, 429 U.S. 1097 (1977); Gray v. Shell Oil Co., 469 F.2d 742, 751 (9th Cir. 1972), *cert. denied*, 412 U.S. 943 (1973).

192. *See, e.g.*, Olmstead v. Amoco Oil Co., 725 F.2d 627, 630 (11th Cir. 1984); Kypta v. McDonald's Corp., 671 F.2d 1282, 1285 (11th Cir.), *cert. denied*, 459 U.S. 857 (1982); Siegel v. Chicken Delight, Inc., 448 F.2d 43, 52 (9th Cir. 1971), *cert. denied*, 405 U.S. 955 (1972); Young v. Lehigh Corp., 1989-2 Trade Cas. (CCH) ¶ 68,790, at 62,119 n.25 (N.D. Ill. 1989) (following *Kypta*); L. Knife & Son v. Banfi Prods. Corp., 118 F.R.D. 269, 272 (D. Mass. 1987) (prescribing a "market value" approach for determining damages in tying case: price paid for tied and tying products minus fair market value of tied and tying products); Casey v. Diet Ctr., Inc., 590 F. Supp. 1561, 1573 (N.D. Cal. 1984) ("As *Siegel* indicated, franchisees will thus rarely be able to establish injury from a tying arrangement because the price paid is usually conclusive proof of the franchise package's fair market value.") (citation omitted).

193. *See, e.g.*, Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1273-74 (3d Cir. 1995), *cert. denied*, 516 U.S. 1172 (1996); H.J., Inc. v. ITT, 867 F.2d 1531, 1549 (8th Cir. 1989) (attempted monopolization through predatory pricing); Sciambra v. Graham News, 841 F.2d 651, 657 (5th Cir.) (refusal to deal and monopolization), *cert. denied*, 488 U.S. 855 (1988); D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982) (predatory pricing); Independence Tube Corp. v. Copperweld Corp., 691 F.2d 310, 328 (7th Cir. 1982) (exclusion from market), *rev'd on other grounds*, 467 U.S. 752 (1984); Moore v. Jas. H. Matthews & Co., 682 F.2d 830, 835-37 (9th Cir. 1982) (tying claim by defendant's competitor); Vanco Beverages, Inc. v. Falls City Indus., 654 F.2d 1224, 1230-31 (7th Cir. 1981) (price discrimination), *rev'd on other grounds*, 460 U.S. 428 (1983); Copper Liquor, Inc. v. Adolph Coors Co., 624 F.2d 575, 580-81 (5th Cir. 1980) (resale price maintenance suit by restricted retailer); Lee-Moore Oil Co. v. Union Oil Co., 599 F.2d 1299, 1304 (4th Cir. 1979) (refusal to deal); Pitchford Scientific Instruments Corp. v. PEPI Inc., 531 F.2d 92, 104-05 (3d Cir. 1975) (vertical territorial restrictions in suit by restricted dealer), *cert. denied*, 426 U.S. 935 (1976).

194. *See, e.g.*, Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 379 (1927); *H.J., Inc.*, 867 F.2d at 1549; Graphic Prods. Distribs. v. Itek Corp., 717 F.2d 1560, 1580 (11th Cir. 1983); Deaktor v. Fox Grocery Co., 475 F.2d 1112, 1116 (3d Cir.), *cert. denied*, 414 U.S. 867 (1973); Wolfe v. National Lead Co., 225 F.2d 427, 431 (9th Cir.) (gross profits not a proper measure of plaintiff's loss), *cert. denied*, 350 U.S. 915 (1955); Sportmart, Inc. v. No Fear, Inc., 1996-2 Trade Cas. (CCH) ¶ 71,513, at 77,715 (N.D. Ill. 1996) (refusing to grant summary judgment where damages expert provided net lost profit estimate); Lago & Sons Dairy v. H.P. Hood Inc., 892 F. Supp. 325, 346 n.12 (D.N.H. 1995); Seabury Mgmt., Inc. v. Professional Golfers' Ass'n, 878 F. Supp. 771, 783 n.14 (D. Md. 1994) (expert's "direct profits" analysis which included only certain expenses was "manipulative" and "artificial"), *aff'd in part and rev'd in part on other grounds*, 52 F.3d 322 (4th Cir.), *cert. denied*, 516 U.S. 867 (1995).

