# EXHIBIT 5

**Phillip E. Areeda**
*Late Langdell Professsor of Law*
Harvard University

**Roger D. Blair**
*Huber Hurst*
*Professor of Economics*
University of Florida

**Herbert Hovenkamp**
*Ben V. & Dorothy Willie*
*Professor of Law*
University of Iowa

**Volume II**
**Second Edition**

# Antitrust Law

## An Analysis of Antitrust Principles and Their Application



ASPEN LAW & BUSINESS
A Division of Aspen Publishers, Inc.

ARNOLD & PORTER
NOV 2 9 2000
LIBRARY

approach and the yardstick approach. The plaintiffs were independent movie exhibitors who claimed that rival exhibitors received films before the plaintiffs did as a result of an illegal conspiracy with the defendants. Because of the repeated delays in distribution, the plaintiffs allegedly were at a competitive disadvantage and therefore lost profits. The plaintiffs introduced two damage estimates at trial. The first estimate used a comparison of the plaintiffs' operations with those of another competitor during the conspiracy period. The competitor, which obtained movie releases in advance of the plaintiffs, was comparable in size to the plaintiffs. The competitor's equipment and location made it somewhat less attractive to movie theater patrons. Despite the differences, the yardstick estimate showed that the plaintiff lost business presumably as a result of the alleged anticompetitive conduct. The second estimate compared the performance of the plaintiffs' business before and after the violation. This before-and-after approach also demonstrated that the plaintiffs' business had declined during the conspiracy period.

On the issue of damages, the Court addressed the defendants' argument that both measures were invalid, rejected that argument, and upheld the lower court's damage award. The Court carefully affirmed on the basis of the before-and-after evidence alone, leaving open the question of whether the yardstick evidence would have provided sufficient support for the verdict. Since the Court did not reject the yardstick estimates, one may infer from *Bigelow* that the yardstick approach is a viable technique.

**391e. Before-and-after models and evidentiary problems.** The antitrust plaintiff must measure its antitrust damages by comparing its actual economic condition to what its condition would have been "but for" the unlawful behavior of the defendant(s). In the before-and-after model of damages, the plaintiff uses its experience prior to the antitrust violation to infer what its experience would have been but for the antitrust violation. In an overcharge case, for example, the plaintiff uses the prices that it paid (or received) prior to the monopolization or price-fixing activity as a basis for inferring what the prices would have been during the damage period but for the unlawful overcharges.[19] In a foreclosure (or exclusion) case, the plaintiff uses its own experience prior to the violation to infer what its profits would have been "but for" the anticompetitive foreclosure.[20] Evidentiary problems flow from the

---

19. Damages in overcharge cases are examined more fully in ¶394 (2d).
20. Damages in foreclosure cases are examined more fully in ¶396 (2d).

nature of the before-a
world.[21]

*First*, the plaintiff
antitrust violation is a
a foreclosure case, the
before the foreclosure
but for the foreclosure
perience as a foundati
in part on the length a
cases where the plaint
tuitively plausible tha
successful (i.e., profita
ple, suppose the plair
brief period of profitat
tiff will have to provi
profitability was more
*Oke*,[22] the court rejecte
an abnormally profital
*ply*,[23] the damage estin
to use the most profita
its damage estimates.
period provides an ina
period, the damage es

*Second*, a related p
perience in the after pe
the unlawful conduct
performance of the pl
managerial mishaps),
changed market conc
other causal factors in
ple, that a firm held a
and a 5 percent share o
reasonable to claim a l
action of the defendar
the plaintiff's industry
of the unlawful condu
for the effect of entry l

---

21. In *Isaksen v. Vermont*
simple before-and-after mode
demned *post hoc ergo propter hc*
22. *Joseph E. Seagram &*
cert. denied, 396 U.S. 1062 (197
23. *R.S.E. v. Pennsy Sup*

nature of the before-and-after approach to inferring the "but for" world.[21]

*First*, the plaintiff must establish that its experience before the antitrust violation is a reliable predictor of its future experience. In a foreclosure case, the plaintiff uses its own economic performance before the foreclosure to infer the profits that it would have earned but for the foreclosure. But how reliable is the plaintiff's prior experience as a foundation for such inferences? The answer depends in part on the length and stability of the firm's past performance. In cases where the plaintiff's past performance was dismal, it is not intuitively plausible that the firm would have suddenly become quite successful (i.e., profitable) absent the antitrust violation. For example, suppose the plaintiff had been largely unsuccessful but had a brief period of profitability prior to the antitrust violation. The plaintiff will have to provide a convincing argument that the burst of profitability was more than an aberration. For example, in *Hawaiian Oke*,[22] the court rejected the plaintiff's projection of profits based on an abnormally profitable six-month period. Similarly, in *Pennsy Supply*,[23] the damage estimates were rejected because the plaintiff tried to use the most profitable portions of two different years to support its damage estimates. When the plaintiff's experience in the before period provides an inadequate foundation for inferences in the after period, the damage estimates are apt to be rejected as speculative.

*Second*, a related problem arises when the plaintiff's actual experience in the after period is influenced by causal factors other than the unlawful conduct of the defendant. In general, the subsequent performance of the plaintiff can be caused by its own failings (i.e., managerial mishaps), the lawful behavior of the defendant, and changed market conditions. The plaintiff must control for these other causal factors in its damage calculations. Suppose, for example, that a firm held a market share of 20 percent in the base period and a 5 percent share during the damage period. It is inherently unreasonable to claim a loss in market share of 15 percent due to some action of the defendant if there has also been substantial entry into the plaintiff's industry. What is necessary is an estimate of the effect of the unlawful conduct net of the impact of entry. Failing to control for the effect of entry leads to speculative damage estimates.

---

21. In *Isaksen v. Vermont Castings*, 825 F. 2d 1158, 1165 (7th Cir. 1987), the court criticized simple before-and-after models that fail to account for other causal factors. The court condemned *post hoc ergo propter hoc* reasoning as a damage methodology.
22. *Joseph E. Seagram & Sons v. Hawaiian Oke and Liquors*, 416 F. 2d 71 (9th Cir. 1969), cert. denied, 396 U.S. 1062 (1970).
23. *R.S.E. v. Pennsy Supply*, 523 F. Supp. 954, 966-968 (M.D. Pa. 1981).