# EXHIBIT 14

MAJORIE FERRELL, et al vs. WYETH-AYERST LABORATORIES, INC.

Deposition of Gary L. French, Ph.D.

April 11, 2002

"We'll cover your job ANYWHERE in the country!"

COURT REPORTERS, ETCetera, INC.

(410) 653-1115    (202) 628-DEPO    1-800-947-DEPO (3376)

Case 1:01-cv-00704-SSB-TSH   Document 170-13   Filed 05/13/2005   Page 3 of 4

MAJORIE FERRELL, et al vs. WYETH-AYERST LABORATORIES, INC.   April 11, 2002
Deposition of Gary L. French, Ph.D.   "We'll cover your job ANYWHERE in the country!"

Page 413

1 two scenarios; an economic scenario and the
2 private sector scenario. The judge threw out the
3 private sector scenario. He didn't find the
4 parents' testimony sufficient basis for having
5 such a scenario.
6   Q. It had nothing to do with the
7 legitimacy of your analysis, but just a predicate
8 of the parents' testimony that that was a viable
9 prospect?
10   A. Yeah. But that's not too different
11 from what happen to EAG, either, the reason why
12 he founded what he said.
13   Q. Now, you'd acknowledge, would you not,
14 that it's insufficient to just calculate
15 classwide damages without addressing how damages
16 could be calculated for an individual plaintiff
17 or whether there's a common methodology or
18 formula that could be employed to calculate the
19 damages of each class member? You'd acknowledge
20 that, wouldn't you?
21   A. No, I would not acknowledge that.

Page 414

1 That's a legal question. Was sufficient to get
2 class certified? That's not my expertise. I
3 sometimes developed formulas for individual
4 damage calculations in the past, but whether you
5 have to or whether you don't, that's for you
6 lawyers to decide.
7     MR. EGGERT: Let me take a minute here
8 with my colleagues.
9     THE VIDEOGRAPHER: Remember we're off
10 the video record at 5:08.
11     (Brief Recess.)
12     THE VIDEOGRAPHER: We're back on the
13 video record. The time approximately 5:13.
14     BY MR. EGGERT:
15   Q. If I could direct your attention to
16 Paragraph 61 of your second -- I guess it's your
17 third expert report on the disposal contact lens
18 case. I don't have the second one. That
19 paragraph indicates that "in measuring the
20 overcharge caused by anti-competitive conduct, an
21 expert should compute the difference in the

Page 415

1 actual price in the market affected by the
2 anti-competitive conduct and a lower price in a
3 benchmark market unaffected by the wrongful
4 conduct and then multiply this difference, the
5 unit overcharge, by the number of units sold in
6 the affected market." Then you mentioned that
7 examples of benchmarks would be for prices for
8 those in the same relevant market either before
9 or after the anti-competitive conduct occurred.
10 Were those viable benchmark methods in this case
11 before or an after method?
12   A. Probably not.
13   Q. Why would a before method not have
14 worked here for the benchmark?
15   A. I'm not sure there's a period when
16 Premarin has faced meaningful competition.
17   Q. That would be based on the theory that
18 even before the entry of Cenestin, they held a
19 monopoly position in the marketplace, right?
20   A. Yes.
21   Q. And after the anti-competitive

Page 416

1 conduct, I gather your position is that the
2 anti-competitive conduct is still ongoing?
3   A. Yes.
4   Q. So that doesn't work.
5   A. Not my position. It's my belief.
6   Q. Although you really haven't looked at
7 any documents in the last year or two?
8   A. Right. It's possible that in the last
9 six months all these agreements were repealed,
10 but I doubt it.
11   Q. Why would you doubt that?
12   A. I don't know why they would. Product.
13   Q. "For the benchmark prices might be
14 those from the same product but in a geographic
15 area unaffected by the wrongful conduct." Did
16 you use that kind of method here?
17   A. No, because I think this -- the
18 conduct in this case is nationwide, so there's no
19 submarket where it hasn't happened.
20   Q. So none of the type of benchmarks that
21 you identified in Paragraph 61 of your report in

Case 1:01-cv-00704-SSB-TSH    Document 170-13    Filed 05/13/2005    Page 4 of 4

MAJORIE FERRELL, et al vs. WYETH-AYERST LABORATORIES, INC.    April 11, 2002
Deposition of Gary L. French, Ph.D.    "We'll cover your job ANYWHERE in the country!"

Page 417

1 the contact lens case are applicable here, right?
2   A. No. I mean it's conceivable that
3 there could be an overseas market in terms of a
4 geographic benchmark, but those are fraud with
5 difficulty as in exchange rate differences and
6 everything and other differences for the
7 economies and the U.S. economy, but theoretically
8 that's possible, but I haven't investigated it.
9   Q. And do you know whether Cenestin
10 competes overseas?
11   A. I don't know if they do or they don't.
12 The point would be are Premarin's prices very
13 different overseas and they don't have these kind
14 of agreements overseas. That would have to be
15 the case and I don't know that that's the case.
16   Q. You state in Paragraph 61 that, "The
17 expert should compute the difference in the
18 market affected by a lower price in a benchmark
19 market unaffected by the wrongful conduct." Your
20 Benchmark Number 2 does not satisfy that
21 criteria, right, because Wellpoint and Pacificare

Page 418

1 are in the market?
2   A. They're in the market, so it's a more
3 difficult benchmark to apply. That's why I'd
4 rather do the other one. We would be looking at
5 adjacent markets, other pioneer drug markets and
6 what happened to their prices to do the study I
7 talked about doing.
8   Q. Okay. I think -- let's see. I don't
9 have any more questions, I don't think. I think
10 I'm done.
11     MR. WEXLER: I don't have anything.
12     THE VIDEOGRAPHER: That concludes the
13 deposition. Going off the record at
14 approximately 5:17.
15     THE REPORTER: Reading and signing?
16     MR. WEXLER: Yes.
17     THE REPORTER: Should we send that to
18 Mr. Gustafson?
19     MR. WEXLER: Yes.
20     (Reading and signing requested.)
21     (Deposition concluded at 5:17 p.m.)

Page 419

CERTIFICATE OF REPORTER/NOTARY PUBLIC

DISTRICT OF COLUMBIA, to wit:

I, CHERYL JEFFERIES, a Notary Public of the District of Columbia, do hereby certify that the within-named witness personally appeared before me at the time and place herein set out, and after having been duly sworn by me, according to law, was examined by counsel.

I further certify that the examination was recorded stenographically by me and this transcript is a true record of the proceedings.

I further certify that I am not of counsel to any of the parties, nor in any way interested in the outcome of this action.

As witness my hand and notarial seal this 14th day of April, 2002.

_____
Cheryl Jefferies
Notary Public

My Commission Expires: July 18, 2002

Page 420

DATE SENT: April 15, 2002

ERRATA SHEET

DEPOSITION OF: Gary L. French, Ph.D.
DATE: April 11, 2002
CASE: Ferrell, et al vs. Wyeth-Ayerst Laboratories, et al

INSTRUCTIONS:

1. Please read the transcript of your deposition and make note of any corrections or changes on this Errata Sheet. DO NOT mark on the transcript itself.

2. Indicate below general reason for change, such as:
   A. To correct stenographic error.
   B. To clarify record.
   C. To conform to the facts.

3. Sign the Certificate of Deponent page.

4. Return this Errata Sheet, along with the signed Certificate of Deponent page, within 30 days of the date sent, to the office listed below for immediate forwarding to other counsel in the case.

PAGE NO.    LINE NO.    CORRECTION    REASON
_____
_____
_____
_____

FIRST RECEIVED, ETCetera, INC.
[address]