195. *See, e.g.*, Trabert & Hoeffer, Inc. v. Piaget Watch Corp., 633 F.2d 477, 484 (7th Cir. 1980) (gross profits award where plaintiff would have incurred only nominal additional costs in earning the lost profits claimed); *see also* Ford Motor Co. v. Webster's Auto Sales, Inc., 361 F.2d 874, 886 (1st Cir. 1966) (where plaintiff was unable to establish what portion of its prevolation net profit was attributable to the part of its business adversely affected by defendant's violation, the jury could estimate lost net profits by applying the percentage of gross profit resulting from the affected

by the defendant's violation, damages may be measured by lost goodwill or the "going concern" value of the plaintiff's business.[196] The going concern value generally should be calculated on the date the plaintiff goes out of business unless economic justifications, such as temporary market instability, require a different date to be used.[197] Because going concern value is the present value of lost future profits, a plaintiff may not recover both,[198] but it may recover both lost past profits and going concern value.[199] The amount of settlements by codefendants must be deducted from a damages award[200] with the deduction to be made after the award has been trebled.[201] Damages cannot be recovered for fear of future illegal acts.[202]

Several different methodologies have been developed for proving damages.[203] The "before and after" theory compares a plaintiff's profits or the prices it paid

---

portion of the business to total net profit); *cf.* Multiflex, Inc. v. Samuel Moore & Co., 709 F.2d 980, 996 (5th Cir. 1983) (damage model that did not take into account increased costs plaintiff would have incurred was sufficient where costs "were so small as to be irrelevant"), *cert. denied*, 465 U.S. 1100 (1984).

196. *See, e.g., Sciambra*, 841 F.2d at 657; Southern Pines Chrysler-Plymouth, Inc. v. Chrysler Corp., 826 F.2d 1360, 1363-64 (4th Cir. 1987); Kestenbaum v. Falstaff Brewing Corp., 575 F.2d 564, 573 (5th Cir. 1978), *cert. denied*, 440 U.S. 909 (1979); Continental Baking Co. v. Old Homestead Bread Co., 476 F.2d 97, 110-11 (10th Cir.), *cert. denied*, 414 U.S. 975 (1973); Albrecht v. Herald Co., 452 F.2d 124, 129-31 (8th Cir. 1971); Simpson v. Union Oil Co., 411 F.2d 897, 908-09 (9th Cir.), *rev'd on other grounds*, 396 U.S. 13 (1969); *cf.* Central Telecommuns., Inc. v. TCI Cablevision, Inc., 800 F.2d 711, 730 (8th Cir. 1986) (affirming district court's damage award which represented the fair market value of plaintiff's lost franchise as calculated by using an industry rule of thumb), *cert. denied*, 480 U.S. 910 (1987). The relevant factors in determining goodwill or going concern value are (1) the "profit . . . the business [has] made over and above an amount fairly attributable to the return on the capital investment and to the labor of the owner," and (2) the "prospect that this additional profit will continue in the future." Standard Oil Co. v. Moore, 251 F.2d 188, 219 (9th Cir. 1957), *cert. denied*, 356 U.S. 975 (1958); *accord* Taxi Weekly, Inc. v. Metropolitan Taxicab Bd. of Trade, 539 F.2d 907, 914 (2d Cir. 1976).

197. Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp., 175 F.3d 18, 27-28 (1st Cir.) (noting that the more time that passes between the date that a company ceased operations and the date that the company's going concern value is calculated, the more speculation and conjecture is required), *cert. denied*, 528 U.S. 931 (1999).

198. *Id.* at 27 ("Where plaintiff has been forced out of business . . . it is awarded its going-concern value or its projected future lost profits, but not both."); *see also* Los Angeles Mem'l Coliseum Comm'n v. NFL, 791 F.2d 1356, 1374 (9th Cir. 1986), *cert. denied*, 484 U.S. 826 (1987); Lehrman v. Gulf Oil Corp., 500 F.2d 659, 663-64 (5th Cir. 1974), *cert. denied*, 420 U.S. 929 (1975); *Albrecht*, 452 F.2d at 131; Farmington Dowel Prods. Co. v. Forster Mfg. Co., 421 F.2d 61, 81-82 (1st Cir. 1969).

199. *See, e.g.*, Northeastern Tel. Co. v. AT&T, 651 F.2d 76, 95 n.30 (2d Cir. 1981), *cert. denied*, 455 U.S. 943 (1982); Eiberger v. Sony Corp. of Am., 622 F.2d 1068, 1081-82 n.25 (2d Cir. 1980); Carpa, Inc. v. Ward Foods, Inc., 536 F.2d 39, 51 (5th Cir. 1976); *cf. Southern Pines*, 826 F.2d at 1363-64 (approving jury instruction that plaintiff could be awarded damages for lost profits from the time it went out of business to the time of trial, and for the going concern value of the business at the time of trial).

200. *See, e.g.*, William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 668 F.2d 1014 (9th Cir. 1981), *cert. denied*, 459 U.S. 825 (1982).

201. *See, e.g.*, Burlington Indus. v. Milliken & Co., 690 F.2d 380 (4th Cir. 1982), *cert. denied*, 461 U.S. 914 (1983); Hydrolevel Corp. v. American Soc'y of Mech. Eng'rs, 635 F.2d 118 (2d Cir. 1980), *aff'd*, 456 U.S. 556 (1982); Flintkote Co. v. Lysfjord, 246 F.2d 368 (9th Cir.), *cert. denied*, 355 U.S. 835 (1957).

202. *See, e.g.*, Connecticut Import Co. v. Frankfort Distilleries, 101 F.2d 79, 81 (2d Cir. 1939); Bailey's Bakery v. Continental Baking Co., 235 F. Supp. 705, 716-17 (D. Haw. 1964), *aff'd*, 401 F.2d 182 (9th Cir. 1968), *cert. denied*, 393 U.S. 1086 (1969).

203. Plaintiffs are afforded wide latitude in selecting a damage theory. *See, e.g.*, Danny Kresky Enters. Corp. v. Magid, 716 F.2d 206, 213 (3d Cir. 1983) ("plaintiffs must be free to select their own damages theories as long as they are supported by a reasonable foundation"); *see also* Fishman v.

PRIVATE ANTITRUST SUITS 877

during the period of violation with profits earned or prices paid prior to the beginning of the violation period or after its termination.[204] The "yardstick" approach compares profits earned or prices paid by a plaintiff with the corresponding data for a firm or in a market unaffected by the violation.[205] In either case, the plaintiff is required to show that the two sets of time periods, firms, or markets are generally comparable except for the effect of the violation.[206] Whether the plaintiff has met this burden of showing comparability ordinarily is a question for the trier of fact.[207] The court may

---

Estate of Wirtz, 807 F.2d 520, 551 (7th Cir. 1986) ("plaintiff can use a method of proof 'specifically tailored' to the individual case") (citing Park v. El Paso Bd. of Realtors, 764 F.2d 1053, 1068 (5th Cir. 1985), *cert. denied*, 474 U.S. 1102 (1986)); *see also* Lumco Indus., Inc. v. Jeld-Wen, Inc., 171 F.R.D. 168, 174 (E.D. Pa. 1997) (court approved damages expert's method of applying a regression analysis by comparing prices before and during the period of the allegedly conspiratorial activities).

204. *See, e.g.*, Story Parchment Co. v. Patterson Parchment Paper Co., 282 U.S. 555, 561 (1931); Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 378-79 (1927); New York v. Julius Nasso Concrete Corp., 202 F.3d 82, 88 (2d Cir. 2000); Home Placement Serv. v. Providence Journal Co., 819 F.2d 1199, 1205 n.7 (1st Cir. 1987); Blanton v. Mobil Oil Corp., 721 F.2d 1207, 1216 (9th Cir. 1983), *cert. denied*, 471 U.S. 1007 (1985); Armco Steel Corp. v. North Dakota, 376 F.2d 206, 211 (8th Cir. 1967); *Seabury Mgmt.*, 878 F. Supp. at 783-84 (improper to use thriving company as yardstick for plaintiff's "fledgling" and barely profitable business); Wall Prods. Co. v. National Gypsum Co., 357 F. Supp. 832, 844 (N.D. Cal. 1973). *But see* Isaksen v. Vermont Castings, Inc., 825 F.2d 1158, 1165 (7th Cir. 1987) (plaintiff failed to prove damages where he merely compared profits before and during period of unlawful activity; "[p]ost hoc ergo propter hoc is not a valid methodology of damage calculation, especially when it is apparent that other causal factors are at work"), *cert. denied*, 486 U.S. 1005 (1988).

205. *See, e.g.*, Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 122-25 (1969); Bigelow v. RKO Pictures, 327 U.S. 251, 266 (1946); Blue Cross & Blue Shield United v. Marshfield Clinic, 152 F.3d 588 (7th Cir. 1998) (court rejected plaintiff's attempt to use yardstick method to calculate damages), *cert. denied*, 525 U.S. 1071 (1999); Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 200 (1st Cir.) (yardstick method appropriate where plaintiff had operated for only a short period of time prior to the antitrust violation), *cert. denied*, 519 U.S. 927 (1996); Alexander v. National Farmers Org., 850 F.2d 1286, 1294-98 (8th Cir. 1988), *cert. denied*, 489 U.S. 1081 (1989); Metrix Warehouse, Inc. v. Daimler-Benz A.G., 828 F.2d 1033, 1044 n.21 (4th Cir. 1987), *cert. denied*, 486 U.S. 1017 (1988); *Home Placement Serv.*, 819 F.2d at 1205-06; Rose Confections, Inc. v. Ambrosia Chocolate Co., 816 F.2d 381, 393-94 (8th Cir. 1987); *Estate of Wirtz*, 807 F.2d at 551; Richfield Oil Corp. v. Karseal Corp., 271 F.2d 709, 714 (9th Cir. 1959), *cert. denied*, 361 U.S. 961 (1960).

206. *See, e.g.*, Image Technical Servs., Inc. v. Eastman Kodak Co., 125 F.3d 1195, 1222 (9th Cir. 1997), *cert. denied*, 523 U.S. 1094 (1998); *National Farmers Org.*, 850 F.2d at 1297; *Home Placement Serv.*, 819 F.2d at 1206; *Rose Confections*, 816 F.2d at 394; Allegheny Pepsi-Cola Bottling Co. v. Mid-Atlantic Coca-Cola Bottling Co., 690 F.2d 411, 414 (4th Cir. 1982); Pitchford Scientific Instruments Corp. v. PEPI Inc., 531 F.2d 92, 109 (2d Cir. 1975), *cert. denied*, 426 U.S. 935 (1976); Pacific Coast Agric. Export Ass'n v. Sunkist Growers, Inc., 526 F.2d 1196, 1206-07 (9th Cir. 1975), *cert. denied*, 425 U.S. 959 (1976); *Lehrman*, 500 F.2d at 667; *Farmington Dowel*, 421 F.2d at 82; *see also Bigelow*, 327 U.S. at 257-58 (plaintiff's theater and yardstick theater were "comparable in size, the [plaintiff's theater] being superior in location, equipment and attractiveness to patrons"); *Story Parchment*, 282 U.S. at 561-62 (jury properly was instructed to consider any changed economic conditions between "before" and "during" periods in determining damages).

207. *See, e.g., Rose Confections*, 816 F.2d at 394 n.7; Syufy Enters. v. American Multicinema, Inc., 793 F.2d 990, 1003 (9th Cir. 1986), *cert. denied*, 479 U.S. 1031 & 1034 (1987); Business Elecs. Corp. v. Sharp Elecs. Corp., 780 F.2d 1212, 1220 (5th Cir. 1986), *aff'd*, 485 U.S. 717 (1988); *Pacific Coast Agric. Export Ass'n*, 526 F.2d at 1207; South-East Coal Co. v. Consolidation Coal Co., 434 F.2d 767, 793-94 (6th Cir. 1970), *cert. denied*, 402 U.S. 983 (1971); *see also* Rosebrough Monument Co. v. Memorial Park Cemetary Ass'n, 666 F.2d 1130, 1147 (8th Cir. 1981) (trier of fact must determine whether cost studies introduced to show inflated price of unlawfully tied service were based on unrealistic assumption), *cert. denied*, 457 U.S. 1111 (1982).

reasonably adopt plaintiff's proposed methodology for computing damages when the defendant fails to substantiate its criticism of the method by producing "empirical evidence" to the contrary.[208] Courts have sustained jury awards notwithstanding defects in the plaintiff's proof of comparability, particularly where the jury awarded damages less than those claimed, indicating that it took the dissimilarity into consideration.[209] On the other hand, appellate courts have reversed damage awards or sustained the exclusion of damage theories where there was no evidence of comparability or the evidence was so defective that the plaintiff's damage theory was speculative.[210]

Lost profits also have been established by estimating the market share a plaintiff would have had but for a defendant's violations and then determining, based on the size of the market and the plaintiff's likely profit margin, the total profits the plaintiff would have earned if the estimated market share had been achieved. In most cases, the estimated market share has been determined by reference to the plaintiff's market share before or after the violation or in a related market unaffected by the violation.[211] In other cases, the estimated market share has been determined by a more general analysis of market conditions that would have existed absent the violation.[212]

---

208. *In re* Domestic Air Transp. Antitrust Litig., 137 F.R.D. 677, 690 (N.D. Ga. 1991); *see also Lumco Indus.*, 171 F.R.D. at 174.
209. *See, e.g., Independence Tube*, 691 F.2d at 331; Greene v. General Foods Corp., 517 F.2d 635, 666 (5th Cir. 1975), *cert. denied*, 424 U.S. 942 (1976); Agrashell, Inc. v. Hammons Prods. Co., 479 F.2d 269, 282-83 (8th Cir.), *cert. denied*, 414 U.S. 1022 (1973). But cf. Kestenbaum v. Falstaff Brewing Corp., 575 F.2d 564, 570 (5th Cir.) (plaintiff was not permitted to recover based on a damage theory that assumed the continued existence of a price-fixing conspiracy in which plaintiff was a participant: "[t]he fact that the award was less than the amount calculated by [plaintiff] does not render sufficient evidence that is otherwise insufficient"), *cert. denied*, 440 U.S. 909 (1976).
210. *See, e.g.,* Eleven Line, Inc. v. North Texas State Soccer Ass'n, Inc., 213 F.3d 198, 208 (5th Cir. 2000); *Marshfield Clinic*, 152 F.3d at 594; Arthur S. Langenderfer, Inc. v. S.E. Johnson Co., 917 F.2d 1413, 1445 n.32 (6th Cir. 1990), *cert. denied*, 502 U.S. 808 (1991); *National Farmers Org.*, 850 F.2d at 1292 n.3; McGlinchy, Inc. v. Shell Chem. Co., 845 F.2d 802, 806-07 (9th Cir. 1988); *Home Placement Serv.*, 819 F.2d at 1206-09; *Allegheny Pepsi-Cola Bottling Co.*, 690 F.2d at 414-15; Admiral Theatre Corp. v. Douglas Theatre Co., 585 F.2d 877, 894-96 (8th Cir. 1978); Knutson v. Daily Review, Inc., 548 F.2d 795, 813 (9th Cir. 1976), *cert. denied*, 433 U.S. 910 (1977); *Farmington Dowel*, 421 F.2d at 82; *cf.* Multiflex, Inc. v. Samuel Moore & Co., 709 F.2d 980, 997 (5th Cir. 1983) (new damages trial required where jury made separate awards for § 1 and § 2 violations, plaintiff presented only a single damages calculation for both violations, and court upheld only § 2 claim), *cert. denied*, 465 U.S. 1100 (1984).
211. *See, e.g., Zenith*, 395 U.S. at 116 & n.11; *National Farmers Org.*, 850 F.2d at 1294-98; General Leaseways, Inc. v. National Truck Leasing Ass'n, 830 F.2d 716, 726 (7th Cir. 1987); *Independence Tube*, 691 F.2d at 330; Moore v. Jas. H. Matthews & Co., 682 F.2d 830, 836-37 & n.51 (9th Cir. 1982); Associated Radio Serv. Co. v. Page Airways, 624 F.2d 1342, 1361-62 (5th Cir. 1980), *cert. denied*, 450 U.S. 1030 (1981). The same general principles regarding comparability that are applied in before-and-after and yardstick cases also are applied to these analyses. *See, e.g.,* Murphy Tugboat Co. v. Crowley, 658 F.2d 1256, 1261-62 (9th Cir. 1981), *cert. denied*, 455 U.S. 1018 (1982); Coleman Motor Co. v. Chrysler Corp., 525 F.2d 1338, 1351-53 (3d Cir. 1975); Herman Schwabe, Inc. v. United Shoe Mach. Corp., 297 F.2d 906, 911 (2d Cir.), *cert. denied*, 369 U.S. 865 (1962).
212. *See, e.g.,* Huntsman Chem. Corp. v. Holland Plastics Co., 2000-1 Trade Cas. (CCH) ¶ 72,807, at 86,928 (10th Cir. 2000) (acceptable to calculate lost profits based on damages model that assumed that, absent a price discrimination violation, price of product would have been same as competitor's); H.J., Inc. v. ITT, 867 F.2d 1531, 1550 (8th Cir. 1989); Dolphin Tours, Inc. v. Pacifico Creative Serv., 773 F.2d 1506, 1511-13 (9th Cir. 1985); Litton Sys. v. AT&T, 700 F.2d 785, 822-25 (2d Cir. 1983); Northeastern Tel. Co. v. AT&T, 497 F. Supp. 230, 247-49 (D. Conn.

The before and after, yardstick, and market share theories are not the only acceptable methodologies. For example, a plaintiff claiming lost profits may show loss of specific business or customers.[213] Courts also have accepted evidence of increases in the plaintiff's cost of doing business resulting from the defendant's violation,[214] damage models combining elements of both the before and after and yardstick methodologies,[215] and analyses of the defendant's costs and profits.[216] In practice, plaintiffs often present alternative damage methodologies.[217]

A damage theory may be based on assumptions as long as the assumptions are reasonable in light of the record evidence.[218] The reasonableness of the assumptions underlying a plaintiff's damage theory ordinarily is determined by the trier of fact.[219] Damage evidence has been excluded or found insufficient to support an award of damages, however, where there was no basis for critical assumptions,[220] the

---

1980), *rev'd in part and vacated in part on other grounds*, 651 F.2d 76 (2d Cir. 1981), *cert. denied*, 455 U.S. 943 (1982).

213. *See, e.g., Rose Confections*, 816 F.2d at 395; Hobart Bros. Co. v. Malcolm T. Gilliland, Inc., 471 F.2d 894, 902-04 (5th Cir.), *cert. denied*, 412 U.S. 923 (1973); *see also* Rossi v. Standard Roofing, 156 F.3d 452, 485 (3d Cir. 1998) (court declined to hold that "but for" analysis of damages could never support a damages award, provided that assumptions were reasonably based on historic facts).

214. *See, e.g.*, New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1078 (2d Cir.), *cert. denied*, 488 U.S. 848 (1988); Webb v. Utah Tour Brokers Ass'n, 568 F.2d 670, 676-77 (10th Cir. 1977); Advance Bus. Sys. & Supply Co. v. SCM Corp., 415 F.2d 55, 69 (4th Cir. 1969), *cert. denied*, 397 U.S. 920 (1970); United Power Ass'n v. L.K. Comstock & Co., 1992-2 Trade Cas. (CCH) ¶ 70,055, at 69,213 (D. Minn. 1992) (cost of borrowed funds in bid-rigging case held a separate and compensable element of actual damages, subject to trebling); *cf.* Auwood v. Harry Brandt Booking Office, 850 F.2d 884, 892-93 (2d Cir. 1988) (where plaintiff failed to prove lost profits, jury could nonetheless render award for amounts plaintiff lost during relevant period).

215. *See, e.g.*, Lehrman v. Gulf Oil Corp., 500 F.2d 659, 667-68 (5th Cir. 1974), *cert. denied*, 420 U.S. 929 (1975); Harkins Amusement Enters. v. General Cinema Corp., 748 F. Supp. 1399, 1407-08 (D. Ariz. 1990) (plaintiff's expert presented damage models based upon market share, yardstick, and picture-by-picture methods of analysis); *cf.* Package Shop v. Anheuser-Busch, Inc., 675 F. Supp. 894, 946-47 (D.N.J. 1987) (because expert report contained numerous substantial errors, court rejected plaintiff's damage calculation method combining elements of yardstick and before and after approaches).

216. *See, e.g.*, Union Carbide & Carbon Corp. v. Nisely, 300 F.2d 561, 595 (10th Cir. 1961), *cert. dismissed*, 371 U.S. 801 (1962).

217. *See, e.g., National Farmers Org.*, 850 F.2d at 1288-89 (plaintiffs advanced two alternative damage calculations, based on "market structure theory" and "test market theory"; court affirmed rejection of "market structure theory" but ruled "test market theory" proper basis for damage measurement); *Harkins Amusement*, 748 F. Supp. at 1407-08 (plaintiff's expert presented damage models based upon market share, yardstick, and picture-by-picture methods of analysis).

218. *See, e.g.*, DeLong Equip. Co. v. Washington Mills Electro Minerals Corp., 990 F.2d 1186, 1205 (11th Cir.), *amended per curiam*, 997 F.2d 1340, *cert. denied*, 510 U.S. 1012 (1993); *National Farmers Org.*, 850 F.2d at 1301-03; Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1525-26 (10th Cir. 1984), *aff'd on other grounds*, 472 U.S. 585 (1985); Malley-Duff & Assocs. v. Crown Life Ins. Co., 734 F.2d 133, 148 (3d Cir.), *cert. denied*, 469 U.S. 1072 (1984); *Litton Sys.*, 700 F.2d at 825; Terrell v. Household Goods Carriers' Bureau, 494 F.2d 16, 24 (5th Cir.), *cert. dismissed*, 419 U.S. 987 (1974); Locklin v. Day-Glo Color Corp., 429 F.2d 873, 879 (7th Cir. 1970), *cert. denied*, 400 U.S. 1020 (1971).

219. *See, e.g., General Leaseways*, 830 F.2d at 726; International Wood Processors v. Power Dry, Inc., 792 F.2d 416, 431 (4th Cir. 1986); *Lehrman*, 500 F.2d at 668; Autowest, Inc. v. Peugeot, Inc., 434 F.2d 556, 566-67 (2d Cir. 1970).

220. *See, e.g.*, Blue Cross & Blue Shield United v. Marshfield Clinic, 152 F.3d 588, 594 (7th Cir. 1988) (plaintiff could not infer damages from defendant's behavior, since there was no direct evidence of the cause of the damage, and plaintiff had failed to eliminate other potential causes), *cert. denied*, 525 U.S. 1071 (1999); Read v. Medical X-Ray Ctr., 110 F.3d 543, 546 (8th Cir.) (finding no

<sup>880</sup> <sub>ANTITRUST LAW DEVELOPMENTS (FIFTH)</sub>

assumptions were shown to be false or contrary to common sense,[221] or the damage model failed to take into account essential facts.[222]

Although expert testimony frequently is offered in support of a plaintiff's damage theory, lay testimony may be a permissible basis for an award of damages.[223] A lay witness's damage estimate is scrutinized more carefully than an expert's, however, and is more likely to be excluded or disregarded, particularly if the witness fails fully to describe the assumptions, facts, and methodology on which the estimate is based.[224] This is particularly true where the damage testimony consists only of self-serving speculation by the plaintiff.[225]

c. DISAGGREGATION

A plaintiff will be allowed to recover only those damages caused by the antitrust violation, and it thus must give the finder of fact a basis to determine and separate out the amount of losses caused by lawful competition, mismanagement, recession, or other nonviolation factors.[226] In the absence of such proof, and where a defendant

---

evidence that defendant's actions were a "substantially contributing factor" to plaintiff's alleged injury), *cert. denied*, 522 U.S. 914 (1997); Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275 (3d Cir. 1995), *cert. denied*, 516 U.S. 1172 (1996); Bodie-Rickett and Assoc. v. Mars, 957 F.2d 287, 292 (6th Cir. 1992); Arthur S. Langenderfer, Inc. v. S.E. Johnson Co., 917 F.2d 1413, 1445 (6th Cir. 1990), *cert. denied*, 502 U.S. 808 (1991); McGlinchy v. Shell Chem. Co., 845 F.2d 802, 806-07 (9th Cir. 1988); Olympia Equip Leasing Co. v. Western Union Tel. Co., 797 F.2d 370, 382-83 (7th Cir. 1986); MCI Communs. Corp. v. AT&T, 708 F.2d 1081, 1164 (7th Cir.), *cert. denied*, 464 U.S. 891 (1983); Joseph E. Seagram & Sons v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71, 87 (9th Cir. 1969), *cert. denied*, 396 U.S. 1062 (1970); *Schwabe*, 297 F.2d at 911; American Bearing Co. v. Litton Indus., 540 F. Supp. 1163, 1173-75 (E.D. Pa. 1982), *aff'd*, 729 F.2d 943 (3d Cir.), *cert. denied*, 469 U.S. 854 (1984).

221. *See, e.g., Image Technical Servs.*, 125 F.3d at 1222 (reversing damage award in favor of one plaintiff where evidence showed that plaintiff's exit from the market was caused by factors other than defendant's conduct); *McGlinchy*, 845 F.2d at 806-07; *Metrix Warehouse*, 828 F.2d at 1044; *Olympia Equip.*, 797 F.2d at 383; *Murphy Tugboat*, 658 F.2d at 1262; Phillips v. Crown Cent. Petroleum Corp., 602 F.2d 616, 634 (4th Cir. 1979), *cert. denied*, 444 U.S. 1074 (1980).
222. *See, e.g.*, Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1056-57 (8th Cir.) (expert's testimony was stricken, even though expert's opinion formed the basis of plaintiff's damage case, because "it did not incorporate all aspects of the economic reality of the . . . market and because it did not separate lawful from unlawful conduct"), *cert. denied*, 531 U.S. 979 (2000); Merit Motors, Inc. v. Chrysler Corp., 569 F.2d 666, 673 (D.C. Cir. 1977) (summary judgment properly entered for defendant where plaintiff's economist "[made] unsupported assumptions about the elasticities of demand in various markets and . . . virtually ignore[d] the impact of the dominant forces in the automobile market").
223. *See, e.g., Stelwagon*, 63 F.3d at 1274; *Copper Liquor*, 624 F.2d at 580-81; Eiberger v. Sony Corp. of Am., 622 F.2d 1068, 1082 (2d Cir. 1980); *Nisely*, 300 F.2d at 595.
224. *See, e.g.*, Keener v. Sizzler Family Steak Houses, 597 F.2d 453, 457 (5th Cir. 1979); Deaktor v. Fox Grocery Co., 475 F.2d 1112, 1116 (3d Cir.), *cert. denied*, 414 U.S. 867 (1973); Pacific Mailing Equip. Corp. v. Pitney Bowes, Inc., 499 F. Supp. 108, 119-20 (N.D. Cal. 1980). *But see* Howerton v. Grace Hosp., 1995-2 Trade Cas. (CCH) ¶ 71,208, at 75,859-60 (W.D.N.C. 1995) (finding expert's market power and monopolization opinions unreliable), *aff'd per curiam*, 96 F.3d 1438 (4th Cir. 1996).
225. *See, e.g., Keener*, 597 F.2d at 457; Kestenbaum v. Falstaff Brewing Co., 575 F.2d 564, 569 (5th Cir.), *cert. denied*, 440 U.S. 909 (1979); Three Crown Ltd. P'ship v. Salomon Bros., 906 F. Supp. 876, 887 (S.D.N.Y. 1995).
226. *See, e.g.*, NARA v. Appraisal Found., 64 F.3d 1130, 1135-36 (8th Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996); Vernon v. Southern Cal. Edison Co., 1992-1 Trade Cas. (CCH) ¶ 69,717, at 67,267-68 (9th Cir. 1992); United States Football League v. NFL, 842 F.2d 1355, 1378-79 (2d Cir. 1988); Metrix Warehouse, Inc. v. Daimler-Benz A.G., 828 F.2d 1033, 1044 (4th Cir. 1987);

offers proof of lawful factors contributing to a plaintiff's losses, a verdict may be overturned as the product of speculation and guesswork.[227]

For example, in *Blue Cross & Blue Shield United v. Marshfield Clinic*,[228] the Seventh Circuit held that the plaintiff could not measure damages using a before and after theory because the plaintiff lacked evidence of prices it paid that were not subject to the conspiracy.[229] Neither could the plaintiff use the yardstick method of proof, as the plaintiff's expert reports had failed to "properly adjust" the defendant's prices to account for the effects of nonviolation factors.[230]

By contrast, other courts have not penalized plaintiffs for their failure to account for the effect of lawful conduct when calculating damages. For example, the district court in *Law v. NCAA*[231] upheld plaintiff's damages claims, rejecting defendant's argument that the damages model was defective because it failed to account for the impact of conduct that was not anticompetitive. The court relied on *J. Truett Payne*[232] for the proposition that courts should be willing to accept a degree of uncertainty in fixing the amount of damages.[233]

d. MITIGATION

While antitrust plaintiffs may not recover damages for avoidable losses, often referred to as a duty to mitigate damages,[234] the defendant bears the burden of

---

Isaksen v. Vermont Castings, Inc., 825 F.2d 1158, 1165 (7th Cir. 1987); Farley Transp. Co. v. Santa Fe Trail Transp. Co., 786 F.2d 1342, 1350-52 (9th Cir. 1985); *MCI Communs.*, 708 F.2d at 1161-63; Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263, 296-98 (2d Cir. 1979), *cert. denied*, 444 U.S. 1093 (1980); Coleman Motor Co. v. Chrysler Corp., 525 F.2d 1338, 1353 (3d Cir. 1975); Litton Sys. v. Honeywell, Inc., 1996-2 Trade Cas. (CCH) ¶ 71,559, at 77,969-70 (C.D. Cal. 1996).

227. *See, e.g.*, Rebel Oil Co. v. Atlantic Richfield Co., 957 F. Supp. 1184, 1197 (D. Nev. 1997) (improper for plaintiff's lost sales projections to include data from outlets sold prior to the alleged predatory period), *aff'd*, 146 F.3d 1088 (9th Cir.), *cert. denied*, 525 U.S. 1017 (1998); *Stelwagon*, 63 F.3d at 1273-76; *Isaksen*, 825 F.2d at 1165; *Farley*, 786 F.2d at 1351-52; *MCI Communs.*, 708 F.2d at 1162-63; *Coleman Motor*, 525 F.2d at 1353. *But see* Oltz v. St. Peter's Cmty. Hosp., 19 F.3d 1312, 1314 (9th Cir. 1994) (where plaintiff's business was ruined by defendant's initial exclusive contract, it was entitled to seek recovery for all damages caused by business destruction; legality of subsequent contracts between conspirators was irrelevant).

228. 152 F.3d 588 (7th Cir. 1998), *cert. denied*, 525 U.S. 1071 (1999).

229. *Id.* at 592. ("[T]he division of markets embraced the entire period and region in which the necessary data are obtainable; at least Blue Cross made no effort to show otherwise.").

230. *Id.* at 592-93.

231. 5 F. Supp. 2d 921, 929 (D. Kan. 1998).

232. J. Truett Payne v. Chrysler Motors Corp., 451 U.S. 557 (1981).

233. *Law*, 5 F. Supp. 2d 929; *accord National Farmers Org.*, 850 F.2d at 1308 ("in assessing the evidence as to the amount of damage, precision is not required"); *see also Harkins Amusement*, 748 F. Supp. at 1402-03 (plaintiff's damage model was acceptable, as anticompetitive impact on market due to defendant's acts was clear); Yellow Pages Cost Consultants v. GTE Directories, 951 F.2d 1158 (9th Cir. 1991), *cert. denied*, 504 U.S. 913 (1992); *United States Football League*, 842 F.2d at 1378-79; *Farley*, 786 F.2d at 1350-52; *MCI Communs.*, 708 F.2d at 1162-63; *see also* part E.2.a of this chapter. Note that a plaintiff need not offer proof of disaggregation as between various unlawful acts. *See, e.g.*, Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 698-99 (1962); Bonjorno v. Kaiser Aluminum & Chem. Corp., 752 F.2d 802, 813 (3d Cir. 1984), *cert. denied*, 477 U.S. 908 (1986); *MCI Communs.*, 708 F.2d at 1161.

234. *See, e.g.*, Litton Sys. v. AT&T, 700 F.2d 785, 820 n.47 (2d Cir. 1983); *accord* Fishman v. Estate of Wirtz, 807 F.2d 520, 556-60 (7th Cir. 1986); Pierce v. Ramsey Winch Co., 753 F.2d 416, 436 (5th Cir. 1985); Graphic Prods Distribs. v. Itek Corp., 717 F.2d 1560, 1583 (11th Cir. 1983); Sportmart, Inc. v. No Fear, Inc., 1996-2 Trade Cas. (CCH) ¶ 71,513, at 77,715 (N.D. Ill. 1996); *In re* Airline